UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

MISTY BLANCHETTE PORTER, M.D.,

    Plaintiff,

v.

DARTMOUTH-HITCHCOCK MEDICAL CENTER,

    Defendant.

Case No. 5:17-cv-194

**DECISION ON MOTION FOR AUTHORIZATION TO CONTACT
DARTMOUTH-HITCHCOCK EMPLOYEES EX PARTE AND ON
MOTION TO COMPEL**
(Doc. 20, 26)

### I.    Motion for Authorization To Contact Employees

Plaintiff Misty Blanchette Porter, M.D., alleges wrongful discharge and discrimination in connection with the termination of her employment by Defendant Dartmouth-Hitchcock Medical Center ("DHMC"), where she led the Division of Reproductive Medicine and Infertility. Dr. Porter's attorneys seek a ruling from the court allowing them, in preparation of their case, to contact DHMC employees, such as nurses, technicians, secretaries, medical residents and fellows, and other physicians in the OB/GYN Department. (Doc. 20 at 3). DMHC opposes this request on the ground that such ex parte communications would violate Rule 4.2 of the Vermont Rules of Professional Conduct. The parties appeared for a hearing on the motion on July 17, 2017.

1

## BACKGROUND

The amended complaint alleges as follows. Dr. Porter is a specialist in gynecology and reproductive medicine. She came to DHMC in 1966 to join the Division of Reproductive Endocrinology and Infertility ("REI") within the Department of Obstetrics and Gynecology. She has led the REI division for almost ten years. In May 2017, DHMC closed the REI division and terminated Dr. Porter's employment. Dr. Porter claims that DHMC discriminated against her on the basis of a physical disability. She also claims that the hospital terminated her employment in retaliation for positions she had taken concerning standards of medical care and her reports of billing and treatment irregularities. (Doc. 50.)

Through counsel, Dr. Porter seeks to interview her former coworkers who may have witnessed conduct by DHMC representatives which would support her claims. She asserts that line staff, such as nurses and medical residents, may have been present when statements about her employment and her termination were made by DHMC administrators, or that line staff could know of such statements on a second or third-hand basis. Dr. Porter seeks to conduct these interviews without DHMC's counsel present to avoid the expense of taking formal depositions from multiple members of hospital staff and to avoid the chilling effect that a deposition taken in the presence of hospital attorneys could have on staff members.

In response, DHMC directs the court's attention to *Baisley v. Missisquoi Cemetery Ass'n*, 708 A.2d 924, 167 Vt. 473 (Vt. 1998), which adopts a relatively expansive reading of Disciplinary Rule 7-104 of the Code of Professional Responsibility. Rule 7-104 is the predecessor of Rule 4.1 of the Rules of Professional Conduct adopted in Vermont in 1999. The substance of the two rules is the same.

The parties agree that the issue under consideration is controlled by the substantive law of Vermont governing lawyers.

## ANALYSIS

Rule 4.2 prohibits lawyers from communicating with persons represented by other counsel without consent of the other lawyer or court authorization. The prohibition extends only to the subjects covered by the representation. The scope of the prohibition in the case of officers and employees of corporations is described in Comment 7. The comment identifies several classes of people who are obviously off-limits to opposing counsel. These include a "constituent of the organization who supervises, directs or regularly consults with organization's lawyer" and a constituent who "has authority to obligate the organization with respect to the matter." Dr. Porter's attorneys agree that they may not contact such people.

The parties dispute the proper application of the third clause of Comment 7, which concerns constituents "whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability." In broad terms, people whose actions may give rise to vicarious liability may not be contacted by opposing counsel.

Section 100 of the Restatement (Third) of the Law Governing Lawyers considers the same issue with a greater depth of explanation. As in the case of Rule 4.2, a current employee or agent may not be contacted if (1) that person is in contact with the lawyer, or (2) that person's acts may be imputed to the organization. The Restatement adds a third category of employees who may not be contacted: current employees or agents whose statements, "under applicable rules of evidence, would have the effect of binding the organization with respect to proof of the matter." Restatement (Third) of the Law Governing Lawyers § 100(2)(c). Comment b addresses the policy concerns which underlie this rule:

> A very broad definition of such person [who may not be contacted by opposing counsel] would be easily administered but at an unacceptably high costs. Under such a rule, the organization's lawyer . . . could deny permission for the inquiring lawyer to speak to any employee.

By defining the group of people who may not be contacted with specificity, the Restatement – like Comment 7 – seeks to strike a balance between the interests of the organization in controlling contact with its decision-makers and the interests of the adversary in conducting an effective investigation.

The common factor in Comment 7 and the Restatement provision is the potential use of statements by representatives which are treated as the statements of the organization itself. Statements are actions. If the statement of an employee is admissible as a statement of the organization on grounds of respondeat superior or other bases for derivative liability, that employee is off-limits for ex parte contact. The Restatement adds representatives whose statements may "bind" the organization under principles of evidence law. Such acts would include admissions of an organizational representative.

