# EXHIBIT A



Vitt & Associates
LAW OFFICE

October 4, 2018

<u>Via U.S. Mail and Email</u>

Donald W. Schroeder, Esq.
Jessica Joseph, Esq.
Foley & Lardner LLP
111 Huntington Avenue
Suite 2500
Boston, MA  02199-7610
DSchroeder@foley.com
JJoseph@foley.com

       **RE:**   ***Porter v. Dartmouth-Hitchcock Medical Center et al.***
              ***Docket No. 5:17-cv-194***

Dear Don and Jessica:

      We are writing about defendants' privilege log (the "Privilege Log") that we received last

Friday evening, September 28, 2018.  We have been engaged in discovery since January 22,

2018, when Dr. Misty Blanchette Porter ("Dr. Porter") served her first set of requests to produce.

We did not receive the first batch of documents from Defendants until several months later.  Our

frustration with the speed and substance of your production is well-documented.  We have been

asking for <u>months</u> about the production of the privilege log and you have made multiple

promises that you would soon send it to us.  For example, on July 11, 2018, we emailed to ask

about the status of the privilege log, and Jessica Joseph wrote back on July 12, "We are working

on putting that together, and will get it to you in the next week or two."  Subsequently, without

genuine basis, you decided to delay production of the privilege log until the production of

documents responsive to Request #44, which occurred on September 10, 2018.  However, you

Donald W. Schroeder, Esq.
October 4, 2018
Page 2

did not even follow through with that date, and instead delayed production of the Privilege Log

for nearly another three weeks.

      As set out further below, your designation of Quality Assurance ("QA") privilege is

inappropriate in this action at all, and, to the extent applicable, grossly over-designated.

Moreover, you have failed to provide sufficient information for us to assess your claims of

attorney-client privilege, as you are required to do.

      Accordingly, we request that you meet and confer with us within the next few days, or we

will file a motion to compel with the court.  If you are unwilling to make any revisions to your

privilege log, please inform us of that and we will simply proceed to filing a motion to compel

with the Court.

## I.    Privilege Log Contents

      Defendants have refused to produce or redacted 152 documents based on the QA

privilege and 77 documents based on the attorney-client privilege.[1]  You have not met your

burden of proving that either privilege applies.  While the Privilege Log identifies the document

and privilege claimed, it only provides a few stock phrases throughout, *e.g.*, "internal evaluation

of treatment of patients" and "communication seeking legal advice."  As we discuss below,

Vermont courts require more detailed information from a party who seeks to withhold

information based on a privilege.  This information is insufficient for us to determine whether the

withheld document falls within the scope of the permitted privilege.

---

[1] There are several instances where the redaction is based on "Confidential Information."  We do not question any of these redactions.

Donald W. Schroeder, Esq.
October 4, 2018
Page 3

## II.    Applicable Law

Vermont state law provisions concerning privileges and confidentiality apply to the

determination of whether defendants have properly asserted the QA and attorney-client

privileges in this matter. *See Russo v. Brattleboro Retreat*, 2016 U.S. Dist. LEXIS 9421, 2016

WL 299020 (D.Vt. 2016) (Crawford, J.). The party asserting a privilege has the burden of

proving that the privilege applies. *Douglas v. Windham Superior Court*, 157 Vt. 34, 43 (1991).[2]

The Vermont code in 26 V.S.A. § 1443 provides that "the proceedings, reports, and

records of committees defined in section 1441 of this title…shall be confidential and privileged,

and shall not be subject to discovery or introduction into evidence in any civil action against a

provider of health services arising out of the matters which are subject to evaluation and review

by such committee." The privilege is "narrow." *Prouty v. Southwestern Vt. Med. Ctr.*, 2013 Vt.

Super. LEXIS 64* (2013). In order to invoke the privilege, a party must "observe proper

formalities." *Robinson v. Springfield Hosp.*, 2010 U.S. Dist. LEXIS 10160, 2010 WL 503096,

*1 (D. Vt. Feb 5, 2010).

## III.    Section 1443 Is Not Applicable to This Action

The QA privilege under Vermont law is only applicable to certain types of actions.

Specifically, the statute provides that the privilege only applies to "any civil action against a

provider of health services arising out of the matters which are subject to evaluation and review

---

[2] Although New Hampshire law does not apply, defendants would have the same burden under the New Hampshire statute that provides for QA privilege. *Hampton Police Ass'n v. Town of Hampton*, 162 N.H. 7, 14 (2011); *State v. Gordon*, 141 N.H. 703, 705 (1997)

Donald W. Schroeder, Esq.
October 4, 2018
Page 4

by such committee." 26 V.S.A. § 1443. In other words, Section 1443 is intended to apply to

medical malpractice actions.

     Dr. Porter's lawsuit does not fall within the narrowly-drawn boundaries of Section 1443.

Accordingly, the QA privilege is not applicable at all.

