IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| MISTY BLANCHETTE PORTER, M.D., <br><br> Plaintiff, <br><br> vs. <br><br> DARTMOUTH-HITCHCOCK MEDICAL CENTER, DARTMOUTH-HITCHCOCK CLINIC, MARY HITCHCOCK MEMORIAL HOSPITAL, and DARTMOUTH-HITCHCOCK HEALTH, <br><br> Defendants. | Case No. 5:17-cv-194 |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS**

Defendants Dartmouth-Hitchcock Medical Center, Dartmouth-Hitchcock Clinic, Mary Hitchcock Memorial Hospital, and Dartmouth-Hitchcock Health (collectively, "D-H" or "Defendants"), through their attorneys, hereby move pursuant to Fed. R. Civ. P. 56 for summary judgment on all claims asserted by Plaintiff Misty Blanchette Porter, M.D. (the "Plaintiff" or "Dr. Porter").

**MEMORANDUM OF LAW**

**I.       Introduction**

Dr. Porter was previously employed as a physician in the Reproductive Endocrinology and Infertility ("REI") Division within D-H's Department of Obstetrics and Gynecology ("OB/GYN"). Following longstanding, well-documented issues with recruitment and staffing shortages of skilled nurses in the REI Division, D-H made the decision to shut down the Division entirely, resulting in the termination of all three physicians in the Division, including Dr. Porter. Rather than accept that this was the sole reason for her termination, however, Dr. Porter asserts several

unsubstantiated claims for retaliation and discrimination under state and federal law based on her alleged disability and requests for accommodations, as well as alleged whistleblower complaints she made about certain practices in the REI Division by the other providers.

None of Dr. Porter's conspiracy theories allow her to escape summary judgment. With respect to her retaliation claims under the New Hampshire Whistleblowers' Protection Act, RSA 275-E:2 (the "NHWPA"), the Americans with Disabilities Act of 1990 ("ADA"), New Hampshire's unlawful discriminatory practice laws, RSA 354-A:19, and the Vermont Fair Employment Practices Act ("VFEPA"), Dr. Porter simply cannot show the requisite causal connection between her alleged disability or whistleblower complaints and her termination, let alone that D-H's stated reason for her termination was pretext. Dr. Porter's claims for disability discrimination under the ADA, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), New Hampshire RSA 354-A:7, and the VFEPA are similarly doomed, as Dr. Porter has failed to raise any inference of a discriminatory motive for her termination, and the undisputed facts demonstrate D-H provided all reasonable accommodations for Dr. Porter up until the closure of the REI Division. Finally, Dr. Porter cannot substantiate her claim for wrongful discharge, as she has not shown that her termination was motivated by any bad faith, retaliation, or malice, or that there was any causal connection between any protected conduct and her termination.

In sum, D-H is entitled to summary judgment on all of Dr. Porter's claims.

## II.  Standard Of Review

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Knapik v. Mary Hitchcock Mem. Hosp.*, 90 F. Supp. 3d 292, 296-7 (D. Vt. 2015) (quoting Fed. R. Civ. P.

2

4843-6919-6695.2

56(a)). A fact is only "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"If the moving party demonstrates that there are no genuine issues of material fact, the burden then shifts to the nonmoving party, who must present significantly probative supporting evidence of a disputed fact." *Roberts v. Vt. Dep't of Corr.*, Civil Action No. 2:16-cv-135-cr-jmc, 2017 U.S. Dist. LEXIS 75832, at *7 (D. Vt. Apr. 4, 2017) (quotations and citation omitted). "Mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment." *Connolly v. City of Rutland*, Civil Action No. 2:09-CV-183, 2011 U.S. Dist. LEXIS 94978, at *12 (D. Vt. Aug. 24, 2011) (quotations and citation omitted).

