U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
2024 APR 12 AM 7:47
CLERK
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| MISTY BLANCHETTE PORTER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DARTMOUTH-HITCHCOCK MEDICAL ) <br> CENTER, DARTMOUTH-HITCHCOCK ) <br> CLINIC, MARY HITCHCOCK ) <br> MEMORIAL HOSPITAL, and ) <br> DARTMOUTH-HITCHCOCK HEALTH, ) <br> ) <br> Defendants. ) | Case No. 5:17-cv-194 |

**ORDER ON MOTION TO UNSEAL**
**(Doc. 159)**

This case arises from the closure of the Division of Reproductive Medicine and Infertility (the "Division") that operated at Dartmouth-Hitchcock Medical Center ("DHMC") between 1979 and 2017. Plaintiff Misty Porter, M.D. was a senior physician in the Division. She and the other attending physicians—and most staff members—were terminated from employment when the Division closed. The primary issue in the case is whether Dr. Porter's employment was terminated for business reasons or, as she alleges, in retaliation for whistleblowing complaints she made against younger physicians in the Division. Dr. Porter also asserts that she was terminated due to a medical disability requiring her absence from work followed by a period of light duty.

The case has a long history. The district court granted summary judgment in favor of DHMC in 2020. (Doc. 152.) In 2024, the Second Circuit reinstated the case. (Doc. 157.) It is now awaiting trial.

The facts developed through the summary judgment motion included a substantial body of internal emails and other communications that would normally not be open to public inspection. Many were sealed. The Second Circuit decision unsealed exhibits to the extent that they were referenced in the opinion. The parties have now agreed to unseal almost everything.

The remaining dispute concerns the court's decision to seal two evaluations of physicians employed in the Division. Plaintiff seeks to release these evaluations to the press; DHMC seeks to maintain their confidentiality. These evaluations are identified in the court's records as Ex. 10 (Doc. 140-12) and Ex. 11 (Doc. 140-13). Both were offered by plaintiff in opposition to DHMC's motion for summary judgment. Neither was unsealed by operation of the Second Circuit's decision.

Dr. Porter is the author of Ex. 10. It is dated June 3, 2016. It is a critical evaluation of Albert Hsu, M.D., a younger colleague within the Division. In submitting this evaluation to senior administrators at DHMC, Dr. Porter invoked the New Hampshire peer review statute. Her memorandum is headed "Confidential: Protected Pursuant to NH RSA 151:13a and RSA 329:29."

Ex. 11 is an email written by Judith McBean, MD, another physician working within the Division. The email concerns Dr. Seifer, who was hired in 2016 as Director of the Division. The email is critical of Dr. Seifer's skills and leadership. It is prefaced "confidential review." Dr. McBean wrote the email in response to a request for an evaluation from Leslie DeMars, M.D., chair of the Department of Obstetrics and Gynecology. The chair's request states that "I would like to hear your comments, whether good or bad, in writing or in person. They are confidential and protected under the credentialing and privileging process."

2

At the outset of the case, the parties filed a joint motion for entry of a protective order. (Doc. 24.) They anticipated that materials turned over in discovery "may contain information that a party reasonably believes is not in the public domain and may contain protected health information, proprietary information, commercially sensitive information, or otherwise confidential information." At the parties' request, the court entered a confidentiality order (Doc. 25) creating procedures for identifying and protecting sensitive information. The order provides for the filing of sensitive documents with the court under seal.

In March 2020, Plaintiff filed her response to the summary judgment motion. (Doc. 140.) She filed many internal hospital communications under seal. She also filed an unopposed motion seeking a hearing about the sealing issue. (Doc. 141). She stated that she has "a strong interest in filing her opposition publicly" and sought court intervention because the parties were unable to agree about the designation of certain exhibits, including Exhibits 10 and 11, as confidential. She submitted a legal memorandum advocating for the unsealing of the four remaining documents at issue. (Doc. 142.)

DHMC opposed the unsealing of four documents—reduced for present purposes to two: Exhibit 10 and Exhibit 11. (Doc. 145.). The hospital pointed out that neither doctor is a party to this lawsuit and that both evaluations were provided with the understanding that they were subject to the N.H. peer review statutes.

The court held a hearing concerning the sealing issue on June 2, 2020. After hearing from the parties, the court ordered two documents not at issue here to be unsealed. It ordered Exhibits 10 and 11 to remain sealed.

With the remand of this case for trial, Plaintiff seeks again to release the two evaluations of Dr. Hsu and Dr. Seifer. Neither doctor is employed at DHMC. Both left when the Division

3

closed. At a status conference on March 27, 2024, Plaintiff's counsel stated that he had been asked for these documents by a member of the press.

## Analysis

The Supreme Court has long recognized the "general right [of the public] to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.,* 435 U.S. 589 (1978). This case provides a reasonable illustration. A substantial body of information, primarily emails and other internal communications, is now in the public domain. Only two documents remain outside the public purview. These are the confidential evaluations of Dr. Hsu and Dr. Seifer. They are negative reviews. If released as Plaintiff requests, they will damage the reputations of the two professionals.

