IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| MISTY BLANCHETTE PORTER, M.D.,<br><br>Plaintiff,<br>vs.<br><br>DARTMOUTH-HITCHCOCK MEDICAL CENTER, DARTMOUTH-HITCHCOCK CLINIC, MARY HITCHCOCK MEMORIAL HOSPITAL, and DARTMOUTH-HITCHCOCK HEALTH,<br><br>Defendants. | Case No. 2:17-cv-194 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO QUASH DR. JOANNE CONROY'S TRIAL SUBPOENA**

Defendants Dartmouth-Hitchcock Medical Center, Dartmouth-Hitchcock Clinic, Mary Hitchcock Memorial Hospital, and Dartmouth-Hitchcock Health (collectively, "Dartmouth Health," or "Defendants") hereby submit this memorandum in support of their motion to quash (the "Motion") the trial subpoena (the "Subpoena") served upon Dartmouth Health's Chief Executive Officer ("CEO"), Dr. Joanne M. Conroy, M.D. ("Dr. Conroy"). As an initial matter, the timing of key events renders Dr. Conroy's testimony unnecessary. In conjunction with Dartmouth Health's closure of the Reproductive Endocrinology and Infertility Division ("REI Division" or "Division"), Plaintiff Misty Blanchette Porter ("Dr. Porter" or "Plaintiff") and the two other physicians – Dr. David Seifer, M.D. ("Dr. Seifer") and Dr. Albert Hsu, M.D. ("Dr. Hsu") – in that Division were notified of their impending terminations in early May 2017. Dr. Porter's employment was terminated on June 3, 2017. Over two months later, Dr. Conroy

officially started as Dartmouth Health's CEO on August 7, 2017. The evidentiary basis for quashing Dr. Conroy's Subpoena is two-fold: (1) given the timing of her arrival at Dartmouth Health months after the events which culminated in the termination of Dr. Porter's employment, her testimony is irrelevant to the disposition of the case; and (2) causing Dr. Conroy to step away from her critical duties as CEO for at least a day, if not more, would be unfairly prejudicial and unduly burdensome to Defendants. *See* Fed. R. Evid. 401; Fed. R. Evid. 403; Fed. R. Civ. P. 45(d)(3)(A)(iv); *Rousseau v. Coates*, No. 2:18-CV-205, 2021 WL 2138562, at *1 (D. Vt. Mar. 30, 2021).

## BACKGROUND

In May 2017, following longstanding, well-documented issues with recruitment and staffing shortages of skilled nurses in the REI Division, Dartmouth Health announced the closure of the entire REI Division, resulting in the termination of employment of all three (3) physicians therein, including Dr. Porter. Plaintiff has brought claims that the closure of the REI Division and her termination of employment were pretext for retaliation based on her protected whistleblower activity and/or discrimination based on her disability status.

Dr. Conroy began working as Dartmouth Health's CEO and President in August 2017, approximately two (2) months after the official closure of the REI Division and Dr. Porter's effective date of termination. As CEO/President, Dr. Conroy has oversight responsibilities for the entire Dartmouth Health system, including six (6) community hospitals and five (5) multi-specialty community group practices; Dartmouth-Hitchcock Medical Center – New Hampshire's only academic medical center; Dartmouth Cancer Center; and Dartmouth Health Children's—New Hampshire's only children's hospital. Prior to being hired at Dartmouth Health, Dr. Conroy was employed as the CEO of Lahey Hospital in Massachusetts until August 4, 2017. *See* **Exhibit A**, Deposition of Dr. Conroy, dated September 18, 2019 ("Conroy Dep.") at 12:6-12. Dr. Conroy—as the CEO of another hospital at the time of the relevant

events—could not have been involved in any of the discussions that led to the closure of the REI Division or Dr. Porter's termination of employment. Dr. Conroy has no first-hand knowledge of how the REI Division functioned, the performance of the providers in the Division (including Dr. Porter), or the decision-making process which led to the REI Division's closure. To be clear, at no time did Plaintiff's tenure at Dartmouth Health overlap with Dr. Conroy's employment.

