**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

| | |
|---|---|
| MISTY BLANCHETTE PORTER, M.D.,<br><br>Plaintiff,<br><br>vs.<br><br>DARTMOUTH-HITCHCOCK MEDICAL CENTER, DARTMOUTH-HITCHCOCK CLINIC, MARY HITCHCOCK MEMORIAL HOSPITAL, and DARTMOUTH-HITCHCOCK HEALTH,<br><br>Defendants. | Case No. 2:17-cv-194 |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE THE "CAT'S PAW" THEORY OF LIABILITY**

Defendants Dartmouth-Hitchcock Medical Center, Dartmouth-Hitchcock Clinic, Mary Hitchcock Memorial Hospital, and Dartmouth-Hitchcock Health (collectively, "Defendants" or "Dartmouth Health") respectfully submit this memorandum of law in support of Defendants' Motion *in Limine* (the "Motion") to preclude Plaintiff Misty Blanchette Porter's ("Plaintiff" or "Dr. Porter") reference, through oral argument, trial testimony or pleadings, to the "cat's paw" theory of liability which has not been adopted by New Hampshire or Vermont state courts. Because the lion's share of Dr. Porter's claims (four out of six claims) have been brought under either New Hampshire or Vermont state laws, the Court should preclude Dr. Porter from making any reference, through oral argument, trial testimony or pleadings, to the "cat's paw" theory of liability during trial.

Filed in October 2017, this case relates to Defendants' closure of the Reproductive Endocrinology and Infertility ("REI") Division which resulted in the termination of all three (3)

1

physicians, including Dr. Porter. Dr. Porter's Amended Complaint contains six claims: Count I- Wrongful Discharge under New Hampshire law; Count II- Violation of New Hampshire Whistleblowers' Protection Act; Count III- Disability Discrimination & Retaliation under the Americans with Disabilities Act ("ADA); Count IV- Disability Discrimination under Section 504 of the Rehabilitation Act of 1973; Count V- New Hampshire RSA 354- Disability Discrimination & Retaliation; and Count VI- Vermont Fair Employment Practices Act, 21 V.S.A § 495.

## BACKGROUND

Around April 2017, Defendants' leadership had multiple discussions regarding issues in the REI Division. *See* **Exhibit A**, Dr. Edward Merrens' Deposition ("Merrens Dep.") at 123:21–124:6; *see also* **Exhibit B**, Dr. Leslie DeMars' Deposition ("DeMars Dep."), at 127:10–22. The record reveals that Dr. Edward Merrens ("Dr. Merrens"), Dartmouth Health's Chief Clinical Officer, made the decision to shut down the REI Division because Defendants did not have the necessary staffing to provide safe and effective care. *See* **Exhibit A**, Merrens Dep. at 18:20–19:10. Dr. Leslie DeMars ("Dr. Demars"), Chair of Dartmouth Health's OB/GYN Department, disagreed with Dr. Merrens' decision to close the REI Division, and she believed her counter-arguments to its closure were given short shrift by Dr. Merrens. *See* **Exhibit B**, DeMars Dep. at 132:21–133:11; 129:10–129:15. For example, Dr. DeMars confirmed that she "had absolutely no say" in Dr. Merrens' decision to close the REI Division, noting that Dr. Merrens dismissed her arguments to the contrary "publicly and condescendingly." *Id*. at 133:6–17.

In the wake of the REI Division closure, Dr. DeMars "wanted to try to . . . keep [Plaintiff] employed" and "had a conversation with [Head of Radiology] Dr. Jocelyn Chertoff [("Dr. Chertoff")] about potentially having [Plaintiff] move into Radiology." *Id.* at 158:1–20. However, Dr. Chertoff confirmed that she had no available position in radiology. *Id.* Dr. DeMars

2

alternatively requested that Plaintiff remain in an ultrasound position. *Id.* at 160:6–20. Again, Dr. DeMars was informed that there was "no longer a position for REI physicians" given the closure of the REI Division. *Id.* at 158:1–4. Against this backdrop, Dr. Merrens decided to terminate Plaintiff's employment, despite Dr. DeMars' overall objections. *See* **Exhibit A,** Merrens Dep. at 20:12–19.

