**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT**

| | |
|---|---|
| MISTY BLANCHETTE PORTER, M.D., <br><br> Plaintiff, <br><br> vs. <br><br> DARTMOUTH-HITCHCOCK MEDICAL CENTER, DARTMOUTH-HITCHCOCK CLINIC, MARY HITCHCOCK MEMORIAL HOSPITAL, and DARTMOUTH-HITCHCOCK HEALTH, <br><br> Defendants. | Case No. 2:17-cv-194 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE INADMISSIBLE HEARSAY AND CHARACTER EVIDENCE**

Defendants Dartmouth-Hitchcock Medical Center, Dartmouth-Hitchcock Clinic, Mary Hitchcock Memorial Hospital, and Dartmouth-Hitchcock Health (collectively, "Dartmouth Health" or "Defendants") respectfully submit this memorandum of law in support of Defendants' Motion *in Limine* (the "Motion") to preclude inadmissible hearsay and character evidence regarding the competence, experience and qualifications of Plaintiff Misty Blanchette Porter, M.D.'s ("Plaintiff" or "Dr. Porter") former colleagues, Dr. Albert Hsu ("Dr. Hsu") and Dr. David Seifer ("Dr. Seifer"). Based on Plaintiff's most recent filing – Motion to Unseal Exhibits 10 and 11 for Trial – it is clear that Plaintiff intends to introduce evidence regarding Dr. Hsu and Dr. Seifer which constitutes inadmissible hearsay and improper character attacks. *See* FED. R. EVID. 401; FED. R. EVID. 403; FED. R. EVID. 404.

The following facts are undisputed: (1) Drs. Hsu and Seifer are not parties to this litigation; (2) despite extensive discovery which included Defendants' production of over 41,000 documents, Plaintiff never sought to depose either Dr. Hsu or Dr. Seifer; and (3) both Drs. Hsu and Seifer are

1

currently practicing physicians in Missouri and Connecticut, respectively, who will not be called to testify at trial by Plaintiff (or Defendants).

## BACKGROUND

Dr. Porter alleges in Counts 1 and 2 of her Amended Complaint that she was retaliated against because she engaged in protected whistleblower activity relating to her complaints about performance issues by Dr. Hsu and Dr. Seifer. *See* ECF Docket No. 50. Defendants do not dispute that Plaintiff made these reports. When its closure was announced in early May 2017, the Reproductive Endocrinology and Infertility Division ("REI Division") consisted of three (3) physicians—Dr. Porter, Dr. Seifer, and Dr. Hsu. Dr. Seifer was the REI Division Director and Plaintiff's direct supervisor. Dr. Hsu was Dr. Porter's colleague. In conjunction with the closure, Dartmouth Health terminated all three physicians.

Despite multiple *ad hominem* attacks on Drs. Hsu and Seifer throughout her Amended Complaint, she did not name them as additional parties, nor did she ever attempt to depose them. Moreover, both of them now reside far outside the jurisdictional reach of a trial subpoena. Tellingly, at the January 2025 Pretrial Conference, Plaintiff's counsel confirmed that he would not introduce testimony on a remote basis during Plaintiff's case-in-chief. However, based on Plaintiff's most recent filing where she seeks to unseal two specific exhibits which are highly critical of both Dr. Hsu and Dr. Seifer, Plaintiff's intent is clear: she wants to engage in character assassination by making an end-run outside the bounds of the Federal Rules of Evidence. *See* ECF Docket No. 197 at 1 (Plaintiff requesting the Court to unseal Exhibits 10 and 11 from Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment "so that these documents may be used at trial in the presentation of Dr. Porter's case and to allow the public to better understand the circumstances under which Dr. Porter's employment was terminated.").

As a threshold matter, Plaintiff's attempt to unseal these specific exhibits is nothing new. Actually, it is the *third* time this issue will be briefed by the parties. *See* ECF Docket No. 159; ECF Docket No. 141. While Dr. Porter lost on both prior occasions, the third time is not the proverbial "charm."

Contrary to Plaintiff's representation, neither exhibit relates in any manner to Dr. Porter's termination. Exhibit 10 of Plaintiff's Response in Opposition to Summary Judgment contains a thirteen (13) page self-serving email from Dr. Porter to Dr. Seifer detailing Dr. Hsu's performance and issues with patient care. *See* ECF Docket No. 139. Similarly, Exhibit 11 of Plaintiff's Response in Opposition to Summary Judgment contains an email from Dr. Judith McBean ("Dr. McBean") to Dr. Leslie DeMars ("Dr. DeMars") outlining her apparent concerns about Dr. Seifer. This email did not originate from Dr. Porter and is not related to her string of internal complaints over the course of several years. This trial is about alleged retaliation for protected whistleblower activity and disability discrimination claims, not the level of care provided by other REI Division physicians prior to the announcement of the REI Division closure in May 2017. In addition to these exhibits, any evidence relating to the performance of Drs. Hsu and Seifer will not only run afoul of Rules 401 and 403, but also constitute inadmissible hearsay and improper character evidence.

