IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| MISTY BLANCHETTE PORTER, M.D., <br><br> Plaintiff, <br><br> vs. <br><br> DARTMOUTH-HITCHCOCK MEDICAL CENTER, DARTMOUTH-HITCHCOCK CLINIC, MARY HITCHCOCK MEMORIAL HOSPITAL, and DARTMOUTH-HITCHCOCK HEALTH, <br><br> Defendants. | Case No. 2:17-cv-194 |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO UNSEAL
EXHIBITS 10 & 11 FOR TRIAL**

Defendants Dartmouth-Hitchcock Medical Center, Dartmouth-Hitchcock Clinic, Mary Hitchcock Memorial Hospital, and Dartmouth-Hitchcock Health (collectively, "Dartmouth Health" or "Defendants") hereby submit this opposition (the "Opposition") to Plaintiff Misty Blanchette Porter, M.D.'s ("Plaintiff") Motion to Unseal (the "Motion") Exhibits 10 & 11 (together, the "Exhibits") for Trial. In the words of Yogi Berra, "it is déjà vu all over again" because it is the *third* time this issue will be briefed by the parties. *See* ECF Docket Nos. 141 and 159. Defendants remain steadfast in their position that the two confidential Exhibits should remain under seal by order of this Court. *See* ECF Docket Nos. 149 and 173.

## BACKGROUND

While Plaintiff claims that her Motion is in the altruistic interest of patient safety, that sentiment rings hollow. Dr. Porter went to great lengths to criticize and disparage her former colleagues – Dr. Albert Hsu, M.D. ("Dr. Hsu") and Dr. David Seifer, MD ("Dr. Seifer") throughout her Amended Complaint. Yet, she did not name them as additional parties, nor did she ever attempt

1

to depose them. Moreover, both of them now reside far outside the jurisdictional reach of a trial subpoena. Based on Plaintiff's Motion, Plaintiff's intent is clear: she wants to engage in character assassination of these two physicians without being required to comply with the Federal Rules of Evidence. This, she cannot do.

As an overview, Exhibit 10 is a self-serving email from Plaintiff to Dr. Seifer, Director of the REI Division, and Dr. Leslie DeMars ("Dr. DeMars"), Chair of Defendants' Department of Obstetrics and Gynecology, containing a detailed performance review of Dr. Hsu, a physician within the REI Division. *See* ECF Docket No. 140-12. The subject line of the email notes that it is "[c]onfidential" and was intended to be "Protected Pursuant to NH RSA 151:13a and RSA 329:29a[.]" *Id.*[1] Dr. Hsu is not a party to this action and Exhibit 10 contains detailed commentary from Plaintiff regarding Dr. Hsu's performance at Dartmouth Health, as well as specific examples of patient interactions. *Id.*

Exhibit 11 is an email from Dr. Judith McBean ("Dr. McBean"), a per diem physician within the REI Division, to Dr. DeMars about Dr. Seifer's performance. *See* ECF Docket No. 140-13. The email contains the subject line "confidential review" and was sent in response to Dr. DeMars' request for feedback on Dr. Seifer—a request which stated that any such comments would be confidential and protected. *Id.* Like Dr. Hsu, Dr. Seifer is not a party to this case. Further, it is clear from the email's subject line that Dr. McBean provided this feedback with the understanding that it would be confidential. *Id.*

---

[1] Merely because the New Hampshire quality assurance privilege was found inapplicable in this case does not mean any given document is appropriate for public disclosure. Clearly, Exhibit 10 was intended to be private at the time it was created.

Given the privacy concerns of non-parties and the limited probative value of the Exhibits, Defendants moved to seal the Exhibits on June 1, 2020. *See* ECF Docket No. 145.[2] The Court heard oral arguments on this issue on June 2, 2020. *See* ECF Docket No. 148. Agreeing with Defendants' reasoning, this Court sealed the Exhibits on June 2, 2020. *See* ECF Docket No. 149. Nearly four (4) years later, seeking to alter this Court's decision, Plaintiff moved to unseal the Exhibits on March 13, 2024 (the "First Motion"). *See* ECF Docket No. 159. Dartmouth Health opposed the First Motion on March 26, 2024, for the same reasons Defendants moved to seal the Exhibits in the first place. *See* ECF Docket No. 166.[3] Affirming Defendants' arguments yet again, this Court denied Plaintiff's First Motion on April 12, 2024. *See* ECF Docket No. 173. Now, after nearly five (5) years of the Exhibits being under seal, Plaintiff's Motion again attempts to unseal the Exhibits for trial. *See* ECF Docket No. 197. Defendants respectfully request that the Court deny Plaintiff's Motion in its entirety.

