UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| MISTY BLANCHETTE PORTER, M.D.,<br>　　　　Plaintiff,<br><br>　　v.<br><br>DARTMOUTH-HITCHCOCK MEDICAL CENTER, DARTMOUTH-HITCHCOCK CLINIC, MARY HITCHCOCK MEMORIAL HOSPITAL, and DARTMOUTH-HITCHCOCK HEALTH,<br>　　　　Defendants. | Docket No. 2:17-CV-194 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE THE "CAT'S PAW" THEORY OF LIABILITY**

Plaintiff Misty Blanchette Porter, M.D. ("Dr. Porter") submits this Memorandum opposing the Motion *in Limine* to Preclude the "Cat's Paw" Theory of Liability, (Doc. 200), filed by Defendants Dartmouth-Hitchcock Medical Center, Dartmouth-Hitchcock Clinic, Mary Hitchcock Memorial Hospital, and Dartmouth-Hitchcock Health (collectively, "Dartmouth Health"). For the reasons that follow, Defendants' Motion should be denied.

Dartmouth Health seeks to prevent Dr. Porter from making "any reference" to the Cat's Paw theory of liability during the upcoming trial. The theory would permit the jury to impute any discriminatory or retaliatory motive on the part of Dr. Porter's supervisor, Dr. Leslie DeMars, to Dr. Ed Merrens and Dartmouth Health with respect to the decisions to close the REI Division, to terminate Dr. Porter's employment, and not to permit Dr. Porter to continue the non-REI portion of her work within the OB/GYN Department or to reassign her to another role within the OB/GYN Department. A decision to exclude reference to the Cat's Paw theory or to present evidence in support of that theory is akin to deciding on a motion for summary judgment

that a cause of action is not viable, and a motion *in limine* is not the proper vehicle to decide questions of law, particularly where, as here, the Second Circuit has already decided that summary judgment was not appropriate.[1]

## LEGAL STANDARD

Although the Federal Rules do not provide for motions *in limine*, it is commonly accepted that judges have discretion to address these motions pursuant to their broad trial-management authority. *Luce v. United States,* 469 U.S. 38, 41 n.4 (1984); *Shaffer v. Heartbeet Lifesharing Corp.*, No. 21-CV-01117, 2024 WL 2940193, at *1–2 (Vt. Super. Apr. 29, 2024). "The movant has the burden of establishing that the evidence is not admissible for any purpose." *United States v. Goodale*, 831 F. Supp. 2d 804, 807–08 (D. Vt. 2011). In a close case, the judge may choose to reserve judgment until trial to ensure the motion is considered in its proper context. *Id.*

A motion *in limine* allows the court to rule on evidentiary issues in advance of trial before the evidence is presented to the jury. *Ne. Farm Sales & Serv., Inc. v. Krone NA, Inc.*, No. 5:17-CV-72, 2019 WL 13251287, at *5–6 (D. Vt. Mar. 27, 2019). *See also Shaffer*, 2024 WL 2940193, at *1–2 (noting motions *in limine* can be used to proactively shield the jury from prejudicial information that is not outweighed by its relevance to the issues at hand). Motions *in limine* are not, however, the proper vehicle to decide broader questions of law. *See Shaffer*, 2024 WL 2940193, at *1–2 (denying motion *in limine* to exclude contributory negligence defense because plaintiff's motion improperly asked the court to "obviate the need for a trial on the

---

[1] Defendants appear to conflate the right to assert a legal theory with the right to present particular evidence in support of that theory. Evidence is relevant if it tends to make a *fact* more or less probable and if that *fact* is of consequence in determining the action. Fed. R. Evid. 401 (emphasis added). *Cf. Centrella v. Ritz-Craft Corp. of Pennsylvania, Inc.*, No. 2:14-CV-111-JMC, 2017 WL 3720757, *1 (D. Vt. June 28, 2017) (noting the Rules "encourage admissibility, and their definition of relevant evidence is exceedingly broad"). Defendants seek to preclude an entire theory of law and all evidence in support.

matter" and motions *in limine* are intended to address evidentiary issues not the substance of a party's claim); *Nault v. Rocky Dell Builders, Inc.*, No. 1-1-13 WMCV, 2014 WL 6852892, at *1 (Vt. Super. June 17, 2014) (explaining that motions *in limine* are useful for issues of evidence but should not be used to "decide broad questions of law"); *Hillview Heights, LLC Subdivision Appeal*, No. 23-ENV-00140, 2024 WL 5112540, at *2 (Vt. Super. Nov. 21, 2024) (denying motion *in limine* that "does not seek an evidentiary ruling, but is, in practice, seeking summary judgment").

