## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| MISTY BLANCHETTE PORTER, M.D.,<br><br>    Plaintiff,<br><br>vs.<br><br>DARTMOUTH-HITCHCOCK MEDICAL CENTER, DARTMOUTH-HITCHCOCK CLINIC, MARY HITCHCOCK MEMORIAL HOSPITAL, and DARTMOUTH-HITCHCOCK HEALTH,<br><br>    Defendants. | Case No. 2:17-cv-194 |

### DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO QUASH DR. JOANNE M. CONROY'S TRIAL SUBPOENA

Defendants Dartmouth-Hitchcock Medical Center, Dartmouth-Hitchcock Clinic, Mary Hitchcock Memorial Hospital, and Dartmouth-Hitchcock Health (collectively, "Dartmouth Health," or "Defendants") hereby submit this Reply Memorandum in support of their Motion to Quash (the "Motion") the trial subpoena served upon Dartmouth Health's Chief Executive Officer, Dr. Joanne M. Conroy, M.D. ("Dr. Conroy"). *See* ECF Docket No. 199. Plaintiff Dr. Misty Blanchette Porter, M.D.'s ("Plaintiff" or "Dr. Porter") Opposition to Defendants' Motion (the "Opposition") not only mischaracterizes Dr. Conroy's actual statements, but also glosses over the fact that the source of her "knowledge" came from Dr. Edward Merrens, M. D. ("Dr. Merrens"), who is already slated to testify through a trial subpoena from Dr. Porter. *See* ECF Docket No. 206. Under these circumstances, any testimony by Dr. Conroy would be cumulative and represent a complete waste of resources. To be clear, Dr. Conroy had no involvement in, and no personal knowledge of, Dr. Porter's employment, Dr. Porter's termination, closure of the Reproductive Endocrinology and Infertility ("REI") Division or any of the other material facts of this lawsuit.

**ARGUMENT**

I. **Plaintiff's Opposition fails to describe the context of Dr. Conroy's statements and conflates Dr. Conroy's direct quotes with Plaintiff's opinions.**

Because Dr. Conroy's start date at Dartmouth Health was months *after* the Reproductive Endocrinology and Infertility ("REI") Division's closure and corresponding termination of Dr. Porter's employment, Plaintiff can only point to purported statements Dr. Conroy made *after* the relevant time period. Grasping for straws, Dr. Porter asserts that Dr. Conroy had sufficient knowledge about the REI Division's closure and Dr. Porter's termination because "shortly after beginning work [at Dartmouth Health], she received a briefing from Dr. Ed Merrens." *Id*., at 3. Plaintiff conveniently leaves out the fact that this "briefing" only lasted five (5) minutes. *See* ECF Docket No. 199, **Exhibit A**, Deposition of Dr. Conroy, dated September 18, 2019 ("Conroy Dep.") at 27: 17–19. Thus, Dr. Conroy's entire knowledge base for testifying at trial rests on a mere five (5) minute conversation.

Next, Plaintiff claims that Dr. Conroy stated that "the reason leading directly to the closure was a declining birth rate in New Hampshire and the corresponding problems associated with attracting young providers, i.e., doctors who were unwilling to come[.]" *See* ECF Docket No. 206, at 3. Plaintiff claims this comment makes Dr. Conroy's testimony relevant because it was "a complete departure from what Dartmouth Health had been saying" about "the nursing shortage excuse" as the reason for the REI Division's closure. *Id.* However, in her deposition, Dr. Conroy explicitly clarified that she "use[d] the term 'providers' broadly" to include "nurses." Conroy Dep. at 24: 13–17. Thus, Dr. Conroy's statement was aligned with Dartmouth Health's explanation about the nursing shortage leading to the REI Division's closure.

Struggling to establish any basis for forcing Dr. Conroy to lose an entire workday away from Dartmouth Health, Plaintiff also argues that Dr. Conroy's testimony is relevant because, in explaining why Defendants had difficulty in recruiting REI nurses, Dr. Conroy mentioned New Hampshire's

"shortage of women who might have children." *See* ECF Docket No. 206, at 3. However, Dr. Conroy's explanation did not focus on New Hampshire as a whole, but rather "the declining birth rate in this area[.]" Conroy Dep. at 23: 8–13. For example, Dr. Conroy stated that "[t]he majority of young families are actually moving to the southern part of the state, not to the Upper Valley." *Id.*, at 25: 14–16. Given the declining birth rate in Defendants' specific area, Dr. Conroy's explanation of the REI closure is entirely consistent with that of Dr. Merrens. A declining patient population made Dartmouth Health less desirable to REI nurses. Likewise, Dr. Conroy's testimony is also consistent with that of Dr. Maria Padin ("Dr. Padin"), Defendants' Chief Medical Officer, who mentioned that "in the south . . . there's a larger part of the population." **Exhibit 1**, Deposition of Dr. Padin, dated September 25, 2019 at 251: 2–4.

II.  **If the Motion is denied, Dr. Conroy's testimony will be entirely duplicative of any testimony given by Dr. Ed Merrens' testimony**

Setting aside Dr. Conroy's lack of personal knowledge regarding the relevant facts in this case,, any trial testimony given by Dr. Conroy will be entirely duplicative of that of Dr. Merrens. Plaintiff subpoenaed Dr. Merrens to testify at trial on April 1, 2025. Dr. Merrens can testify about everything he said to Dr. Conroy in their five (5) minute conversation. Thus, Dr. Conroy's duplicative testimony should be excluded. *See* Fed. R. Evid. 403; *United States v. Palermo*, 291 F. App'x 418. 420–21 (2d Cir. 2008) (upholding District Court's exclusion of duplicative evidence); *Wega v. Ctr. for Disability Rts. Inc.*, 395 F. App'x 782, 786 (2d Cir. 2010) (excluding potential witness testimony where "Appellant did not submit evidence to show that the prospective witness's testimony would be . . . non-duplicative[.]").

## CONCLUSION

For the foregoing reasons, Dartmouth Health requests that the Court grant Defendants' Motion and order that Dr. Conroy shall not be compelled to testify at trial.

Date: March 7, 2025				Respectfully submitted,

							*/s/ Tristram J. Coffin*
							Tristram J. Coffin
							DOWNS RACHLIN MARTIN PLLC
							199 Main Street
							Burlington, VT 05402
							Telephone: 802-863-2375
							tcoffin@drm.com

							and

							Donald W. Schroeder (admitted *pro hac vice*)
							Morgan McDonald-Ramos (admitted *pro hac vice*)
							Megan E. Martinez (admitted *pro hac vice*)
							FOLEY & LARDNER LLP
							111 Huntington Avenue
							Boston, MA 02199
							Tel: (617) 342-4000
							dschroeder@foley.com
							mmcdonald@foley.com
							memartinez@foley.com

							*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on March 7, 2025, a copy of the foregoing document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

*/s/ Tristram J. Coffin*
Tristram J. Coffin