UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| MISTY BLANCHETTE PORTER, M.D., Plaintiff, <br><br> v. <br><br> DARTMOUTH-HITCHCOCK MEDICAL CENTER, DARTMOUTH-HITCHCOCK CLINIC, MARY HITCHCOCK MEMORIAL HOSPITAL, and DARTMOUTH-HITCHCOCK HEALTH, Defendant. | Docket No. 2:17-CV-194 |

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**

Members of the jury, we are at that part of the trial when I instruct you on the law. You will then go to the jury room to decide the case. I will first summarize the claims in this case, then give some general instructions, and close with the law applicable to each of the specific claims and defenses in this case.

SUMMARY OF THE CASE

The plaintiff in this case is Dr. Misty Porter. She is represented by Geoffrey Vitt, Sarah Nunan, and Eric Jones. The defendants are Dartmouth-Hitchcock Medical Center, Dartmouth-Hitchcock Memorial Hospital, and Dartmouth-Hitchcock Health, referred to collectively as "Dartmouth Health." Dartmouth Health is represented by Donald Schroeder, Morgan McDonald-Ramos, Megan Martinez, and Tristram Coffin.

Dr. Porter asserts that her employment at Dartmouth Health was terminated, and that she was not reassigned to another position, for unlawful reasons. First, she asserts that she was terminated, and not reassigned, in retaliation for reporting and causing to be reported what she reasonably believed to be unlawful, unethical, or medically dangerous conduct, in violation of

Vermont's and New Hampshire's whistleblower statutes, and New Hampshire's wrongful termination standards. Next, she asserts that her termination, and Dartmouth Health's failure to reassign her, was motivated, at least in part, by her disability, in violation of federal and state laws prohibiting such discrimination.

Dartmouth Health denies those claims and asserts that it had legitimate business reasons for the decision to terminate Dr. Porter's employment and not to reassign her.

Now I will turn to the general instructions.

ROLE OF THE COURT, THE JURY, AND COUNSEL[1]

You have listened carefully to the testimony presented to you. Now it is my duty to give you the instructions of the Court as to the applicable law and your two general duties as the jury on this case.

Your first duty is to consider and decide the factual issues of this case. You are the sole and exclusive judges of the facts. You weigh the evidence, you determine the credibility or believability of the witnesses, you resolve any conflicts there may be in the evidence, and you draw any reasonable inferences or conclusions that you believe are justified by the facts as you find them. In a moment, I will define the word "evidence" and instruct you on how to assess it, including how to judge whether the witnesses have been honest and should be believed.

Your second duty is to apply the law that I give you to the facts. Do not single out one instruction alone, but consider the instructions as a whole. You should not be concerned with whether you agree with any instruction given by the Court. You may have a different opinion as to what the law ought to be, but it would be a violation of your sworn duty as jurors to base your

---

[1] United States District Court for the District of Vermont, Recommended Jury Instructions, https://www.vtd.uscourts.gov/sites/vtd/files/JuryInstructions.pdf ("Recommended Instructions") at 1.

verdict on any version of the law other than what is contained in the instructions given by the Court.

The lawyers may have referred to some of the governing rules of law in their argument. However, if you find any differences between the law as stated by the lawyers and the law as stated by me in these instructions, you must follow my instructions. It is the lawyers' job to point out the things that are most significant or most helpful to their side of the case. But remember that the statements and arguments made by the lawyers are not evidence in this case.

In addition, nothing I say in these instructions should be taken as an indication that I have any opinion about the facts of the case, or what that opinion is. It is not my function to determine the facts; rather, that job is yours alone.

You must perform your duty as jurors with complete fairness and impartiality. You should consider the evidence carefully and without sympathy, bias, or prejudice for or against any party. All parties expect that you will diligently examine all of the evidence, follow the law as it is now being given to you, and reach a just verdict regardless of the consequences.

BURDEN OF PROOF — PREPONDERANCE OF EVIDENCE[2]

In this civil case, Dr. Porter has the burden of proving each essential element of her claims by a preponderance of the evidence. The party who has the burden must present the more convincing evidence.

To prove an element by a preponderance of the evidence simply means to prove that something is more likely than not. In other words, in light of the evidence and the law, do you believe that each element of her claim is more likely true than not? If so, you should decide in

---

[2] Recommended Instructions, at 2.

favor of Dr. Porter. If not, or if the evidence is equally balanced, then she has not carried her burden of proof on that element.

Stated another way, a preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. In determining whether a fact, claim, or defense has been proven by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, all the relevant exhibits received in evidence, regardless of who may have produced them, and any stipulations the parties may have entered into.

