UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Misty Blanchette Porter, M.D.,

       Plaintiff,

       v.

Dartmouth-Hitchcock Medical Center,
Dartmouth-Hitchcock Clinic,
Mary Hitchcock Memorial Hospital, and
Dartmouth-Hitchcock Health,

       Defendants.

Civil Action No. 2:17–cv–194

## ORDER
(Doc. 201)

Defendants Dartmouth-Hitchcock Medical Center, Dartmouth-Hitchcock Clinic, Mary

Hitchcock Memorial Hospital, and Dartmouth-Hitchcock Health (collectively, "Dartmouth

Health") have filed a Motion *in Limine* to preclude Plaintiff Misty Blanchette Porter, M.D., from

referencing, "through oral argument, trial testimony, or pleadings," "duplicative testimony

related to Dr. Porter's qualifications as a physician." (Doc. 201-1 at 1.) The Court heard oral

argument on the Motion on March 14, 2025.

Citing Federal Rules of Evidence 401 and 403, Dartmouth Health argues that Dr. Porter's

professional qualifications and expertise are not relevant to any issues in dispute, including

whether Dartmouth Health's stated reason for its decision to close the Reproductive

Endocrinology and Infertility (REI) Division at Dartmouth Hitchcock Medical Center (DHMC)

and terminate Dr. Porter's employment was pretext for disability discrimination and/or

whistleblower retaliation. According to Dartmouth Health, "[t]he fact that Dr. Porter is a great

physician—or a horrible physician—does not make it more or less probable that her employment was terminated because of whistleblower retaliation and/or disability discrimination." (*Id.* at 6.) Moreover, Dartmouth Health contends that testimony about Dr. Porter's qualifications will be unnecessarily repetitive and duplicative, will confuse the issues, and will waste the jury's time. Further, Dartmouth Health asserts that Dr. Porter will likely attempt to introduce many witnesses to testify about her pedigree and skill, but there is no need for this testimony because Dartmouth Health is "prepared to stipulate to the fact that Dr. Porter is an eminently qualified physician." (*Id.* at 1–2.)

Dr. Porter opposes the Motion. (*See* Doc. 210.) Preliminarily, Dr. Porter asserts that Dartmouth Health's presumptive list of witnesses that she will call at trial to testify about her qualifications as a physician (*see* Doc. 201-1 at 3–4) is inaccurate, and that Dartmouth Health is needlessly "catastrophiz[ing]" this issue. (*Id.* at 1.) Dr. Porter also contends that her qualifications as a physician are relevant to whether Dartmouth Health's stated reasons for terminating her employment, rather than retaining her as a non-REI physician at DHMC, were pretext for unlawful retaliation and discrimination. Dr. Porter further claims that her qualifications as a physician are relevant because (a) she is required to show that her reports of below-standard medical care by other providers were made in good faith, meaning that she made those reports with the reasonable belief that other medical providers were violating medical standards; and (b) she is required to show that, even with a disability, she remained a "capable, skilled, valuable, and 'qualified' physician" (*id.* at 3), who Dartmouth Health would have retained after the REI Division closed but for its discriminatory animus. Finally, regarding Dartmouth Health's claim that a stipulation to her qualifications renders testimony on that topic unnecessary or improper, Dr. Porter asserts that such a stipulation "[would] not provide the jury

with the level of detail that is needed to evaluate the decision not to retain or reassign her."
(*Id.* at 7.)

## Legal Standard

The Federal Rules of Evidence do not explicitly authorize trial judges to rule on motions *in limine*, but "the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *see United States v. Goodale*, 831 F. Supp. 2d 804, 808 (D. Vt. 2011). "The purpose of an *in limine* motion is to aid the trial process by enabling the [c]ourt to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation marks omitted). "A court's determination of a motion *in limine* is preliminary and may be subject to change as the case unfolds." *State v. Deutsche Telekom AG*, 419 F. Supp. 3d 783, 787 (S.D.N.Y. 2019); *see Luce*, 469 U.S. at 41–42 ("[T]he district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

The district court "should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2006). It is the movant's burden to establish that the challenged evidence is not admissible for any purpose. *Goodale*, 831 F. Supp. 2d at 808.

