UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| Misty Blanchette Porter, M.D., <br><br> Plaintiff, <br><br> v. <br><br> Dartmouth-Hitchcock Medical Center, <br> Dartmouth-Hitchcock Clinic, <br> Mary Hitchcock Memorial Hospital, and <br> Dartmouth-Hitchcock Health, <br><br> Defendants. | Civil Action No. 2:17–cv–194 |

## ORDER
(Doc. 202)

Defendants Dartmouth-Hitchcock Medical Center, Dartmouth-Hitchcock Clinic, Mary Hitchcock Memorial Hospital, and Dartmouth-Hitchcock Health (collectively, "Dartmouth Health") have filed a Motion *in Limine* to preclude "inadmissible hearsay and character evidence regarding the competence, experience[,] and qualifications" of Dr. Albert Hsu and Dr. David Seifer. (Doc. 202.) Plaintiff Dr. Misty Blanchette Porter opposes the Motion. (Doc. 209.) The Court heard oral argument on the Motion on March 14, 2025.

Drs. Porter, Hsu, and Seifer were physicians in the Reproductive Endocrinology and Infertility (REI) Division at Dartmouth Hitchcock Medical Center (DHMC) at the time of its closure in 2017. Prior to the closure of the REI Division, Dr. Porter and others had reported to various supervisory employees at Dartmouth Health that they believed Dr. Hsu and Dr. Seifer, respectively, had engaged in unethical, improper, or harmful medical practices at DHMC.

Dartmouth Health contends that evidence of the basis for Dr. Porter's complaints about Drs. Hsu and Seifer is "not relevant to any fact of consequence in this litigation." (Doc. 202-1 at 4.) The Court disagrees, concluding that this evidence is relevant to Dartmouth Health's reason for closing the REI Division and terminating Dr. Porter's employment.[1] The Court also disagrees that "the risk of unfair prejudice seriously outweighs any probative value" that this evidence may have. (*Id.* at 5; *see id.* at 7 ("Hearing details of patient care and compliance issues by other physicians in the REI Division will unfairly prejudice the jury against Defendants.").) Although evidence of Dr. Hsu's and Dr. Seifer's performance, qualifications, and competency at DHMC may include "[d]isparaging testimony" (*id.* at 5), there has been no showing that this will unfairly prejudice the jury. *See United States v. Davis*, 624 F.3d 508, 512 (2d Cir. 2010) ("[E]vidence may be 'highly prejudicial' but not necessarily "*unfairly* prejudicial.""). Nor has there been a showing that this evidence will confuse or mislead jurors. The Court therefore finds that the probative value of this evidence outweighs its potential prejudicial effect. *See Conway v. Icahn & Co.*, 16 F.3d 504, 510 (2d Cir. 1994) ("The probative value/unfair prejudice balancing required by Fed. R. Evid. 403 . . . is a matter confided to the discretion of the district court.").

Dartmouth Health further contends that Dr. Porter's anticipated attempt to introduce testimony about Dr. Hsu's and Dr. Seifer's performance, qualifications, and competency, demonstrates her "intent . . . to engage in character assassination by making an end-run outside the bounds of the Federal Rules of Evidence," in particular the prohibition on specified uses of character evidence under Rule 404. (Doc. 202-1 at 2; *see id.* at 5.) Dartmouth Health asserts that

---

[1] For the reasons stated in its Order denying Dartmouth Health's Motion *in Limine* to preclude evidence regarding Dr. Porter's qualifications as a physician, the Court disagrees with Dartmouth Health that its offer to stipulate that Dr. Porter and others "lodged multiple complaints about [Drs. Hsu and Seifer]" (Doc. 202-1 at 4), requires preclusion of evidence on that topic. (*See* Doc. 229 at 8 (quoting *United States v. Gantzer*, 810 F.2d 349, 351 (2d Cir. 1987) for the proposition that "[a] party is not obliged to accept an adversary's 'judicial admission' in lieu of proving the fact").)

2

Dr. Porter, "through witness testimony and other documentary evidence . . . , will undoubtedly try to introduce improper character evidence throughout the trial." (*Id.* at 6.)

"Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). Similarly, the Rule prohibits use of "any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But such evidence is permissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

There has been no showing that Dr. Porter intends to introduce evidence of Dr. Hsu's and Dr. Seifer's competence, experience, and qualifications in a manner that would run afoul of Rule 404's prohibition on character evidence. Considering this issue without the factual context in which the evidence might be introduced at trial, and given the claims at issue in this case, it is unclear to the Court how Dr. Porter might use reports about issues with Dr. Hsu's and Dr. Seifer's medical practices at DHMC as "[e]vidence of [their] character or character trait . . . to prove that on a particular occasion [they] acted in accordance with the character or trait," or as "[e]vidence of any . . . crime, wrong, or act . . . to prove [their] character in order to show that on a particular occasion [they] acted in accordance with the character." Fed. R. Evid. 404(a)(1), (b)(1).

