UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| Misty Blanchette Porter, M.D., <br><br> Plaintiff, <br><br> v. <br><br> Dartmouth-Hitchcock Medical Center, <br> Dartmouth-Hitchcock Clinic, <br> Mary Hitchcock Memorial Hospital, and <br> Dartmouth-Hitchcock Health, <br><br> Defendants. | Civil Action No. 2:17–cv–194 |

### ORDER
(Doc. 199)

Defendants Dartmouth-Hitchcock Medical Center, Dartmouth-Hitchcock Clinic, Mary Hitchcock Memorial Hospital, and Dartmouth-Hitchcock Health (collectively, "Dartmouth Health") have filed a Motion to Quash the trial subpoena served on Dartmouth Health's CEO, Dr. Joanne Conroy. Dartmouth Health asks the Court to quash Dr. Conroy's subpoena for two reasons. First, Dartmouth Health argues that Dr. Conroy's testimony is not relevant under Fed. R. Evid. 401 because she was not CEO of Dartmouth Health during any of the events giving rise to this case, including Dartmouth Health's decision to close the REI Division and to end Dr. Porter's employment. (Doc. 199-1 at 2.) Dr. Conroy did not begin work for Dartmouth Health until approximately two months after the REI Division closed and Dr. Porter's employment was terminated. (*Id.* at 1–2.) Second, Dartmouth Health argues that enforcing the subpoena would be "unfairly prejudicial and unduly burdensome" to Dartmouth Health because Dr. Conroy would need to "step away from her critical duties as CEO for at least a day." (*Id.*) Dr. Porter opposes Dartmouth Health's Motion. (*See generally* Doc. 206.) The Court heard oral argument on the Motion on March 14, 2025.

Rule 45 provides that "[o]n timely motion, the court for the district where compliance is required shall quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). On a motion to quash a subpoena, the party issuing the subpoena bears the initial burden of demonstrating that the information sought is relevant and material. *Popat v. Levy*, No. 15-CV-1052W(Sr), 2020 U.S. Dist. LEXIS 205484, at *11 (W.D.N.Y. Nov. 3, 2020). The burden then shifts to the party seeking to quash the subpoena to demonstrate that the subpoena is overbroad, duplicative, or unduly burdensome. *Id.* at *11–12. Motions to quash are "entrusted to the sound discretion of the district court." *In re Fitch Inc.*, 330 F.3d 104, 108 (2d Cir. 2003).

The Court finds that Dr. Conroy's testimony is relevant and material to the issue of pretext. Dartmouth Health states that "[t]he fundamental issue of this case is whether the decision to close the REI Division and terminate Dr. Porter's employment was pretext for disability discrimination and/or whistleblower retaliation." (Doc. 199-1 at 4.) Pretext is also relevant to Dr. Porter's claims for wrongful discharge. (Doc. 50 at 30–36.) If Dartmouth Health offered varying explanations for why the Division closed, the inconsistency would be relevant to the jury's determination of the actual reason for terminating Dr. Porter's employment. Indeed, the record contains an email from Dr. Ed Merrens, a senior officer at Dartmouth Health, suggesting that Dartmouth Health was not entirely transparent about its reasons for closing the Division:

> While on the surface we are pinning the dissolution of our reproductive endocrinology program on our failure to maintain and recruit nurses for this work, it is ultimately the dysfunction of the physicians who worked in this area for years (as well as recent hires) and ultimately a failure of leadership. . . . The fact that failures of such programs due to nursing shortages are not common and we'll be referring patients to a similar, rural academic REI center in Burlington[,] Vermont, will make our explanation to the public, patients and the media, well, rather thin.

(Doc. 140-19 at 2.)

Dr. Conroy's anticipated testimony may provide further evidence of Dartmouth Health's allegedly varying explanations for the closure of the Division. Shortly after beginning work as CEO, Dr. Conroy gave an interview to a local newspaper and mentioned that the REI program closed "as a result of being unable to recruit new providers" because "the declining birth rate in this area . . . wasn't attractive to some of the young up-and-coming providers that we wanted to recruit here." (Doc. 206-1 at 2–3, 22:8–23:16.) Until that interview, no high-level official at Dartmouth Health had cited a declining birth rate as contributing to the decision to close the REI Division. Dr. Conroy's apparent introduction of a new rationale for closing the Division, months after the decision to close the Division had been made, tends to make it more probable—albeit only slightly more probable—that Dartmouth Health's explanation for closing the Division was pretextual. *See United States v. Al-Moayad*, 545 F.3d 139, 176 (2d. Cir 2008) (holding that evidence is subject to a "very low standard" of relevance); *United States v. Quattrone*, 441 F.3d 153, 188 (2d Cir. 2006) ("[S]o long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry.")

Moreover, Dartmouth Health's internal disagreement about the factors leading to the close of the Division continued after the interview. Dr. Leslie DeMars (the chair of the OB/GYN department) emailed Dr. David Seifer (the Director of the REI Division) after the interview recounting a statement she had made to Dr. Conroy after the interview. Apparently Dr. DeMars had told Dr. Conroy that she hoped Dr. Conroy "had been misquoted in the article, because if that is the information that has been given her, it is completely untrue, and now a different narrative that is in the public eye." (Doc. 199-2 at 29, 34:14–22.) Dr. DeMars's email does not specify which part of Dr. Conroy's explanation regarding the closure of the REI Division she considered "completely untrue." The jury would be entitled to consider these potentially

3

inconsistent explanations for the closure of the REI Division—including Dr. Conroy's explanation in her interview and Dr. DeMars's subsequent contradiction—in assessing pretext. Dr. Conroy's testimony is relevant under Fed. R. Evid. 401.

