UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| MISTY BLANCHETTE PORTER, M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 2:17-cv-194 |
| | ) |
| DARTMOUTH-HITCHCOCK MEDICAL CENTER, DARTMOUTH-HITCHCOCK CLINIC, MARY HITCHCOCK MEMORIAL HOSPITAL, and DARTMOUTH HITCHCOCK HEALTH, | ) |
| Defendants. | ) |

**DEFENDANTS' RENEWED MOTION TO PRECLUDE THE TESTIMONY OF ROBERT BANCROFT BASED ON NEW MARCH 19, 2025 REPORT**

Now come Defendants Dartmouth-Hitchcock Medical Center, Dartmouth-Hitchcock Clinic, Mary Hitchcock Memorial Hospital, and Dartmouth Hitchcock Health (collectively, "Dartmouth Health") and submit this Renewed Motion to Preclude the Testimony of Robert Bancroft Based on New March 19, 2025 Report. As grounds for this Renewed Motion, Dartmouth Health asserts as follows:

**BACKGROUND**

I. March 14, 2025 Hearing

The Court held an evidentiary hearing on Dartmouth Health's Motion *in Limine* to Preclude the Testimony of Robert Bancroft on March 14, 2025 (*see* ECF Nos. 208, 228). At the hearing, Dr. Bancroft was examined regarding, *inter alia,* his August 26, 2024 report of economic losses sustained by Plaintiff Misty Blanchette Porter ("Plaintiff") and, in particular, a chart he had

1

prepared in conjunction with that report. A copy of the August 26, 2024 report (the third prepared by Dr. Bancroft in connection with this matter) is included as <u>Exhibit A</u> to this Motion.

Under questioning, Dr. Bancroft admitted that several key assumptions he had used in developing his August 26, 2024 report, if changed, could make his conclusions inaccurate. He also admitted that he lacked factual information underpinning some of his assumptions and findings and that, depending what that information revealed, his conclusions could be different. Dr. Bancroft's August 26, 2024 analysis asserted that Plaintiff suffered $4,329,258 in Total Economic Loss.

Dr. Bancroft was questioned closely on several assertions that appeared speculative, counterfactual, illogical, economically unsound, and/or reliant upon hearsay. These primarily included:

- a claim/assumption that Plaintiff would have worked full-time at Dartmouth Health but only 0.6 FTE at the University of Vermont Medical Center ("UVMMC") starting January 1, 2025. Dr. Bancroft attributed all of the difference in Plaintiff's pay from this speculative and self-serving choice to Dartmouth Health as damages;

- a presumed series of annual 2.5% pay increases at Dartmouth Health, despite the fact that Plaintiff's earnings history did not reflect that;

- a presumed professorship at Dartmouth Health, but not at UVMMC, resulting in a 5% pay increase that would have happened in 2019; and

- an asserted damages figure calculating prejudgment interest of 12% annually for a "sum certain" despite lack of certainty in the sum allegedly owed based on his three reports and their differing calculation methodology.

Other issues were considered at the hearing as well. In particular, Dr. Bancroft admitted on cross-examination that: (1) he had not considered the most recent earnings data for Dr. Porter from UVMMC, to include the year 2024; (2) he was unaware that Dr. Porter was promoted to full Professor of Medicine at UVMMC in July 2023; and (3) if Dr. Porter's earnings were higher as a result of her attaining the rank of professor or otherwise through demonstrated 2024 earnings, his

2

chart of damages would be inaccurate. This is because the heart of Dr. Bancroft's analysis is a comparison between what Dr. Porter earned at Dartmouth Health and what she earned and will earn at UVMMC. To the extent that Dr. Porter made more money at Dartmouth Health and less at UVMMC, her damages are increased according to Dr. Bancroft.

