UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Misty Blanchette Porter, M.D.,

     Plaintiff,

     v.                                                   Civil Action No. 2:17–cv–194

Dartmouth-Hitchcock Medical Center,
Dartmouth-Hitchcock Clinic,
Mary Hitchcock Memorial Hospital, and
Dartmouth-Hitchcock Health,

     Defendants.

**JURY CHARGE**

**General Instructions**

Now that you have heard the evidence and arguments, it is my duty to instruct you on the applicable law. My instructions come in two parts. The first part consists of general instructions about the task of the jury and the rules and principles that should guide you in your deliberations. The second part consists of instructions that apply to the specific claims and defenses in this case. I ask that you pay equal attention to both parts.

It is your duty as jurors to follow the law, and to apply it to the facts as you find them from the evidence presented in the courtroom. You are not to single out one instruction alone as stating the law but must consider the instructions as a whole. You are not to be concerned with the wisdom of or reasoning behind any rule of law stated by the court. Regardless of any opinion you may have as to what the law is or ought to be, it would be a violation of your sworn duty to base a verdict on any view of the law other than that given to you in these instructions. It would

1

also be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything other than the evidence presented during the trial.

The lawyers have referred to some of the rules of law in their arguments. If any difference appears between the law as stated by the lawyers and the law as stated by the court in these instructions, you must follow the court's instructions.

Our judicial system requires you to carefully and impartially consider all of the evidence, follow the law, and reach a just verdict, regardless of the consequences.

### Jurors as Finders of Fact/Rulings of the Court

You and you alone are the triers of the facts. Each of you, as jurors, must determine the facts for yourself in reaching a verdict. By the rulings that I made during the course of the trial, I did not intend to express my own views about this case.

### Sympathy/Prejudice

Neither sympathy nor prejudice, for or against the parties or any other person involved with this case, should influence you in any manner in reaching your verdict. Your deliberations should be well reasoned and impartial.

### Evidence in the Case

The evidence in this case consists of the sworn testimony of the witnesses, the exhibits admitted into evidence, and any stipulated facts, regardless of which party presented the evidence. When the attorneys on both sides stipulate or agree to the existence of a fact, you must, unless otherwise instructed, accept the stipulation and regard that fact as proved. You may give the stipulated fact, like any other evidence, the weight you think it deserves. Any evidence that has been stricken or excluded, as when an objection is sustained by the court, must be disregarded and you may not consider it in rendering your verdict.

### Arguments/Statements/Objections of the Attorneys

The opening statements and closing arguments of the attorneys, their questions and objections, and all other statements they made during the course of the trial, are not evidence. The attorneys have a duty to object to evidence that they believe is not admissible. You should not draw any conclusions or make any judgment from the fact that an attorney has objected to evidence.

### Court's Rulings on Objections

From time to time, the court has been called on to determine the admissibility of certain evidence following the attorneys' objections. You should not concern yourself with the court's reason for any rulings on objections. Whether offered evidence is admissible is purely a question of law for the court and not a concern of the jury. In admitting evidence to which objections have been made, the court does not determine what weight should be given to that evidence, nor does it assess the credibility of the evidence. If the court excludes evidence in response to an attorney's objection, you will dismiss the evidence from your mind completely and entirely, and you will refrain from speculation about the nature of any exchange regarding the evidence between the court and the attorneys held out of your hearing.

### Evidence: Direct or Circumstantial

There are two types of evidence from which you may find the facts of this case: direct and circumstantial. Direct evidence is the testimony of someone who asserts actual knowledge of a fact, such as an eyewitness. Circumstantial evidence is proof of a chain of facts and circumstances tending to prove or disprove an issue in the case. For example, if a witness were to testify that he or she had seen cows in a field, that would be an example of direct evidence that there were cows in a field. On the other hand, if a witness were to testify that he or she had seen

cow tracks in the field, that would be an example of circumstantial evidence that there had been cows in the field. The law does not require a party to prove its claims or defenses by direct evidence alone. Rather, one or more of the essential elements of each of the claims or defenses may be established by reasonable inference from other facts which are established by direct testimony; and circumstantial evidence alone may be sufficient proof.

The law makes no distinction between the weight to be given to direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence than of direct evidence. You should consider all the evidence in the case and give it as much or as little weight as you think it deserves.

### Credibility of Witnesses

You are the sole judges of the credibility of the witnesses, and the weight to give their testimony is up to you. In considering the testimony of any witness, you may take into account his or her ability and opportunity to observe; his or her demeanor while testifying; any interest or bias he or she may have; and the reasonableness of his or her testimony, considered in light of all the evidence in the case. Consider also any relation each witness may bear to either side of the case, any bias or prejudice, the manner in which each witness might be affected by the verdict, and the extent to which each witness's testimony is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit a witness's testimony. Two or more persons witnessing an incident or transaction may see or hear it differently. It is your duty to reconcile conflicting testimony if you can. In weighing the effect of a discrepancy, consider

whether it pertains to a matter of importance or to an unimportant detail, and whether the discrepancy may result from innocent error or intentional falsehood.

You may give the testimony of each witness the amount of weight you think it deserves: you may believe all of it, part of it, or none of it at all. You do not have to accept the testimony of any witness, even if it is uncontradicted. It is for you to say what you believe and disbelieve.

In other words, what you must try to do in deciding credibility is to size up a witness in light of his or her demeanor, the explanations given, and all the other evidence in the case. Always remember that you should use your common sense and good judgment.

