IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

MISTY BLANCHETTE PORTER, M.D.,


Plaintiff,

vs.


DARTMOUTH-HITCHCOCK MEDICAL
CENTER, DARTMOUTH-HITCHCOCK
CLINIC, MARY HITCHCOCK
MEMORIAL HOSPITAL, and
DARTMOUTH-HITCHCOCK HEALTH,


Defendants.

Case No. 2:17-cv-194

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PRE-JUDGMENT INTEREST**

Defendants Dartmouth-Hitchcock Medical Center, Dartmouth-Hitchcock Clinic, Mary Hitchcock

Memorial Hospital, and Dartmouth-Hitchcock Health (collectively, "Defendants" or "Dartmouth Health")

hereby submit this Opposition to Plaintiff's Motion for Prejudgment Interest (the "Motion"). (ECF No.

296)[1]. The issues raised in Plaintiff Misty Blanchette Porter, M.D.'s ("Plaintiff" or "Dr. Porter") Motion

were not discussed by the Parties. Plaintiff's damages were not readily ascertainable at the time Dr. Porter

was terminated, and accordingly, even under Vermont law, the award of prejudgment interest and the rate

to be applied are discretionary. Based on the facts and circumstances underlying the case's protracted

procedural history, plaintiff's legal theories, the evidence at trial, how the jury ultimately ruled, and the

---

[1] Defendants note that Plaintiff filed the Motion prior to entry of judgment. (*See* ECF Nos. 296 and 297). Despite
the fact that the Court did not enter judgment until April 24, 2025, Defendants nonetheless submit this opposition to
Plaintiff's premature motion.

continuing ambiguity in calculating these damages, the Court should exercise that discretion and either award no prejudgment interest or apply a significantly reduced pre-judgment interest rate to Plaintiff's backpay award.

## BACKGROUND

Plaintiff filed suit in October 2017 and the litigation proceeded in good faith. Dartmouth Health moved for summary judgment in January 2020, just before the COVID-19 pandemic disrupted court operations. While waiting for the court to rule on that motion, the parties proceeded in working towards trial, then scheduled for early Spring 2021. (ECF No. 148). In November 2020, the Court granted Dartmouth Health's Motion for Summary Judgment. Plaintiff appealed that judgment to the Second Circuit and briefing progressed until June 2021. The Second Circuit held oral argument in February 2022. The case then remained pending for nearly two years until the Second Circuit's February 6, 2024 decision, which partially reversed and remanded. For more than three of the seven years this case has been pending, Dartmouth Health had a valid judgment in its favor and was under no obligation to pay Plaintiff.

On June 17, 2024, this Court ordered that trial would commence on March 24, 2025. (ECF No. 179). Trial and deliberations were held from March 25, 2025 until April 10, 2025. Finally, on April 24, 2025, judgment was entered. (ECF No. 297).

## ARGUMENT

**1. Plaintiff Failed to Comply with this Court's Local Rules**

As an initial matter, Plaintiff did not make Defendants aware of the Motion prior to filing, as required by the Local Rules. *See* D. Vt. L.R. 7(a)(7) ("A party filing a non-dispositive motion must certify that the party has made a good faith attempt to obtain the opposing party's agreement to the requested relief."). Importantly, Local Rule 7(a)(7) is more than a futile requirement. *Norton–Griffiths v. Wells Fargo Home Mortg.*, No 5:10–cv–169, 2011 WL 884456, at *5 (D. Vt. Mar. 11, 2011) ("This requirement

is not a meaningless gesture.  It allows the parties through the consent process to narrow the scope of any dispute regarding the [Motion] prior to seeking judicial involvement regarding the same.").  Additionally, "[t]he purpose of Local Rule 7(a)(7) is to require the parties to explore issues and seek out compromise." *Madden v. Abate,* No. 2:09-CV-145, 2011 WL 13281802, at *1 (D. Vt. Sept. 22, 2011) (denying motion as premature because the filing party did not file its motion with a certificate of compliance pursuant to Local Rule 7(a)(7)).

This is not the first instance in which Plaintiff has ignored the directives of Local Rule 7(a)(7).  In fact, just five months ago, this Court denied a motion brought by Plaintiff on the basis of her failure to comply with the very same rule.  (ECF No. 187).  As such, there is no good faith reason for Plaintiff's continued disregard of the Local Rules.

