# UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT

| | |
|---|---|
| **MISTY BLANCHETTE PORTER, M.D.,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Docket No. 2:17-CV-194** |
| ) | |
| **DARTMOUTH-HITCHCOCK** ) | |
| **MEDICAL CENTER,** ) | |
| **DARTMOUTH-HITCHCOCK** ) | |
| **CLINIC, MARY HITCHCOCK** ) | |
| **MEMORIAL HOSPITAL, and** ) | |
| **DARTMOUTH-HITCHCOCK** ) | |
| **HEALTH,** ) | |
| **Defendants.** ) | |

## PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

Plaintiff Misty Blanchette Porter, M.D. ("Dr. Porter" or "Plaintiff") hereby moves this Court to award reasonable attorneys' fees and related expenses of at least $1,742,649.70, under the Vermont Fair Employment Practices Act, 21 V.S.A. § 495 *et seq*. (the "Act" or "FEPA") and F.R.C.P. 54(d).  In support of her Motion, Dr. Porter relies on the following Memorandum and the Declarations of Geoffrey J. Vitt and Eric D. Jones, filed herewith as Exhibits 1 and 2, respectively.

## MEMORANDUM

Under FEPA, "[a] prevailing party in a civil rights action in Vermont may seek compensation for 'reasonable attorney's fees.'"  *Spooner v. Town of Topsham*, 2010 VT 71, ¶ 8, 188 Vt. 293, 9 A.3d 672.  *See also* 21 V.S.A. § 495b(b) (noting that "any person aggrieved by a violation of the provisions of this subchapter may [recover] costs, reasonable attorney's fees, and other appropriate relief").  Dr. Porter is a "prevailing party," as she was awarded a substantial

jury verdict in her favor on her FEPA claim.  She is therefore entitled to an award of her

reasonable attorneys' fees and costs.[1]

## Reasonableness is the Standard

When awarding fees under a statute, "Vermont courts center their analysis on the

reasonableness of the fees—including the rate charged and the time invested—under all of the

circumstances."  *Spooner*, 2010 VT 71, ¶¶ 9 & 11 (citing *Human Rights Comm'n v. LaBrie, Inc.*,

164 Vt. 237, 250 (1995) ("Fee awards are to be reasonable, reasonable as to billing rates and

reasonable as to the number of hours spent in advancing the successful claims.") and *Grant v.

Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (relevant inquiry is "whether, at the time the work was

performed, a reasonable attorney would have engaged in similar time expenditures")).

When determining the reasonableness of fees in other statutory contexts, the Vermont

Supreme Court has explained that "applying the 'lodestar' method of calculation here represents

the reasonable worth of the services rendered in vindication of claimant's position, and is

therefore appropriate given the statute's goal of alleviating the cost of litigation for prevailing

claimants."  *Perez v. Travelers Ins. ex rel. Ames Dep't Stores, Inc.*, 2006 VT 123, ¶ 17, 181 Vt.

45, 915 A.2d 750 (internal quotations omitted).  "There is a strong presumption that [the]

'lodestar figure' represents a reasonable fee."  *LaBrie, Inc.*, 164 Vt. at 250.

The calculation of attorneys' fees thus begins with the "lodestar" figure, or the number of

hours reasonably expended on the case multiplied by a reasonable hourly rate.  *Spooner*, 2010

VT 71, ¶ 8.  An award based on a lodestar calculation will not be disturbed absent an abuse of

discretion.  *Id.* at ¶ 7.  The lodestar amount may be adjusted upward or downward based on a

---

[1]  Dr. Porter is filing a separate Bill of Costs to itemize her costs and expenses, which are in addition to the fees sought in this Motion.

variety of factors, including the so-called *Johnson* factors. *Id.* at ¶ 8. However, "[a]bsent extraordinary circumstances, the [lodestar] calculation should not be adjusted." *Brady v. Wal-Mart Stores, Inc.*, 455 F.Supp.2d 157, 214 (E.D.N.Y. 2006) (citing *Blum v. Stenson*, 465 U.S. 886, 898–99 (1984)), *aff'd* 531 F.3d 127 (2d Cir. 2008).

