UNITED STATES DISTRICT COURT

DISTRICT OF VERMONT

| | |
|---|---|
| MISTY BLANCHETTE PORTER, M.D.,<br>      Plaintiff,<br><br>v.<br><br>DARTMOUTH-HITCHCOCK MEDICAL CENTER, DARTMOUTH-HITCHCOCK CLINIC, MARY HITCHCOCK MEMORIAL HOSPITAL, and DARTMOUTH-HITCHCOCK HEALTH,<br>      Defendants. | Docket No. 2:17-CV-194 |

## DECLARATION OF GEOFFREY J. VITT

I, Geoffrey J. Vitt, pursuant to the provisions of 28 U.S.C. sec. 1746 hereby declare as follows:

**Qualifications**

1. I have been a member of the Vermont bar since 1990. Prior to moving to Vermont, I practiced law in Virginia and the District of Columbia. I was a partner in Caplin & Drysdale before I moved to Vermont. A substantial portion of my practice in Vermont has been handling employment cases on behalf of plaintiffs.

**Case History**

2. In the summer of 2017, Dr. Misty Blanchette Porter retained my firm to represent her after Dartmouth Health terminated her employment. Over the summer and early fall, lawyers and paralegals at the firm did the legal and factual research that was necessary to prepare and file a 32-page complaint that includes many of the claims that were raised at trial. Dr. Porter's complaint alleges that Dartmouth Health terminated her employment

1

because of disability-based discrimination and her refusal to tolerate medical care by doctors that was significantly below an acceptable standard of care.

3. Dr. Porter filed this lawsuit on October 11, 2017. The complaint was twice amended.

4. Shortly after Dr. Porter filed her complaint, Dartmouth Health made it clear that it intended to mount an aggressive defense. It retained lawyers from Downs Rachlin & Martin and the Boston office of the Foley Lardner firm who have represented defendants throughout this case.

5. In January 2018, Katie Burghardt Kramer entered an appearance on behalf of Dr. Porter. Ms. Kramer is a graduate of Stanford Law School who after graduation clerked for a United States District Court judge in California and then worked in New York City for a large firm. After moving to Vermont, she clerked for Judge Christina Reiss and later worked for Langrock Sperry & Wool. At the time that she entered an appearance, Ms. Kramer was in a solo practice in Middlebury, Vermont. In late 2020, Ms. Kramer joined a New York firm.

Course of Discovery

6. On January 22, 2018, Dr. Porter served Dartmouth Health with her initial requests to produce documents. Dartmouth Health did not produce all the requested documents and on March 27, 2018, she filed her first of eight motions to compel. Dartmouth Health filed a memorandum in opposition and the motion was argued on July 17, 2018. On August 9, 2018, the court entered an order granting the motion to compel.

7. Regrettably, Dartmouth Health's obstructive discovery conduct continued, forcing Dr. Porter to file a total of eight motions to compel, seven of which were granted in full and one was granted in part and denied in part.

8. Discovery was time consuming. Dartmouth Health produced approximately 32,000 documents and Dr. Porter produced approximately 1,200 documents. The parties took 13 depositions.

Dartmouth Health's Motion for Summary Judgment and Appeal to Second Circuit

9. Defendants moved for summary judgment on January 29, 2020, arguing that Dr. Porter could not establish a prima facie case for the retaliation claims nor could she establish that there was a causal connection between her reporting activities or disability and the decision to terminate her employment. Defendants asserted that they had a legitimate, non-discriminatory reason for terminating Dr. Porter's employment, and Dr. Porter would be unable to demonstrate pretext.

10. Dartmouth Health's motion for summary judgment was supported by an extensive factual record comprised of 23 exhibits.

11. The case had been pending for over two years when defendants moved for summary judgment. The parties had produced tens of thousands of documents and had taken 13 depositions. In preparing Dr. Porter's reply memorandum, we spent considerable time identifying documents produced in discovery and deposition excerpts that support plaintiff's position that there were material facts very much in dispute. Dr. Porter's opposition memorandum references 22 exhibits which included several affidavits.

12. In preparing Dr. Porter's opposition memorandum, we interviewed current and former Dartmouth Health doctors, nurses, and technicians who had information about Dr. Porter's expertise, comments by senior management about her disability, patient harm caused by Drs. Seifer and Hsu, complaints that Dr. Porter made to senior members of

management, and their failure to take remedial action. Two former employees, Dr. Julia MacCallum and nurse Sharon Parent, and a current employee, Dr. Michele Russell, signed affidavits. All three testified at trial. Dr. Porter also executed an affidavit that was included in the opposition.

13. On November 3, 2020, the District Court granted the motion for summary judgment, and on November 4, 2020, the Court entered judgment in favor of defendants. On November 17, 2020, Dr. Porter filed a Notice of Appeal.

14. The case is complex and the factual record is extensive. Beginning in February 2021, I and other lawyers in the firm devoted a significant number of hours preparing Dr. Porter's opening brief and, in the summer of 2021, preparing a reply brief.

15. Oral argument was held on February 24, 2022. During that month, I spent considerable time working with Ms. Kramer and lawyers in my firm to prepare for oral argument. On February 6, 2024, the Second Circuit issued its opinion, and the case was remanded for trial on the merits.

