UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| MISTY BLANCHETTE PORTER, M.D.,　　Plaintiff,<br><br>v.<br><br>DARTMOUTH-HITCHCOCK MEDICAL CENTER, DARTMOUTH-HITCHCOCK CLINIC, MARY HITCHCOCK MEMORIAL HOSPITAL, and DARTMOUTH-HITCHCOCK HEALTH,　　Defendants. | Docket No. 2:17-CV-194 |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PREJUDGMENT INTEREST**

Plaintiff Misty Blanchette Porter ("Dr. Porter") submits this Reply in support of her Motion for Prejudgment Interest, (Doc. 296), and Motion to Amend Judgment, (Doc. 302), asking this Court to award prejudgment interest at the rate of 12% on the economic damages incurred as a result of termination for the period from June 2017 through the date of judgment.

**Dr. Porter is Entitled to An Award of Prejudgment Interest at Vermont's 12% Rate**

The jury found in Dr. Porter's favor on Vermont's Fair Employment Practices Act ("FEPA"), 21 V.S.A. § 495 *et seq.* (Doc. 281.) Where, as here, a decision is solely based on a state-law claim, the Court should award prejudgment interest in accordance with state law. *See, e.g., Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998) (noting that "federal law does not apply to the calculation of prejudgment interest on supplemental state law claims"); *Rhodes v. Davis*, 628 F. App'x 787, 792 (2d Cir. 2015) (noting that the question of prejudgment interest is one of substantive law and state law applies where plaintiff did not prevail on any federal claims); *Merritt v. United States*, No. 5:18-cv-200, 2022 WL 17573683, *1 (D. Vt. Nov. 15,

2022) (applying Vermont law on prejudgment interest to plaintiff's supplemental state law claims). *See also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941) (concluding that in diversity cases, interest is awarded "at such rate as is allowed by law on judgments recovered in the courts of the state in which the court is held").

Under Vermont law, a plaintiff who prevails on a FEPA claim may recover "compensatory and punitive damages or equitable relief, including restraint of prohibited acts, restitution of wages or other benefits, reinstatement, costs, reasonable attorney's fees, and other appropriate relief." 21 V.S.A. § 495b(b). An award of prejudgment interest constitutes appropriate relief as it compensates a plaintiff for the loss of use of money rightfully due and helps to make the plaintiff whole. *See, e.g., Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 145 (2d Cir. 1993) (noting award of prejudgment interest prevents an employer from delaying payment to "enjoy an interest-free loan for as long as it can"); *d'Arc Turcotte v. Est. of LaRose*, 153 Vt. 196, 198–200 (1989) ("Plaintiffs who are awarded interest will be made whole; those not awarded interest will not, contrary to the purpose of compensatory damages.").

In Vermont, prejudgment interest "shall" be included on judgments involving monetary relief when the amount of damages is readily ascertainable, and prejudgment interest is available at the court's discretion in all other instances. V.R.C.P. 54(a) & Reporter's Notes—1981 Amendment; *Estate of Fleming v. Nicholson*, 168 Vt. 495, 500 (1998). The Vermont pre-judgment interest rate is 12% simple annual interest. 9 V.S.A. § 41a(a). This is the rate that should be applied to any award of interest in this case. *See, e.g., Gaffney v. Thandi*, No. 2:20-CV-00173, 2023 WL 4685750, at *8–9 (D. Vt. July 21, 2023) (finding question of prejudgment interest governed by state law and affirming calculation of interest at Vermont's 12 percent rate); *Cheney v. New England Publishers, Inc.*, No. 5091012, 2014 WL 8515132, *3 (Vt. Super. July 8, 2014) (applying Vermont's 12% judgment interest rate where both state and federal claims

could have justified the jury's verdict).