The Vermont Supreme Court considered these issues in *Baisley v. Missisquoi Cemetery Association*, 167 Vt. 473 (1998). The employee at issue in *Baisley* was the groundskeeper of a nonprofit cemetery association. He was the only employee. The condition of the fence surrounding the grounds – a matter for which the employee was responsible -- was the basis for a wrongful death action.

The court considered two issues. The first was whether communications between the association's lawyer and the groundskeeper were privileged. The court held that the control-group test applicable to business corporations pursuant to 12 V.S.A. § 1613 was too narrow. The court followed the broader privilege test for organizations which appears in V.R.E. 502 and

4

held that the communications were privileged because they "were necessary for the lawyer to represent [the organization." Id. at 486.

Turning to the question of ex parte contact with opposing counsel, the court identified the opposing alternatives: free access to information weighed against the need for organizations and their attorneys to exercise control over statements which may admissible against the organization. The court avoided the expression of a general rule or formulation.

> As with the attorney-client privilege issue, we need not make a more specific policy choice. Under any alternative to the blanket ban [on communications with an organization's representatives, the groundskeeper] is a "party" for purposes of the no-contact rule....[His] statements are likely to be admissible against his employer pursuant to V.R.E. 801(d)(2)(D). In addition, defendants' lawyer needs to know what [he] says to plaintiffs' lawyers in order to prepare their defense. Plaintiffs do not need informal access to [the groundskeeper] in order to prepare their case; the number of witnesses is small and plaintiffs have been able to gather the underlying factual information necessary to bring suit.

*Id.* at 488-89. In considering the use of the groundskeeper's statements as an admission, the Vermont Supreme Court recognized that the no-contact rule applied to representatives whose statements might constitute admissions as well as those whose act might bind the company.

The circumstances are very different in this case. DHMC is a large organization with employees at many levels. Obviously, some of those employees were directly involved in the decision-making concerning the termination of Dr. Porter's employment. Those individuals are off-limits, as are any employees whom counsel for DHMC represents personally in connection with this case. Other representatives such as high-level administrators may have authority to bind DHMC to any statements they might make about Dr. Porter's termination, even if they were not directly involved in the event. But that leaves the great majority of doctors, nurses, and staff who are only witnesses to statements and announcements by hospital executives. That a resident or an attending physician has very substantial responsibilities for patient care does not

mean that his or her statements may be imputed to DHMC for purposes of an employment action. DHMC employees might have heard DMHC executives make statements about the reasons for Dr. Porter's termination. It is the executives' statements which may be imputed to or bind DHMC, not the employees' descriptions of what they heard.

With these principles in mind, the court orders as follows. The following groups of DHMC officers and employees may not be contacted on an ex parte basis:

1. Anyone who supervises or directs the legal representation on behalf of DHMC or is in regular contact about it with the hospital's attorneys.
2. Anyone whom defense counsel identifies as an individual they represent.
3. Anyone in a decision-making or supervisory role concerning Dr. Porter's termination and as a consequence is in a position in which his or her statements about the termination could reasonably be imputed to the hospital.
4. Anyone in a senior position at DHMC whose statements on employment practices or other relevant issues are likely admissible as admissions.

Dr. Porter's counsel may contact on an ex parte basis all other DHMC employees, likely a significant majority. This includes fellow physicians and professionals such as nurses or technicians who may have heard others make statements about the reasons for Dr. Porter's termination.

The court will not order DMHC to contact its employees concerning their right to speak with plaintiff's counsel. Counsel for DMHC has represented that they have not and do not intend to give such instructions except in cases in which they actually represent the employee.

**II.      Motion to Compel**

6

Plaintiff has filed a motion to compel defendants to respond to Requests to Produce concerning the reasons for the resignation of Dr. DeMars, chair of the OB/Gyn Department at DHMC, a few weeks after Dr. Porter's termination. Plaintiff alleges that Dr. DeMars' resignation is related to the closure of the REI Division. Doc. 50, ¶ 93. Defendant objects to the disclosure on grounds of relevance.

Since plaintiff has now filed an amended complaint attributing Dr. DeMars' resignation to the closure of the REI division, the facts concerning Dr. DeMars' resignation are potentially relevant. The court GRANTS the motion to compel and orders defendants to respond to Requests to Produce number 44 within 30 days, subject to the existing confidentiality order (Doc. 25).

## CONCLUSION

The motion for authorization to contact DHMC employees ex parte is **GRANTED**. The motion to compel is **GRANTED.**

Dated at Rutland, in the District of Vermont, this 9th day of August, 2018.

Geoffrey W. Crawford, Chief Judge
United States District Court

7