     While the action limitation of Section 1443 has not been addressed by Vermont courts, it

has been construed in other jurisdictions. Florida has a similar statute which protects disclosure

of documents from peer review committees. "These three statutory provisions contain identical

language limiting their applicability in civil actions to those that are 'against a provider of

professional health services arising out of the matters which are the subject of evaluation and

review' by such board, committee or group." *Toyos v. Nw. Mut. Life Ins. Co.*, 1 F. Supp. 2d

1462, 1464 (S.D. Fla. 1998). In that matter, the court rejected defendants' invocation of the peer

review privilege, concluding that it was not the right type of action for application of the statute.

The court concluded:

> This suit is not a civil action "against a provider of professional health services," as is
> required for the application of Florida's statutory medical peer review privilege. Rather, it
> is an action brought by a doctor against an insurance company based on the insurer's
> breach of the disability income insurance contracts. The hospitals have cited no Florida
> state cases extending the reach of the statutory peer review privilege to cover an action
> similar to the one brought by the insured.
>
> *Toyos*, 1 F. Supp. 2d at 1464.

Here as well, Dr. Porter's lawsuit is not against a provider of health services arising out of the

matters which are subject to evaluation and review by a peer review committee. Her lawsuit is

against her employer, who happens to employ providers of health services. Thus, as a matter of

plain statutory interpretation, Section 1443 is inapplicable to this action.

Donald W. Schroeder, Esq.
October 4, 2018
Page 5

Accordingly, you are mistaken in invoking the peer review privilege provided by Section 1443. You must withdraw this designation and produce all documents previously withheld on the basis of QA privilege immediately.

### IV.    Any Document Previously Shared With or Generated by Dr. Porter is Not Privileged

In addition, there is no basis to assert privilege over any document that was shared with or generated by Dr. Porter. The purpose of a privilege is to maintain confidentiality, but where a document was already shared with – or written by! – Dr. Porter, that rationale is meaningless. We are unaware of a circumstance in which a litigation privilege can be asserted with regards to documents already seen by a party. Your withholding of these documents is a tactic to try to limit Dr. Porter's ability to pursue her claims against defendants, and Judge Crawford will not look favorably upon such tactics and abuse of the discovery process. To the extent the documents contain confidential information, the existing Protective Order is adequate for the task.

### V.    Defendants Have Failed to Identify Any "Peer Review Committee"

To the extent Section 1443 applies – and we do not believe that it does – you have failed to meet the requirements of the statute. Defendants have provided no information about the "committee" or "committees" that were involved in the peer review process related to the 172 documents for which you asserted a privilege.

26 V.S.A. § 1441 carefully defines "peer review committee," for purposes of the QA privilege:

Donald W. Schroeder, Esq.
October 4, 2018
Page 6

> As used in this subchapter, the term "peer review committee" shall mean the Vermont professional standards review organization or its subsidiary committees, the Vermont Program for Quality in Health Care, Inc. or its subsidiary committees, a peer review committee or other comparable committee established by a health maintenance organization in accordance with the provisions of 18 V.S.A. § 9414, or a committee of a state or local professional association or of a hospital or other health care provider which is formed to evaluate and improve the quality of health care rendered by providers of health services or to determine that health services rendered were professionally indicated or were performed in compliance with the applicable standard of care or that the cost of health care rendered was considered reasonable by the providers of professional health services in the area.

As is obvious from the foregoing, the term "peer review committee" for purposes of § 1443 privilege does not mean just any group of people who may be called a committee. The term is highly specific.

To use the first document in the Privilege Log as an example, you claim privilege over "Meeting minutes reflecting internal evaluation of treatment of patients." The individuals who received this communication include secretaries and nursing staff. Are we to believe that Donna Bedard – the department secretary – was a member of a "peer review committee"? Likewise, general communications with Risk Management do not fall within the QA privilege.

Vermont law requires defendants to demonstrate that they turned square corners and scrupulously followed established procedures in order to invoke the QA privilege of Section 1443. "Because the dividing line between peer review and normal business operations can be unclear, courts generally apply the peer review privilege only when the formalities of the clear review process are clearly apparent." *Robinson v. Springfield Hosp.*, 2010 U.S. Dist. LEXIS 10160, at *5 (D.Vt. Feb. 5, 2010). It is impossible to determine from the Privilege Log what formalities, if any, defendants followed and which committees, if any, were involved.

Defendants' oft-repeated phrase – "internal evaluation of treatment of patients" – tells us nothing about whether a peer review process was followed. "Formalities such as designated

Donald W. Schroeder, Esq.
October 4, 2018
Page 7

committees and explicitly labeled peer review reports act as a signal to medical employees,
telling them that their opinions will be protected from discovery." *Robinson*, at *6.

Moreover, the Vermont peer review statute only protects materials that a peer review
committee <u>generated</u>, not material that it considered. 26 V.S.A. § 1443 ("However, information,
documents, or records otherwise available from original sources are not to be construed as
immune from discovery or use in any such action merely because they were presented during the
proceedings of such committee[.]"). "Defendant cannot exclude all information considered by a
peer review committee. Instead, Defendant may only refuse to disclose material that Defendant
shows was created as part of a formal peer view process." *Prouty v. Southwestern Vt. Med. Ctr.*,
2013 Vt. Super. LEXIS 64 * 7 (Vt. Super. Ct. Oct. 26, 2013). In order for materials to fall within
the privilege, the formalities of the peer review process must have been observed and the
participants informed that their work was being performed as a part of a formal peer review
process. "[C]onversations and documents arising in the course of ordinary business operations
are not protected." *Robinson,* 2010 U.S.Dist. LEXIS 10160, at *5.