### III. Dr. Porter Cannot Prove The Essential Elements Of Her Retaliation Claims.

Dr. Porter asserts D-H retaliated against her because of her alleged whistleblower activities (Count 2) as well as her disability (Counts 3, 5, and 6). All of these claims are analyzed under the same *McDonnell Douglas* burden-shifting framework developed for claims under Title VII of the Civil Rights Act of 1964. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Appeal of Montplaisir*, 147 N.H. 297, 300-1 (2001) (applying *McDonnell-Douglas* framework to whistleblower claim under NHWPA); *Knox v. Town of Southeast*, 599 Fed. Appx. 411, 413-14 (2d Cir. 2015) (applying burden-shifting framework to claim for retaliation under the ADA); *Dennis v. Osram Sylvania, Inc.*, 549 F.3d 851, 856-7 (1st Cir. 2011) (same as to claim under N.H. RSA § 354-A); *Nadeau v. Mary Hitchcock Mem. Hosp.*, Case No. 14-cv-64, 2016 U.S. Dist. LEXIS 77836, at *25 (D. Vt. June 13, 2016) (same as to claim under VFEPA).

Dr. Porter bears the initial burden of establishing her *prima facie* case, which for her NHWPA and § 354-A claims[1] requires her to show that (1) she engaged in an act protected by the

---

[1] Courts have looked to cases interpreting similar federal employment discrimination law, such as the ADA or Title VII, to aid interpretation of § 354-A and the NHWPA. *Parker v. Accellent, Inc.*, Civil No. 13-cv-053-JL, 2014 U.S.

3

relevant statute; (2) she suffered an employment action proscribed by the statute; and (3) there was a causal connection between the protected act and the proscribed employment action. *Appeal of Montplaisir*, 147 N.H. at 301; *Madeja v. MPB Corp.*, 149 N.H. 371, 378 (2003).

For her disability retaliation claims under the ADA and the VFEPA[2], Dr. Porter similarly bears the burden of establishing a prima facie case of retaliation, showing that (1) she engaged in an activity protected by the relevant statute; (2) D-H was aware of this activity; (3) D-H took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity. *Valtchev v. City of New York*, 400 Fed. Appx. 586, 589 (2d Cir. 2010) (citation omitted); *Connors v. Dartmouth Hitchcock Med. Ctr.*, 12 F. Supp. 3d 688, 699 (D. Vt. 2014) (citation omitted).

Under the *McDonnell Douglas* approach, if Dr. Porter successfully demonstrates a prima facie case for retaliation, the burden shifts to D-H to articulate a legitimate, non-retaliatory reason for terminating her. Once it has done so, Dr. Porter must then prove D-H's stated reason for terminating her was merely pretext. *Valtchev*, 400 Fed. Appx. at 589 (citation omitted); *Connors*, 12 F. Supp. 3d at 699; *Appeal of Montplaisir*, 147 NH. at 301; *Dennis*, 549 F.3d at 857 (citation omitted).

Dr. Porter cannot establish a prima facie case for any of her retaliation claims. Even if she could, the undisputed facts show D-H had a legitimate, non-retaliatory reason for terminating Dr. Porter —namely, the closure of the entire REI Division, prompted by continuing nursing shortages in that Division. Dr. Porter cannot show that D-H's reason for terminating her—at the same time as her two male colleagues—was based on pretext.

---

Dist. LEXIS 160538, at *15 (D.N.H. Nov. 13, 2014) (citing *Madeja v. MPB Corp.*, 149 N.H. 371, 378, (2003)); *Appeal of Seacoast Fire Equip. Co.*, 146 N.H. 605, 608 (2001); *Appeal of Montplaisir*, 147 N.H. at 300.
[2] "The standards and burdens of proof under the VFEPA are identical to those under the ADA." *Mueller v. Rutland Mental Health Servs.*, File No. 1:05-cv-38, 2006 U.S. Dist. LEXIS 58004 (D. Vt. Aug. 17, 2006) (citation omitted).

4843-6919-6695.2

## A. Dr. Porter Cannot Establish A Prima Facie Case For Whistleblower or Disability Retaliation Because She Cannot Show The Required Causal Connection.