The first issue is whether the two memoranda are covered by the confidentiality provisions of NH RSA § § 151:13-a and 329-29. Section 151:13-a creates a privilege against disclosure for records "generated during the activities of a quality assurance committee." The production of the two memoranda in discovery demonstrates that neither party believes the privilege applies in a federal employment case. Dr. Porter sent her critique to Dr. Seifer and Dr. DeMars. Dr. McBean sent hers to Dr. DeMars only. While the authors expected that their memoranda were privileged, there is no evidence that either memo was ever provided to a quality assurance committee as contemplated by NH RSA § 151:13-a and 329-29. *See In re "K",* 132 N.H. 4, 15 (1989) (statute "conditions the privilege on the existence of a committee structure organized to perform the particular review function we have explained").

The designation of the two memoranda as "confidential" is not without consequences. The captions of "confidential" show that the authors believed their memoranda would be used by the department chair to evaluate the two doctors in a confidential manner. In the case of the

4

memo concerning Dr. Seifer, Dr. DeMars promised confidentiality to DHMC employees willing to provide an assessment. The court weighs the authors' designation of their memoranda as confidential in considering the expectations of DHMC and its staff concerning the privacy of the procedures used to evaluate employees.

The court turns to the constitutional and common law principles governing the sealing of judicial documents. The first issue is whether the documents are "judicial documents" at all. *Trump v. Deutsche Bank AG*, 940 F.3d 146 (2d Cir. 2019). Here, the two exhibits are relevant to an understanding of the court's judicial decision. Dr. Porter traces the termination of her employment in 2017—at least in part—to the memorandum she sent to her department chair in 2016 detailing her complaints about Dr. Hsu. Once a document is identified as judicial, "a strong presumption of [public] access attaches, under both the common law and the First Amendment." *Lugosch v. Pyramid Co. of Onondaga*, 453 F.3d 110, 121 (2d Cir. 2006). In order to overcome the presumption, the party seeking designation as confidential must demonstrate that "'countervailing factors' in the common law framework or 'higher values' in the First Amendment framework" support sealing. *Lugosch*, 453 F.3d at 124. Because this case concerns a request to release information to the press, the court applies the more rigorous "higher values" standard that applies to requests for public access founded on the First Amendment.

In defining the "higher values" that may support a decision to seal records of the type at issue here, the Supreme Court has consistently required a case-by-case weighing of the interest in public access against an individual's right to privacy or to a fair trial. *See Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596 (1982) (striking down a Massachusetts statute closing courtroom during testimony of minor crime victim); *Press-Enterprise Co. v. Superior Court of California for Riverside County*, 478 U.S. 1 (1986) (reversing order closing

jury selection in absence of specific finding of risk of adverse publicity). The values which the Court has recognized as potential bases for limiting public access in the context of criminal cases include the protection of crime victims, the accused's right to a fair trial, the privacy of persons not charged with crimes, and the government's interest in protecting sensitive information. *Waller v. Georgia*, 467 U.S. 39, 45 (1984).

In a civil case, the primary basis for limiting public access is a privacy interest. These considerations are not make-weights. "The importance of the material to the adjudication, the damage disclosure might cause, and the public interest in such materials should be taken into account before a seal is imposed." *Joy v. North*, 692 F.2d 880 (1982). "Unlimited access to every item turned up in the course of litigation would be unthinkable. Reputations would be impaired, personal relationships ruined, and businesses destroyed on the basis of misleading or downright false information." *United States v. Amodeo*, 71 F.3d 1044, 1048-49 (2d Cir. 1995).

With these principles in mind, the court considers the application of the First Amendment right of public access to the two memoranda at issue here. The court decides to continue the sealing order in place for the following reasons:

The relevance of the memoranda to this case is their role as evidence of criticism of Dr. Hsu by Dr. Porter. In Dr. Porter's view, her memorandum plus other criticism she leveled against the Division led to her termination. (That Dr. McBean criticized Dr. Seifer is less relevant to the legal issues in the case, since no one contends that Dr. Porter was terminated because of what Dr. McBean wrote.) Whether Dr. Porter's criticism is true matters less to her claim of retaliation than the fact that she sent the memorandum. The public can understand the case without reading these two documents, and these documents are the type of employment records that are generally kept private.

Dr. Hsu and Dr. Seifer are not parties to this lawsuit. If the memoranda are released to the press as plaintiff seeks, neither physician would have an opportunity to respond to the disclosure or to address in any meaningful way the reputational injury the disclosure would cause. They are bystanders in this conflict.

As discussed above, the senders and the recipients of the memoranda expected the contents to remain confidential. Employee evaluations are generally private. If the memoranda had been sent to a peer review committee, it would have been privileged under state law.

The public interest in the closure of the Division may be difficult to gauge, but the court accepts that it is substantial. DHMC is one of a handful of hospitals in our region large enough to support the mission of serving patients suffering from infertility. The court does not seek to minimize the public interest in understanding why DHMC made the decision to close the Division. Fortunately, the public record in this case contains a nearly comprehensive account from Dr. Porter and from DHMC explaining their perspectives on why the Division closed and the physicians lost their positions.

In weighing these considerations, the court concludes that the privacy interests of the two physicians outweigh the public interest in reading the evaluations written by two of their colleagues. The court DENIES the motion to unseal the two exhibits (Docs. 140-12 and 140-13).

Dated at Burlington, in the District of Vermont, this 12 day of April, 2024.

Geoffrey W. Crawford, Chief Judge
United States District Court