During the course of litigation, on September 18, 2019, Plaintiff deposed Dr. Conroy. The deposition of Dr. Conroy revealed that she has no personal knowledge about any material facts of this case. *See* Fed. R. Evid. 602. In fact, Plaintiff's counsel focused much of the deposition on having Dr. Conroy review emails that she was not a party to—sent before she began working at Dartmouth Health—and asking her to speculate on what she thinks should have been done in retrospect. *See e.g.*, **Exhibit A**, Conroy Dep. at 8:14-50:1. In short, Dr. Conroy was repeatedly asked to play the role of a "Monday morning quarterback" for a litany of questions relating to a time period when she had no affiliation with Dartmouth Health nor Plaintiff. Given that Plaintiff's termination predates Dr. Conroy's employment with Dartmouth Health, Dr. Conroy could not testify to any evidence that would be relevant or helpful to the jury. Plaintiff's insistence on requiring a busy CEO who was not present during the relevant time period and did not cross paths with Plaintiff to testify is nothing short of harassment. Even in her motion opposing summary judgment, Plaintiff failed to mention Dr. Conroy, further exemplifying Dr. Conroy's lack of relevance to this matter. *See* ECF Docket No. 140.

## ARGUMENT

### I. DR. CONROY HAS NO FIRST-HAND KNOWLEDGE OF ANY FACT OF CONSEQUENCE IN THIS LITIGATION.

Dr. Conroy's testimony should not be compelled as it is not relevant to the claims and defenses in this litigation. Plaintiff seeks to burden Dartmouth Health's current CEO/President, Dr. Conroy, with a subpoena to testify on a matter that occurred prior to her employment at Dartmouth Health. Pursuant to

3

Fed. R. Evid. 401, evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. *See United States v. Certified Envtl. Servs., Inc.* 753 F.3d 72, 90 (2d. Cir. 2014). *See also Sitts v. Dairy Farmers of America, Inc.*, No. 16-CV-00287, 2020 WL 5233027, at *5 (D. Vt. Sept. 2, 2020) ("declining to admit witness testimony regarding a "hypothetical conclusion" and finding that "since there is virtually no probative value in testimony about what 'may' have happened (as opposed to what actually did happen), the balance falls heavily in favor of disallowing the testimony."' (quoting *United States v. Connolly*, No. 16 CR 370 (CM), 2018 WL 5023785, at *4 (S.D.N.Y. Oct. 1, 2018))).

The fundamental issue of this case is whether the decision to close the REI Division and terminate Dr. Porter's employment was pretext for disability discrimination and/or whistleblower retaliation. It is undisputed that Dr. Conroy was not employed at Dartmouth Health at the time of this decision. As a result, Dr. Conroy is unable to offer any first-hand knowledge of any of the circumstances which led to the REI Division's closure or the resulting termination of employment of the three (3) REI physicians, including Dr. Porter. Dr. Conroy's testimony about anything that happened well after Dr. Porter's employment was terminated would not help a jury determine if the reasons provided for her termination were pretextual. There was no reference to Dr. Conroy or her testimony in Plaintiff's response to Defendants' summary judgment papers. This further supports the notion that Dr. Conroy's testimony would not be relevant for the jury and ultimately should not be allowed at trial.

Indeed, Dr. Conroy's deposition transcript provides irrefutable evidence that she can offer no insight into any of the events at issue in this case:

- Dr. Conroy is not aware of how the decision was made to close the REI Division resulting in the termination of employment of three physicians (including Dr. Porter). *See* **Exhibit A**, Conroy Dep. at 40:15-19; 91:1-11.

- Dr. Conroy's knowledge of the REI Division closure comes from a five-minute discussion with Dr. Edward J. Merrens, M.D. ("Dr. Merrens"). *See* **Exhibit A**, Conroy Dep. at 27:5-19.

- Dr. Conroy is unfamiliar with Dr. Porter and has no knowledge of her work performance. *See* **Exhibit A**, Conroy Dep. at 17:8-22.

- Dr. Conroy is unfamiliar with Dr. Seifer—the head of the REI Division prior to closure—and has no knowledge of his work performance. *See* **Exhibit A**, Conroy Dep. at 33:12-21.

- Dr. Conroy is unfamiliar with Dr. Hsu—Dr. Porter's colleague in the REI Division—and has no knowledge of his work performance. *See* **Exhibit A**, Conroy Dep. at 68:22-69:2.

## II. DR. CONROY'S TESTIMONY HAS NO PROBATIVE VALUE AND RISKS WASTING THE JURY'S TIME.

Pursuant to Fed. R. Evid. 403, a court may exclude evidence if its probative value is substantially outweighed by a danger of wasting time or needlessly presenting cumulative evidence, confusing the issues, or misleading the jury. The District Court is granted wide discretion in conducting the balancing test outlined in Rule 403. *See Conway v. Icahn & Co., Inc.*, 16 F.3d 504, 510 (2d Cir. 1994).