## LEGAL STANDARD

"The purpose of a motion in limine is to 'aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of the trial.'" *Ne. Farm Sales & Serv., Inc. v. Krone NA, Inc.*, No. 5:17-CV-72, 2019 WL 13251287, at *6 (D. Vt. Mar. 27, 2019) (*quoting Ellerton v. Ellerton*, 745 F. Supp. 2d 458, 460 (D. Vt. 2010)). Fed. R. Evid. 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." However, even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

The "cat's paw" theory of liability "refers to a situation in which an employee is fired . . . by a supervisor who himself has no discriminatory motive, but who has been manipulated by a subordinate who does have such a motive and intended to bring about the adverse employment action[.]" *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 272 (2d Cir. 2016) (*quoting Cook v. IPC Intern. Corp.*, 673 F.3d 625, 628 (7th Cir. 2012)). The theory supposes that "[b]ecause the supervisor, acting as agent of the employer, has permitted himself to be used 'as the conduit of (the subordinate's) prejudice,' . . . that prejudice may then be imputed to the employer and used to

3

hold the employer liable for employment discrimination." *Vasquez*, 673 F.3d at 272 (*quoting Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990)).

The New Hampshire Supreme Court has never decided whether the cat's paw theory is available under New Hampshire law. *Burnap v. Somersworth Sch. Dist.*, 172 N.H. 632, 639, 232 A.3d 390, 396–97 (2019). Likewise, the Vermont Supreme Court has never decided whether this theory is available under Vermont law. *Green v. Springfield Med. Care Sys., Inc.*, No. 5:13-CV-168, 2014 WL 2875850, at *13 n.7 (D. Vt. June 24, 2014). However, this theory is recognized under federal law. *See Vasquez*, 673 F.3d at 272–73.

## **ARGUMENT**

1. **The "cat's paw" theory is not recognized under New Hampshire law nor Vermont law, and thus, is not relevant to Plaintiff's state law claims.**

Plaintiff's use of the "cat's paw" theory is wholly irrelevant to her New Hampshire and Vermont state law claims. The New Hampshire Supreme Court has not decided whether the cat's paw theory is available under New Hampshire law. *Burnap*, 172 N.H. at 639. Similarly, the Vermont Supreme Court has not decided whether this theory is available under Vermont law. *Green*, 2014 WL 2875850 at *13 n.7. Because this theory is not available under state law, it does not make any fact of consequence under state law more or less probable. *See* FED. R. EVID. 401. Thus, the "cat's paw" theory of liability should be excluded as irrelevant to Plaintiff's state law claims. *See United States v. Aiyer*, 33 F.4th 97, 118 (2d Cir. 2022) (excluding evidence that is of "no legal consequence[.]"); *see also United States v. Miller*, 626 F.3d 682, 688 (2d Cir. 2010) (where evidence "was not relevant because it was not of consequence to the determination of any material fact or issue in dispute at trial."); *see also ITC Ltd. v. Punchgini, Inc.*, 518 F.3d 159 (2d Cir. 2008) (excluding an "independent theory of liability under state law.")

**2. Admitting the "cat's paw" theory to only Plaintiff's federal claims would needlessly mislead and confuse the jury.**

Admitting the cat's paw theory for the federal claims would confuse and mislead the jury, potentially leading them to apply this theory to the state claims as well. Once this theory is introduced for the federal claims, the jury cannot be expected to then "forget" it while deliberating on the state claims. *See United States v. Ah Kee Eng*, 241 F.2d 157, 161 (2d Cir. 1957) (noting that a trial judge "must not forget that the jury hangs on his every word[.]").