## **LEGAL STANDARD**

"The purpose of a motion in limine is to 'aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of the trial.'" *Ne. Farm Sales & Serv., Inc. v. Krone NA, Inc.*, No. 5:17-CV-72, 2019 WL 13251287, at *6 (D. Vt. Mar. 27, 2019) (*quoting Ellerton v. Ellerton*, 745 F. Supp. 2d 458, 460 (D. Vt. 2010)).

**ARGUMENT**

**I.   EVIDENCE ABOUT UNDERLYING BASIS FOR PLAINTIFF'S NUMEROUS COMPLAINTS IS IRRELEVANT AND UNFAIRLY PREJUDICIAL**

Fed. R. Evid. 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." However, even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

Here, evidence supporting the veracity of the conduct Plaintiff reported to Dartmouth Health should be excluded because it is not relevant to any fact of consequence in this litigation. *See* FED. R. EVID. 401; *see also United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 90 (2d Cir. 2014). Dr. Porter alleges she was retaliated against after she engaged in protected activity by reporting concerns she had with other providers in the REI Division. *See* ECF Docket No. 50 at 94-101. Whether the conduct reported by Dr. Porter was accurate is not germane to the disposition of her case. Instead, Dr. Porter only needs to show that her reports were made in good faith. Presentation of evidence on the underlying concerns with patient care in the REI Division is irrelevant to Dr. Porter's claims and should not be presented to the jury.

Dartmouth Health will stipulate that Dr. Porter, as well as others, lodged multiple complaints about her colleagues. Yet, a detailed examination of each and every complaint over several years through testimony and documentary evidence would run afoul of Fed. R. Evid. 403. *See Old Chief v. United* States, 519 U.S. 172, 184 (1997) (noting a party's concession is pertinent to the Court's discretion to exclude evidence on the point conceded). Eliciting testimony and providing evidence about Dr. Hsu's and Dr. Seifer's competency as physicians in the REI Division

4

does not make it more or less likely that Plaintiff was retaliated against for reporting her concerns. So long as her concerns were made in good faith, the underlying truth is irrelevant to her claims. Even if the Court were to find this evidence relevant, the risk of unfair prejudice, confusing the issues, misleading the jury, and wasting the jury's time seriously outweighs any probative value. As such, evidence regarding Dr. Hsu's and Dr. Seifer's performance should be excluded at trial.

Indeed, the risk of unfair prejudice seriously outweighs any probative value. Disparaging testimony about the qualifications and competency of other physicians in the REI Division will unfairly prejudice Defendants in front of the jury. The District Court is granted wide discretion in conducting the balancing test outlined in Rule 403. *See Conway v. Icahn & Co., Inc.*, 16 F.3d 504, 510 (2d Cir. 1994). This evidence also would waste the jury's time as the accuracy of Dr. Porter's reports are not at issue in this trial. This could also confuse the jury or mislead the jury in their review of the evidence. *See U.S. v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980) ("The prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant."). As such, the Court should not allow the Plaintiff to present evidence regarding the competency or qualifications of Drs. Hsu and Seifer.

II. **EVIDENCE ABOUT PERFORMANCE, QUALIFICATIONS AND COMPETENCY OF DR. PORTER'S COLLEAGUES -- DR. HSU AND DR. SEIFER – IS IMPERMISSIBLE UNDER RULE 404.**

Pursuant to Federal Rule of Evidence 404(a)(1), "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Additionally, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). The circumstantial use of character evidence is generally discouraged because it carries serious risks of prejudice, confusion, and delay. *See Michelson v. United States*, 335 U.S. 469, 476 (1948) ("The overriding

5

policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.").

Neither Dr. Hsu nor Dr. Seifer are parties to this case, nor are they testifying at trial as they are outside the Court's subpoena power. Based upon Plaintiff's Motion to Unseal, however, Dr. Porter, through witness testimony and other documentary evidence (including but not limited to Exhibits 10 and 11), will undoubtedly try to introduce improper character evidence throughout the trial.

By way of example, the documents attached to Plaintiff's Motion to Unseal reveal Dr. Porter's anticipated roadmap. Exhibit 10 is a twelve (12) page document from Dr. Porter to Dr. Seifer and Dr. DeMars outlining a detailed performance review of Dr. Hsu. The subject line of the email notes that it is "[c]onfidential" and was intended to be "Protected Pursuant to NH RSA 151:13a and RSA 329:29a[.]"[1] Dr. Hsu is not a party to this action, and Exhibit 10 contains detailed commentary from Plaintiff regarding Dr. Hsu's performance at Dartmouth Health, as well as specific examples of patient interactions. Exhibit 11 contains an email from Dr. McBean to Dr. DeMars outlining concerns with Dr. Seifer's performance. The email contains the subject line "confidential review" and was sent in response to Dr. DeMars' request for feedback on Dr. Seifer—a request which stated that any such comments would be confidential and protected. Like Dr. Hsu, Dr. Seifer is not a party to this case. Further, it is clear from the email's subject line that Dr. McBean provided this feedback with the understanding that it would be confidential. Additionally, Plaintiff did not send or receive this email. Finally, Dr. Seifer's performance is not at issue in this trial.