## ARGUMENT

**I.    As occurred in the First Motion, Plaintiff misrepresents the Second Circuit's Opinion.**

Despite the fact that Judge Crawford ruled that "[n]either was unsealed by operation of the Second Circuit's decision," Plaintiff's Motion reiterates the same, unsuccessful argument from the First Motion, that the Second Circuit effectively unsealed the Exhibits. *Id.*; *see also* ECF Docket No. 159. The Second Circuit noted "[s]ome portions of the record have been filed under seal; they are hereby deemed unsealed **to the extent that their contents are quoted or**

---

[2] Defendants repeat and reincorporate arguments made in their Memorandum Regarding Confidentiality Designations of Exhibits for Summary Judgment (ECF Docket No. 145) by reference.
[3] Defendants repeat and reincorporate arguments made in their Opposition to Plaintiff's First Motion (ECF Docket No. 166) by reference.

3

**described in this opinion**." *Porter v. Dartmouth-Hitchcock Medical Center*, 92 F. 4th 129, 133 (2d Cir. 2024) (emphasis added). For example, Exhibit 10 is a ***twelve-page*** document, from which the Second Circuit quoted only a single sentence and otherwise described in broad, general strokes. *See Porter*, 92 F.4th at 134–35. Yet, Plaintiff argues that the Exhibits are now effectively unsealed in light of the Second Circuit's Opinion. This reading stretches the Court's ruling beyond its logical extreme, particularly considering the limited nature of the Second Circuit's references to the exhibits at issue:

| Exhibit | Opinion Page Number | Reference |
|---|---|---|
| 10 (ECF No. 140-12) | *Porter*, 92 F.4th at 134 (Slip Op. at 9). | "'Given his limited experience, I spent the next 6 months directly teaching him at his side, taking call with him 7 days a week[,] teaching him various relevant procedures.' (Dr. Porter Report to Dr. Seifer dated June 3, 2016.)" |
| 10 (ECF No. 140-12) | *Id.* at 135 (Slip Op. at 12). | "In June 2016, Dr. Porter sent an 11-page report to new-REI Director Dr. Seifer in response to his request for an assessment of the performance of Dr. Hsu. It detailed Dr. Porter's observations as to, inter alia, the state of Dr. Hsu's knowledge, and his deficiencies in critical thinking, in professionalism, and in technical skill." |
| 11 (ECF No. 140-13) | *Id.* at 135 (Slip Op. at 12–13) | "In response, Dr. Judith McBean, a per-diem contract provider of services to REI, in addition to criticizing Dr. Seifer's skills and standards of care (see Part I.C.2. below), stated that one of her biggest concerns about Dr. Seifer was his failure to address problems in the performance of Dr. Hsu. (See Dr. McBean email to Dr. DeMars dated February 22, 2017 ('Dr. McBean email to Dr. DeMars').) She stated that Dr. Hsu's procedures were not within standards set by the American Society for Reproductive Medicine ('ASRM') and were 'both ineffective and costly to patients'; that his skill set with regard to patient care was inadequate; and that '[h]is surgical skills endanger patients.' (*Id.*)" |
| 11 (ECF No. 140-13) | *Id.* at 138 (Slip Op. at 20) | "As to technical skills, Dr. McBean stated that 'Dr. Seifer ha[d] been a practicing REI physician for years, but upon arrival [he] did not seem to understand our system for oocyte retrieval,' which had been standard 'for over 7 years'; that 'he does not do the standard fertility surgeries of hysteroscopy and laparoscopy,' despite the fact that 'a broad set of skills is critical for success in a small program'; and that he has 'limited ultrasound skills both in performing and |