## ANALYSIS

**Defendants' Motion Relies on Disputed Facts that Should Be Decided By The Jury**

The reasons for closing REI and terminating Dr. Porter's employment, as well as who is responsible for making those decisions, are disputed facts. Dartmouth Health asks this Court to usurp the jury's authority to decide disputed facts based on evidence presented at trial. This was not appropriate at summary judgment, and it is not appropriate now.

Dartmouth Health declares that Dr. Merrens made the decision to close the REI Division because of insufficient staff, (Doc. 200-1 at 2, 5), and that he alone made the decision to terminate Dr. Porter's employment because her position was eliminated with the REI closure, (Doc. 200-1 at 2–3, 5–6). Dartmouth Health's publicly-stated reasons for closing the REI Division are inconsistent at best, *see Green v. Springfield Med. Care Sys., Inc.*, No. 5:13-CV-168, 2014 WL 2875850, at *12 (D. Vt. June 24, 2014) (showing "weaknesses, implausibilities, inconsistencies, or contradictions" in the purported legitimate, nondiscriminatory reason for termination can establish pretext), and the evidence shows that Dr. Porter possessed a wealth of valuable skills that were in high demand at Dartmouth Health. And the Second Circuit made clear that the decisionmaker question remains open, to be decided by the jury. *Porter v. Dartmouth-Hitchcock Med. Ctr.*, 92 F.4th 129, 168 (2d Cir. 2024).

> While as to Dr. Porter's claims of whistleblowing and reporting discrimination we have not seen a smoking gun similar to Dr. Merrens's immediate "disability" response to why Dr. Porter had not been retained, the record contains ammunition from which a jury could find (1) that Dr. Merrens had the requisite knowledge of Dr. Porter's reporting activity, or (2) that if he lacked such knowledge, either (a) he as decisionmaker relied on the retaliatory or bad-faith recommendation by Dr. DeMars, or (b) the ultimate decisionmaker as to Dr. Porter's termination--as contrasted with the decision to close REI--was not Dr. Merrens but Dr. DeMars.

*Porter*, 92 F.4th at 156.  *See also id.* at 156-159, 162–68 (noting evidence in the record does not conclusively establish Dr. Merrens as a neutral decisionmaker or that Dr. DeMars genuinely advocated to keep Dr. Porter on staff).  Dr. Porter has argued—and the Second Circuit identified sufficient evidence to support a jury verdict in Dr. Porter's favor—that Dartmouth Health's purported reasons for closing the REI Division and for terminating Dr. Porter's employment are pretext for unlawful discrimination and retaliation.  *See Porter*, 92 F.4th at 133, 146–47, 152–53, 156, 168.  There is no basis to exclude evidence relevant to who made the decisions at issue and why those decisions were made.

### Cat's Paw Theory

The Cat's Paw theory takes a supervisor's (or, in some cases, a coworker's) unlawful discriminatory or retaliatory motive and imputes it to an otherwise-neutral decisionmaker.  The theory derives from an ancient fable by Aesop, written down in verse by La Fountaine in the 17th century.  In the fable, a monkey tricks a cat into pulling chestnuts out of a fire for them to eat.  *Staub v. Proctor Hosp.* 562 U.S. 411, 416 (2011).  But while the cat is busy getting chestnuts out of the fire, the monkey is busy eating them all, leaving the cat with nothing but a burned paw.  *Id.*  Judge Posner is credited with applying the fable to employment discrimination.  *See Shager v. Upjohn Co.*, 913 F.2d 398 (7th Cir. 1990) (employing the cat's paw fable in a situation where a neutral decisionmaker was influenced by a supervisor with a discriminatory motive); *Staub*, 562

U.S. at 416. Since then, "every circuit has adopted some form of 'cat's paw' or 'rubber stamp' doctrine." Keaton Wong, Weighing Influence: Employment Discrimination and the Theory of Subordinate Bias Liability, 57 Am. U. L. Rev. 1729, 1739–40 (2008) (also referring to the Cat's Paw theory as "subordinate bias liability").