CREDIBILITY OF WITNESSES[3]

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. The credibility of the witnesses, and the weight to give their testimony, is up to you. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account, among other things, the following:

- the opportunity and ability of the witness to hear or know the things testified to;
- the witness's memory;
- the witness's manner while testifying;
- the witness's interest in the outcome of the case, and any bias or prejudice;
- whether other evidence contradicts the witness's testimony;
- the reasonableness of the witness's testimony in light of all of the evidence; and
- any other factors that bear on believability.

---

[3] Recommended Instructions, at 4.

Inconsistencies or conflicts in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit that testimony. Two or more persons witnessing an event may see or hear it differently. In weighing the effect of inconsistencies or conflicts in the testimony, you should consider whether it involves a matter of importance or an unimportant detail, and whether it results from innocent error or intentional falsehood.

## EXPERT WITNESSES[4]

You have heard testimony from Robert Bancroft who is known as an expert witness. An expert witness is a person who has special knowledge, experience, training, or education about a particular subject. Because of this expertise, an expert witness may offer opinions about one or more of the issues in this case.

In considering an expert witness's testimony, you should evaluate his or her credibility and statements just as you would with any other witness, giving the testimony as much weight as you think it deserves. You should also evaluate whether the expert's opinion is supported by the other evidence in the case, whether the reasons given by the expert in support of his or her opinion make sense, and whether the opinion is supported by the expert's knowledge, experience, training, or education.

You are not required to give the testimony of an expert any greater weight than you believe it deserves just because the witness has been referred to as an expert.

Now, I will discuss the law applicable to the specific claims and defenses in this case.

## WHISTLEBLOWER CLAIMS

Dr. Porter asserts that she was terminated by Dartmouth Health, and not reassigned to another position, in retaliation for reporting and causing to be reported what she reasonably

---

[4] Recommended Instructions, at 5.

5

believed to be unlawful, unethical, or medically dangerous conduct, in violation of Vermont's and New Hampshire's whistleblower statutes, and that she suffered harm as a result. Dartmouth Health denies these claims, and asserts that it had legitimate business reasons for its decision to terminate Dr. Porter.

The Vermont and the New Hampshire whistleblower statutes are functionally the same, so I will discuss them together, pointing out any relevant differences.

Both statutes prohibit employers from terminating an employee in retaliation for certain protected conduct.[5] There is no dispute that Dr. Porter was employed by Dartmouth Health at all relevant times, and that she was terminated and not reassigned to another position.

To establish her claim, Dr. Porter must prove, by a preponderance of the evidence, the following essential elements:

1. that she engaged in protected activity;
2. that Dartmouth Health terminated her employment because of that protected activity; and
3. that the termination of her employment caused her damages.

As to the first element, "protected activity" includes making allegations that there has been a violation of any law or rule, whether state or federal.[6] The Vermont statute goes further and protects allegations of improper quality of patient care, which includes violations of codes of ethics, hospital policies, or any other established standards of care related to patient health or safety.[7]

---

[5] 21 V.S.A. § 507(a)(7); N.H. Rev. Stat. Ann. §275-E:2(1).
[6] 21 V.S.A. § 507(a)(5), (b)(1); N.H. Rev. Stat. Ann. §275-E:2(1)(a).
[7] 21 V.S.A. § 507(a)(4), (b)(1).

Any such activity is protected only if it was undertaken in a good faith effort to address the perceived problem. Dr. Porter need not prove that any violation of law or improper patient care actually occurred. However, she must prove that any such beliefs she had were reasonable under the circumstances.[8]

As to the second element, Dr. Porter must prove that her protected activity caused her termination and Dartmouth Health's decision not to reassign her to another position. Dr. Porter need prove only that her protected activity was a motivating factor in her termination and non-reassignment, even though other factors may have motivated the decision. In other words, Dr. Porter need not prove that her protected activity was the sole or exclusive reason for her termination and non-reassignment; it is sufficient if she demonstrates that her protected activity was a consideration that made a difference in Dartmouth Health's decision.