"Relevant evidence" is generally admissible. Fed. R. Evid. 402. Under Federal Rule of Evidence 401, evidence is "relevant" if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *See United States v. Abu-Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010) ("To be relevant, evidence need not be sufficient by itself to prove a fact in issue, much less to prove it beyond a

reasonable doubt."); *Contemp. Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 927 (2d Cir. 1977) ("Evidence need not be conclusive in order to be relevant.").

Relevant evidence may nonetheless be excluded under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by "a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." In weighing the probative value of evidence against Rule 403 considerations, "the general rule is that the balance should be struck in favor of admission." *S.E.C. v. McGinnis*, No. 5:14–cv–6, 2015 WL 5643186, at *14 (D. Vt. Sept. 23, 2015) (citing *Hines v. Consol. Rail Corp.*, 926 F.2d 262, 274 (3d Cir. 1991) (warning that "excluding evidence under [Rule] 403 at the pretrial stage is an extreme measure")). Therefore, appellate review of a district court's evaluation of evidence under Rule 403 "generally maximize[s] [the evidence's] probative value and minimize[s] its prejudicial effect." *Abu-Jihaad*, 630 F.3d at 132 (internal quotation marks omitted).

<u>Analysis</u>

As it is unclear how many witnesses Dr. Porter intends to question about her qualifications as a physician, and the extent of any such inquiries, the Court does not exclude testimony as to Dr. Porter's qualifications before trial. Dartmouth Health does not propose a particular limit on the number of these potential witnesses, or a method for determining when their individual or cumulative testimony has become "a waste of the Court's [and the jury's] time." (Doc. 201-1 at 1.) In any event, as discussed below, evidence of Dr. Porter's qualifications as a physician is relevant to the case and its probative value is not substantially outweighed by a danger of unfair prejudice or needless presentation of cumulative evidence.

## I.    Relevance

Evidence of Dr. Porter's qualifications as a physician is relevant to this case for several reasons. First, in order to prove her claims under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* (ADA) and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*, Dr. Porter must demonstrate that she "can perform the essential functions of the employment position that [she] holds or desires." *Porter v. Dartmouth-Hitchcock Med. Ctr.*, 92 F.4th 129, 148 (2d Cir. 2024) (internal quotation marks omitted). Further, in order to prove that Dartmouth Health should have provided her with a "reassignment accommodation" after the REI Division's closure, Dr. Porter must demonstrate "that a vacancy existed into which . . . she might have been transferred." *Id.* at 152 (quoting *Jackan v. New York State Dep't of Lab.*, 205 F.3d 562, 566 (2d Cir. 2000)). To meet these burdens, Dr. Porter must introduce evidence demonstrating that she was qualified for an existing vacancy at DHMC at the time of the REI Division's closure. As the Second Circuit explicitly noted in this case, Dr. Porter's "recognized skills" are relevant to show that "reassigning Dr. Porter to OB/GYN instead of terminating her employment would have been a reasonable accommodation, and that she would have been so assigned but for her disability." *Porter*, 92 F.4th at 153. The jury's decision on this issue affects its decision on "Dr. Porter's claims that her employment was terminated on the basis of her disability in violation of the ADA, the Rehabilitation Act, and the laws of New Hampshire and Vermont." *Id.* at 154.