As the Second Circuit detailed in its decision in this case, it is more likely that Dr. Porter will use evidence of negative reports about Dr. Hsu's and Dr. Seifer's competence, experience, and qualifications in an attempt to demonstrate that supervisory employees at DHMC were aware of these reports and were motivated by retaliatory animus to close the REI Division and

terminate Dr. Porter's employment. *See Porter v. Dartmouth-Hitchcock Med. Ctr.*, 92 F.4th 129, 159 (2d Cir. 2024) ("Given Dr. Merrens's testimony that his decisions in April and May 2017--to close REI and not retain Dr. Porter--were based fundamentally on *the problematic practices and performance of Drs. Seifer and Hsu*, and on Dr. Porter's 'understanding' and her 'involving herself' to do 'a whole range of things,' a rational juror could permissibly infer that Dr. Merrens was in fact aware that one category of 'things' Dr. Porter had done was to report on practices of her two colleagues that she reasonably believed to be illegal, unethical, or endangering patient safety, and that his reference to a 'dysfunction' on the part of Dr. Porter was code for her reporting activities." (emphasis added)); *id.* at 161 (noting that "the record includes evidence that Dr. Merrens knew (a) that *the performances of Dr. Hsu and Dr. Seifer were substandard*, (b) that Dr. Porter understood that their conduct was problematic, (c) that Dr. DeMars knew her position as OB/GYN chair was in jeopardy *because of Dr. Seifer's failure[s]*, giving her a motive to retaliate against Dr. Porter for reporting Dr. Seifer's failures, and (d) that Dr. DeMars was displeased about being warned--even in advance--*about shortcomings of a candidate* she favored, and thus would not recommend retaining Dr. Porter unless she could be kept in a box" (emphases added)); *id.* at 167–68 ("[A] rational juror would not be required to credit Dr. DeMars's testimony that she wanted only the best for Dr. Porter[, and] could instead infer that Dr. DeMars's representations and recommendations to Dr. Merrens convincing him to terminate Dr. Porter rather than reassigning her to OB/GYN, were motivated by bad faith, malice, or retaliation, given, *inter alia*, . . . Dr. DeMars's blaming Dr. Porter *for Dr. Seifer's failure—* despite *the pre-hiring warnings from Dr. Seifer's former colleagues and the numerous multi-source, on-site criticisms of his performance at REI*[.]" (emphases added)). Therefore, even assuming for the sake of argument that such evidence constituted impermissible character

4

evidence, its use is likely permissible "for another purpose;" specifically, to prove motive, intent, or knowledge relevant to the claims at issue in this case.

Finally, Dartmouth Health does not identify any particular statement about Dr. Hsu or Dr. Seifer that it anticipates Dr. Porter attempting to introduce into evidence, arguing generally that "statements regarding the competency, qualifications, and performance of Drs. Hsu and Seifer cannot be admitted unless they fall under a recognized exception to the hearsay rule." (Doc. 202-1 at 8.) The Court declines to issue a blanket exclusion order pre-trial regarding all evidence on this topic without knowing the context in which such evidence might be introduced. "No such 'blanket' ruling can issue on the admissibility of possible testimony and evidence." *Keefe v. LendUS, LLC*, 659 F. Supp. 3d 196, 199 (D.N.H. 2023). Depending on the basis for their requested admission at trial, statements regarding Dr. Hsu's and Dr. Seifer's competence may not be hearsay. *See id.* at 200; Fed. R. Evid. 801(c)(2) (defining hearsay as a statement that is offered "to prove the truth of the matter asserted in the statement"). Alternatively, statements on this subject may be subject to an exception to the hearsay rule. *See* Fed. R. Evid. 803.

Trial courts may exclude evidence on an *in limine* motion "only when the evidence is clearly inadmissible *on all potential grounds*." *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2006) (emphasis added). The Court reserves ruling on the admissibility of statements regarding the competency, qualifications, and performance of Drs. Hsu and Seifer until the time of trial, when it will consider potential admission of evidence in the context in which it is offered. *See United States v. Goodale*, 831 F. Supp. 2d 804, 808 (D. Vt. 2011) ("The trial judge may reserve judgment on a motion *in limine* until trial to ensure the motion is considered in the proper factual context."); *Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Group*,

937 F. Supp. 276, 287 (S.D.N.Y. 1996) (reserving judgment on motion *in limine* "until trial when admission of particular pieces of evidence is in an appropriate factual context").

For these reasons, the Court DENIES Dartmouth Health's Motion *in Limine* to preclude "inadmissible hearsay and character evidence regarding the competence, experience[,] and qualifications" of Dr. Hsu and Dr. Seifer (Doc. 202).

Dated at Burlington, in the District of Vermont, this 19th day of March 2025.

                                                   */s/ Kevin J. Doyle*
                                                   United States Magistrate Judge