However, the Court has wide discretion under Rule 403 to exclude even relevant evidence if the probative value is "substantially outweighed by a danger of" undue delay, wasting time, or needlessly presenting cumulative evidence. Dartmouth Health argues that the "risk of wasting the jury's time substantially outweighs the probative value of Dr. Conroy's testimony." (Doc. 199-1 at 5.) The Court disagrees. Again, Dr. Conroy's testimony proposes a previously undisclosed justification for shuttering the REI Division: New Hampshire's declining birth rate. The jury will need to decide whether Dartmouth Health's explanations for terminating Dr. Porter's employment were pretext for unlawful discrimination and retaliation. Evidence that Dartmouth Health's CEO identified, post hoc, a new motivating factor for the decision to close the REI Division would not waste the jury's time because it relates to a central issue: the reason for closing the REI Division.[1]

Finally, the Court finds that Dartmouth Health has not met its burden of showing that requiring Dr. Conroy to testify would be unduly burdensome under Fed. R. Civ. P.

---

[1] Dartmouth Health also challenges Dr. Porter's characterization of Dr. Conroy's testimony. According to Dr. Porter's Opposition, Dr. Conroy testified in part that "the reason leading directly to the closure was a declining birth rate in New Hampshire and the corresponding problems associated with attracting young providers, i.e., doctors who were unwilling to come. . . ." (Doc. 206 at 3.) Thus, Dr. Porter contends that Dr. Conroy's testimony credits the closure of the REI division to the lack of doctors willing to come to New Hampshire—not, as Dr. Merrens had previously stated, a nursing shortage. (*Id.*) Dartmouth Health points out that Dr. Conroy "explicitly clarified that she used the term 'providers' broadly to include nurses." (Doc. 212 at 2) (internal quotation marks and alteration omitted). However, even crediting this explanation, Dr. Conroy's testimony does not duplicate that of Dr. Merrens. A jury could indeed find that Dr. Conroy's "explanation of the REI closure is entirely consistent with that of Dr. Merrens"—that is, that "a declining patient population made Dartmouth Health less desirable to REI nurses." (Doc. 212 at 2–3.) But Dr. Conroy's testimony that a declining birth rate caused the nurse shortage is relevant because the fact that no Dartmouth Health official had previously cited a declining birth rate as a factor leading to the closure of the Division tends to make it more probable that Dartmouth Health's explanation for closing the Division was pretextual. Fed. R. Evid. 401. In other words, Dr. Conroy's testimony is not "entirely duplicative" of Dr. Merrens's testimony because only Dr. Conroy—not Dr. Merrens—mentioned that a declining birthrate contributed to the decision to close the Division, and only Dr. Conroy can explain why she believed that to be the case.

4

45(d)(3)(A)(iv). "[A]n individual seeking to quash a Rule 45 subpoena cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden." *Oakley v. MSG Networks, Inc.*, No. 17-cv-6903 (RJS), 2025 U.S. Dist. LEXIS 8951, at *6 (S.D.N.Y. Jan. 15, 2025) (internal quotation marks omitted). Dartmouth Health has not submitted affidavits or other evidentiary proof describing the burden that the trial subpoena imposes on Dr. Conroy. *See, e.g.*, *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 262 F.R.D. 293, 300 (S.D.N.Y. 2009) (denying motion to quash subpoena for individuals who lived in London when they had financial means to travel, could fly to one of three airports in the court's vicinity, and did not submit affidavits describing the burden); *Kirschner v. Klemons*, No. 99 Civ. 4838 (RCC), 2005 U.S. Dist. LEXIS 9803, at *3 (holding that it is not an undue burden for an 88-year-old non-party witness with mobility problems to testify at trial when the party seeking to quash the subpoena provided "no affidavit or specific information regarding the manner and extent of the burden and the injurious consequences of insisting upon compliance").

Dartmouth Health asserts generally that Dr. Conroy would need "to allocate considerable time and resources away from her regular business activities as CEO of New Hampshire's only academic health system" to "testify in court hours away from her work office and residence." (Doc. 199-1 at 6.) But a moving party's claim of harm "must be based on more than stereotypical and conclusory statements." *See Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 926 (8th Cir. 1999). Courts in this Circuit have declined to quash subpoenas even when movants faced significant challenges in appearing for trial. *See, e.g.*, *Aristocrat Leisure Ltd.*, 262 F.R.D. at 300; *Kirschner*, 2005 U.S. Dist. LEXIS 9803, at *3; *James v. Runyon*, No. 91-CV-246, 1993 U.S. Dist. LEXIS 6773, at *6–8 (N.D.N.Y. May 17, 1993) (holding that movant non-party witness is not subjected to undue burden by testifying at trial because the Court's interest in having all available information germane to the controversy

outweighs the temporary interruption in the movant's ongoing substance abuse treatment). "Inconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant testimony." *Macklin v. Sparta Ins. Co.*, 2022 U.S. Dist. LEXIS 179371, at *36–37 (S.D.N.Y. Sep. 30, 2022) (internal quotation marks omitted). The Court recognizes that Dr. Conroy occupies the Chief Executive Officer position at Dartmouth Health. However, Dartmouth Health has not met its burden to demonstrate the undue burden caused by compliance with the subpoena. Given the relevance of Dr. Conroy's anticipated testimony to the issues the jury must decide, and the relative proximity of Dartmouth Health in New Hampshire to the courthouse in Burlington, Vermont, the Court declines to quash the subpoena.

For the reasons discussed above, Defendants' Motion to Quash Dr. Joanne Conroy's Trial Subpoena (Doc. 199) is DENIED.

Dated at Burlington, in the District of Vermont, this 20th day of March 2025.

*/s/ Kevin J. Doyle*
United States Magistrate Judge