II.   <u>Dr. Bancroft's New Report Dated March 19, 2025</u>

On March 19, 2025, Dr. Bancroft presented a new report and analysis with accompanying charts. The new report estimates that Dr. Porter's Total Economic Loss in connection with her transition from Dartmouth Health physician to UVMMC full professor is $1,787.722. A copy of the March 19, 2025 report is included as <u>Exhibit B</u> to this Motion. In the March 19, 2025 report, Dr. Bancroft made eight substantive changes to his previous analysis that had been the subject of the March 14, 2025 evidentiary hearing. Many of the changes were drawn from information and testimony elicited at the evidentiary hearing. For example, in response to questioning by counsel for Dartmouth Health about his previous failure to incorporate Dr. Porter's actual 2024 earnings, Dr. Bancroft has now reviewed Plaintiff's 2024 W-2 and revised his analysis to include that information. Dr. Bancroft also incorporated a Dartmouth Health "pay freeze" assumption in response to questioning at the evidentiary hearing. He further accounted for Dr. Porter's son's in-state tuition as a UVM fringe benefit when confronted. Despite acknowledging at the hearing that he could have used other interest rates, in the new report Dr. Bancroft continued to include a 12% per annum pre-judgment interest rate for the annual losses he calculated as incurred by Dr. Porter, citing the Vermont statutory interest rate for payment of a sum certain, which has been limited by case law.

This new expert calculation, made two business days before trial, changed Dr. Bancroft's conclusions of Total Economic Loss from $4,329,258 to $1,787,722 – a change of almost $2.6 million.

Notwithstanding Dartmouth Health's longstanding discovery requests seeking information about Dr. Porter's current earnings, and notwithstanding the central role her current earnings play in Plaintiff's claims about the financial differences between her old job and her current one, Plaintiff only produced information about these matters on March 18, 2025, four days after the evidentiary hearing and less than a week before trial. It is undisputable that Dr. Porter was appointed to be a full Professor at UVM's Larner College of Medicine in May 2023, effective July 1, 2023. Although this information was responsive to discovery requests and clearly pertinent to Dr. Bancroft's loss calculations—indeed, Dr. Bancroft testified that he would seek this information out upon learning of its existence—it was inexplicably not provided to him for more than twenty months.

Moreover, although Dr. Porter's 2024 earnings were requested in discovery, and the analysis of her earnings at UVMMC was a central part of Dr. Bancroft's damages conclusions in all of his three prior reports, the evidence of these 2024 earnings was not provided to him (nor apparently requested by this purported expert in economics) until after he was confronted at the hearing. Evidence demonstrating Dr. Porter's earnings was only produced on March 18, 2025, in the form of a W-2 from UVMMC and the University of Vermont College of Medicine.

Dartmouth Health seeks to exclude Dr. Bancroft's testimony because the manner in which the opinions and discovery were disclosed have made it impossible for Dartmouth Health to fully respond to the evolving expert analyses. As a possible alternative, Dartmouth Health requests to

have its own expert economist present her analysis for the comparative earnings and damages issues.[1]

III. The Promotion

Dr. Porter received a promotion in July 2023 to full professor at the UVM Larner College of Medicine. Though this occurred nearly two years ago, Dr. Bancroft was unaware of it at the time of the evidentiary hearing. The issue of promotion to professor was one of central significance because Dr. Bancroft opined, both in his August 2024 report and at the hearing, that such a promotion at medical schools would be rewarded with a 5% pay increase. His August 2024 report, prepared for use in discussing damages at a renewed mediation that occurred in September 2024 for the purpose of reaching a settlement short of trial, projected damages that would accrue because Dr. Porter would have been promoted to full professor at Dartmouth Health in 2019. Dr. Bancroft did not opine that she would become full professor at UVMMC.

Nonetheless, as Plaintiff and counsel knew at the time of the mediation, Dr. Porter had become a full professor at UVM in July 2023. This resulted in the need to adjust Dr. Bancroft's damages calculations and chart to reflect the UVM pay increase, and damages reduction, that would flow from that change.

IV. The Change in Pay

The 2024 W-2s for the University of Vermont Medical School and the Larner College of Medicine were only produced on Tuesday, March 18, 2025 despite prior standing requests to which they were responsive. Dr. Bancroft failed to include this information in his August 26, 2024 report, produced as the parties tried again to mediate the case. The W-2's were only produced in response

---

[1] Dartmouth Health says this is only a possible alternative because in the one day since it became apprised of the new earnings evidence, it has not yet been able to fully confer with its economist and ascertain her availability to provide this testimony.

to a letter sent by counsel for Dartmouth Health after the March 14, 2025 hearing in which they figured prominently. Although central to the analysis submitted by Dr. Bancroft on August 26, 2024 for use in attempting to settle the case at mediation, for some reason, Dr. Bancroft did not seek this information then – or as the case headed to trial.