**Impeachment of a Witness**

A witness may be discredited or "impeached" by contradictory evidence, by a showing that the witness testified falsely concerning a matter, or by evidence that at some other time the witness said or did something inconsistent with the witness's present testimony. It is your exclusive province to give the testimony of each witness whatever degree of credibility or amount of weight you think it deserves.

If you find that a witness testified untruthfully in some respect, you may consider that fact in deciding what credence to attach to other testimony from that witness. Considering that fact as well as all other relevant evidence, you may accept or reject the testimony of the witness in whole or in part. In making this determination, you may consider whether the witness purposely made a false statement or merely made an innocent mistake, whether the inconsistency concerns an important fact or a small detail, and whether the witness had a reasonable explanation for the inconsistency.

**Expert Witnesses**

You have heard evidence from one witness, Dr. Robert Bancroft, who is known as an "expert witness." An expert witness is a person who has special knowledge, experience, training, or education in his or her profession or area of study. Because of this expertise, an expert witness may offer an opinion about one or more of the issues in the case. In evaluating the testimony of Dr. Bancroft in this case, you should evaluate his credibility and statements just as you would for any other witness. You should also evaluate whether Dr. Bancroft's opinion is supported by the facts that have been proved, and whether the opinion is supported by Dr. Bancroft's knowledge, experience, training, or education. You are not required to give the testimony of Dr. Bancroft any greater weight than you believe it deserves just because he has been referred to as an expert witness.

**Number of Witnesses**

The fact that one side may have called more witnesses than the other side is of no significance. Your task is to evaluate the credibility of the witnesses and to weigh all of the evidence.

**Personal Knowledge and Experience of Jurors**

In deliberating, you are not expected to put aside your common sense or your own observations and life experience. However, a juror having special knowledge of a subject may neither state this knowledge to fellow jurors nor act upon it himself or herself in arriving at a verdict. You must not tell your fellow jurors about matters that are based on your own special knowledge concerning an issue in the case that did not come from evidence received in the courtroom.

As jurors, your job is to decide this case based solely on the evidence presented during the trial and my instructions to you. As you were instructed at the beginning of the trial, you are not to investigate or research the law or facts relevant to the trial. I remind you that you must not seek or receive any information about this case from the Internet, including Google, Facebook, Wikipedia, or any other websites, or from any other source including newspapers, magazines, law books, or dictionaries. Do not search for or receive any information about the parties, the lawyers, the witnesses, the evidence, the law, or any place or location mentioned in the trial. Until I tell you that your jury service is completed, do not communicate with anyone, including your family and friends, about the evidence or issues in this case.

### Burden of Proof: Preponderance of the Evidence

Because Dr. Porter is the one bringing this case, she has the burden of proof. She must prove each essential element of the claims she alleges by what is known as "a preponderance of the evidence," i.e., the greater weight of the evidence. To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not. In other words, a preponderance of the evidence means evidence that—when considered and compared with evidence opposed to it—has more convincing force and produces in your minds a belief that what is sought to be proved is more likely true than not true. A preponderance of the evidence refers to the quality and the persuasiveness of the evidence, not to the number of witnesses or documents. In determining whether a claim has been proven by a preponderance of the evidence, you may consider the relevant testimony of all the witnesses, regardless of who called them, and all exhibits received into evidence, regardless of who submitted them.

If you find that the credible evidence on an issue is evenly divided between the parties, you must decide that issue against the party having the burden of proof. That rule follows from

the fact that the party bearing this burden must prove more than simple equality of evidence: he or she must prove the element at issue by a preponderance of the evidence. On the other hand, the party with this burden of proof need prove no more than a preponderance. So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof— meaning, what that party claims is true is more likely true than not true—then that element will have been proven by a preponderance of the evidence.

If, after considering all the evidence, you are satisfied that Dr. Porter has carried her burden on at least one of the claims she alleges, then you must find for Dr. Porter on that/those claims. On the other hand, if after such consideration, you find the evidence to be in balance or equally probable, or if you find the evidence tips in favor of Dartmouth Health, then Dr. Porter has failed to sustain her burden and you must find for Dartmouth Health.

### Corporation Acts Through Its Employees

Defendants Dartmouth-Hitchcock Medical Center, Dartmouth-Hitchcock Clinic, Mary Hitchcock Memorial Hospital, and Dartmouth-Hitchcock Health (referred to throughout the trial and in this document as "Dartmouth Health") are corporate entities. A corporation acts through its employees. Therefore, the act of any Dartmouth Health employee that occurred while he or she was on duty and acting within the scope of his or her employment duties shall be considered the act of Dartmouth Health.

### All Persons Equal Before the Law

The fact that Dartmouth Health is a corporation and Dr. Porter is an individual must not enter into or affect your verdict. This case should be considered and decided by you as a dispute between parties of equal standing in the community. All persons, both corporations and individuals, stand equal before the law and are to be treated as equals in a court of justice.

**Influenced Decision-Maker**

An employer may be liable for unlawful acts, even when so-called "neutral decision-makers" made the final decision regarding the act, if the employee proves, by a preponderance of the evidence, that the neutral decision-maker relied on a supervisor who had an unlawful bias or retaliatory motive against the employee.