For this reason alone, Plaintiff's Motion should be denied.  *See Jewell v. United States Dep't of Educ.*, No. 2:22-CV-53-KJD, 2022 WL 14770584, at *4 (D. Vt. Oct. 26, 2022) ("Local Rule 7(a)(7) is intended to narrow the issues presented for adjudication and a party's non-compliance with the rule may warrant denial of the requested relief.").

**2.  Prejudgment Interest is Discretionary Because Damages Were Not Readily Ascertainable**

Vermont's prejudgment interest statute, 9 V.S.A. § 41a(a), requires that damages be readily or reasonably ascertainable at the time of the accrual of the cause of action.  Prejudgment interest is only "awarded as of right when the principal sum recovered is liquidated or capable of ready ascertainment and may be awarded in the court's discretion for other forms of damage." *Martin v. Lyon*, 2024 VT 68, ¶ 10, 329 A.3d 184 (quoting Reporter's Notes—1981 Amendment, V.R.C.P. 54); *see also Brody v. Simpson Dev. Corp.*, No. 2:05-CV-293, 2007 WL 9710665, at *1 (D. Vt. Dec. 19, 2007) ("since damages were not reasonably certain, the Brodys are not entitled to prejudgment interest as a matter of right.").  The Vermont Supreme Court has explained that, even in a contract case, damages are not reasonably ascertainable where

3

they were (1) "the subject of conflicting expert testimony" and (2) "the parties dispute how the jury could arrive at the damages it awarded." *Winey v. William E. Dailey, Inc.*, 161 Vt. 129, 141, 636 A.2d 744, 752 (1993); *see also Hirchak v. Hirchak*, 2024 VT 81, ¶ 38 (quoting *Shoreline Dev., Inc. v. Utah Cnty.*, 835 P.2d 207, 212 (Utah Ct. App. 1992) ("[T]he lack of mathematical certainty generally prevents an award of prejudgment interest in equity claims.")).  The mathematical uncertainty in a damages calculation means "that the parties will invariably dispute how the jury could arrive at the damages." *Hirchak*, 2024 VT 81, ¶ 38.  "As a result, prejudgment interest ***may only be awarded at the discretion of the trial court, not as of right***."  *Id.* (emphasis added); *see also Est. of Fleming v. Nicholson*, 168 Vt. 495, 500–01 (1998) (observing that prejudgment interest is discretionary where the damages are not "liquidated or reasonably ascertainable *as of the date of the tort*.") (emphasis added); *see also Windsor Sch. Dist. v. State*, 2008 VT 27, ¶31, 183 Vt. 452, 956 A.2d 528 ("The trial court correctly determined that prejudgment interest was not mandatory in this case.").

Here, it is clear—from (A) the various iterations of Dr. Bancroft's reports in the years leading up to the trial, (B) the divergent and conflicting evidence presented at trial, (C) the jury's actual award of damages amounting to far less than any of the charts or calculations presented by Plaintiff's expert economist, and (D) the  calculations presented in the chart at page 3 of the Motion—that  Dr. Porter's purported economic loss is not readily ascertainable.

As demonstrated from testimony and evidence of record, Dr. Porter's damages are not, and have never been, mathematically certain or readily ascertainable.  To be sure, Dr. Porter's own expert produced four (4) different expert reports prior to trial, wherein Plaintiff's calculation of her damages fluctuated by more than $3 million.  Such variability cannot demonstrate mathematical certainty or a readily ascertainable calculation as required for 12% interest to be awarded as of right.  Moreover, each report

4

was based on massively differing assumptions and reached widely divergent conclusions about the Total

Economic Loss. These reports, and the bottom-line results they reached, are as follows:

- October 30, 2018 – Total Economic Loss: $3.0 Million. *See* Exhibit 1.

- October 1, 2019 – Total Economic Loss: $4.8 Million. *See* Exhibit 2.

- August 26, 2024 – Total Economic Loss: $4.3 Million. *See* Exhibit 3.

- March 19, 2025 – Total Economic Loss: $1.787 Million. *See* Exhibit 4.