### The Lodestar Amount

In this case, the lodestar amount is currently $1,712,690.50, representing the number of hours reasonably expended on the case, multiplied by the normal and customary hourly rates of the attorneys involved at various times throughout the eight years that this case has been pending.[2]

As detailed in the Declaration of Geoffrey J. Vitt ("Vitt Dec."), from June 2017 through August 2020, Dr. Porter was billed—and paid—on an hourly basis. From that period, she paid a total of $475,096 in fees and expenses, leaving an outstanding balance of approximately $170,000 fees and expenses. Vitt Dec. ¶ 25. This included time spent by Vitt & Nunan lawyers and paralegals, at their then-normal and customary rates. Vitt Dec. ¶ 23.[3] This amount also includes time billed for Katie Kramer during that period. Vitt Dec. ¶ 24.

---

[2] This request is for fees incurred through the filing of this Motion. Dr. Porter will continue to incur additional compensable fees in connection with litigation associated with this Motion and with litigating other post-trial motions. Such fees are properly part of a prevailing plaintiff's compensable award. *LaBrie, Inc.*, 164 Vt. at 252 ("plaintiff is entitled to fees for time spent on the motion [for allowance of attorney's fees]") (citing *Goodman v. Heublein, Inc.*, 682 F.2d 44, 48 (2d Cir. 1982)); *Centrella v. Ritz-Craft Corp. of Pennsylvania, Inc*, No. 2:14-CV-111-JMC, 2018 WL 1750568, at *2 (D. Vt. Apr. 11, 2018) ("Attorney fees for the preparation of an attorney fee application and other post-trial motions have been found to be compensable in the Second Circuit and under Vermont law."). Plaintiff will supplement this Motion with a final accounting as appropriate.

[3] For invoices reflecting then-current rates, interest should be awarded at Vermont's prejudgment rate of 12%, calculated based on the date of each invoice or similar reasonable method.

Beginning in late 2020, because Dr. Porter could no longer pay the hourly fees, Vitt & Nunan handled the case on a contingent fee basis.  Vitt Dec. ¶ 26.  Invoices were generated to track time at then-current rates.  Through April 2022, fees reflected on those invoices totaled $167,317.[4]

From 2024 through trial and the preparation of this Motion, Vitt & Nunan billed hours as follows, at their now-current normal and customary rates: Geoffrey J. Vitt, 1,120.9 hours, at $400 per hour; Sarah Nunan, 760.8 hours, at $260 per hour; and Sarah Merlo, 281 hours, at $325 per hour.  Vitt Dec. ¶¶ 23, 30, & Ex. C.  The total value of services rendered during that time period, including paralegal time, was $750,493.  Vitt Dec. ¶ 30 & Ex. C.

In addition to the services provided by Vitt & Nunan PLC, attorney Katie Kramer provided legal services to Dr. Porter in this case.  Vitt Dec. ¶ 5.  Attorney Kramer issued bills for her services directly to Dr. Porter between 2020 and 2024.  Vitt Dec. ¶¶ 27–29 & Ex. B.  The total amount paid to attorney Kramer during this time was $10,055, which amount was paid by Dr. Porter.  Vitt Dec. ¶ 29.[5]

Finally, in October 2024 Dr. Poter engaged the law firm Langrock Sperry & Wool, LLP ("LSW") to join her trial team.  LSW agreed to represent Dr. Porter on a contingent fee basis. *See* Declaration of Eric D. Jones ("Jones Dec.") ¶ 4.  Through trial and the preparation of this Motion, LSW billed hours as follows: Eric Jones, 358 hours in 2025 and 36.10 hours in 2024, at his normal and customary rates ($375.00 in 2024 and $395.00 in 2025); Partner Alison Bell 9.60 hours at her normal and customary rate of $415.00 in 2025; Associate Bridget Grace, 2 hours at her normal and customary rate of $225.00 in 2025; Associate Wendy Radcliff, 0.25 hours at her

---

[4] Prejudgment interest should be awarded on these fees to reflect the delay.

[5] Prejudgment interest should be awarded on these fees to reflect the delay.

normal and customary rate of $250.00 in 2025; and Paralegal Sheri Lehouiller, 38.30 hours at her normal and customary rate of $155.00 in 2025.  The total value of services rendered during that time period was $165,380.50.  Jones Dec. ¶¶ 5–7 & Ex. A.

Adding together the fees through the filing of this Motion, yields a lodestar figure $1,712,690.50 in fees through the date of this Motion.