16. In 2024, Ms. Kramer was no longer practicing law in Vermont having accepted a position with a New York City firm. The new position made it impossible for her to continue to work on the case, and in November 2024, she filed a motion to withdraw. On October 31, 2024, Eric Jones, a partner in the Langrock firm, entered an appearance on behalf of Dr. Porter.

17. As the court is aware, Mr. Jones took an active role in the case which included argument of motions, drafting of legal memoranda, conducting voir dire, examining witnesses, and conducting cross examination of multiple witnesses.

Trial Preparation

18. Dr. Porter identified in discovery a long list of persons (more than 30) who had information about decisions made by senior management to close the REI Division and to terminate her employment. Our task leading up to trial was to get the number of witnesses to a manageable level and to find persons who were available and willing to spend the time that would be needed to prepare to testify

19. Besides the normal work associated with trial preparation, we had to prepare briefs and appear for argument in response to Dartmouth Health's four motions in limine and a motion to quash a subpoena served on Joanne Conroy, M.D. In addition, the Court granted defendants' request to hold a *Daubert* hearing regarding the qualifications of Dr. Robert Bancroft to testify as an expert at trial regarding Dr. Porter economic damages. We had to prepare for and attend that hearing.

Trial

20. Trial began on March 24, 2025, and the jury returned a verdict on April 10, 2025. The Porter team spent long hours leading up to and during trial. During the trial, Dartmouth Health filed motions which required a response from Dr. Porter.

21. The jury's verdict of $1,125,000 for economic and emotional distress damages is exceptional. We are unaware of another individual employment case in Vermont that has produced a larger verdict.

**Mediation**

22. The parties made no progress toward settling the case in the seven plus years it has been pending. The Court appointed Gregory Clayton to handle the ENE. Although Mr.

Clayton arranged a mediation, Dartmouth Health made it clear that it had no intention to settle the case and the mediation ended quickly. After the Second Circuit reversed and remanded the case, Judge Crawford appointed John Schraven as a "Special Settlement Master." At Mr. Schraven's direction, the parties participated in another mediation session in Burlington. Again, the parties failed to make progress toward settlement.

**Fees and Billing**

23. In May 2017, Dr. Porter retained my firm. She agreed to pay the firm at its then current billing rates. At the time, my regular billing rate was $320 per hour. Other lawyers and paralegals at the firm were billed at lower hourly rates. The current normal and customary billing rates for the lawyers who have worked on the Porter case are a) Sarah Nunan - $260 an hour, b) Sarah Merlo - $325 an hour, and c) Geoffrey Vitt - $400 an hour. At the time the case began, Sarah Nunan was a paralegal and her time entries reflect a paralegal billing rate. Since that time, she became a lawyer and is now a partner. She is an experienced lawyer who has been lead counsel on several employment cases and her current billing rate reflects that fact. The attorney rates are the rates Vitt & Nunan commonly charged and have been paid by our hourly clients. I believe that these were reasonable rates at the time in this state in light of our experience, training, and skill.

24. When Ms. Kramer began working on the case in January 2018, she billed her time at $175 an hour, a rate considerably below the market rate for a lawyer with ten years' experience including two federal court clerkships and experience with a large New York firm. Ms. Kramer's time was included on the monthly statements that my firm sent to Dr. Porter.

6

25. Beginning in June 2017, the firm sent monthly billing statements to Dr. Porter. Through August 2020, Dr. Porter had paid the firm a total of $475,096.06. The statements and the dates of payment by Dr. Porter are attached as Exhibit A. The outstanding balance owed to the firm after these payments was approximately $170,000.

26. Starting in or around September 2020, Dr. Porter could no longer afford to pay our attorney's fees on an hourly basis, but she could pay out-of-pocket expenses. I agreed that the firm would continue to represent her on a contingent fee basis through the conclusion of the case with the understanding that if she prevailed at trial, we would seek an award of attorney's fees from the court. Since the summer 2020, we have proceeded on that basis.

27. In 2020, Ms. Kramer affiliated with DGW Kramer LLP, a firm in New York. Her firm agreed that she could continue to work on the case under the original fee agreement. Her firm issued an invoice on April 1, 2020, for $4,987.50 and an invoice on September 10, 2020, for $477.50. Dr. Porter paid these invoices directly.

28. In 2024, Ms. Kramer joined the New York office of DTO Law. That firm allowed Ms. Kramer to bill Dr. Porter at an hourly rate of $450 an hour, which is approximately half of her regular hourly billing rate at that firm. Between April 3, 2024, and June 17, 2024, Ms. Kramer billed Dr. Porter a total of $4,590 which amount was paid by Dr. Porter.

29. The statements for Ms. Kramer from the two firms are included as Exhibit B. The total amount paid by Dr. Porter for Ms. Kramer's time at these two firms is $10,055.

30. Attached as Exhibit C is a statement of the unbilled time recorded by Vitt & Nunan lawyers and paralegals (and the predecessor firm) on the Porter case through the date of filing of this motion. I have used my normal and customary billing rate of $400 an hour and the normal and customary billing rates of the other lawyers and paralegals who worked on this case. The statement of time reflected in Exhibit C is based on the contemporaneous time records that were recorded by these lawyers and paralegals.

31. Given the complexity of the case and the more than seven years of work, the time devoted to the case was reasonable and appropriate.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at San Francisco, CA this 6th day of May, 2025.

Geoffrey J. Vitt