Where federal law applies, in contrast, judges have discretion as to the award and rate of prejudgment interest. There is no standard federal interest rate, and Defendants propose that the Court exercise discretion to apply a rate of interest significantly below Vermont's standard 12%. Their proposed "3% simple annual rate" appears to be based on the lower end of an informal average of an amalgamation of certain federal rates that have been used at various times by the courts. (Doc. 299 at 12.) Even if Defendants were correct that the Court has discretion to award a lower rate of interest and that the Court should exercise discretion to apply a 3% rate—which they are not—Defendants fail to acknowledge that the applicable rate should be compounded annually. *See* 28 U.S.C. § 1961(b) ("Interest shall be computed daily to the date of payment … and shall be compounded annually."). *See also Gierlinger v. Gleason*, no. 89-cv-0686E(F), 1999 WL 222604, at *2 (W.D.N.Y. Apr. 2, 1999) (noting that "such rate ordinarily should be compounded annually in an employment discrimination case").

Defendants further seek to reduce the impact of an award of prejudgment interest by presenting an interesting—if fundamentally flawed—theory that would absolve them from paying prejudgment interest during the period between obtaining summary judgment and the Second Circuit's February 6, 2024 decision.[1] (Doc. 299 at 2, 12–13.) Defendants correctly point out that "prejudgment interest is intended to compensate, not punish." (Doc. 299 at 12–13.) Prejudgment interest should be used to help make a plaintiff whole but should not provide a windfall. *See, e.g., Smedberg v. Detlef's Custodial Service, Inc.*, 2007 VT 99, ¶¶ 35–39, 182 Vt.

---

[1] It is not clear whether Defendants are additionally arguing that the period between termination and summary judgment should also be excluded, but in any event, the law does not support "staying" the accrual of interest until a judgment is entered against the non-prevailing party.

349, 940 A.2d 674 (explaining that prejudgment interest is meant to restore "harmed plaintiffs to the financial position they would have enjoyed"). Where Defendants go wrong is, as between the parties, in allocating the risk of a lengthy legal dispute to Dr. Porter. *Cf. Gierlinger v. Gleason*, 160 F.3d 858, 873–74 (2d Cir. 1998) (noting award of prejudgment interest "prevents the defendant employer from attempting to enjoy an interest-free loan for as long as it can delay paying out back wages"). The proper focus in a discrimination/retaliation case is on the loss to Dr. Porter by reason of Defendants' improper conduct, not on any burden Defendants may experience in having to compensate Dr. Porter for the full extent of the harm they caused. *See, e.g., Spooner v. Town of Topsham*, No. 129-7-04OECV, 2009 WL 6962588 (Vt. Super. Aug. 14, 2009) ("Prejudgment interest is intended to make the plaintiff whole where there has been a delay between the date of the injury and the date of the compensatory award."). During the past nearly eight years, Defendants have had the use of money that should rightfully have gone to Dr. Porter. Dr. Porter, conversely, has been deprived of money that should rightfully have been hers during that same period. Allowing Defendants to avoid responsibility for prejudgment interest during periods of delay for which they are not directly responsible would turn the purpose of awarding prejudgment interest on its head.

### Dr. Porter's Economic Damages Were Readily Ascertainable

Damages consisting of lost wages are sufficiently ascertainable. *See, e.g., Smedberg*, 2007 VT 99 at ¶¶ 37–38 (finding damages were readily ascertainable where "plaintiff's salary was known with reasonable certainty"); *Mansfield Heliflight, Inc. v. Freestream Aircraft USA, Ltd.*, No. 2:16-CV-28, 2019 WL 5081061, at *4–6 (D. Vt. Oct. 10, 2019) (noting lost wages are a "concrete and static measure of damages"). Indeed, failure to award prejudgment interest on back pay can be considered an abuse of discretion. *Clergeau v. Loc. 1181, Amalgamated Transit Union, AFL-CIO*, 162 F. App'x 32, 35 (2d Cir. 2005); *Gierlinger*, 160 F.3d at 873–75

(noting that where damages "represent compensation for lost wages, it is ordinarily an abuse of discretion *not* to include pre-judgment interest"); *Saulpaugh*, 4 F.3d at 145 (noting that where damages reflect compensation for lost pay, "it is ordinarily an abuse of discretion *not* to include pre-judgment interest"). Dr. Porter's economic damages, consisting of lost wages and related costs, have, at all relevant times, been readily ascertainable and not subject to significant dispute.[2] From the time of Dr. Porter's termination, and each pay period thereafter, Defendants could have computed the difference between what Dr. Porter would have earned but for her termination with what she earned in fact, and therefore calculated the extent of damages incurred to date. (*See, e.g.,* Ex. A, Draft Trial Tr. for March 28, 2025, at 150 (describing analysis looking at the difference between what would have been earned at DH and what was earned at UVM).) As such, and contrary to their argument, (Doc. 299 at 8–9), Defendants could have "avoid[ed] the accrual of interest by simply tendering to the plaintiff a sum equal to the amount of damages," *Windsor Sch. Dist. v. State*, 2008 VT 27, ¶ 30, 183 Vt. 452, 956 A.2d 528).