It appears highly likely that the documents withheld by Defendants were generated "in
the course of ordinary business operations." The burden is on Defendants to prove otherwise.
*See Prouty*, 2013 Vt. Super. LEXIS 64 * 6-7 ("the party invoking a privilege must show the
privilege applies.").

To the extent you decide to continue to assert QA privilege under § 1443, despite the
multiple reasons it does not apply, you must provide additional information about each involved
peer review committee to support the basis for your continued assertion of privilege.

Donald W. Schroeder, Esq.
October 4, 2018
Page 8

## VI.    Examples of Documents Withheld by D-H

As it turns out, at least two of the documents withheld under the QA privilege by

Defendants were already produced by Dr. Porter. These documents do not meet any of the

standards required for protection under the peer review privilege and they should have been

produced by Defendants. In fact, the content of these documents demonstrates how utterly

groundless your assertion of QA privilege is for these documents.

Documents:

1.  9/12/16 Porter to DeMars email re: DS review.  (PORTER 114-115)

2.  2/20/17 Porter to DeMars email re: confidential review (PORTER 71)

These documents are referenced on page 9 of the Privilege Log.

These documents make clear that no review committee was involved, and thus invocation

of the § 1443 privilege is utterly improper.

Dr. DeMars' 9/7/16 email that precipitated the withheld 9/12/2016 document from Dr.

Porter states that she is in the process "of doing Dr. Seifer's 90 day evaluation" and she wants

the other three doctors in the REI Division to provide their comments about his teamwork,

professionalism, and collegiality. She states that comments would be "held in confidence per

HR regulations." Dr. Porter's comments, which run to about two pages, cover each of these

topics. There is not a word in either document about a peer review committee looking at any

action of Dr. Seifer. Moreover, nor is there any way that the DeMars email or the response could

be considered a document that was generated by a peer review committee.

Dr. DeMars' 2/16/17 email to 17 persons in the Department begins: "I asked you all for

comments at the end of Dr. Seifer's initial evaluation period in the fall. It is time for another

Donald W. Schroeder, Esq.
October 4, 2018
Page 9

assessment." Again, not one word about the work of a peer review committee. This document
was not generated as a result of the peer review process, but instead was generated in the
ordinary course of business operation. These documents should not have been withheld.

As a matter of additional concern, the "author/recipient" fields for those two documents
on p. 9 of the Privilege Log are incorrect. The two documents were sent from Dr. Porter only to
Dr. DeMars. However, on the Privilege Log, a number of other "authors/recipients" are listed –
likely because a prior email in the chain was shared with those recipients, but not the withheld
document. This error raises serious questions about the reliability of other information provided
in the Privilege Log.

## VII.    Attorney-Client Privilege

The Privilege Log is also inadequate with regards to documents withheld based upon
attorney-client privilege. For documents withheld in whole or in part based on the attorney-
client privilege, the Privilege Log provides the date of the communication, the author,
author/recipient(s), which appears to be those to whom copies were sent, and then a statement
which alternates between "email communication with counsel seeking legal advice" and "email
communications with counsel reflecting legal advice from counsel." This level of information is
insufficient under the law in the Second Circuit.

As the party asserting the privilege, it is the defendants' burden to establish those facts
that are essential to its existence. *See, e.g., United States v. Construction Products Research,
Inc.*, 73 F.3d 464, 473 (2d Cir.), *cert. denied*, 519 U.S. 927 (1996). In order to satisfy its burden,
"a party must present competent evidence and not merely conclusory or 'ipse dixit' assertions of
counsel." *Large v. Our Lady of Mercy Medical Center*, 1998 WL 65995 (S.D.N.Y. 1998) (citing

Donald W. Schroeder, Esq.
October 4, 2018
Page 10

multiple cases).  Specifically, defendants must submit an affidavit or sufficiently detailed

privileges logs.

    What you have provided here is not close to being sufficient.  At this point, defendants

have asserted that the attorney-client privilege applies, but they have failed to carry their burden

of establishing the necessary elements.  If defendants do not "provide sufficient detail to

demonstrate fulfillment of the legal requirements for application of the privilege," the claim must

be rejected.  *United States v. Constr. Prods. Research, Inc.*, 73 F.3d at 473.

    Accordingly, we request that you provide additional information regarding each

document withheld as attorney-client privileged, that is sufficient for us to determine the basis

for privilege asserted.  Even based on the limited information in the Privilege Log, some of the

privilege assertions seem highly doubtful based upon the sheer number of individuals involved in

an email communication.  *See, e.g.*, Privilege Log, p. 13, 14.

                               \*         \*         \*

    We look forward to a prompt response.  If no response is forthcoming, we will proceed to

file a motion to compel.

                        Sincerely,

                        Geoffrey J. Vitt
                        Katherine B. Kramer