Even assuming Dr. Porter is able to satisfy the first two prongs of her prima facie case for retaliation under the NHWPA, Dr. Porter cannot show any causal connection between her alleged whistleblower activities and her termination.[3] Dr. Porter does not allege any sufficient temporal proximity between her laundry list of alleged complaints—the transfer and implantation of an embryo potentially exposed to Zika virus[4], procedures performed without patients' informed consent, alleged fraudulent billing practices, and failure to retain necessary personnel to validate federally-required data reports—and her termination when the REI Division's closure occurred in June 2017. Amd. Compl. at ¶ 99. Nor is there any evidence that Dr. Porter's alleged complaints played any role whatsoever in her termination. Rather, Dr. Ed Merrens, D-H's Chief Clinical Officer, made the decision to close the REI Division without any knowledge of any of Dr. Porter's alleged complaints. Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment on All Claims ("SUMF"), ¶ 13. Daniel Herrick, D-H's Vice President of Perioperative and Surgical Services, who supported the decision, was also not aware of any such complaints. *Id.*

As for her claim of disability retaliation, Dr. Porter similarly cannot show the requisite causal connection. Dr. Porter may assert based on hearsay that Dr. Merrens made reference to her part-time status[5] after the closure of the REI Division had already occurred, but Dr. Porter does

---

[3] Dr. Porter also alleges that D-H "harassed, abused, intimidated . . . threatened, and otherwise discriminated against [her] regarding compensation, terms, conditions, locations, and privileges of employment" but has adduced no evidence of any such conduct or adverse employment action taken against her aside from her termination. Amended Complaint ("Amd. Compl."), Dkt. 50, ¶¶ 99, 100.

[4] Dr. Porter asserts she made this complaint on or around February 2017, Amd. Compl. at ¶ 73, but "district courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (collecting cases).

[5] Dr. Merrens was not aware of any of the details regarding Dr. Porter's disability. SUMF at ¶ 14.

4843-6919-6695.2

not make any showing that her disability played any role in Dr. Merrens' decision to close the REI Division and terminate her along with the two other physicians in the REI Division. SUMF at ¶ 14 (Dr. Merrens states ("[T]here was nothing about her disability that led to my decision about her termination[.])"; *see also Knox*, 599 Fed. Appx. at 414 (affirming summary judgment for employer where employee failed to adequately support an inference of discrimination or retaliation).

### B. D-H Had A Legitimate, Non-Retaliatory Reason For Terminating Dr. Porter.

Regardless, D-H had a legitimate, non-retaliatory reason for terminating Dr. Porter— namely, the closure of the entire REI Division. Dr. Merrens made the decision to close the REI Division following months of staffing issues that had already led the Division to defer start dates for new patients. SUMF at ¶¶ 7-11. D-H's burden to articulate a legitimate, non-retaliatory reason is merely one of production, not persuasion, and any legitimate non-discriminatory reason is sufficient. *Austin v. Ford Models*, 149 F.3d 148, 153 (2d Cir. 1998) (citation omitted); *Connors*, 12 F. Supp. 3d at 699 (citation omitted). Dr. Merrens' decision to close the REI Division and terminate all of the REI physicians plainly satisfies this burden. *See, e.g., Faldetta v. Lockheed Martin Corp.*, 98 Civ. 2614 (RCC), 2000 U.S. Dist. LEXIS 16216, at *24-26 (S.D.N.Y. Nov. 9, 2000) (where employer's stated reason for terminating an employee was the closing of that employee's facility and an accompanying reduction in force, employer had met its burden of production); *Moccio v. Cornell Univ.*, 889 F. Supp. 2d 539, 591 (S.D.N.Y. 2012) (where employer asserted that employee was terminated as part of a broader workforce reduction, leading to the elimination of her entire group, employer had satisfied burden to provide a legitimate, non-retaliatory reason for her termination).