The risk of wasting the jury's time substantially outweighs the probative value of Dr. Conroy's testimony. Even if the Court were to find Dr. Conroy's testimony marginally relevant, it has little to no probative value. Dr. Conroy was the CEO of another hospital at the time Dartmouth Health closed the REI Division and terminated Dr. Porter's employment. She cannot provide any insight on whether there was any retaliatory or discriminatory animus in this decision. She was not a party to any conversations regarding this decision. Dr. Conroy has never even met Dr. Porter. The Court has already set aside a total of fifteen (15) trial days. Having Dr. Conroy testify will waste the jury's time and take away from time for actual probative evidence.

## III. REQUIRING DR. CONROY TO TESTIFY WILL BE UNFAIRLY PREJUDICIAL AND UNDULY BURDENSOME.

Pursuant to Fed. R. Civ. P. 45(d)(3)(A)(iv), a district court must quash a subpoena when it subjects a person to undue burden. *See also Rousseau v. Coates*, No. 2:18-CV-205, 2021 WL 2138562, at *1 (D. Vt. Mar. 30, 2021). The district court has discretion to decide motions to quash. *See U.S. Bank Nat'l Ass'n v. Dernier*, No. 2:16-CV-230, 2020 WL 13268119, at *1 (D. Vt. Oct. 16, 2020) ("Motions to compel and motions to quash a subpoena are both entrusted to the sound discretion of the court." (quoting *Fitch, Inc. v. UBS Painewebber, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003))).

The testimony requested by Plaintiff is not probative of the issues in this case. The subject matter of the testimony has no bearing on the claims or defenses, and the testimony is unlikely to assist the jury in resolving the case. As such, compelling Dr. Conroy to testify will be unduly burdensome. Testifying at trial requires Dr. Conroy to allocate considerable time and resources away from her regular business activities as CEO of New Hampshire's only academic health system. The valuable time and expense involved in preparing for and attending trial would be excessive given the lack of relevant testimony. Requiring a CEO with no knowledge of the underlying issues of the case to testify in court hours away from her work office and residence is not only unduly burdensome, but also constitutes harassment.[1] Dr. Conroy should not be compelled to drive hours to simply testify that she was not involved in the decision-making process nor even employed at Dartmouth Health at any time during Plaintiff's tenure.

---

[1] Compelling testimony from an official at the highest level or "apex" of an organization is generally disfavored. In most Circuits, "[c]ourts disfavor requiring the depositions of senior executives unless they have personal knowledge of relevant facts or some unique knowledge that is relevant to the action." *In re Ski Train Fire of Nov. 11, 2000 Kaprun Austria*, No. MDL 1428(SAS)THK, 2006 WL 1328259, at *10 (S.D.N.Y. May 16, 2006); *see also Roman v. Cumberland Ins. Grp.*, No. CIV. A. 07-CV-1201, 2007 WL 4893479, at *1 (E.D. Pa. Oct. 26, 2007) ("Courts throughout the country have prohibited the deposing of corporate executives who have no direct knowledge of a plaintiff's claim when other employees with superior knowledge are available to testify."). Here, Dr. Conroy's deposition transcript confirms the absence of any tangible value in requiring her to testify at trial.

Furthermore, the testimony that Plaintiff seeks is available from other, less burdensome sources, including but not limited to, Dr. Merrens, who is scheduled to testify at trial.

## **CONCLUSION**

For the foregoing reasons, Dartmouth Health requests that the Court grant Defendants' Motion and order that Dr. Conroy shall not be compelled to testify at trial. To the extent necessary, Dartmouth Health welcomes the opportunity to address its Motion through oral argument.

Date: February 14, 2025	Respectfully submitted,

*/s/ Tristram J. Coffin*
Tristram J. Coffin
DOWNS RACHLIN MARTIN PLLC
199 Main Street
Burlington, VT 05402
Telephone: 802-863-2375
tcoffin@drm.com

and

Donald W. Schroeder (admitted *pro hac vice*)
Morgan McDonald-Ramos (admitted *pro hac vice*)
Megan E. Martinez (admitted *pro hac vice*)
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
Tel: (617) 342-4000
dschroeder@foley.com
mmcdonald@foley.com
memartinez@foley.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on February 14, 2025, a copy of the foregoing document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

>  */s/ Tristram J. Coffin*
>  Tristram J. Coffin