The little probative value of this theory is substantially outweighed by the risk of misleading and confusing the jury. The "trial judge has discretion to exclude evidence [that] is only slightly probative if its introduction would confuse and mislead the jury by focusing its attention on collateral issues and if it would unnecessarily delay the trial." *United States v. Bowe*, 360 F.2d 1, 15 (2d Cir.1966). Thus, this theory should be excluded under Fed. R. Ev. 403. *See Sitts v. Dairy Farmers of Am., Inc.*, No. 2:16-CV-00287, 2020 WL 5233027, at *6 (D. Vt. Sept. 2, 2020) (excluding evidence where "the risk of unfair prejudice and confusing and misleading the jury substantially outweighs the [evidence's] probative value [.]"); *see also United States v. Fell*, 372 F. Supp. 2d 773, 784 (D. Vt. 2005), *aff'd*, 531 F.3d 197 (2d Cir. 2008) (excluding evidence that "has little or no relevance and is likely to confuse the jury.").

**3. Even if New Hampshire and Vermont recognized the "cat's paw" theory, Dr. Merrens did not rely on Dr. DeMars' recommendations.**

Even if the "cat's paw" theory was potentially relevant to consideration of Plaintiff's state law claims -- which it is not -- the record does not support the notion that Dr. Merrens relied upon Dr. DeMars' opinions in his decision-making process in any tangible way. Here, Dr. Merrens made the decision to shut down the REI Division primarily because Defendants did not have the necessary staffing to provide safe and effective care. *See* **Exhibit A**, Merrens Dep. at 18:20–19:10. Dr. DeMars was unhappy with Dr. Merrens' decision to close the REI Division, and she believed

5

her counterpoints to its closure were completely disregarded by Dr. Merrens. *See* **Exhibit B**, DeMars Dep. at 132:21–133:11; 129:10–129:15. Indeed, Dr. DeMars confirmed that she "had absolutely no say" in Dr. Merrens' decision to close the REI Division. *Id.* at 133:6–17. Further, Dr. Merrens decided to terminate Plaintiff's employment despite Dr. DeMars' objections and attempts to find Plaintiff an alternate position. *See* **Exhibit A**, Merrens Dep. at 20:12–19; *see also* **Exhibit B**, Demars Dep. 158:1–20.

Given this testimony, any evidence relating to the cat's paw theory is of little probative value. Clearly, given Dr. DeMars' significant disagreements with Dr. Merrens over the closure of the REI Division and termination of Plaintiff's employment, Dr. DeMars had little, if any, influence on Dr. Merrens' ultimate decision. Therefore, the "cat's paw" theory should also be excluded on this independent ground because it lacks any probative value to the disposition of this case. *See Williams v. Lord*, 996 F.2d 1481, 1484 (2d Cir. 1993) (excluding evidence that "has little probative value."); *but see United States v. Custodios*, 325 F. App'x 19 (2d Cir. 2009) (properly admitting evidence because it "was probative . . . and it buttressed the government's theory[.]").

## **CONCLUSION**

Defendants respectfully request the Court to preclude any reference to the "cat's paw" theory of liability by Dr. Porter during the trial of this matter.

| | |
|---|---|
| Date: February 14, 2025 | Respectfully submitted, |

*/s/ Tristram J. Coffin*

**DOWNS RACHLIN MARTIN PLLC**

Tristram J. Coffin
199 Main Street
Burlington, VT 05402
Telephone: 802-863-2375
tcoffin@drm.com

**FOLEY & LARDNER LLP**

Donald W. Schroeder (admitted *pro hac vice*)
Morgan McDonald-Ramos (admitted *pro hac vice*)
Megan E. Martinez (admitted *pro hac vice*)
111 Huntington Avenue
Boston, MA 02199
Tel: (617) 342-4000
dschroeder@foley.com
mmcdonald@foley.com
memartinez@foley.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on February 14, 2025, a copy of the foregoing document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

*/s/ Tristram J. Coffin*
Tristram J. Coffin

23357395.1