---

[1] Merely because the New Hampshire quality assurance privilege was found inapplicable in this case does not mean any given document is appropriate for public disclosure. Clearly, Exhibit 10 was intended to be private at the time it was created.

Exhibits 10 and 11 are not relevant to the jury's determination of whether Plaintiff engaged in protected activity as the underlying truth of the Plaintiff's reported concerns are irrelevant. Even if the Court were to find these exhibits relevant, the risk of unfair prejudice and wasting the jury's time seriously outweighs any probative value. Hearing details of patient care and compliance issues by other physicians in the REI Division will unfairly prejudice the jury against Defendants. Permitting Plaintiff to use Exhibits 10 and 11 will also confuse the jury on the issues or mislead them when reviewing the evidence. This case is not about the level of care in the REI Division and thus the evidence should be excluded.

But the analysis does not stop there. Federal Rule of Evidence 404(b) prohibits the introduction of evidence of a person's character or character traits to prove that they acted in a particular manner on a specific occasion unless such evidence is directly relevant to an issue in the case. *See Blair v. Callahan*, 664 F.3d 1225, 1228–29 (8th Cir. 2012) ("[w]e have interpreted Rule 404(b) as permitting evidence of prior acts if it is '(1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to [the event at issue]'") (citing *Batiste–Davis v. Lincare, Inc.*, 526 F.3d 377, 380 (8th Cir. 2008) (alteration in original)) (quoting *Berry v. Oswalt*, 143 F.3d 1127, 1132 (8th Cir.1998) (internal quotation marks omitted)). Plaintiff's intended use of character attacks on non-testifying persons—Dr. Hsu and Dr. Seifer—does not meet the threshold for admissibility under 404(b), as the attacks are irrelevant to any issue at trial. Any character evidence relating to non-testifying individuals would be offered solely to disparage their reputations and undermine their credibility without their presence in the Court to defend themselves. *See Outley v. City of New York*, 837 F.2d 587, 592 (2d Cir. 1988) ("Rule 404(b) requires a two-part analysis; first, consideration of whether the evidence fits within the exceptions listed in the rule and, second,

balancing the probative value of the evidence against the likelihood of undue prejudice, equivalent to the analysis under Rule 403.").

### III. EVIDENCE ABOUT DRS. HSU AND SEIFER WOULD ALSO CONSITUTE IMADMISSIBLE HEARSAY.

Out-of-court statements about the competence or credibility of a non-testifying individual, which is offered as proof of his sub-par performance or lack of credibility, is a classic example of hearsay. As such, statements regarding the competency, qualifications, and performance of Drs. Hsu and Seifer cannot be admitted unless they fall under a recognized exception to the hearsay rule. *Davis v. Velez*, 797 F.3d 192, 200 (2d Cir. 2015) ("Hearsay, a statement by a declarant 'not ma[d]e while testifying at the current trial or hearing' and 'offer[ed] in evidence to prove the truth of the matter asserted in the statement' . . . is generally not admissible unless permitted by an exception provided in the Federal Rules of Evidence"). Out-of-court written statements offered to prove the truth of the matter asserted constitute hearsay. FED. R. EVID. 801. Unless covered by an exception or exclusion to the hearsay rule such statements are inadmissible. FED. R. EVID. 802. Without first-hand testimony by either Dr. Hsu or Dr. Seifer, Dr. Porter cannot provide any basis to establish that these statements qualify for an exception under Rule 803.

### CONCLUSION

For the foregoing reasons, Dartmouth Health requests that the Court grant Defendants' Motion. Should the Court require, Dartmouth Health welcomes the opportunity to address its Motion through oral argument.

Date: February 14, 2025  Respectfully submitted,

*/s/ Tristram J. Coffin*

Tristram J. Coffin
DOWNS RACHLIN MARTIN PLLC
199 Main Street
Burlington, VT 05402
Telephone: 802-863-2375
tcoffin@drm.com

and

Donald W. Schroeder (admitted *pro hac vice*)
Morgan McDonald-Ramos (admitted *pro hac vice*)
Megan E. Martinez (admitted *pro hac vice*)
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
Tel: (617) 342-4000
dschroeder@foley.com
mmcdonald@foley.com
memartinez@foley.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

    I hereby certify that, on February 14, 2025, a copy of the foregoing document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

                                          */s/ Tristram J. Coffin*
                                            Tristram J. Coffin

23357708.1