4

|  |  | interpreting.' (Dr. McBean email to Dr. DeMars.) As to standard of care, Dr. McBean stated that Dr. Seifer 'practic[ed] outside of ASRM standard of care'; that his 'conversations regarding ASRM guidelines during team meetings ... do not reflect current standards'; and that his 'screening and evaluation of patients is often incomplete or scattered and causes concern in patients.' (*Id.*)" |
|---|---|---|

## II. Drs. Hsu and Seifer's privacy interests outweigh the public's right to access the Exhibits.

As Judge Crawford noted in his April 12th Order, "[i]f the memoranda are released to the press as plaintiff seeks, neither physician would have an opportunity to respond to the disclosure or to address in any meaningful way the reputational injury the disclosure would cause. They are bystanders in this conflict." *See* ECF Docket No. 159. The privacy interests of non-parties – like Drs. Hsu and Seifer – weigh heavily in favor of sealing court documents. *U.S. v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995) ("the privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation" and "are a venerable common law exception to the presumption of access.") (internal citations omitted); *see also Mirlis v. Greer*, 952 F.3d 51, 65 (2d Cir. 2020) (noting "that courts are generally protective of the privacy interest of non-parties[.]"). While the public does generally have a right of access to the courts and judicial records, there are situations, like this one, where the act of sealing records can be "essential to preserve higher values[.]" *U.S. v. Warburg Pincus LLC*, No. 2:21-MC-000178, 2022 WL 2128669, at *8 (D. Vt. June 14, 2022) (quoting *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 144 (2d Cir. 2016)). For example, "[t]he Second Circuit has recognized that the privacy interest of those who resist disclosure can be, in certain circumstances, a higher value[.]" *Warburg*, 2022 WL, at *8 (internal citations and quotations omitted). The "danger of impairing . . . judicial efficiency" constitutes another higher value in favor of sealing court documents. *New England Life Ins. Co. v.*

5

*Wilson*, No. 2:11-CV-45, 2011 WL 13214116, at *2 (D. Vt. Sept. 28, 2011) (quoting *Amodeo*, 71 F.3d, at 1050). Such considerations support maintaining the sealing of the Exhibits.

Here, the following facts are undisputed: (1) Drs. Hsu and Seifer are not parties to this litigation; (2) despite extensive discovery which included Defendants' production of over 41,000 documents, Plaintiff never sought to depose either Dr. Hsu or Dr. Seifer; and (3) both Drs. Hsu and Seifer are currently practicing physicians in Missouri and Connecticut, respectively, who will not be called to testify at trial by Plaintiff (or Defendants). Given the over-arching privacy concerns, the Exhibits should remain under seal. *See United States v. Longueuil*, 567 F. App'x 13 (2d Cir. 2014) (affirming District Court's denial of a motion to unseal documents, in part, because of the privacy interest of third parties).

Indeed, Drs. Hsu and Seifer have a strong privacy interest in their personnel records, particularly concerning these types of performance reviews, that outweighs the public's right of access to such information. *See Shovah v. Mercure*, No. 2:11-CV-201, 2013 WL 12226890, at *2 (D. Vt. Oct. 30, 2013) (noting that the "disclosure of personnel files raises many privacy concerns[.]"); *see also Cameron v. Menard*, No. 5:18-CV-204-GWC-KJD, 2021 WL 2805603, at *6 (D. Vt. July 6, 2021) (maintaining confidentiality of personnel files because they "include highly personal information"). Plaintiff argues that these interests are insignificant because Drs. "Seifer and Hsu have had seven years to assert their interests and have not done so." *See* ECF Docket No. 197, at 11. In fact, the Exhibits have been under seal for nearly five (5) years. *See* ECF Docket Nos. 149 and 173. Given that Drs. Hsu and Seifer are not parties to this lawsuit, were not deposed by Plaintiff, and are not testifying at trial, they have not likely seen Plaintiff's latest Motion and are operating under the assumption that these documents will remain sealed, as they have been for nearly five (5) years.