### The Cat's Paw Theory is Recognized by the Federal Courts

Dartmouth Health is asking this Court to preclude application of an entire legal theory for *all* claims, even the claims based on federal law. As an initial point, Dartmouth Health should not be permitted, on the eve of trial, to seek to remove an entire legal theory. *See Sugar Mountain Holdings, LLC*, No. 22-ENV-00117, 2023 WL 3035327, at *2 (Vt. Super. Mar. 27, 2023) (denying motion *in limine* to exclude relevant evidence, stating that motions *in limine* should not be used as a substitute for summary judgment to dismiss substantive legal claims). Dartmouth Health could have—but didn't—move to strike the Cat's Paw theory early in this case. To the extent that Dartmouth Health voiced an objection in the context of summary judgment, the Second Circuit could have—but didn't—find that this theory was not available under applicable state law.

More importantly, Dartmouth Health should not be permitted to exclude an entire theory of law that has been recognized by the Supreme Court and the First and Second Circuits and applied to find employer liability for unlawful discrimination or retaliation. *See, e.g., Staub*, 562 U.S. at 422 (applying theory in USERRA action and holding "that if a supervisor performs an act motivated by antimilitary animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable"); *Cariglia v. Hertz Equip. Rental Corp.*, 363 F.3d 77, 85–88 (1st Cir. 2004) (remanding for consideration of whether subordinate "impermissibly tainted the decisionmaking process with his animus," and noting that this would provide sufficient causation

5

in age-based discrimination claim even though actual decisionmaker lacked animus); *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 269, 271–73 (2d Cir. 2016) (applying theory in Title VII retaliation case and stating that retaliatory intent may be imputed to the employer where "the employer's own negligence gives effect to the employee's retaliatory animus"). Even assuming that the Cat's Paw theory does not apply to Dr. Porter's state-law claims (which it does), the idea that Dartmouth Health can preclude Dr. Porter's use of the theory with respect to her claims under federal law on the basis that the jury might be confused by the need to apply different standards to state claims borders on frivolous. Juries are expected to apply different standards to different claims on a regular basis, and there is no reason to assume they would be unable to do so here. *See, e.g., Kelley v. Airborne Freight Corp.*, 140 F. 3d 335, 349–52 (1st Cir. 1998) (describing jury instructions with different federal and state standards).

### New Hampshire and Vermont Have Not Rejected the Cat's Paw Theory of Liability

Defendants are correct that neither the New Hampshire nor the Vermont Supreme Court have expressly adopted, by name, the Cat's Paw theory. Defendants erroneously assume, however, that because the New Hampshire and Vermont Supreme Courts have "not decided whether this theory is available" under state law that the theory is automatically "not available under state law," and evidence in support of the theory automatically becomes irrelevant. (Doc. 200-1 at 4.) When a federal court is faced with deciding a state-law claim "in the absence of authoritative law from the state's highest court," it must either predict how the state court would resolve the state-law question or certify the question to the state court to obtain a definitive answer. *DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005) (acknowledging its obligation to prevent the availability of a certification procedure from becoming "a device for shifting the burdens of this Court to those whose burdens are at least as great" and rejecting the option to certify the question to the NY Court of Appeals). This Court can and should predict how the

Vermont and New Hampshire Supreme Courts would rule on the Cat's Paw question.

Both state courts have had occasion to discuss the Cat's Paw theory, yet neither state court has rejected the theory. In *Lamay v. State*, 2012 VT 49, ¶ 10, 191 Vt. 635, 637–38, 49 A.3d 559, 562–63, although it ultimately concluded that plaintiff's evidence was not sufficient, the Vermont Supreme Court "assume[d] without deciding" that any discriminatory animus on the part of the supervisor could be imputed to the actual decisionmaker. *Id.* at n.2.[2] Similarly, the New Hampshire Supreme Court in *Burnap v. Somersworth Sch. Dist.*, 232 A.3d 390, 397 (N.H. 2019), declined to decide whether the Cat's Paw theory would apply to a state-law sexual harassment claim because the evidence would have been insufficient to support the claim. The court did acknowledge that New Hampshire looks to Title VII (where Cat's Paw theory has been applied) for guidance in construing employment discrimination cases under RSA 354-A. Dr. Porter should not be prohibited from putting forth the Cat's Paw theory where it has not been rejected by either Vermont or New Hampshire court.