If you find that Dr. Porter's protected activity was a motivating factor in her termination and non-reassignment, you must find for her on her Whistleblower claims, unless Dartmouth Health proves, by a preponderance of the evidence, that it would have made the same decision even if it had not considered her protected activity.[9]

Dr. Porter claims that Dartmouth Health's stated reasons for her termination are not the true reason, but instead they are a pretext (an excuse) to cover up for retaliation. If you do not believe one or more of the reasons Dartmouth Health offered for the termination, then you may, but are not required to, infer that retaliation was a factor that made a difference in Dartmouth Health's decision. Dr. Porter need not disprove every reason stated by Dartmouth Health in order to prove pretext. She may show that Dartmouth Health's stated reasons for its decisions are

---

[8] 21 V.S.A. § 507(b); N.H. Rev. Stat. Ann. §275-E:2(1)(a).
[9] *McKenny v. John V. Carr & Son, Inc.*, 922 F. Supp. 967 (D. Vt. 1996).

pretextual—in other words, not the true reason—in any of several ways. Some examples of ways (although these are not the only ways) in which you may determine that Dartmouth Health's stated reasons are pretext are: evidence that Dartmouth Health publicly explained its actions in a manner that conflicts with reasons it explained internally, evidence that Dartmouth Health gave different explanations for its decision, evidence that Dartmouth Health acted contrary to a written policy or an established practice, or that Dartmouth Health did not act uniformly in similar situations. If you find pretext, you may, but are not required to, infer that retaliation was the factor that made a difference in Dartmouth Health's treatment of Dr. Porter.

In determining whether Dartmouth Health terminated Dr. Porter because of her protected activity, you may consider the following. The defendants—all of the Dartmouth Health entities—are corporations. A corporation may only act through its employees, and any employee may bind the corporation through the employee's actions or statements, while acting within the scope of the employee's authority and duties.

The evidence may show that the ultimate decision to terminate Dr. Porter was made by Dr. Merrens. Dr. Porter asserts that certain statements made by Dr. DeMars are evidence of discriminatory motive on the part of the Dartmouth Health entities, even though Dr. DeMars was not the ultimate decisionmaker. You are instructed that Dr. Porter is not required to prove that Dr. Merrens knew or should have known of Dr. DeMars's statements, only that Dr. DeMars had a discriminatory motive and that her bias influenced the ultimate decision to terminate Dr. Porter.[10]

I will discuss the third element—damages—later.

---

[10] See generally *Plaintiff's Memorandum in Opposition to Defendants' Motion in Limine to Preclude "Cat's Paw" Theory*, Doc. 207, and authorities cited therein. Also *Federal Jury Practice and Instructions*, §171-27 (6th Ed. 2024).

## DISABILITY DISCRIMINATION

Dr. Porter asserts that she was terminated and not reassigned by Dartmouth Health because of her disability, in violation of federal law and Vermont and New Hampshire anti-discrimination statutes, and that she suffered harm as a result. Dartmouth Health denies these claims and asserts that it had legitimate business reasons for its decision to terminate Dr. Porter.

There is no dispute that Dr. Porter was, in fact, disabled and that she was qualified for both the position from which she was terminated and the alternative position(s) that she wanted.

To establish her claim, Dr. Porter must prove, by a preponderance of the evidence, the following essential elements:

1. that Dartmouth Health terminated her because of her disability; and

2. that the termination of her employment caused her damages.

With respect to the first element, the standards under federal and state law are somewhat different, so I will discuss them separately.

Under federal law—the Americans with Disabilities Act and the Rehabilitation Act—Dr. Porter must prove that Dartmouth Health's decision to terminate her was caused by her disability. It is insufficient if it was merely one motivating factor among others. Dr. Porter must show that, even if there were other motivations, without her protected activity, her employment would not have been terminated.[11]

---

[11] *Porter v. Dartmouth-Hitchcock Med. Ctr*, Doc. 157-1, at 47-48.

Under Vermont[12] and New Hampshire[13] law, Dr. Porter need prove only that her disability was a motivating factor in her termination and non-reassignment, even though other factors may have motivated the decision. In other words, Dr. Porter need not prove that her disability was the sole or exclusive reason for her termination and non-reassignment; it is sufficient if she demonstrates that her disability was a consideration that made a difference in Dartmouth Health's decision.

If you find that Dr. Porter's disability was a motivating factor in her termination and non-reassignment, you must find for her on her state law discrimination claims, unless Dartmouth Health proves, by a preponderance of the evidence, that it would have made the same decision even if it had not considered her disability.[14]

In determining whether Dartmouth Health terminated Dr. Porter because of her disability, you may—under both federal and state law—consider the following. The defendants—all of the Dartmouth Health entities—are corporations. A corporation may only act through its employees, and any employee may bind the corporation through the employee's actions or statements, while acting within the scope of the employee's authority and duties.