Second, in order to prove her claims under New Hampshire's Whistleblowers' Protection Act, Dr. Porter must prove that she, "*in good faith*," reported or caused to be reported "*what [she] ha[d] reasonable cause to believe*" was a violation of any law or rule adopted under the laws of New Hampshire, a political subdivision of the State, or the United States. *Porter*,

92 F.4th at 155 (quoting N.H. Rev. Stat. Ann. § 275-E:2(I)(a)). To demonstrate that her reporting of Dr. Hsu's and Dr. Seifer's professional competence issues was made "in good faith" and with "reasonable cause to believe" that they were violating laws or rules, Dr. Porter must show that she was aware of those laws or rules. Stated differently, Dr. Porter must show that she is qualified in the medical areas practiced within the REI Division, i.e., that she is aware of what conduct in those areas may be considered illegal, unethical, or endangering to patient safety, including specifically matters of compliance, consent, and proper billing procedures, among other matters. *See Hidalgo-Semlek v. Hansa Med., Inc.*, 498 F. Supp. 3d 236, 262 (D.N.H. 2020) (holding that, although a whistleblower "need not prove that the conduct she was reporting or objecting to *actually* violated a rule or law," she must demonstrate that she had "*reasonable cause to believe* that [the conduct] had violated the law" (emphases added)).

Third, Dr. Porter's qualifications are relevant to a key issue in this case: whether Dartmouth Health's rationale for closing the REI Division and terminating Dr. Porter's employment was true, or whether that rationale was pretext for unlawful retaliation and/or discrimination against Dr. Porter. If Dr. Porter was not qualified as a physician in any capacity other than as a physician within the REI Division at Dartmouth Health, the jury may find Dartmouth Health's stated rationale for terminating and not reassigning Dr. Porter more plausible. On the other hand, if Dr. Porter was qualified in medical areas other than those covered by the REI Division, including in obstetrics and gynecology, the jury could consider that evidence in determining whether Dartmouth Health "was motivated by bad faith, malice, or retaliation" in not reassigning Dr. Porter to another division at Dartmouth Health when the REI Division closed. *See Porter*, 92 F.4th at 155 ("Under New Hampshire common law, a plaintiff may recover against her former employer on a claim of wrongful discharge for, *inter alia*, being

'discharged because [s]he performed an act that public policy would encourage' . . . , if she shows that the defendant, in terminating her employment[,] 'was motivated by bad faith, malice, or retaliation.'" (first alteration in original) (quoting *Cloutier v. Great Atlantic & Pacific Tea Co.*, 121 N.H. 915, 921–22, 436 A.2d 1140, 1143–44 (1981))).

Finally, although not addressed in the parties' submissions, Dr. Porter's qualifications as a physician are likely relevant to the issue of damages, and may be relevant to determining whether a public policy violation occurred and to what extent. (*See* Doc. 173 at 7 ("The public interest in the closure of the [REI] Division may be difficult to gauge, but the court accepts that it is substantial. DHMC is one of a handful of hospitals in our region large enough to support the mission of serving patients suffering from infertility.").)

## II.    Prejudicial Effect

Dartmouth Health argues that even if evidence of Dr. Porter's qualifications as a physician is relevant, the risk of "wasting the jury's time and confusing the issues" "seriously outweighs" the probative value of the evidence. (Doc. 201-1 at 1.) Rule 403 favors admissibility, permitting exclusion only when the probative value of the evidence is substantially outweighed by unfair prejudice. *See* Fed. R. Evid. 403; *United States v. LaFlam*, 369 F.3d 153, 155 (2d Cir. 2004) ("Because the district court retains broad discretion to weigh potential prejudice against probative value, appellate courts reviewing a district court's evaluation of evidence under Federal Rule of Evidence 403 generally maximiz[e] its probative value and minimiz[e] its prejudicial effect." (alterations in original) (internal quotation marks omitted)).

As discussed above, evidence of Dr. Porter's qualifications as a physician is relevant to the claims at issue in this case. The Court is not persuaded that the jury will decide the case against Dartmouth Health on an improper basis if this evidence is admitted. Furthermore, given

the relevance of the evidence, any possible prejudice does not substantially outweigh its probative value. However, the Court cautions Plaintiff that excessive testimony on Dr. Porter's qualifications as a physician may be objectionable as cumulative, requiring the Court to place reasonable limits on such testimony. Moreover, if a danger of unfair prejudice arises in the context of other evidence admitted at trial, Dartmouth Health remains free to object at that time.