V.     Late Disclosure of Expert Opinion and Prejudice to Dartmouth Health

The timing of yet another expert analysis by Dr. Bancroft – although welcome to the extent that the projected loss was reduced by almost $2.6 million– is incredibly prejudicial to Dartmouth Health. This is the fourth expert report submitted by Dr. Bancroft. It appears to be an inherently moving target with numerous changed assumptions and calculations, many of which are speculative, based on hearsay, lacking economic rationale or incoherent. The failure to timely provide these materials leaves Dartmouth Health unable to effectively rebut Dr. Bancroft's testimony. With four days left before trial, key discovery on damages has only just been produced, and Dartmouth Health has now received a very different expert report incorporating new opinions that will be presented to the jury.

Moreover, as described through examination at the hearing, Dr. Bancroft's prior report is rife with unsustainable assumptions that render it so unreliable that it cannot be depended upon. Plaintiff must have agreed, because within days of Dr. Bancroft's testimony and after the requested information was produced, she is now proffering a new report with a massively different $2.6 million conclusion.

VI.    Suggested and Fair Remedy

Because of the limitations of Dr. Bancroft's report, and given that the report is wildly deviating from prior iterations, produced literal days before trial, and based upon discovery that was requested months ago and not provided, his testimony should be precluded in full.

6

As a secondary solution, if Dr. Bancroft is permitted to testify, he should not be able to submit the illustrative chart attached to his fourth report (or other earlier iterations) to the jury. An alternative approach, one which given the late disclosure Dartmouth Health is not yet able to determine is fully viable, Dartmouth Health should be able to present its own expert economist to provide analysis of the discrete universe of financial documents in the case. Plaintiff's only possible complaint about such a witness is that she has not been given lengthy notice. That objection of course rings hollow as Plaintiff has not abided by her discovery obligations, rendering Dartmouth Health unable to respond to key evidence at trial. Expert disclosures were due years ago. Plaintiff has not sought an extension of the discovery period in this regard to offer new opinions, nor proffered good cause for the extremely late and serial nature of the additional disclosures of expert opinions in this matter.

## **CONCLUSION**

Given the late production of discovery and the late and varying disclosures of expert opinions—produced on the eve of trial and many months later than was required or reasonably possible to respond to—the fair thing to do is to exclude Dr. Bancroft from testifying in this matter in full. Or, if the Court permits Dr. Bancroft to testify, it should not permit him to use the defective and untimely chart as substantive or demonstrative evidence.[2] As an alternative, it should permit Dartmouth Health to present its own expert witness.[3] Not permitting these remedies undermines the ability of Dartmouth Health to effectively defend itself against these widely varying claims of large damages.

---

[2] It seems incontrovertible that Dr. Bancroft's narrative letter and assumptions cannot be introduced by him because they are hearsay without an exception. They, of course, can be introduced by Dartmouth Health as admissions of a party opponent and otherwise as impeachment evidence.

[3] If the Court thought it proper under the circumstances, Dartmouth Health would offer the Plaintiff the opportunity to depose its expert economist witness prior to testimony, perhaps over one of the weekends during trial.

Date: March 20, 2025

Respectfully submitted,

*/s/ Tristram J. Coffin*

**DOWNS RACHLIN MARTIN PLLC**

Tristram J. Coffin
199 Main Street
Burlington, VT 05402
Telephone: 802-863-2375
tcoffin@drm.com

**FOLEY & LARDNER LLP**

Donald W. Schroeder (admitted *pro hac vice*)
Morgan McDonald-Ramos (admitted *pro hac vice*)
Megan E. Martinez (admitted *pro hac vice*)
111 Huntington Avenue
Boston, MA 02199
Tel: (617) 342-4000
dschroeder@foley.com
mmcdonald@foley.com
memartinez@foley.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on March 20, 2025, a copy of the foregoing document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

*/s/ Morgan McDonald-Ramos*
Morgan McDonald-Ramos