In other words, if you find that Dr. Merrens was the decision-maker regarding the termination of Dr. Porter's employment without reassignment to another position at Dartmouth Health, and if you find that Dr. Merrens did not personally have an unlawful bias or retaliatory motive against Dr. Porter, Dartmouth Health may nonetheless be held liable if you find, by a preponderance of the evidence, that a supervisor of Dr. Porter's (like Dr. DeMars) had an unlawful bias or retaliatory motive to terminate Dr. Porter without reinstatement to another position at Dartmouth Health and Dr. Merrens relied on that supervisor when deciding to terminate Dr. Porter's employment without reassignment to another position at Dartmouth Health.

**Overview of Claims**

As you have seen and heard in this trial, this is an employment lawsuit brought by Dr. Misty Blanchette Porter against Dartmouth Health. Dr. Porter claims that she was terminated by Dartmouth Health because of her whistleblower complaints about conduct by other physicians and because of her disability. Dartmouth Health claims it had a legitimate, non-discriminatory business reason for terminating the employment of Dr. Porter in conjunction with the closure of Dartmouth Health's Reproductive Endocrinology and Infertility (REI) Division.

Now I will instruct you regarding each of Dr. Porter's claims: (1) violation of the New Hampshire Whistleblowers' Protection Act; (2) disability discrimination and retaliation under the

Americans with Disabilities Act (ADA), the Rehabilitation Act, and the applicable laws of New Hampshire and Vermont; (3) wrongful discharge under New Hampshire law; and (4) retaliation under the applicable laws of New Hampshire. I will also instruct you regarding Dartmouth Health's defenses and regarding damages.

### New Hampshire Whistleblowers' Protection Act

Dr. Porter alleges that she was terminated by Dartmouth Health, and was not reassigned to another position at Dartmouth Health, in retaliation for her reporting about (and/or advising others to report about) the conduct of two physicians at Dartmouth Health that she reasonably believed to be illegal, fraudulent, unethical, or harmful to patients, in violation of New Hampshire's Whistleblowers' Protection Act. Dartmouth Health denies these claims, and asserts that it had a legitimate business reason for its decision to terminate Dr. Porter's employment and not reassign her to another position with Dartmouth Health.

New Hampshire's Whistleblowers' Protection Act prohibits employers from retaliating against an employee for reporting what he or she reasonably believes is a violation of the law. The Act safeguards employees from being discriminated against for making a good faith report, verbally or in writing. Its purpose is to encourage employees to come forward and report violations without fear of losing their jobs and to ensure that as many alleged violations as possible are resolved informally within the workplace.

In order to establish a claim under New Hampshire's Whistleblowers' Protection Act, Dr. Porter must demonstrate, by a preponderance of the evidence, the following three elements:

First:    Dr. Porter, in good faith, reported or caused to be reported, what she had reasonable cause to believe was a violation of any law or rule adopted under the laws of New Hampshire, a political subdivision of New Hampshire, or the United States;

Second:        Dartmouth Health terminated Dr. Porter's employment and failed to reassign her to another job at Dartmouth Health; and

Third:         There was a causal connection between Dr. Porter's reporting and her termination from Dartmouth Health without reassignment to another job at Dartmouth Health.

### 1. "Reported in good faith"

In this context, "good faith" means "absence of malice" and "honesty of intention." Reporting "in good faith" means the employee *reasonably believed* that a violation of a law or rule was happening; the employee need not prove that a violation of a law or rule *was in fact* happening. In other words, the Act does not require an actual violation of a law or rule but only that an employee reasonably believe that such a violation has occurred.

In reporting a violation to her employer, the employee is not required to reference any specific law or rule that the employer has allegedly violated. The employer is presumed to be familiar with the laws and regulations governing its business, and to consider a report to have been made if a reasonable employer would have understood from an employee's complaint that the employee was reciting a violation of law.

### 2. "Termination of employment"

The parties have agreed on the second element: that Dartmouth Health terminated Dr. Porter's employment and did not reassign her to another job at Dartmouth Health. Thus, this element is satisfied.

### 3. "Causal connection"

To find in favor of Dr. Porter on this claim, you must find a causal connection between her termination and her reporting about (and/or advising others to report about) the conduct of two physicians at Dartmouth Health that she reasonably believed to be illegal, fraudulent,

unethical, or harmful to patients. In other words, you must find that Dr. Porter's termination occurred "because" of her reporting. This may be shown by circumstantial evidence. For example, you may find that there is sufficient causation through temporal proximity, that is, that Dartmouth Health's termination of Dr. Porter followed shortly after Dartmouth Health became aware of Dr. Porter's reporting. Other ways you may find causation could be through (a) Dartmouth Health's disparate treatment of fellow employees who engaged in similar conduct as Dr. Porter, or (b) deficiencies in Dartmouth Health's articulated reasons for terminating Dr. Porter.

In addition, to support the required finding of causation for this claim, you must find that Dr. Porter reported the alleged violations to a person having supervisory authority over her. In other words, at least one supervisor or decisionmaker at Dartmouth Health must have known that Dr. Porter had reported about (and/or advised others to report about) the conduct that she believed to be illegal, fraudulent, unethical, or harmful to patients.