Furthermore, the changes to the assumptions accompanying these reports are based, to an unusual

degree, solely on the Plaintiff's say so and not upon statistical likelihoods. For example, Dr. Bancroft's

August 2024 report assumed Dr. Porter's plan to work a 0.6 FTE. In his March 2025 report, Dr. Bancroft

assumed a 0.75 FTE. In his October 2019 report, Dr. Bancroft assumed, also based solely on what he was

told by Dr. Porter, that she would cease working in 2029 at age 66, and noted that this year would be

"consistent with the work life of a 56-year-old female with a graduate degree." Then, without explanation,

in the latest iteration of his report, Dr. Bancroft assumed that Dr. Porter would work until she was 70-years

old (2033). It is not even readily ascertainable when Dr. Porter plans to retire.[2] Dr. Porter's date of

retirement has substantial ramifications on her income and total loss.

Plaintiff's argument that damages were readily ascertainable was further undermined on April 10,

2025, when the jury returned a verdict awarding substantially less than plaintiff sought—without

delineating how the award was allocated among categories such as past or future earnings,[3] medical

---

[2] The parties significantly disagreed on the extent to which Plaintiff has mitigated her damages. As revealed on cross-examination at trial, Dr. Porter may have fully mitigated her damages far earlier than projected by Dr. Bancroft. The timing of this mitigation materially affects the damages calculation and is not readily ascertainable by a potential payor at the time of payment. Rather, it becomes apparent only over time.

[3] In the Jury Charge, the Court instructed the jury that economic and non-economic damages "may include compensation for past harm and future harm . . . ." (ECF No. 275 at 29).

expenses,[4] taxes,[5] utilities, housing, transportation for both Dr. Porter and her husband,[6] and other claimed expenses. Despite asserting that damages were readily ascertainable, Plaintiff's requests varied from as high as $4.8 million in 2019, to as low as $1.787 million the week before trial. Ultimately, the jury found that her actual economic damages were nowhere near this amount and awarded only $1 million in economic damages instead. Vermont courts have relied on such variances to hold that the damages were not readily ascertainable, and therefore that prejudgment interest was not mandatory. *Windsor Sch. Dist.*, 2008 VT 27, ¶ 31(declining to award prejudgment interest because the damages were not capable of ready ascertainment, as demonstrated in part by the damages award being substantially less than plaintiff had sought).

In the new, overly simplistic and mathematically inaccurate chart in her Motion, Plaintiff has, yet again, changed her story. The new chart improperly assumes—without evidence—that the entire jury award consists of back pay and front pay, ignoring the possibility that some or most of it may reflect medical expenses, taxes, utilities, housing, transportation for both Dr. Porter and her husband, or other claimed expenses. The new chart also abandons Plaintiff's assertion that she would work until 2033— facts presented by Plaintiff to increase her total damages at trial—and now asserts that she will only work until 2027 to yield a higher percentage of alleged back-pay awards and increase a potential award of prejudgment interest. Additionally, while Plaintiff vehemently asserted that her income would continue

---

[4] In the Jury Charge, the Court instructed the jury that "[e]conomic damages include such items as . . . medical expenses." The Court further instructed the jury to consider that "Dr. Porter is entitled to damages for the reasonable cost of necessary medical care and other treatment that she has received or is likely to receive in the future." (ECF No. 275 at 29).

[5] In the Jury Charge, the Court instructed the jury that it could consider the amounts owed in taxes on any damages award when assessing Dr. Porter's damages. (ECF No. 275 at 33–34).

[6] Plaintiff's expert testified Plaintiff incurred additional employment costs related to "having to set up housekeeping . . . in the Burlington area . . . and that she has to commute and her husband are commuting from their home in Norwich." Trial Tr., Excerpt of Dr. Bancroft 21:7–11, March 31, 2025. Those additional employment costs include electric utilities, heat, rent, and travel for Dr. Porter and her husband. *See* Exhibit 4, at 5.

6

4899-0557-7024.1

to rise until she retired at the age of 70 (or 2033) during trial, (*see* Exhibit 4, Columns 1 and 4 (showing steadily increasing income)), Plaintiff now advocates for an equal distribution of the $1 million award across all years only to the age of 65 (or 2027[7]).  The result of changing her "retirement" year increases the percentage of damages considered back pay to $715,285 of the $1 million, rather than the $469,696 that would have been allocated to back pay following the testimony that she plans to work until age 70. *Compare* Pl.'s Mot. for Prejudgment Interest at 3 (ECF No. 296) (calculating interest based on assumption that Dr. Porter will stop working in 2027) *with* Exhibit 4 (showing Plaintiff's trial evidence demonstrating damages continuing to accrue through 2033).