### The Rates Charged Were Reasonable

The Vermont Supreme Court has noted that there is "no fixed standard for determining a reasonable rate."  *Perez*, 2006 VT 123, ¶ 14 (citing *Fine Foods, Inc. v. Dahlin*, 147 Vt. 599, 605 (1986)).  Among the factors the court may consider are "prices charged by other attorneys for similar services in the same vicinity."  *Id.*

The rates charged by Vitt & Nunan, Katie Kramer, and LSW are well within the range of reasonable rates in the Vermont market.  Those rates are commonly charged to and paid by Vitt & Nunan and LSW's other hourly clients, Vitt Dec. ¶ 23 and Jones Dec. ¶ 6, which is *prima facie* evidence of their reasonableness.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 184 (2d Cir. 2008) (suggesting that what a "reasonable, paying client would be willing to pay" is a useful metric of reasonableness in a fee petition).  This Court has the discretion based on its own experience to approve the hourly rates as reasonable in this market.  *Perez*, 2006 VT 123, ¶¶ 8–9 (court has discretion to approve reasonable hourly rate without expert testimony).

Prior attorney fee awards in the United States District Court for the District of Vermont and in Vermont state courts also confirm that the Vitt & Nunan, Katie Kramer, and LSW hourly rates are reasonable.  More than a decade ago, the federal court affirmed fee awards based upon $300 per hour for an experienced partner and $200 for a senior associate (notwithstanding

evidence that Vermont counsel was in fact charging $320 hourly in his regular practice). *IMS Health Inc. v. Sorrell*, No. 1:07-CV-188-JGM, 2012 WL 2915845, at *6, 7 (D. Vt. July 17, 2012) (citing *Diamond v. O'Connor*, 2010 WL 9459022 (D. Vt. June 10, 2010), *aff'd,* 417 F. App'x 104 (2d Cir. 2011) (approving $325 hourly rate for a senior partner)). *See also Centrella v. Ritz-Craft Corp. of Pennsylvania, Inc*, 2018 WL 1750568, at *3 (D. Vt. Apr. 11, 2018) (approving hourly rate of $275); *White River Amusement Pub, Inc. v. Town of Hartford, Vt.*, No. 1:02-CV-320, 2008 WL 2404029 (D. Vt. June 10, 2008) (approving hourly rate of $200); *United States ex rel. Poulton v. Anesthesia Associates of Burlington, Inc.*, 87 F.Supp.2d 351, 356–57 (D. Vt. 2000) (approving hourly rates of $225 for lead counsel and $160 per hour for an associate attorney). More recently, the Vermont courts approved an hourly rate of $425. *Rivard v. Smallheer*, No. 22-cv-04364 (Vt. Super. Ct. Sept. 19, 2023) (Barra, J.), *aff'd*, No. 23-AP-338, 2024 WL 1481590 (Vt. Apr. 05, 2024) (unpublished three-justice panel). Given this reported history and the inevitable rise of hourly rates over time, the hourly rates charged by Vitt & Nunan, Katie Kramer, and LSW are wholly consistent with prior case law.

### The Hours Charged Were Reasonable

Plaintiff's counsel spent an appropriate amount of time litigating this case, given its complexity, the duration and procedural complexity, the conduct and choices of defense counsel, and the result achieved. Vitt Dec. ¶ 31. Counsel kept contemporaneous time records and have submitted bills only for the sort of activity for which they would charge an hourly paying client. Vitt Dec. ¶¶ 30–31; Jones Dec. ¶¶ 8–9.

Several factors contributed to the amount of time involved here. Document discovery was protracted due to Dartmouth Health's aggressive discovery tactics, which resulted in requiring Plaintiff to file and litigate eight motions to compel (which were granted). Vitt Dec. ¶¶

6–7.  Wrongful termination cases are necessarily highly fact intensive, and discovery was

extensive.  Vitt Dec. ¶ 8.  The case extended over almost eight years, including summary

judgment, an appeal to the Second Circuit, two mediations, numerous hearings, and a three-week

trial.  Vitt Dec. ¶¶ 3–4, 6–15, 18–20, 22.  The amount of time expended was reasonable under

the circumstances and consistent with similar cases.  Vitt Dec. ¶ 31.

It is also reasonable for a plaintiff to have more than one attorney, each of whom should

be fully compensated for their work.  The Vermont Supreme Court has awarded attorney's fees

when more than one attorney is working on the case, holding that "[w]hile a court can generally

reduce the number of hours charged by attorneys due to duplication ... there are situations in

which a certain level of duplication between attorneys is reasonable."  *Perez*, 2006 VT 123, ¶ 18.