It is true that neither party could predict at the time of termination how long this case would continue and thus the ultimate total amount of damages.[3] Some assumptions have been altered by the passage of time and unanticipated events, which is reflected in the revised reports periodically prepared by Dr. Bancroft. (*See, e.g.,* Ex. A at 152–53 (noting predicted raises were removed from the reports for 2020 and 2021, based on information obtained from DH that no

---

[2] Despite Defendants' ongoing attempts to create controversy by pointing out changes to Dr. Bancroft's report over time, the method and the means to calculate economic harm have remained the same and, at any point in time, the amount of economic harm incurred to that point could have been calculated with reasonable certainty. *Cf. Estate of Fleming*, 168 Vt. at n.3 (noting that conflicting theories of damages will not automatically render damages not readily ascertainable "where the court has the option to rely on an established method of calculation").

[3] Defendants were, however, well placed to comprehend the potential extent of harm at the time of termination, given their knowledge of Dr. Porter's salary, DH policies and practices with respect to promotions and compensation, and general knowledge about regional physician compensation practices.

5

raises were actually provided during those years during the covid pandemic).) The standard to award prejudgment interest as of right, however, does not demand perfection. *See, e.g., Birchwood Land Co. v. Ormond Bushey & Sons, Inc.*, 2013 VT 60, ¶ 24, 194 Vt. 478, 82 A.3d 539 (affirming trial court's finding that damages were reasonably certain and awarding prejudgment interest as a matter of right, noting that "[d]amages need not be precisely or infallibly ascertainable, only … reasonably so") (internal quotations and citation omitted); *Cheney*, 2014 WL 8515132, at *3 (stating that the "fact that the jury did not issue a monthly calculation of the damage award does not render the award incapable of ready ascertainment"). If the Court adopted Defendants' allegation that Dr. Porter's damages were not readily ascertainable at the time of termination, no employment plaintiff ever would be eligible for prejudgment interest as of right under Vermont law. Such an irrational result cannot be countenanced.

Even if prejudgment interest could not be awarded as of right, it can and should still be awarded in the Court's discretion. Nearly eight years have passed since Defendants wrongfully terminated Dr. Porter's employment, and an award of prejudgment interest is necessary to help make her whole. *See, e.g., Brennan-Centrella v. Ritz-Craft Corp. of Pennsylvania*, 942 F.3d 106, 110-111 (2d Cir. 2019) (noting "the Vermont legislature's policy choice that plaintiffs are not fully compensated unless they can recover the interest").

### Method of Calculation

Dr. Porter was born on October 21, 1962. She will turn 65 in the fall of 2027. Had Dr. Porter remained at DH, she would have returned to full-time employment as soon as her disability sufficiently resolved and intended to work until she was at least 65 (to maximize benefits under the DH pension plan) and likely until she was 70 years old. (Ex. B, Draft Trial Tr. for March 26, 2025, at 47, 53–54; Ex. A at 156–157.) Following termination by DH, Dr. Porter

took a per diem position at UVM, the only plausible option in commuting distance at the time, which later became a regular 0.8 FTE position. (Ex. B at 43–54.) The long commute meant significant additional expenses and time away from her family, which takes its toll. Testimony at trial indicated that Dr. Porter is working towards reducing her schedule moving forward to reduce that burden. Plaintiff's expert, Dr. Bancroft, prepared an updated report shortly before trial detailing damages already incurred and projecting anticipated future damages. The report showed cumulative anticipated damages based on different years of retirement through age 70. (Ex. A at 148–149.)