6

### C.   Dr. Porter Cannot Establish That D-H's Stated Reason For Terminating Her Was Merely Pretext.

Once D-H satisfies its burden of providing a legitimate, non-retaliatory reason for Dr. Porter's termination, Dr. Porter must establish that this stated reason was merely pretext. She cannot do so. First, Dr. Merrens was not even aware of any of Dr. Porter's alleged whistleblower complaints at the time he decided to shut down the REI Division and terminate all three physicians. SUMF at ¶ 14. Where a decision maker is unaware of an alleged protected activity, it undercuts any argument that retaliatory intent was behind the termination decision. *See Sandler v. Montefiore Health Sys.*, 16-CV-2258 (JPO), 2018 U.S. Dist. LEXIS 166438, at *35 (S.D.N.Y. Sept. 27, 2017) ("the decision-makers' lack of notice [regarding plaintiff's complaint] essentially eviscerates the causation element of the claim that the November 16 decision was retaliatory") (citation omitted); *Richardson v. Bronx Leb. Hosp.*, 11 Civ. 9095 (KPF), 2014 U.S. Dist. LEXIS 124465, at *40-41 (S.D.N.Y. Sept. 5, 2014) (where there was no evidence that primary decision-maker knew of plaintiff's alleged protected activity, it negated an inference of a causal connection for plaintiff's prima facie case); *Seivright v. Montefiore Med. Ctr.*, 11 Civ. 8934 (AJN), 2014 U.S. Dist. LEXIS 30137, at *36 (S.D.N.Y. Mar. 3, 2014) ("Although the Second Circuit has made clear that it is not necessary that particular individuals know of the protected activities at issue . . . it is equally clear that such lack of knowledge by decision-makers undercuts a claim of a causal connection.") (citations omitted). Dr. Porter has offered no evidence that her termination was related to her alleged complaints in any way.

Dr. Merrens *was* aware that Dr. Porter was on long-term disability, but had no knowledge of any of the details or specifics of her alleged disability or accommodations. SUMF at ¶ 14. The only reason Dr. Porter's disability was ever raised at any discussions regarding the closure of the REI Division was merely to assess whether her termination would impact her ability to continue

receiving disability benefits. *Id.* Dr. Merrens' decision to terminate Dr. Porter along with Dr. Hsu and Dr. Seifer, the other two REI physicians, had nothing to do with Dr. Porter's alleged disability, and there is no evidence indicating any retaliatory animus or motive. *Id.* at ¶¶ 12, 14.

Indeed, the person to whom Dr. Porter brought her alleged complaints and requests for accommodations, Dr. DeMars, did everything she could to try to find a way to keep Dr. Porter at D-H, and did not want to shut down the REI Division from the outset. *Id.* at ¶ 15. Dr. DeMars even asked Dr. Jocelyn Chertoff, Chair of the Department of Radiology, if there was a way for Dr. Porter to work in that department reading ultrasounds, but Dr. Chertoff advised that they did not need any additional physicians in that role. Indeed, to Dr. Chertoff's knowledge, the Department of Radiology never hired anyone in such a limited capacity. *Id.*

Whether Plaintiff may agree or disagree with the decision to close the REI Division is immaterial—and she cannot produce any facts indicating that D-H's stated purpose was pretext. *See Stefanidis v. Jos. A. Bank Clothiers, Inc.*, Case No. 3:14-cv-971, 2016 U.S. Dist. LEXIS 26133, at *17 (D. Conn. Mar. 2, 2016) ("The purpose of the pretext inquiry is not to determine whether an adverse employment action was fair or wise, but rather to determine whether discrimination was a motivating factor behind such a decision") (citing *DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 170-71 (2d Cir. 1993) (A "fact-finder need not, and indeed should not, evaluate whether a defendant's stated purpose is unwise or unreasonable [but should instead] determin[e] whether the articulated purpose is the actual purpose for the challenged employment-related action.")) (additional citations omitted). As Dr. Porter has not proffered any evidence substantiating her allegation that she was terminated as a result of her alleged whistleblower complaints, disability, requests for accommodations, or complaints about alleged noncompliance with her requests for accommodations, her retaliation claims fail as a matter of law.

8

**IV.    Dr. Porter Cannot Prove Her Claim For Disability Discrimination.**

In Counts 3, 4, 5, and 6 of her Amended Complaint, Dr. Porter claims D-H violated the disability discrimination provisions of the ADA, Section 504 of the Rehabilitation Act, N.H. RSA 354-A:7, and the VFEPA by terminating her employment as a result of her disability and failing to provide reasonable accommodations to her.