Further, Dartmouth Health has a strong interest in protecting the information shared in connection with its internal, evaluation processes. Allowing the Motion, thereby permitting Plaintiff to share the Exhibits with the media, will not only cause employees to suffer undue embarrassment, but also likely cause hesitation to provide candid feedback in the future, even where assurances of confidentiality are given, ultimately endangering public safety. *See U.S. v. Doe*, 629 F. App'x 69, 71 (2d Cir. 2015) (affirming District Court's denial of motion to unseal because "safety concerns justified the sealing[.]"); *See also Sullivan v. Saint-Gobain Performance Plastics Corp.*, No. 5:16-CV-125, 2020 WL 9762421, at *2 (D. Vt. Nov. 4, 2020) (ordering sealing of documents where "[s]ealing . . . will permit a candid exchange of views[.]").

Compared to Defendants' significant privacy and safety concerns, Plaintiff's continued interest in sharing the Exhibits with the media is slight. *See* ECF Docket Nos. 159, 197. To be sure, if a media outlet had a strong interest in having the documents unsealed, that outlet would intervene in this matter and move for public disclosure itself. Instead, Plaintiff has done so to further her own self-interest. The privacy interests of innocent third parties should not be disregarded merely for purposes of Plaintiff's economic advantage. *See Mirlis*, 952 F.3d at 56 (finding reversible error where lower court failed to consider that the purpose of proposed release was to post materials on public internet blog). Given Defendants' significant privacy interests weighted against Plaintiff's self-serving media interests, the Exhibits should remain sealed.

**III.    The Exhibits should remain sealed because they are irrelevant, unfairly prejudicial, and have little probative value.**

Plaintiff argues that Exhibit 10 is relevant because of "[t]he time, effort, and detail that Dr. Porter put into writing [it], as well as information about the time and effort she put into trying to improve Dr. Hsu's skills[.]" *See* ECF Docket No. 197, at 7. The detailed, specific information contained in Exhibit 10 is not so essential that the public's right of access countervails the privacy

7

interest of a non-party in having his personnel records kept from public view—particularly as Dartmouth Health has never argued that Plaintiff did not make any complaints. Rather, Defendants have argued that they did not discriminate nor retaliate against Plaintiff *in response to* her complaints. Here, evidence supporting the accuracy of the conduct Plaintiff reported to Dartmouth Health should be excluded because it is not relevant to any fact of consequence in this litigation. *See* FED. R. EVID. 401; *see also United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 90 (2d Cir. 2014). Given the little probative value of the information therein, Exhibit 10 should remain sealed. *See Crenshaw v. Herbert*, 409 F. App'x 428, 430 (2d Cir. 2011) (denying production of a personnel file where "[t]he district court properly relied on defense counsel's affirmation that . . . [the] file contained no relevant disciplinary records.").

      Plaintiff also argues that Exhibit 10 is relevant because "[t]he jury will be evaluating Dr. Porter's reliability and her analysis in Exhibit 10 reflects the work of someone whose judgment the jury should credit." *See* ECF Docket No. 197, at 7. However, Federal Rule of Evidence 404(b)(1) clearly states that "[e]vidence of any other . . . act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Moreover, assuming Dr. Porter will testify as a witness at trial, Federal Rule of Evidence 608(a) provides that "evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked." *See also U.S. v. Arroyo–Angulo*, 580 F.2d 1137, 1146 (2d Cir.1978) (noting "the well established rule[] of evidence that absent an attack on the veracity of a witness, no evidence to bolster his credibility is admissible."). Admitting Exhibit 10 to bolster Dr. Porter's character would be premature when trial has not yet begun, Plaintiff's character for truthfulness has not been attacked, and character evidence is otherwise prohibited.

Finally, Plaintiff admits that "[m]any of the concerns about Drs. Hsu and Seifer described in Exhibits 10 and 11 are already part of the public record, and the trial testimony of Dr. Porter and other witnesses . . . will encompass much of the same information." *See* ECF Docket No. 197, at 11. Contrary to Plaintiff's assertions, this Circuit has recognized "when the content at issue is available in some public format, the need for disclosure **is lessened**[.]" *In re Terrorist Attacks on Sept. 11, 2001*, 2022 WL 137855 (S.D.N.Y. Jan. 14, 2022) (citing *Mirlis*, 952 F.3d at 65 (noting the fact "[t]hat the substance of the desired content is publicly available in some format . . . tends . . . **to cut against the public interest** in the release of the content in a different form . . . since the primary public interest—general availability of the relevant information—has already been served.")) (emphasis added). Here, given that Plaintiff admits that relevant information described in the Exhibits is readily available from other sources at trial, the documents should remain sealed.