There is every reason to believe that both Vermont and New Hampshire will adopt the Cat's Paw theory, as the theory is consistent in spirit and form with state law. *See, e.g., In re Hardy*, 154 N.H. 805, 812 (2007) (noting New Hampshire courts have relied on the federal Title VII retaliation standards to resolve claims under its whistleblower protection statute); *Butkus v. Demoulas Super Markets, Inc.*, No. 2022-0301, 2023 WL 5793086, at *2–3 (N.H. Sept. 7, 2023) (noting employer may be held vicariously liable under the doctrine of *respondeat superior* if the employee was acting within the scope of his employment); *Green*, 2014 WL 2875850, *12–*13 & n.6 (recognizing that, with the Cat's Paw theory, "a jury could find that a legitimate need for cost-cutting provided the pretext for selecting Plaintiff for termination to ensure his

---

[2] The Vermont Supreme Court also discussed the Cat's Paw theory in *Brown v. State*, 2013 VT 112, ¶ 17, 195 Vt. 342, 350, 88 A.3d 402, 407–08; however, that claim was based on a federal statute and thus decided under federal law.

whistleblowing activities would cease" and noting that Vermont's FEPA follows Title VII standards).

Cat's Paw liability is premised on principles of agency. *See, e.g., Staub*, 562 U.S. at 421. "[S]ince a supervisor is an agent of the employer, when he causes an adverse employment action the employer causes it." *Id.* Cat's Paw simply makes clear that not only can a supervisor with discriminatory or retaliatory animus take an adverse employment action against an employee directly, but such a supervisor can also influence others (who may or may not harbor their own discriminatory or retaliatory animus) to take an adverse employment action against an employee. In either case, the supervisor is an agent of the employer and, based on unlawful discriminatory or retaliatory animus, has caused an adverse employment action to occur. *Id. See also, e.g.,* Restatement (Third) of Agency § 7.07 (2006) ("An employer is subject to vicarious liability for a tort committed by its employee acting within the scope of employment."); Restatement (Third) of Agency § 2.04 (2006) (stating that an employer is subject to liability for torts committed by employees and noting that *respondeat superior* provides a means to attribute the consequences of one person's acts to another person); Restatement of Employment Law § 4.03 (2015) (An employer is liable for harm caused by the tortious use of supervisory authority unless the employer can demonstrate that it took reasonable care to prevent and promptly correct the abuse of authority or the employee failed to take advantage of any employer-provided opportunity to avoid the harm). The courts often look to the Restatements for guidance on issues of state law, including the Restatements for agency and employment law. *See, e.g., Est. of Kuhling v. Glaze*, 2018 VT 75, 208 Vt. 273, 283, 196 A.3d 1125, 1131 (applying the Restatement (Third) of Agency); *Sys. & Software, Inc. v. Barnes*, 2005 VT 95, ¶¶ 4–5, 178 Vt. 389, 391–92, 886 A.2d 762, 764 (discussing the proposed draft of the third restatement on employment law); *Raiford v. Knapp, M.D.*, No. 218-2016-CV-01220, 2017 WL 2882213, at *2 (N.H. Super. June 27, 2017)

(discussing Restatement (Third) of Agency).

## Conclusion

For the reasons stated above, Dr. Porter should be permitted to present that Cat's Paw theory and supporting evidence at trial, and Defendants' Motion should be denied.

Dated: February 28, 2025               /s/ Geoffrey J. Vitt
                                                   Geoffrey J. Vitt, Esq.
                                                   Vitt & Nunan, PLC
                                                   8 Beaver Meadow Road
                                                   P.O. Box 1229
                                                   Norwich, VT 05055-1229
                                                   (802) 649-5700
                                                   gvitt@vittnunanlaw.com

                                                   Eric D. Jones, Esq.
                                                   Langrock Sperry & Wool, LLP
                                                   210 College Street
                                                   P.O. Box 721
                                                   Burlington, VT 05402
                                                   (802) 864-0217
                                                   ejones@langrock.com

                                                   Sarah H. Nunan, Esq.
                                                   Vitt & Nunan PLC
                                                   8 Beaver Meadow Road
                                                   P.O. Box 1229
                                                   Norwich, VT 05055
                                                   (802) 649−5700
                                                   snunan@vittnunanlaw.com

                                                   ***Attorneys for Plaintiff,***
                                                   ***Misty Blanchette Porter, M.D.***