The evidence may show that the ultimate decision to terminate Dr. Porter was made by Dr. Merrens. Dr. Porter asserts that certain statements made by Dr. DeMars are evidence of discriminatory motive on the part of the Dartmouth Health entities, even though Dr. DeMars was

---

[12] E.g., *Davis v. Vermont Dept. of Corrections*, 868 F. Supp. 2d 313 (D. Vt. 2012) (standards and burdens of proof under VFEPA are identical to those under Title VII); 42 U.S.C. § 2000e-2(m) (unlawful employment practice is established when "a motiving factor [is established], even though other factors also motivated the practice"). Though that provision of Title VII does not apply to disability discrimination, which is prohibited under a separate statutory framework, Vermont's FEPA covers all prohibited forms of discrimination, including disability, and draws no distinction as to the level of proof required for different protected classes.

[13] *Burnap v. Somersworth Sch. Dist.*, 172 N.H. 632, 637, 232 A.3d 390, 395 (2019) (noting that when interpreting the New Hampshire Law Against Discrimination, the court uses "the experience of the federal courts in construing similar provisions of Title VII").

[14] *McKenny v. John V. Carr & Son, Inc.*, 922 F. Supp. 967 (D. Vt. 1996).

not the ultimate decisionmaker. You are instructed that Dr. Porter is not required to prove that Dr. Merrens knew or should have known of Dr. DeMars's statements, only that Dr. DeMars had a discriminatory motive and that her bias influenced the ultimate decision to terminate Dr. Porter.[15]

Again, I will discuss damages later.

---

[15] See generally *Plaintiff's Memorandum in Opposition to Defendants' Motion in Limine to Preclude "Cat's Paw" Theory*, Doc. 207, and authorities cited therein. Also *Federal Jury Practice and Instructions*, §171-27 (6th Ed. 2024).

WRONGFUL TERMINATION

Finally, Dr. Porter asserts a claim for wrongful termination under New Hampshire law. Dartmouth Health denies that claim.

To establish her claim, Dr. Porter must prove, by a preponderance of the evidence, the following essential elements:

1. that she performed an act that public policy would encourage;

2. that Dartmouth Health, in terminating her employment and in not reassigning her, was motivated by bad faith, malice, or retaliation; and

3. that the termination of her employment caused her damages.

In addressing the first element, the public policy may be based on non-statutory policies; in other words, public policies that are not laid out in laws. With respect to the second element, malice may be established by proof that the evidence as a whole does not support the stated reason for the termination and failure to reassign Dr. Porter.[16]

I will now turn to damages.

DAMAGES

If you decide in favor of Dartmouth Health, you will not consider these instructions about damages. But, if you decide for Dr. Porter, you must determine the amount of money that will compensate her for each item of harm that was caused by Dartmouth Health's conduct. This compensation is called "damages."

Please keep in mind the following general principles as you deliberate. Remember that Dr. Porter has the burden of proving damages by a preponderance of the evidence. Damages may

---

[16] *Porter v. Dartmouth-Hitchcock Med. Ctr.*, Doc. 157-1, at 66-67.

not be based on sympathy, speculation, or guesswork. In making your decision, you should be guided by the evidence, common sense, and your best judgment.[17]

With respect to any one of her claims, Dr. Porter must prove the damages—meaning the dollar value of the injury—that she suffered due to her termination. The purpose is not to reward Dr. Porter or to punish Dartmouth Health, but to place Dr. Porter in the same position she would have been in had any retaliation or discrimination not occurred. Dr. Porter seeks an award of back pay, front pay, and other compensation, such as for emotional pain and suffering.

"Back pay" is the compensation lost by Dr. Porter from the date of termination until today. This compensation includes all lost wages and related compensation, such as employment benefits, that she would have earned during that time.

"Front pay" is any compensation, including benefits, lost by Dr. Porter from today into the future. In calculating front pay, you should consider the following factors: (a) the amount of wages and benefits that she more likely than not would have received from Dartmouth Health between today and the date she would have retired; (b) whether she has other employment opportunities; (c) what amount of wages and benefits she will probably receive from another employer until her retirement; and (d) the possibility of inflation and wage increases in the future. Any award of front pay must be limited to a reasonable period of time. The amount must not be speculative.

If you choose to award front pay, you must reduce that future pay to its present value, because it represents payment now for a loss that will not occur until some future date. Basically, Dr. Porter will be reimbursed in advance. To find present value, you must determine the amount of money that, if reasonably invested today, will provide Dr. Porter with the amount of her

---

[17] Recommended Instructions, at 24.

future damages. You may consider expert testimony in determining the present cash value of future economic damages.[18]

There is no exact standard for measuring damages for emotional pain and mental anguish experienced in the past or to be experienced in the future. The amount, if any, should be fair and just in the light of the evidence.

You must not consider whether any of the parties in this case has insurance. The presence or absence of insurance is totally irrelevant. You must decide this case based only on the law and the evidence.[19] You should not add any sum for interest on damages, litigation costs, or attorney fees. The court will make those awards if appropriate.