## III.     Proposed Stipulation to Dr. Porter's Qualifications

Dartmouth Health's offer to stipulate to Dr. Porter's qualifications as a physician does not establish that any testimony on this topic would be necessarily duplicative. A party may reject an opposing party's offer to stipulate to certain evidence in favor of presenting the relevant facts at trial. *See Old Chief v. United States*, 519 U.S. 172, 186–89 (1997); *see also United States v. Gantzer*, 810 F.2d 349, 351 (2d Cir. 1987) ("A party is not obliged to accept an adversary's 'judicial admission' in lieu of proving the fact, particularly in the context of a criminal prosecution where the accused seeks to stipulate to an element of the crime charged." (citations omitted)). The Supreme Court recognizes that a stipulation may not carry the same force as evidence establishing the fact:

> [T]he accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away rests on good sense. A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it. People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard. A convincing tale can be told with economy, but when economy becomes a break in the natural sequence of narrative evidence, an assurance that the missing link is really there is never more than second best.

*Old Chief*, 519 U.S. at 189.

Numerous courts have applied this reasoning in the context of civil cases. *See, e.g.*, *Boyce v. Weber*, 19-CV-3825 (JMF), 2021 WL 2821154, at *7 (S.D.N.Y. July 7, 2021) ("In general, . . .

the party with the burden of proof . . . is 'entitled to prove its case by evidence of its own choice[,]' and . . . a defendant generally 'may not stipulate . . . his way out of the full evidentiary force of the case.'" (last omission in original) (internal quotation marks omitted) (quoting *United States v. Cottman*, 116 F.3d 466, 1997 WL 340344, at *3 (2d Cir. June 20, 1997) (unpublished table decision))); *Grandoe Corp. v. Gander Mountain Co.*, 761 F.3d 876, 889 (8th Cir. 2014) ("[E]xcept in rare circumstances, a party's stipulation cannot render evidence irrelevant, for the plaintiff is entitled to prove its case free from any defendant's option to stipulate the evidence away[.]" (second alteration in original) (citation and internal quotation marks omitted)); *Blue v. Int'l Brotherhood of Elec. Workers Loc. Union 159*, 676 F.3d 579, 585 (7th Cir. 2012) (holding that documents employer defendant wanted to exclude "are not prejudicially cumulative simply because [defendant] was willing to concede" their veracity and effect, and that "[w]ithin the limits of Federal Rule of Evidence 403, [the plaintiff] was entitled to make her case with the evidence of her own choosing"); *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 369 F.3d 293, 315 (3d Cir. 2004) (restricting a party to a "sterile concession" could prejudice that party at trial because "removing critical issues of fact from the jury without an adequate explanation runs the risk of distorting jury deliberations"); *Leon v. FedEx Ground Package Sys., Inc.*, 218 F. Supp. 3d 1267, 1282 (D.N.M. 2016) ("[T]he Court cannot ordinarily force the parties to stipulate to facts; parties can, except under very narrow circumstances, turn down the offered stipulation and proceed to prove the facts with the robustness that the party wishes.").

Accordingly, Dartmouth Health's offer to stipulate at trial that Dr. Porter is "an eminently qualified physician" (Doc. 201-1 at 1–2), does not render Dr. Porter's evidence on this point irrelevant or prejudicially cumulative under Rules 401 and 403.

## **<u>Conclusion</u>**

For these reasons, the Court DENIES Dartmouth Health's Motion *in Limine* to preclude

Dr. Porter from introducing evidence regarding her qualifications as a physician. (Doc. 201.)

Dated at Burlington, in the District of Vermont, this 18th day of March 2025.

*/s/ Kevin J. Doyle*
United States Magistrate Judge