Dartmouth Health claims it did not terminate Dr. Porter because of her whistleblowing activity (i.e., reporting that two Dartmouth Health physicians were engaging in conduct that she thought was unlawful, unethical, or dangerous to patients), but rather, because it made a business decision to close its REI Division, resulting in the termination of all three physicians in the Division, and that there was no other suitable position for Dr. Porter at Dartmouth Health. Dr. Porter asserts that this reason for her termination is not the true reason but instead is a pretext (or excuse) to cover up Dartmouth Health's unlawful retaliation against her for whistleblowing. If you do not believe the reason Dartmouth Health has offered for termination of Dr. Porter's employment and not reassigning her to a different job at Dartmouth Health, then you may, but are not required to, infer that retaliation was a factor that made a difference in Dartmouth

12

Health's decision to terminate Dr. Porter's employment and not reassign her to another job at Dartmouth Health.

**Americans with Disabilities Act (ADA) Claim**

In this case, Dr. Porter claims that Dartmouth Health terminated her employment and did not reassign her to another division because of her disability.

Dr. Porter has asserted three distinct but related types of disability discrimination claims. First, Dr. Porter may prove that Dartmouth Health would not have terminated her employment but for her disability. Second, Dr. Porter may prove that Dartmouth Health failed to reasonably accommodate her disability by reassigning her to another division instead of terminating her employment. Third, Dr. Porter may prove that Dartmouth Health retaliated against her for making a reasonable accommodation request. You must determine whether Dr. Porter has proven that Dartmouth Health has discriminated against her because of her disability in any or all of these ways or none of these ways. For Dr. Porter to prove her ADA claim against Dartmouth Health, she must prove that Dartmouth Health discriminated against her in at least one of these ways.

### 1. "But for" discrimination

To prevail under this theory, Dr. Porter must prove all of the following by a preponderance of the evidence:sss

| | |
|---|---|
| First: | Dartmouth Health is an employer subject to the ADA. |
| Second: | Dr. Porter has a "disability" within the meaning of the ADA. |
| Third: | Dr. Porter was otherwise qualified to perform the essential functions of her job, either with or without reasonable accommodation. |
| Fourth: | Dr. Porter was terminated because of her disability. |

To prevail under this theory, Dr. Porter must prove all of the following by a preponderance of the evidence:

### 1.1. "Employer"

The parties have agreed on the first element: that Dartmouth Health is an employer subject to the ADA. Thus, the first element is satisfied.

### 1.2. "Disability"

The parties have agreed on the second element: that Dr. Porter has a "disability" as defined by the ADA. Thus, the second element is satisfied.

### 1.3. "Otherwise qualified to perform essential functions"

The parties have agreed on the third element: that Dr. Porter was qualified to perform the essential functions of the job she held. Thus, the third element is satisfied.

### 1.4. "Because of"

You must determine whether Dartmouth Health terminated Dr. Porter's employment because of her disability. An employee must prove that the employer would not have terminated their employment but for their disability. To determine that Dartmouth Health terminated Dr. Porter because of her disability, you must decide that Dartmouth Health would not have terminated Dr. Porter if Dr. Porter had not had a disability but everything else had been the same.

As you assess causation, keep in mind that an employee does not need to prove that discrimination was the only or even the predominant factor that motivated an employer. You may decide that other factors were involved in the decision to terminate Dr. Porter's employment. But, for Dr. Porter to meet her burden, you must conclude that she has proved by a

preponderance of the evidence that, although there may have been other factors, she would not have been terminated if she had not had a disability.

An employer may not discriminate against an employee because of the employee's disability, but an employer may terminate an employee for any other lawful reason, good or bad, fair or unfair. An employer is entitled to make subjective policy and business judgments, and an employer may therefore terminate an employee—even an outstanding employee—for reasons that it considers to be in its best interests. An employer is entitled to make its own personnel decisions, however misguided they may may appear to you. If you believe Dartmouth Health's reasons for its decision to terminate Dr. Porter and find that its decision was not because of Dr. Porter's disability, you must not substitute your own judgment—even if you do not agree with Dartmouth Health's decision.

As I have explained, Dr. Porter has the burden to prove that Dartmouth Health's decision to discharge her was because of her disability. I have explained to you that evidence can be direct or circumstantial. To decide whether Dartmouth Health's decision to discharge Dr. Porter was because of her disability, you may consider the circumstances of Dartmouth Health's decision. For example, you may consider whether you believe the reasons Dartmouth Health gave for the decision. If you do not believe the reasons it gave for the decision, you may consider whether the reasons were so unbelievable that they are a cover-up to hide the true discriminatory reason for the decision.

## 2. Failure to grant reasonable accommodation request

An employee may also establish a claim under the ADA by showing that the employer failed to provide a reasonable accommodation.

To establish such a claim, Dr. Porter must prove each of the following elements by a preponderance of the evidence:

First:       Dartmouth Health is an employer subject to the ADA.

Second:      Dr. Porter has a "disability" within the meaning of the ADA.

Third:       Dr. Porter was otherwise qualified to perform the essential functions of her job, either with or without reasonable accommodation.

Fourth:      Dartmouth Health failed to make a reasonable accommodation.

## 2.1. "Employer"

The parties have agreed on the first element: that Dartmouth Health is an employer subject to the ADA. Thus, the first element is satisfied.

## 2.2. "Disability"

The parties have agreed on the second element: that Dr. Porter has a "disability" as defined by the ADA. Thus, the second element is satisfied.

## 2.3. "Otherwise qualified to perform essential functions"

You must determine whether Dr. Porter was a "qualified individual." To satisfy this element, Dr. Porter must prove two things by a preponderance of the evidence: first, that she was "otherwise qualified" for the position she desired; and second, that either with or without reasonable accommodation, she could perform the essential functions of that position.