By arguing that she planned to work until 2033, Plaintiff was able to demonstrate higher estimated damages to the jury to increase her potential jury award. *See* Exhibit 4 (demonstrating damages continued to accrue until 2033).  But now, at the post-trial stage, Plaintiff reverses course. *Cf. In re Adelphia Recovery Tr.*, 634 F.3d 678 (2d Cir. 2011) (explaining judicial estoppel).  Specifically, by changing her retirement date to 2027, Plaintiff takes 6 years off her working life and argues for allocating pay across 11 years instead of 17.  This new calculation results in more damages viewed as back pay, for which she is potentially entitled to prejudgment interest, rather than front pay that does not get prejudgment interest but is instead discounted to present value.  9 V.S.A. § 41a(d) (awarding interest on debts); *see Remes v. Nordic Grp., Inc.*, 169 Vt. 37, 42 (1999) ("In the employment context, prejudgment interest should generally be assessed upon damages only as they become due."); *Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290, 1297 (7th Cir. 1987) (discounting lost future wages back to present value and explaining why prejudgment interest is not awarded on future earnings); *see also Wulf v. City of Wichita*, 883 F.2d

---

[7] Notably, Plaintiff's Motion only allocates the $1 million evenly across all years up to the year 2027, or "the year in which Dr. Porter will turn 65."  Pl.'s Mot. for Prejudgment Interest, at 3 (ECF No. 296).  In Plaintiff's trial exhibit on damages, however, Plaintiff's chart indicates that she would turn 65 in 2028. *See* Exhibit 4.  As such, Plaintiff's decision to now only allocate the funds to the year 2027 is not only inconsistent with its proffer during trial that Dr. Porter planned to work until she's 70, but also reduces the allocation by an additional year, cutting it off at 64 instead of 65.  This version of "lawyer math" does not ring true.

4899-0557-7024.1

842, 855–56 (10th Cir.1989) (upholding an award of front pay discounted to present value). In other words, there is still a "lack of mathematical certainty" regarding how to calculate these damages. *Hirchak*, 2024 VT 81, ¶ 39. As such, even today in post-judgment motions, Plaintiff continues to calculate and allocate damages based on wildly different assumptions, demonstrating the damages are still not readily ascertainable even in the post-judgment phase.

Thus, these damages were not readily ascertainable at the time she was terminated. The award of post-judgment interest and the applicable rate is discretionary.

3.  **Prejudgment Interest Does Not Serve the Interest of Justice Under These Circumstances**

Because the damages were not readily ascertainable at the time of Dr. Porter's termination—as evidenced by the record, post-judgment calculations, and the jury's general, unallocated award—the award and rate of prejudgment interest lie within the Court's discretion.

A.  *The Court Should Award No Prejudgment Interest*

First and foremost, the circumstances here do not merit the award of prejudgment interest. *See Ring v. Carriage House Condo. Owners' Ass'n*, 2014 VT 127, ¶ 35, 198 Vt. 109, 125, 112 A.3d 754, 766 (2014) (affirming lower court's ruling against prejudgment interest for compensatory damages). "The rationale for awarding prejudgment interest as of right is that 'where damages are liquidated or determinable by a reasonably certain standard of measurement, the defendant can avoid the accrual of interest by simply tendering to the plaintiff a sum equal to the amount of damages.'" *Windsor Sch. Dist.*, 2008 VT 27, ¶ 30 (quoting *Agency of Natural Resources v. Glens Falls Ins. Co.*, 169 Vt. 426, 435 (1999) (internal quotation omitted)). In this way, prejudgment interest serves to eliminate the benefit the defendant gains from withholding payment until judgment. *Woodling v. Garrett Corp.*, 813 F.2d 543, 561 (2d Cir. 1987). In other words, the purpose of prejudgment interest is "to avoid injustice," not to award a windfall. *Est. of Fleming v. Nicholson*, 168 Vt. 495, 500 (1998).