The Supreme Court explained that "[a] reduction in a fee is warranted only if the attorneys are

*unreasonably* doing the *same* work.  An award for time spent by two or more attorneys is proper

as long as it reflects the distinct contribution of each lawyer to the case and the customary

practice of multiple-lawyer litigation."  *Id*. (emphasis in original) (quoting *Afro-American

Patrolmen's League v. City of Atlanta*, 817 F.2d 719, 725–26 (11th Cir. 1987)) (quotation

omitted).  Similarly, in *Spooner* the Vermont Supreme Court held that it was an abuse of

discretion to deny a fee award for a second attorney.  *Spooner*, 2010 VT 71, ¶ 17–18 ("There is

an obvious distinction between having multiple attorneys working on a case and having multiple

attorneys doing the same work on a case.  While the trial court can adjust the hourly rate or

number of hours that are awarded, a complete denial of all fees for the second attorney in this

case was an abuse of discretion").  "If multiple attorneys performed unique work on the case,

plaintiff should be compensated for each attorney's distinct inputs."  *Id.* at ¶ 19.

Here, the work was not duplicative. Throughout the majority of the case, on-going, extensive time was necessary to accomplish the necessary research/drafting, interviewing witnesses, preparing for and attending hearings, preparing for and attending depositions, and discovery, such that each lawyer had related, but distinct, role on each task. Once the case moved into the trial stage, it was necessary and appropriate to staff the case with an additional trial lawyer; though all attended the trial, the jury draw, status conferences, and various meetings with opposing counsel, they had entirely different roles. Plaintiff initially projected calling over 20 witnesses in her case in chief. While she ultimately presented her case with 14 witnesses, multiple lawyers were needed to prepare and present a three-week trial (which included a total of 20 witnesses and 90 documentary exhibits). When both charged for the same event (such as trial or motions hearings), it was because each offered a unique and remunerable contribution to the matter. Plaintiff notes that Dartmouth Health's legal team was even larger than Plaintiff's team, consisting of four lawyers and a paralegal attending the entire trial. This case was simply complex enough that a litigation team was necessary for both parties to litigate the issues effectively.

### No Downward Adjustments are Appropriate

In some cases, it may be appropriate to adjust the lodestar amount to account for other factors. *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974); *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983); *Huard v. Henry*, 2010 VT 43, ¶16, 188 Vt. 540, 999 A.2d 1264. In this case, review of other relevant factors—including prevailing Vermont case law—confirms that the lodestar calculation represents a reasonable fee and should even be adjusted upward.

## Application of the *Johnson* Factors

The so-called *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitation imposed by the client or the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–719. While many of the factors do not apply here, see *Ring v. Carriage House Condo. Owners Assoc.*, 2014 VT 127, ¶ 25 ("[t]he court concluded that most of those [*Johnson*] factors were not helpful" and analyzed only five of the twelve), those that do apply support the lodestar amount as being the reasonable fee, or one that should actually be adjusted upwards.

The first factor, the "time and labor required," and the fifth factor, the "customary fee," are merely a restatement of the lodestar calculation itself; the time expended and fees assessed were reasonable as discussed above.

The sixth factor, "whether the fee is fixed or contingent," also weighs in favor of full compensation here. When Dr. Porter reached a point when she could no longer pay attorneys' fees on an hourly basis, Vitt & Nuna agreed to continue prosecuting the case on a contingent fee basis, Vitt Dec. ¶ 26, meaning that counsel undertook significant risk with respect to eventual payment of any additional fees. In addition, when Dr. Porter engaged LSW to join her trial team, LSW agreed to proceed on a contingency basis, Jones Dec. ¶ 4; thus LSW also undertook significant risk regarding the payment of its fees.

Factor eight, the "amount involved and results obtained," would actually justify an upward adjustment. The result was a significant victory for the Plaintiff, and the jury verdict was substantial in comparison to other Vermont employment verdicts.

Finally, the ninth factor, "the experience, reputation, and ability of the attorneys," also favors the Plaintiff, as her attorneys are highly experienced, have excellent reputations in the legal community, and were well-suited to the case. Therefore, their respective rates are appropriate to compensate them for their considerable skill and ability.