The jury made separate awards for economic and emotional damages. Dr. Porter is seeking prejudgment interest only on the economic damages, including back pay and costs associated with her termination. At the time of trial, the nearly eight years of back pay and related costs of commuting existed in finite amount whereas amounts for front pay and anticipated future costs were inherently less-precise predictions. In awarding most, but not all, of the requested amount of economic damages, it is therefore reasonable to assume that the jury took into account Defendants' arguments about the unpredictability of future events and the likelihood that Dr. Porter's expected working lifetime would not extend to age 70 and declined to award the full eight years of front pay requested. The proposed allocation assumes that the jury awarded only three years of front pay.

Courts have found reasonable various methods for approximating the amount of prejudgment interest due, even though each method will produce a different result. Prejudgment interest may be calculated on the amount of loss incurred for each pay period; however, equal distribution of total loss across the number of years from termination to judgment is another accepted method. *See, e.g., Havill v. Woodstock Soapstone Co., Inc.*, No. 147-3-98WRCV, 2005 WL 5872159 (Vt. Super. June 22, 2005) (awarding prejudgment interest on back pay and

calculating interest based on a reasonable midway point for each year); *Cheney*, 2014 WL 8515132, at *3 (allocating back pay award evenly across number of months included in award for purposes of calculating prejudgment interest). Defendants have not proposed another reasonable method of calculation.[4]

### Local Rule 7(a)(7)[5]

During the trial, Defendants filed a motion in which they noted, on the record, their position with respect to prejudgment interest: namely, that prejudgment interest should be denied because the damages were not readily ascertainable, but if awarded, the Court should apply Federal law and select a reduced interest rate rather than apply Vermont's statutory 12% prejudgment interest rate. (Doc. 266 at 3 & n.1.)[6] Their current opposition mirrors their prior position. (Doc. 299.) There is no reasonable likelihood that further discussion prior to filing would have narrowed the scope of dispute, cleared up an ambiguity, or otherwise have led to compromise. Under such circumstances where a request for assent or agreement is expected to be futile, the failure to certify under L.R. 7(a)(7) should be excused. *See, e.g., Kew v. Town of Northfield, Vt*, No. 5:19-cv-78, 2021 WL 11719002, *2 (D. Vt. March 9, 2021) (excusing the failure to comply with L.R. 7(a)(7) where defendants were unlikely to agree to the relief requested in the motion and thus there would be "no advantage to sending the parties off to

---

[4] Defendants, in their exhibits, mirror the even distribution calculation method. (*See, e.g.,* Doc. 299-6 (allocating jury award evenly across the years 2017-2033 at the 12% rate for an award of $223,134).)

[5] The prior incident referenced by Defendants, (Doc. 299 at 3), was a motion for status conference filed last Fall seeking to discuss scheduling and other matters in advance of trial, (*see* Doc. 182, not Doc. 187). Although the Court noted the failure to seek agreement before filing and denied the motion, it scheduled a pre-trial conference after the holidays which achieved the same purpose as the status conference requested.

[6] Of note, Defendants' motion also failed to include the certification required under L.R. 7(a)(7).

confer"). *See also, cf., Allen v. Dairy Farmers of America, Inc.*, No. 5:09-cv-230, 2016 WL 3361544, *9 n.18 (D. Vt. June 14, 2016) (citing *Tripoli Rocketry Assoc., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 698 F. Supp. 2d 168, 173 (D.D.C. 2010) (concluding that fee petition under fee-shifting statute was a dispositive motion and thus not subject to rule requiring pre-filing conference)).

## CONCLUSION

For the reasons stated above, the Judgment should be amended to include prejudgment interest at 12%.

Dated: May 21, 2025

/s/ Geoffrey J. Vitt
Geoffrey J. Vitt, Esq.
Vitt & Nunan, PLC
8 Beaver Meadow Road
P.O. Box 1229
Norwich, VT 05055-1229
(802) 649-5700
gvitt@vittnunanlaw.com

Eric D. Jones, Esq.
Langrock Sperry & Wool, LLP
210 College Street
P.O. Box 721
Burlington, VT 05402
(802) 864-0217
ejones@langrock.com

Sarah H. Nunan, Esq.
Vitt & Nunan PLC
8 Beaver Meadow Road
P.O. Box 1229
Norwich, VT 05055
(802) 649−5700
snunan@vittnunanlaw.com

**Attorneys for Plaintiff,
Misty Blanchette Porter, M.D.**