**A.    Dr. Porter Cannot Establish Her Prima Facie Case.**

To establish a prima facie case for discriminatory discharge under the ADA, Dr. Porter must show that: (1) D-H is subject to the ADA; (2) Dr. Porter suffers from a disability within the meaning of the statute; (3) she could perform the essential functions of her job with or without reasonable accommodation; and (4) she was discharged because of her disability. *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869-70 (2d Cir. 1998) (citations omitted). The same standards apply under Section 504 and New Hampshire state law, and the same *McDonnell-Douglas* burden-shifting analysis applicable to Dr. Porter's retaliation claims also applies to Dr. Porter's disability discrimination claims. *Jackson v. New York City Dep't of Educ.*, 768 Fed. Appx. 16, 17 (2d Cir. 2019) (applying *McDonnell-Douglas* framework to both ADA and Rehabilitation Act claims and noting prima facie case is the same) (citations omitted); *Gage v. Rymes Heating Oils, Inc.*, Case No. 14-cv-480-PB, 2016 U.S. Dist. LEXIS 25071, at *14 n.5 (D.N.H. Mar. 1, 2016) (citations omitted) (applying *McDonnell-Douglas* framework to both ADA and § 354-A discrimination claim and noting § 354-A claims are construed in conformity with the ADA). With respect to Dr. Porter's VFEPA claim, the *McDonnell-Douglas* burden shifting analysis also applies, and Dr. Porter must show that (1) she is a qualified handicapped individual; (2) she was discharged from her job; and (3) the discharge occurred under circumstances giving rise to an inference of discrimination. *Connors*, 12 F. Supp. 3d at 699 (applying *McDonnell-Douglas* to

9

VFEPA claim); *Kennedy v. Vermont Dep't of Pub. Safety*, 168 Vt. 601, 601 (1998) (setting forth prima facie elements and noting that courts look to interpretations of Section 504 to determine whether plaintiff established such elements).

Dr. Porter cannot satisfy the fourth prong of a prima facie case of discriminatory discharge – that she was discharged because of her disability (or, under the VFEPA, that she was discharged under circumstances giving rise to an inference of discrimination). Even if Dr. Porter could set forth a prima facie case, she cannot show that the legitimate, non-discriminatory reason offered for her termination was merely pretext for discrimination. *See Mercado v. New York City Housing Auth.*, 95 Civ. 10018 (LAP), 1998 U.S. Dist. LEXIS 4112 at *44-45 (S.D.N.Y. Mar. 31, 1998) (where employee failed to provide evidence, aside from his employer's mere knowledge of his disability prior to termination, showing discrimination was the real reason for his discharge, he failed to demonstrate pretext).

Dr. Porter retains the ultimate burden of persuading the trier of fact that she was the victim of intentional discrimination. *Fisher v. Vassar College*, 114 F.3d 1332, 1336 (2d Cir. 1997). And simply put, Dr. Porter has not adduced any evidence that could give rise to the inference that her termination was on account of her alleged disability. The undisputed facts demonstrate that Dr. Porter's disability was not connected in any way to Dr. Merrens' decision to close the REI Division and terminate the employment of all three REI physicians. *Supra* § III(B), (C). And for the same reasons set forth above with respect to Dr. Porter's retaliation claim, Dr. Porter cannot show that D-H's stated reason for her termination—the closure of the REI Division following a longstanding nursing shortage—was pretext for discrimination. *Id.*