The fact that Dartmouth Health will stipulate that Dr. Porter, as well as others, lodged multiple complaints about her colleagues constitutes another independent basis to exclude Exhibits 10 and 11. *See Old Chief v. United* States, 519 U.S. 172, 184 (1997) (noting a party's concession is pertinent to the Court's discretion to exclude evidence on the point conceded). Furthermore, whether the conduct reported by Dr. Porter was accurate is not germane to the disposition of her case. Instead, Dr. Porter only needs to show that her reports were made in good faith. Presentation of evidence on the underlying concerns with patient care in the REI Division is irrelevant, has little probative value to Dr. Porter's claims, and is prejudicial to the Defendants. *See U.S. v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980) ("The prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant.").

**IV.     The Exhibits should remain sealed because Plaintiff will undoubtedly try to introduce improper character evidence through these two Exhibits.**

9

Pursuant to Federal Rule of Evidence 404(a)(1), "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Federal Rule of Evidence 404(b) prohibits the introduction of evidence of a person's character or character traits to prove that they acted in a particular manner on a specific occasion unless such evidence is directly relevant to an issue in the case. *See Blair v. Callahan*, 664 F.3d 1225, 1228–29 (8th Cir. 2012) ("[w]e have interpreted Rule 404(b) as permitting evidence of prior acts if it is '(1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to [the event at issue]'") (citing *Batiste–Davis v. Lincare, Inc.*, 526 F.3d 377, 380 (8th Cir. 2008) (alteration in original)) (quoting *Berry v. Oswalt*, 143 F.3d 1127, 1132 (8th Cir.1998) (internal quotation marks omitted)); *see also Outley v. City of New York*, 837 F.2d 587, 592 (2d Cir. 1988) ("Rule 404(b) requires a two-part analysis; first, consideration of whether the evidence fits within the exceptions listed in the rule and, second, balancing the probative value of the evidence against the likelihood of undue prejudice, equivalent to the analysis under Rule 403."). "The overriding policy of excluding [character] evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." *See Michelson v. United States*, 335 U.S. 469, 476 (1948).

Based upon Plaintiff's Motion, she will undoubtedly try to introduce improper character evidence throughout the trial through use of Exhibits 10 and 11. To be clear, any character evidence relating to non-testifying individuals—Dr. Hsu and Dr. Seifer—would be offered solely to disparage their reputations and undermine their credibility without their presence in the Court to

10

defend themselves. Given that this case is *not* about the level of care in the REI Division or the underlying truth of the Plaintiff's reported concerns, Exhibits 10 and 11 are irrelevant.

## CONCLUSION

For the foregoing reasons, Defendants request that the Court deny Plaintiff's Motion in accordance with the prior Orders of this Court. Should the Court require, Defendants welcome the opportunity to address their Opposition to Plaintiff's Motion through oral argument.

Date: February 18, 2025    Respectfully submitted,

*/s/ Tristram J. Coffin*
Tristram J. Coffin

**DOWNS RACHLIN MARTIN PLLC**
Tristram J. Coffin
199 Main Street
Burlington, VT 05402
Telephone: 802-863-2375
tcoffin@drm.com

and

**FOLEY & LARDNER LLP**

Donald W. Schroeder (admitted *pro hac vice*)
Morgan McDonald-Ramos (admitted *pro hac vice*)
Megan E. Martinez (admitted *pro hac vice*)
111 Huntington Avenue
Boston, MA 02199
Tel: (617) 342-4000
dschroeder@foley.com
mmcdonald@foley.com
memartinez@foley.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on February 18, 2025, a copy of the foregoing document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

                                                */s/ Tristram J. Coffin*
                                                Tristram J. Coffin

23364140.1