## PUNITIVE DAMAGES

If you find for Dr. Porter on her claims for disability discrimination under the Americans with Disabilities Act or under Vermont or New Hampshire law, or if you find for Dr. Porter on her claim under Vermont's whistleblower protection law, then you should proceed to determine whether to award punitive damages.

Unlike the categories of damages already discussed, punitive damages are meant to punish a party for its clearly outrageous conduct, and to stop others from acting similarly in the future. In order to award punitive damages, you must find two things:

First, you must find that Dartmouth Health's wrongful conduct was outrageously reprehensible; that is, that the conduct—whether acts or failures to act—was egregious, morally deserving of blame, to a degree of outrage frequently associated with a crime.

---

[18] Recommended Instructions, at 30.
[19] Recommended Instructions, at 32.

Second, you must find that DH acted with malice. You may find malice if you find that Dartmouth Health's reprehensible conduct was intentional and deliberate; that is, that the conduct was the result of Dartmouth Health's bad motive, ill will, or personal spite or hatred toward Dr. Porter. You may also find malice even if Dartmouth Health's motivation behind the intentional, outrageous conduct was to benefit itself, rather than to harm Dr. Porter. Alternatively, you may find malice if Dartmouth Health's wrongful conduct was not intentional, but instead was done with a reckless or wanton disregard of the substantial likelihood that it would cause egregious harm to Dr. Porter; that is, if DH acted—or failed to act—with conscious and deliberate disregard of a known, substantial, and intolerable risk of harm to Dr. Porter, with the knowledge that the conduct was substantially certain to result in the threatened harm.

Where the defendants are corporations, such as is the case here, in order to find that the corporation must pay punitive damages, you must find that the conduct justifying punitive damages was corporate conduct, or was conduct permitted by the corporation. Where the management of the corporation was involved in the conduct itself, it may be considered to be corporate conduct. Where the management of the corporation has knowledge of wrongful conduct by lower-level employees, the corporation may be determined to have permitted the conduct. If you find either corporate conduct, or conduct permitted by the corporation, you may find that the corporation must pay punitive damages.

In determining the amount of punitive damages to award, if any, you may consider such factors as the nature of Dartmouth Health's conduct, the nature of the resulting harm to Dr. Porter, Dartmouth Health's wealth or financial status, and the degree of malice or wantonness in its acts.[20]

---

[20] Recommended Instructions, at 34-35.

Dated: <u>March 10, 2025</u>　　　　　　　　　<u>/s/ Geoffrey J. Vitt</u>
　　　　　　　　　　　　　　　　　　　　Geoffrey J. Vitt, Esq.
　　　　　　　　　　　　　　　　　　　　Vitt & Nunan, PLC
　　　　　　　　　　　　　　　　　　　　8 Beaver Meadow Road
　　　　　　　　　　　　　　　　　　　　P.O. Box 1229
　　　　　　　　　　　　　　　　　　　　Norwich, VT 05055-1229
　　　　　　　　　　　　　　　　　　　　(802) 649-5700
　　　　　　　　　　　　　　　　　　　　gvitt@vittnunanlaw.com

　　　　　　　　　　　　　　　　　　　　Eric D. Jones, Esq.
　　　　　　　　　　　　　　　　　　　　Langrock Sperry & Wool, LLP
　　　　　　　　　　　　　　　　　　　　210 College Street
　　　　　　　　　　　　　　　　　　　　P.O. Box 721
　　　　　　　　　　　　　　　　　　　　Burlington, VT 05402
　　　　　　　　　　　　　　　　　　　　(802) 864-0217
　　　　　　　　　　　　　　　　　　　　ejones@langrock.com

　　　　　　　　　　　　　　　　　　　　Sarah H. Nunan, Esq.
　　　　　　　　　　　　　　　　　　　　Vitt & Nunan PLC
　　　　　　　　　　　　　　　　　　　　8 Beaver Meadow Road
　　　　　　　　　　　　　　　　　　　　P.O. Box 1229
　　　　　　　　　　　　　　　　　　　　Norwich, VT 05055
　　　　　　　　　　　　　　　　　　　　(802) 649−5700
　　　　　　　　　　　　　　　　　　　　snunan@vittnunanlaw.com

　　　　　　　　　　　　　　　　　　　　***Attorneys for Plaintiff,***
　　　　　　　　　　　　　　　　　　　　***Misty Blanchette Porter, M.D.***

CERTIFICATE OF SERVICE

I hereby certify that, on March 10, 2025, a copy of the foregoing document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

/s/ Geoffrey J. Vitt
Geoffrey J. Vitt