### 2.3.1.   "Otherwise qualified"

An individual is "otherwise qualified" if they have the requisite skill, experience, education, and other job-related requirements of the employment position involved in the case. If Dr. Porter cannot satisfy this standard, then she was not a qualified individual, even if the reason that Dr. Porter is not qualified is solely a result of her disability. The ADA does not require an

employer to hire or retain an individual who cannot perform the job in question either with or without an accommodation.

### 2.3.2. "Essential functions"

If you find that Dr. Porter was "otherwise qualified," then the next step is to determine whether she has proven by a preponderance of the evidence that she was able to perform the essential functions of the position either with or without reasonable accommodation. A reasonable accommodation may include job restructuring or part-time or modified work schedules.

To make this determination, you will need to determine the essential functions of the employment position. The "essential functions of an employment position" are the basic, fundamental duties of a job that a person must be able to perform to hold a particular position. Essential functions do not include marginal job duties of the position.

A job function may be considered essential for any of several reasons. These include, but are not limited to, the following:

1. The reason that the position exists is to perform that function;

2. There are a limited number of employees available among whom the performance of that job function can be distributed; and

3. The job function is highly specialized and the person in that position is hired for their expertise or ability to perform that particular job function.

In determining whether a particular job function is essential, you may, along with all of the evidence that has been presented to you, consider the following factors:

a. The employer's judgment as to which functions of the job are essential;

b.  Written job descriptions prepared by the employer for advertising or posting the position;

c.  Written job descriptions prepared by the employer for use in interviewing applicants for the position;

d.  The amount of time spent performing the function;

e.  The consequences of not requiring the person holding the position to perform the function;

f.  The terms of any collective bargaining agreement;

g.  The work experience of past employees who have held the position; and

h.  The work experience of current employees who hold similar positions.

An employee must have been able to perform all of the essential functions of the desired position either with or without reasonable accommodation at the time of their termination. An employer may not base an employment decision on speculation that the employee's disability might worsen to the extent that they would not be a qualified individual at some time in the future. On the other hand, an employer is not required to speculate that an employee's condition will improve if that employee is not able to fulfill all of the essential functions of the position at the time in question.

### 2.4. "Failed to make a reasonable accommodation"

You must determine whether Dartmouth Health failed to make a reasonable accommodation for Dr. Porter by reassigning her to another department instead of terminating her employment.

The term "reasonable accommodation" means making modifications to the workplace that allows a person with a disability to perform the essential functions of the job or allows a

person with a disability to enjoy the same benefits and privileges as an employee without a disability.

A "reasonable accommodation" may include job restructuring, part-time or modified work schedules, reassignment to a vacant position, or other similar accommodations for individuals with disabilities. A reasonable accommodation does not require an employer to create a new position for an employee.

The term "reasonable accommodation" does not include efforts that would cause an "undue hardship"—an action requiring significant difficulty or expense—on an employer. An employer must show special (typically case-specific) circumstances to demonstrate undue hardship in the particular case.

An employer has a duty to make a reasonable accommodation for an employee if the employer knows or reasonably should have known that the employee was disabled, even if the employee did not explicitly request an accommodation. If the employer knows or should have known that the employee was disabled, the employer is obligated to engage in an interactive process with the employee to determine whether a possible reasonable accommodation exists. Both employer and employee must cooperate in this interactive process in good faith.

Neither side can prevail in this case simply because the other did not cooperate in the interactive process. However, you may consider whether a party cooperated in good faith in evaluating the merit of that party's claim that a reasonable accommodation did or did not exist. An employer, by failing to engage in a sufficient interactive process, risks not discovering a means by which an employee's disability could have been accommodated and thereby increases the chance of failing to reasonably accommodate the employee.

### 3.    Retaliation

The ADA prohibits an employer from discriminating against an employee because the employee has opposed an unlawful employment practice under the ADA. This is called retaliation. To establish retaliation, Dr. Porter must prove each of the following elements by a preponderance of the evidence:

First:        Dr. Porter engaged in an activity protected by the ADA.

Second:        Dartmouth Health knew that Dr. Porter engaged in protected activity.

Third:        Dartmouth Health took adverse action against Dr. Porter.

Fourth:        A causal connection exists between the adverse action and the protected activity.

### 3.1. "Protected activity"

A protected activity is an act that opposes any perceived discriminatory practice made unlawful by the ADA. "Protected activity" includes making a request for a reasonable accommodation.

The parties have agreed on the first element: that Dr. Porter made a reasonable accommodation request for changes to her work schedule and environment. Thus, the first element is satisfied.

### 3.2. "Aware of activity"

The parties have agreed on the second element: that Dartmouth Health was aware that Dr. Porter made a reasonable accommodation request for accommodation for changes to her work schedule and environment. Thus, the second element is satisfied.

### 3.3. "Adverse action"

The parties have agreed on the third element: that Dartmouth Health took adverse action against Dr. Porter by terminating her employment. Thus, the third element is satisfied.

### 3.4. "Causal connection"

You must determine whether there is a causal connection between Dr. Porter's reasonable accommodation request and Dartmouth Health's decision to terminate Dr. Porter's employment. Dr. Porter must prove that Dartmouth Health would not have terminated her employment but for her reasonable accommodation request. To determine that there is a causal connection between Dartmouth Health's decision to terminate Dr. Porter's employment and Dr. Porter's reasonable accommodation request, you must decide that Dartmouth Health would not have terminated Dr. Porter if Dr. Porter had not made a reasonable accommodation request but everything else had been the same.