Here, however, because the estimation on damages varied so wildly from 2017 to the date of judgment, the rationale of awarding prejudgment interest is not served. Had Dartmouth Health sought to "avoid the accrual of interest by simply tendering to the plaintiff a sum" based on Plaintiff's estimated damages at any time in the preceding years, Dartmouth Health would have grossly overcompensated Plaintiff. *Windsor Sch. Dist.*, 2008 VT 27, ¶¶ 30–31. Critically, this is a rationale behind why prejudgment interest is discretionary, and often not awarded, when a sum is not readily ascertainable.

Moreover, Plaintiff's own evidence at trial (Exhibit 4) shows that the majority of the $1 million jury award corresponds to front pay, not backpay. Specifically, at trial, Plaintiff allocated only $433,970 as back pay (2017–2024) and $647,816 as front pay (2025–2033), based on gross adjusted earnings totaling $1,081,786—the closest approximation to the jury's award. *See* Exhibit 4 (calculating lost earning for front and back pay using the sum of Column 7, or "Gross Adjusted earnings," which was the closest estimation Plaintiff provided to $1 million in economic damages).[8] This aligns with Dartmouth Health's calculation chart. *See* Exhibit 5.[9] Because the *majority* of Plaintiff's damages constitute future earnings that she would have received incrementally through 2033, they do not constitute a debt "due" under the statute. 9 V.S.A. § 41a(d) (clarifying that interest is only applied to debts); *see also Norman v. Am. Woolen Co.*, 117 Vt. 28, 34 (1951) (noting interest applies only to debts already due). As such, Plaintiff, not Dartmouth Health, benefits from receiving these sums early—without having to work for them until 2033. Accordingly, on balance, prejudgment interest does not serve the interest of justice here, in fact, and would result in an improper windfall.

---

[8] Furthermore, relying on Plaintiff's expert's chart, it is impossible to conclude how the jury reached $1 million in economic damages without already applying interest, especially if they did not consider damages until the year 2033. *See* Exhibit 4, Column 11, the "Cumulative Present Value" column, which already includes prejudgment interest in the accrued calculation, totaling only $909,722.

[9] Exhibit 5 is a chart prepared by Dartmouth Health which calculates prejudgment interest at 12% annually like Plaintiff's chart on page 3 of the Motion; however, it divides the $1 million jury award from June 30, 2017 through work life expectancy, 2033. This correction alone, which is consistent with record evidence, reduces prejudgment interest to $223,134.

4899-0557-7024.1

Accordingly, because there was no sum certain available for Dartmouth Health to pay, and because prejudgment interest would not avoid injustice given the sizeable portion of damages attributable to front pay, the Court should decline to award prejudgment interest.

**B. If the Court Elects to Award Prejudgment Interest, It Should NOT Apply the 12% Prejudgment Interest Rate Proposed by Plaintiff**

Assuming *arguendo* that the Court concludes an award of prejudgment interest is proper, it should exercise its discretion to apply a reasonable, historically grounded rate—such as the federal adjusted prime rate, the U.S. Treasury Bill rate, the 10-Year Municipal Bond rate, or another relatively risk-free investment rate that reflects the time value of money without imposing an excessive financial penalty.

Courts in the Second Circuit, as well as other Circuit Courts, have endorsed the use of the adjusted prime rate when awarding prejudgment interest for back pay in Title VII employment discrimination suits. *See E.E.O.C. v. Erie Cnty.*, 751 F.2d 79, 82 (2d Cir. 1984); *see also E.E.O.C. v. Wooster Brush Co. Emps. Relief Ass'n*, 727 F.2d 566, 579 (6th Cir. 1984) (approving award of interest at adjusted prime rate in Title VII employment discrimination suit); *see also EEOC v. Pacific Press Publishing Association*, 482 F. Supp. 1291, 1319–20 (N.D.Cal.1979) (same), *aff'd*, 676 F.2d 1272 (9th Cir. 1982); *Marshall v. Burger King Corp.*, 509 F. Supp. 353 (E.D.N.Y. 1981) (using adjusted prime rate in FLSA suit). As the Second Circuit explained, the adjusted prime rate "is the rate to be 'paid by taxpayers on tax deficiencies, and by the government on tax overpayments,' . . . and was established by Congress for use by the Internal Revenue Service in place of the prior flat six percent rate because 'it is sensitive to money market conditions and is widely known and accepted as a good indicator of interest rates generally.'" *Erie Cnty.*, 751 F.2d at 82 (internal citation omitted). During the pendency of this case, the adjusted prime rate remained modest, frequently between 3.25% and 6%, and never exceeding 8.5%. *See* FED. R. EVID. 201 (this Court may take judicial notice of the historical federal interest rates throughout the lifespan of this case).