### Additional Factors the Court May Consider

In addition to the *Johnson* factors, other factors may also merit possible adjustment. *Huard*, 2010 VT 43, ¶16. In Vermont, "among the factors a trial court may look at in deciding whether to increase or reduce a lodestar amount is the result obtained by the attorney." *Id*. Again, the Plaintiff prevailed on her FEPA claim and received a substantial verdict from the jury. The excellent result achieved here weighs in favor of full award of the lodestar amount and an upward adjustment.

The Court may also consider "the role defendants played in increasing the costs of the litigation." *Ring*, 2014 VT 127, ¶ 26. As noted above, for example, Dartmouth Health's conduct during discovery necessitated eight motions to compel. Vitt Dec. ¶¶ 6–7.

Finally, it is important to consider the fundamental purpose of the fee-shifting provisions of civil rights statutes – to encourage plaintiffs and counsel to bring meritorious claims. Failure to award full fees in a case such as this would both illuminate why it is often hard for plaintiffs to find counsel equally competent as those employed by deep-pocket defendants, as well as disincentivize future counsel from taking similar cases.

**Reasonable out-of-pocket expenses are a component of attorneys' fees**

Some expenses not considered "taxable costs" are nevertheless recoverable as a component of attorney's fees. *See, e.g., Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278 (2d Cir. 1987) (affirming award of attorneys' fees which included costs not authorized by section 1920, noting that in civil rights claims under fee-shifting statutes, an award of attorney's fees normally includes those "reasonable out-of-pocket expenses" incurred by the attorney in representing a client). Such expenses have included mediator fees, travel and meals, postage, and deposition-related expenses. *See, e.g., Degreenia-Harris v. Life Ins. Co. of N. Am.*, No. 2.19-CV-00218, 2021 WL 5979683, at *13–15 (D. Vt. Dec. 17, 2021) (awarding costs and expenses including mediator fees, travel, meals, lodging, court fees, postage, and transcripts); *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 601–02 (2d Cir. 2020) (finding expenses for court reporting, fees for court reporting, filing fees, hotel and transportation costs, working meals appeared to be "reasonable, incidental, and necessary to the representation"). *See also* V.R.C.P. 54(g) (noting that costs of deposition may be taxable if "the court finds that the taking of the deposition was reasonably necessary, whether or not the deposition was actually used at trial" and that such costs may include "the cost of service of subpoena upon the deponent, the reasonable fee of the officer before whom the deposition is taken, the stenographer's reasonable fee for attendance, and the cost of the original transcript of the testimony or such party thereof as the court may fix"); V.R.C.P. 16.3(c)(1)(C) ("If mediation under this rule does not result in settlement or other final disposition of the action, payments made to a mediator may be taxed as costs to the prevailing party in the discretion of the court.").

As noted, this case required a significant number of depositions (and deposition transcripts), witnesses, and three weeks of trial (with transcripts for each trial day). Two of the

attorneys were required to stay near the trial location for nearly one full month in order to adequately prepare for and attend trial.  Defendants required the deposition of Dr. Porter's expert as well as his attendance at a *Daubert* hearing prior to trial.  And the parties participated in two mediations.  These expenses, totaling $29,959.20, were reasonable and necessary under the circumstances and should be included within the award of attorneys' fees.

## CONCLUSION

For the foregoing reasons, Dr. Porter requests that the Court GRANT this motion, award Dr. Porter an amount of at least $1,742,649.70 (to be adjusted by a final accounting after post-judgment litigation is complete), and enter judgment to the same effect.

Dated: <u>May 8, 2025</u>

/s/ Geoffrey J. Vitt
Geoffrey J. Vitt, Esq.
Vitt & Nunan, PLC
8 Beaver Meadow Road
P.O. Box 1229
Norwich, VT 05055-1229
(802) 649-5700
gvitt@vittnunanlaw.com

Eric D. Jones, Esq.
Langrock Sperry & Wool, LLP
210 College Street
P.O. Box 721
Burlington, VT 05402
(802) 864-0217
ejones@langrock.com

Sarah H. Nunan, Esq.
Vitt & Nunan PLC
8 Beaver Meadow Road
P.O. Box 1229
Norwich, VT 05055
(802) 649−5700
snunan@vittnunanlaw.com

***Attorneys for Plaintiff,
Misty Blanchette Porter, M.D.***

12