### B. Dr. Porter's Failure To Accommodate Claims Cannot Survive Either.

To establish a prima facie case for failure to accommodate under the ADA, Section 504, and New Hampshire and Vermont state law, Dr. Porter bears the burden of demonstrating that: (1) she was suffered from a disability within the meaning of the statute; (2) D-H was aware of her disability; (3) she could perform the essential functions of the job with reasonable accommodation; and (4) D-H refused to make such accommodation. *Best v. Duane Reade, Inc.*, 715 Fed. Appx. 95, 96 (2d Cir. 2018) (citation omitted); *Sharma v. Potter*, 06 Civ. 4448 (GAY), 2008 U.S. Dist. LEXIS 11795, at *7 (S.D.N.Y. Feb. 14, 2008) (citation omitted); *Gage*, 2016 U.S. Dist. LEXIS 25071 at *14 n.5 (citations omitted); *Connors*, 12 F. Supp. 3d at 699-700 (citation omitted). The undisputed evidence shows that D-H provided reasonable accommodations to Dr. Porter during the approximately 18-month period that Dr. Porter was in and out of work on leave, and Dr. Porter's failure to accommodate claim thus fails. In addition, D-H's decision not to continue Dr. Porter's employment in another newly created part-time role does not constitute a reasonable accommodation under the law.

The crux of Dr. Porter's "failure to accommodate" claim is that while Dr. DeMars approved and authorized every one of her requested accommodations, Dr. Seifer did not sufficiently comply with each one of them all of the time (such as by interrupting her during rest breaks), and that Dr. DeMars and Heather Gunnell, OB/GYN Practice Manager, did not adequately enforce Dr. Seifer's compliance. Amd. Compl. at ¶¶ 47-50. But employers are not required to provide a perfect accommodation, or the very accommodation most strongly preferred by the employee. *Noll v. IBM*, 787 F.3d 89, 95 (2d Cir. 2015) (citation omitted); *see also Fink v. New York City Dep't of Pers.*, 53 F.3d 565, 567 (2d Cir. 1995) (stating Section 504 "does not require the employer to provide every accommodation the disabled employee may

11

request, so long as the accommodation is reasonable") (citation omitted). Rather, "[a] reasonable accommodation is one that enables an individual with a disability who is qualified to perform the essential functions of that position or to enjoy equal benefits and privileges of employment." *Noll*, 787 F.3d at 94 (quoting 29 C.F.R. § 1630.2(o)(1)(ii), (iii)) (quotations omitted). Dr. Porter does not allege, nor does the evidence demonstrate, that the accommodations provided to her— even if not perfectly complied with to the letter—did not enable her to perform the essential functions of her position. Rather, Dr. Porter continued to work the hours of her choosing and slowly ramp up her time, all the while receiving disability benefits (short and long-term). SUMF at ¶¶ 3-6. Indeed, in her Amended Complaint, filed on August 1, 2018, Dr. Porter asserts that "[w]hen Dartmouth-Hitchcock terminated her employment, Dr. [] Porter was on long-term disability, although she had been able to return to work half-time. With this accommodation, Dr. [] Porter was performing at her usual high standards *and she was able to meet all the essential job requirements*." Amd. Compl. ¶ 6 (emphasis added). Dr. Porter's "failure to accommodate" claim fails for this reason alone. *See Noll*, 787 F.3d 89 (granting summary judgment to employer where accommodation provided to plaintiff allowed him to perform essential functions of his position).

Moreover, to the extent Dr. Porter claims that she should have been able to remain employed at D-H as a purported accommodation instead of being terminated along with the two other REI physicians upon the REI Division closure, the law does not require employers to make accommodations that would cause undue hardship. Creating a new position for Dr. Porter would have constituted undue hardship for D-H and therefore was not a reasonable accommodation. *See Irby v. New York City Transit Auth*, 99 Civ. 2172 (VM), 2000 U.S. Dist. LEXIS 15822, at *9-10 (S.D.N.Y. Oct. 26, 2000) ("While the ADA may require reassignment to a vacant position

12

as a form of reasonable accommodation . . . an employer need not reassign an employee if no position is vacant, and the employer is not obliged to create a new position to accommodate the employee.") (quoting *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 99 (2d Cir. 1999)). Despite Dr. DeMars' request, there was no business necessity for an additional physician to read gynecologic ultrasounds in the Department of Radiology, and the Department had never hired anyone in such a limited role.  SUMF at ¶ 15.  Moreover, Dr. Porter has made no showing, aside from her own opinion, that there was any viable role for her to fill within the OB/GYN Department after the REI Division closed.