Dr. Porter does not need to prove that retaliation was the only or even the predominant factor that motivated Dartmouth Health. You may determine that other factors contributed to Dartmouth Health's decision to terminate Dr. Porter's employment. But, in order to return a verdict in favor of Dr. Porter on her ADA retaliation claim, you must conclude that she has proved by a preponderance of the evidence that, even if other factors contributed to the decision, Dartmouth Health would not have terminated her employment if she had not made a reasonable accommodation request.

### Rehabilitation Act Claim

Dr. Porter has also brought disability discrimination claims under Section 504 of the Rehabilitation Act (29 U.S.C. § 794). Section 504 of the Rehabilitation Act applies to entities

that receive federal funds, and it prohibits these entities from excluding or discriminating against individuals based on their disability.

Dr. Porter has brought claims for discriminatory termination, failure to make a reasonable accommodation, and retaliation under Section 504 of the Rehabilitation Act. The elements and instructions for these claims are the same as those under the ADA. Thus, the instructions I previously gave you on disability discrimination under the ADA apply equally to the claims under Section 504 of the Rehabilitation Act.

### Disability Discrimination Claims Under New Hampshire State Law

In addition to the federal claims, there are also claims in this case for disability discrimination under New Hampshire's Law Against Discrimination. New Hampshire state law prohibits discrimination in employment based on disability.

Dr. Porter has brought claims for discriminatory termination, failure to make a reasonable accommodation, and retaliation under the New Hampshire Law Against Discrimination. The elements and instructions for these claims are the same as those under the ADA. Thus, the instructions I previously gave you on disability discrimination under the ADA apply equally to the claims under the New Hampshire Law Against Discrimination.

### Disability Discrimination Claims Under Vermont State Law

In addition to the federal claims and the claims under New Hampshire state law, there are also claims in this case for disability discrimination under Vermont's Fair Employment Practices Act (FEPA). Vermont state law prohibits discrimination in employment based on disability.

Dr. Porter has brought claims for discriminatory termination, failure to make a reasonable accommodation, and retaliation under Vermont's Fair Employment Practices Act. The elements and instructions for these claims are mostly the same as those under the ADA. However, there is

one important difference in the claim for discriminatory termination. For the fourth element,

Vermont's Fair Employment Practices Act uses the "motivating factor" test instead of the

"because of" test used under the ADA. In other words, Dr. Porter must prove the following by a

preponderance of the evidence:

| | | |
|---|---|---|
| First: | | Dartmouth Health is an employer subject to the FEPA. |
| Second: | | Dr. Porter has a "disability" within the meaning of FEPA. |
| Third: | | Dr. Porter was otherwise qualified to perform the essential functions of her job, either with or without reasonable accommodation. |
| Fourth: | | Dr. Porter's disability was a *motivating factor* in Dartmouth Health's decision to terminate her employment. |

Under the motivating factor test, an employee must prove that their disability was a

motivating factor that prompted the employer to terminate the employment. It is not necessary

for the employee to prove that disability was the sole or exclusive reason for the employer's

decision. It is sufficient if the employee proves that the alleged disability was a motivating factor

in the employer's decision. A motivating factor is a factor that played some part in an employer's

adverse employment action. Under the motivating factor test, an employer cannot avoid liability

by proving that it would still have taken the same adverse action in the absence of discriminatory

motivation. This is a difference between the motivating factor test and the "because of" test.

You should apply the motivating factor test, not the "because of" test, to Dr. Porter's

claim for discriminatory termination under the Vermont Fair Employment Practices Act. With

this exception, the instructions I previously gave you on disability discrimination under the ADA

apply equally to the claims under the Vermont Fair Employment Practices Act.

**Wrongful Discharge under New Hampshire Law**

Based on Dartmouth Health's termination of Dr. Porter's employment at Dartmouth-Hitchcock Medical Center, Dr. Porter has brought a claim for wrongful discharge against Dartmouth Health under New Hampshire law.

The prevailing rule in New Hampshire is that where, as here, there is no employment contract between employer and employee, the relationship is termed "at will." In an at-will employment situation, both parties are generally free to terminate the employment relationship at any time, with or without cause, and it is implied that the parties will carry out their obligations in good faith. But there is an exception to this "at-will" rule: an employer's termination of an employee that is motivated by bad faith or malice, or is based on retaliation, is not in the best interest of the economic system of the public good, and is therefore unlawful. An employer's interest in running his business as he sees fit must be balanced against the interest of the employee in maintaining his employment and the public's interest in maintaining a proper balance between the two.

In order to establish a claim for wrongful discharge under New Hampshire law, Dr. Porter must demonstrate the following two elements by a preponderance of the evidence:

First:     Dartmouth Health's termination of Dr. Porter was motivated by bad faith, malice, or retaliation; and

Second:    Dartmouth Health terminated Dr. Porter because she performed one or more acts that public policy would encourage.