In addition to the federal prime rate, the Court may also look to other relatively risk-free investment rates—such as the U.S. Treasury Bill rate or the 10-Year Municipal Bond rate—as fair and equitable benchmarks. *See Complaint of Connecticut Nat. Bank*, 928 F.2d 39 (2d Cir. 1991) (reversing and remanding with guidance that "the Court should carefully select a prejudgment interest rate, giving consideration to the interest rate the plaintiff could likely have received on relatively risk-free investments"). The U.S. Treasury Bill rate is one that courts traditionally have used because it "adequately ensures that the plaintiff is sufficiently, but not overly, compensated." *Vernon v. Port Auth. of New York & New Jersey*, 220 F. Supp. 2d 223, 236 (S.D.N.Y. 2002) (internal quotations omitted) (noting "[t]he rate at which the prejudgment interest is calculated is within the Court's discretion"). During the lifespan of this case, the U.S. Treasury Bill rate dropped as low as 0.04% and reached as high as 5.51%, averaging about 2.48%. *See* U.S. Department of the Treasury, Daily Treasury Bill Rates, available at: https://home.treasury.gov/resource-center/data-chart-center/interest-rates/TextView?type=daily_treasury_bill_rates&field_tdr_date_value=2025 (accessed on May 7, 2025). The 10-Year Municipal Bond rate reflects the return on low-risk, tax-exempt investments commonly available to the public, and it historically remained between approximately 2.8% and 3.3%. *See* Bloomberg.com/markets (accessed May 6, 2025). Courts have considered such rates as appropriate indicators when calculating prejudgment interest to avoid unjust enrichment or punitive outcomes. *See Vernon*, 220 F. Supp. 2d at 236 (finding the rate of municipal bonds "fair in light of the average treasury rate" during the relevant time period.)

Here, despite raising a total of six claims based upon federal, New Hampshire, Vermont, and common law, and raising issues of both discrimination and retaliation arising from the same conduct and occurrences, Plaintiff only prevailed under the Vermont discrimination claim. As such, she would only be entitled to the Vermont prejudgment interest rate as a matter of right *if* her damages were readily

11

ascertainable on the date she was terminated.  *See EBWS, LLC v. Britly Corp.*, 2007 VT 37, ¶ 37, 181 Vt.

513, 527, 928 A.2d 497, 509 (2007) ("Thus, the amount of damages was not reasonably certain[] . . . and

it was within the court's discretion to deny prejudgment interest in this case.").  As discussed above,

Plaintiff's damages were not readily ascertainable; therefore, any award of prejudgment interest is entirely

within this Court's equitable discretion.

In this case, Dartmouth Health has provided a reasonable and objective prejudgment interest

calculation, attached as Exhibit 6, using a 3% simple annual rate over the relevant period.  This rate falls

well within the historical range of relatively risk-free investment returns and reflects a conservative and

fair estimate of the time value of money without conferring a windfall.  The Court may take guidance

from this calculation as a practical, data-supported model for applying a fair and appropriate interest rate,

should it choose to award prejudgment interest.

Accordingly, if the Court does decide to award Plaintiff prejudgment interest, it should, in the

interest of fairness, exercise its discretion to decline application of the Vermont statutory rate, and instead

look to more balanced rates such as the 10-Year Municipal Bond rates, the U.S. Treasury Bill rates, or

another relatively risk-free investment rate.