Accordingly, because the undisputed evidence demonstrates D-H provided Dr. Porter with reasonable accommodations, Dr. Porter's "failure to accommodate" claim fails.

## V.     Dr. Porter's Wrongful Discharge Claim Also Fails As A Matter Of Law.

In Count 1 of her Amended Complaint, Dr. Porter asserts a claim for wrongful discharge. Though Dr. Porter does not identify the specific state law pursuant to which she attempts to bring this claim, D-H assumes the claim is brought pursuant to New Hampshire law, as Dr. Porter's allegations that she was terminated "[i]n bad faith, as retaliation, and with malice . . . for performing an act that public policy would encourage" or "for refusing to go along with behaviors that public policy would condemn" echo the elements required for a claim under New Hampshire law.  Amd. Compl at. ¶¶ 95-96.  Under New Hampshire law, "in order to succeed on a wrongful discharge claim, [Dr. Porter] must establish two elements: (1) that the discharge was 'motivated by bad faith, retaliation or malice'; and (2) that [Dr. Porter] was discharged 'for performing an act that public policy would encourage or for refusing to do something that public policy would condemn.'" *Leeds v. BAE Sys.*, 165 N.H. 376, 379 (2013) (quoting *Karch v. BayBank FSB*, 147 N.H. 525, 536 (2002)).  The standard is conjunctive, not disjunctive.

13

As a threshold matter, Dr. Porter cannot show that her termination was motivated by bad faith, retaliation, or malice. *See supra* § III. Dr. Porter was terminated along with both of the other physicians in the REI Division when the Division was closed – a decision made by Dr. Merrens given the nursing shortage issues. SUMF at ¶¶ 11-12. Dr. Porter has not shown any evidence that would support an inference of bad faith, retaliation, or malice associated with her termination and her wrongful discharge claim fails on this ground alone. *See Antonis v. Elecs. for Imaging, Inc.*, Civil No. 07-cv-163-JL, 2008 U.S. Dist. LEXIS 106093 (D.N.H. Nov. 25, 2008) (summary judgment granted to employer on wrongful discharge claim where employee was terminated because company decided to eliminate program for which employee was the safety manager); *Needle v. Alling & Cory, Inc.*, 88 F. Supp. 2d 100, 106-7 (W.D.N.Y. 2000).

In addition, Dr. Porter cannot demonstrate that she was discharged because of performing any act that public policy would encourage, or for objecting to behavior that public policy would condemn. Dr. Porter provides a laundry list of such conduct that she asserts forms the basis for her termination, Amended Complaint ¶¶ 95-96, but she has not adduced any evidence that indicates any of these activities actually led to her termination. To the contrary, as demonstrated above, the undisputed facts show only that Dr. Porter was terminated along with the two other REI physicians because of the closure of the REI Division. *See supra* § III(B), (C). Accordingly, her wrongful discharge claim fails. *Antonis,* 2008 U.S. Dist. LEXIS 106093.

## VI.     Conclusion

For the reasons set forth above, Defendants are entitled to judgment as a matter of law on all of Dr. Porter's claims.

Dated: January 29, 2020                                                            Respectfully submitted,

*/s/ Tristram J. Coffin*
Tristram J. Coffin

>DOWNS RACHLIN MARTIN PLLC
>Courthouse Plaza
>199 Main Street
>Burlington, VT 05402
>Telephone: 802-863-2375
>tcoffin@drm.com
>
>and
>
>Donald W. Schroeder (admitted *pro hac vice*)
>Jessica E. Joseph (admitted *pro hac vice*)
>FOLEY & LARDNER LLP
>111 Huntington Avenue
>Boston, MA 02199
>Tel: (617) 342-4000
>Fax: (617) 342-4001
>dschroeder@foley.com
>jjoseph@foley.com
>
>*Attorneys for Defendants*

15

## CERTIFICATE OF SERVICE

I hereby certify that, on January 29, 2020, a copy of the foregoing document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

*/s/ Tristram J. Coffin*
Tristram J. Coffin