**1. "Termination motivated by bad faith, malice, or retaliation"**

For purposes of this claim, "bad faith" is the equivalent of malice, and may be established where (i) an employee is discharged for pursuing policies condoned by the employer, (ii) the record does not support the stated reason for the discharge, or (iii) disparate treatment was administered to a similarly situated employee. Bad faith can also be discerned from the course of

24

events surrounding an employee's discharge, the manner in which the plaintiff was discharged, or shifting reasons for an employee's termination. Stated another way, "malice" or "bad faith" may be shown where the employer's decision to terminate the employee was without reasonable cause or excuse as the facts would have appeared to a reasonable person, and that the termination was willful and intentional; that is, the employer knew that the termination was unreasonable and still decided to terminate the employee's employment; or that the termination was motivated by ill will or a purpose to harass. "Bad faith" or "malice" may therefore be established by proof that the evidence does not support the stated reason for the discharge.

The general meaning of "retaliation" is the act of doing someone harm in return for actual or perceived injuries or wrongs, in other words, revenge.

### 2. "Acts that public policy would encourage"

"Public policy," as used in this claim, includes a wide range of societal goals including safety and public welfare, protection of an at-will employee's promised compensation, and good faith reporting of reasonably perceived improper activity. The employee need not show a strong and clear public policy, and the public policy may be based on statutory or non-statutory policies at the state or federal level. An employee's mere expression of disagreement with a management decision, however, is not an act protected by public policy. Moreover, the public policy exception to termination of at-will employment does not deprive an employer of the right to make business decisions which are necessary to effectuate the efficient and profitable operation of its business; nor does the public policy exception interfere with an employer's ability to hire and retain those individuals best qualified for the job.

An example of a case where an employee is terminated for doing an act that public policy would encourage is an employee being terminated for refusing to provide to his or her employer

private medical records and personal health information of patients. A second example is an employee being terminated for missing work because they reported to jury duty. A third example is an employee being terminated for protecting employees who worked under him from workplace hazards that could cause serious physical harm to those employees. Other examples of acts that public policy would encourage could be reporting physician conduct that is illegal, fraudulent, unethical, or unlawful to patients; ensuring that a medical provider or medical facility obtain patient consent before performing procedures on patients; and objecting to improper patient billing procedures. In these cases, if the termination is because of the act that public policy encourages, and the employer acted with malice and bad faith or in retaliation, the employee is entitled to recover damages for wrongful termination.

It is your job to determine if Dartmouth Health terminated Dr. Porter because of her performance of one or more acts that public policy would encourage. In determining whether Dr. Porter performed an act that public policy would encourage, you are not limited to the above examples, nor must you find that the facts support the above examples in this case.

In order to find in favor of Dr. Porter on this claim, you not only must find that Dr. Porter performed one or more acts that public policy would encourage, and that Dartmouth Health's termination of Dr. Porter was motivated by bad faith, malice, or retaliation; you must also find that Dr. Porter was terminated "because" of her performance of an act that public policy would encourage. Thus, Dr. Porter must show a causal link between her performance of an act that public policy would encourage and her termination.

### Damages

If you decide in favor of Dartmouth Health on all claims, you will not consider these instructions about damages. But if you decide for Dr. Porter on any claim, you must determine

the amount of money that will compensate her for each item of harm that was caused by Dartmouth Health's conduct. This compensation is called "damages."

Please keep in mind the following general principles as you deliberate. Remember that Dr. Porter has the burden of proving damages by a preponderance of the evidence. Damages may not be based on sympathy, speculation, or guesswork. In making your decision, you should be guided by the evidence, common sense, and your best judgment.

### Economic and Non-Economic Damages

Damages for Dr. Porter's claims can fall into two different categories: economic damages and non-economic damages. Economic damages include such items as lost income and medical expenses. Non-economic damages include such items as lost enjoyment of life, mental anguish, pain and suffering, disability and disfigurement. These damages may include compensation for past harm and future harm, depending on the evidence. If you find that Dr. Porter is entitled to damages, you must determine the total amount and place that amount on the verdict form.

There is no precise standard for calculating these damages. Your damages determination must be just and reasonable in light of the evidence. In determining the damages that Dr. Porter has suffered as a result of her injuries, you should consider the following items:

- Dr. Porter is entitled to damages for any earnings lost in the past, and any probable loss of ability to earn money in the future, caused by Dartmouth Health's conduct. When considering Dr. Porter's future earnings, you should consider Dr. Porter's expected working lifetime.

- Dr. Porter is entitled to damages for the reasonable cost of necessary medical care and other treatment that she has received or is likely to receive in the future, caused by Dartmouth Health's conduct.

- Dr. Porter is entitled to damages for any lost enjoyment of life, mental anguish, and pain and suffering caused by Dartmouth Health's conduct. These damages may include any pain, discomfort, fears, anxiety, humiliation, lost enjoyment of life's activities, and any other mental and emotional distress suffered by her in the past, or likely to be suffered in the future.

**Mitigation of Damages**

Dartmouth Health claims that Dr. Porter has failed to mitigate, or minimize, her damages. A plaintiff ordinarily has a general duty to mitigate the damages she incurs, meaning she has a duty to take steps to try to minimize the harm or prevent it from increasing further. In this context, that means Dr. Porter has a duty to attempt to secure or to secure employment that is a suitable alternative to her employment at Dartmouth Health. This duty applies only to those damages that Dr. Porter could have avoided with reasonable effort and without undue risk, burden, or expense, as the duty to mitigate requires only reasonable, practical care and diligence, not extraordinary measures.