### C. Fairness and Extraordinary Circumstances Support a Reduction in Prejudgment Interest

Finally, to the extent the Court finds any prejudgment interest is appropriate, it should be reduced

in light of the case's unique procedural history and extraordinary delays beyond Dartmouth Health's

control.  As discussed *supra*, prejudgment interest is intended to compensate, not punish.  *United States*

*v. Seaboard Sur. Co.*, 817 F.2d 956, 966 (2d Cir.1987).  In determining whether to award prejudgment

interest, "the District Court ha[s] to consider "(i) the need to fully compensate the wronged party for actual

damages suffered, (ii) ... *fairness and the relative equities of the award*, (iii) the remedial purpose of the

statute involved, and/or (iv) such other general principles as are deemed relevant by the court."  *Jones v.*

12

*UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir. 2000) (internal quotation marks omitted) (emphasis added).  Those same factors also guide the selection of the interest rate, *id.*, which "must not result in over-compensation of the plaintiff[.]" *Wickham Contracting Co. v. Local Union No. 3, IBEW*, 955 F.2d 831, 834 (2d Cir. 1992).  Courts have allowed discretionary prejudgment interest awards only when "fair, equitable and necessary to compensate the wronged party fully." *Id.* at 835.

Here, Plaintiff seeks $341,429 in prejudgment interest on a $1 million jury award—approximately 35% of the economic damages awarded—which exceeds reasonable compensatory damages and is excessive and punitive.  *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996) ("The Due Process Clause of the Fourteenth Amendment prohibits a State from imposing a 'grossly excessive' punishment on a tortfeasor."); *see d'Arc Turcotte v. Est. of LaRose*, 153 Vt. 196, 200 (1989) ("Interest is awarded to make the tort victim whole, and has no bearing on the question of punishing the tortfeasor.").  Put differently, under Plaintiff's proposed prejudgment interest calculation, she would be getting about $341,429 of interest on $714,285 of alleged back pay, which is about a 50% windfall.

This excessive request also rests on Plaintiff's chart, which is inconsistent with the record evidence, *see supra*, pt. 2 at 6–7, and is driven largely by delays not caused by Dartmouth Health.  The protracted timeline of this case further underscores that justice requires limiting prejudgment interest in the interest of fairness.

Given the unique procedural history of this case, *see supra*, Background at 2, it would be unfair to impose the full measure of prejudgment interest.  Had the court not granted summary judgment, trial would have taken place four years ago in early Spring 2021.  The subsequent delay was caused by extraordinary circumstances, including pandemic-related disruption—akin to a force majeure.  *See JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 123–24 (2d Cir. 2022) (holding that the COVID-19 pandemic constituted "circumstances beyond our or your reasonable control").  Finally, the

13

4899-0557-7024.1

passage of time confirmed the mathematical uncertainty underlying Plaintiff's damages, further supporting the equitable reduction—or complete denial—of prejudgment interest.

## CONCLUSION

For the foregoing reasons, Dartmouth Health opposes Plaintiff's Motion for Prejudgment Interest because the award and rate of prejudgment interest lie within the Court's discretion. As such, Defendants respectfully request that no prejudgment interest be awarded. In the alternative, Dartmouth Health asks that the Court decline to apply Vermont's statutory rate and instead adopt a more reasonable approach guided by historical federal rates or other low-risk benchmarks, such as the 10-Year Municipal Bond rate and/or the U.S. Treasury Bond rate as reflected in Exhibit 6.

4899-0557-7024.1

Date: May 7, 2025                               Respectfully submitted,


                                                /s/ Tristram J. Coffin

                                                **DOWNS RACHLIN MARTIN PLLC**

                                                Tristram J. Coffin
                                                199 Main Street
                                                Burlington, VT 05402
                                                Telephone: 802-863-2375
                                                tcoffin@drm.com


                                                **FOLEY & LARDNER LLP**

                                                Donald W. Schroeder (admitted *pro hac vice*)
                                                Morgan McDonald-Ramos (admitted *pro hac vice*)
                                                Megan E. Martinez (admitted *pro hac vice*)
                                                111 Huntington Avenue
                                                Boston, MA 02199
                                                Tel: (617) 342-4000
                                                dschroeder@foley.com
                                                mmcdonald@foley.com
                                                memartinez@foley.com

                                                *Attorneys for Defendants*




                        **CERTIFICATE OF SERVICE**

        I hereby certify that, on May 7, 2025, a copy of the foregoing document was electronically filed
through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic
Filing.


                                                /s/ Megan E. Martinez
                                                Megan E. Martinez