The burden is on Dartmouth Health to prove this affirmative defense by a preponderance of the evidence. As part of bearing this burden, Dartmouth Health must present evidence not only that Dr. Porter did not make reasonable efforts to obtain employment, but also that suitable work existed. To sustain its burden, Dartmouth Health must present concrete evidence; mere speculation is not sufficient.

If you find that Dr. Porter failed to mitigate her damages, you must reduce your award of damages, if any, by the amount you find she could have avoided.

**Punitive Damages**

Punitive damages are meant to punish a party for its clearly outrageous conduct, and to stop others from acting similarly in the future. In order to award punitive damages, you must find two things:

First, you must find that Dartmouth Health's wrongful conduct was outrageously reprehensible; that is, that the conduct – whether acts or failures to act – was egregious, morally deserving of blame, to a degree of outrage frequently associated with a crime.

Second, you must find that Dartmouth Health acted with malice. You may find malice if you find that Dartmouth Health's reprehensible conduct was intentional and deliberate; that is, that the conduct was the result of Dartmouth Health's bad motive, ill will, or personal spite or hatred toward Dr. Porter. You may also find malice even if Dartmouth Health's motivation behind the intentional, outrageous conduct was to benefit itself, rather than to harm Dr. Porter. Alternatively, you may find malice if Dartmouth Health's wrongful conduct was not intentional, but instead was done with a reckless or wanton disregard of the substantial likelihood that it would cause egregious harm to Dr. Porter; that is, if Dartmouth Health acted – or failed to act – with conscious and deliberate disregard of a known, substantial, and intolerable risk of harm to Dr. Porter, with the knowledge that the conduct was substantially certain to result in the threatened harm.

Where the defendant is a corporation, as is the case here, in order to find that the corporation must pay punitive damages, you must find that the conduct justifying punitive damages was corporate conduct, or was conduct permitted by the corporation. Where the management of the corporation was involved in the conduct itself, it may be considered to be corporate conduct. Where the management of the corporation has knowledge of wrongful

conduct by lower-level employees, the corporation may be determined to have permitted the conduct. If you find either corporate conduct, or conduct permitted by the corporation, you may find that the corporation must pay punitive damages.

In determining the amount of punitive damages to award, if any, you may consider such factors as the nature of Dartmouth Health's conduct, the nature of the resulting harm to Dr. Porter, Dartmouth Health's wealth or financial status, and the degree of malice or wantonness in its acts.

### Remaining Damages Issues

It is solely the province of the jury to decide the amount of any damages award. I am giving you these damages instructions so you will know how to proceed if you reach this point in your deliberations. But by giving you these instructions, I do not intend to suggest whether an award is appropriate or what the amount of that award should be.

Where the amount of the damages can be calculated in specific dollar terms, the party seeking damages must present evidence to demonstrate the appropriate amount. With certain types of damages, however, there is no precise measurement, and it is up to you to decide what is fair monetary compensation for those damages. Under no circumstances may you award damages that are speculative or conjectural.

I remind you that any amount of recovery that may have been suggested by the attorneys is not evidence. Moreover, you need not adopt the approaches the attorneys have suggested for calculating damages. As the jury, it is your obligation to arrive at an amount which is supported by the evidence and fair to both parties. The amount of damages, if any, is a determination for the jury.

You should not add any sum for interest to the damages awarded in this case. The court will make such award if appropriate. Similarly, you must not include in your award any costs that Dr. Porter may, or may not, have incurred due to her filing of this lawsuit, or her attorneys' fees. These are matters for the court.

You should not award damages for one item that duplicates an award for another item. In other words, a party is entitled to only one recovery for his or her damages.

### Insurance and Taxes

You should not speculate about whether either Dartmouth Health or Dr. Porter has any insurance that might cover, or has covered, any damages that you find Dr. Porter has experienced. You also should not speculate about what taxes Dr. Porter might owe on any damage award. You have heard testimony from Dr. Bancroft that Dr. Porter's damages include amounts owed in taxes on any damages award. You may, or may not, take this into account in assessing the amount of Dr. Porter's damages, if any.

The rules that jurors are not to speculate about insurance and taxes are special rules that apply to lawsuits. Those issues are not relevant to your task here. Your job is to award the amount of damages that you determine has been established by the evidence presented to you. Any other issues that have to be resolved are my job, not yours.

### Final Instructions

This completes my instructions to the jury. I will now provide a copy of these instructions to you, and you will retire to the jury room to deliberate in privacy about the issues in this case. I will also provide a Verdict Form to guide you in your deliberations. The answer to each question on the form must be the unanimous answer of the jury. This means you cannot answer a question

31

on the Verdict Form unless and until all twelve of you agree on the answer. You will also receive the exhibits which were admitted into evidence.

I appoint _____ as your foreperson. (S)he will be responsible for making sure that the deliberations occur in an orderly fashion and that every juror has an opportunity to participate. (S)he will record the unanimous answers of the jury on the verdict form, and date and sign the jury form. (S)he will also be your spokesperson here in court.

If you need to communicate with the court, please do so in writing. I will then confer with the lawyers about your question and send a written response to you. Please advise the court officer after you reach a verdict, but do not tell the court officer or anyone else what the verdict is until you return to the courtroom at which time I will receive the Verdict Form from your foreperson.

Dated at Burlington, in the District of Vermont, this _____ day of April 2025.


_____
Kevin J. Doyle
United States Magistrate Judge