# EXHIBIT 4

**From**:       Aimee M. Giglio [Aimee.M.Giglio@hitchcock.org]
**Sent**:       6/6/2017 6:00:51 PM
**To**:         Leslie R. DeMars [Leslie.R.DeMars@hitchcock.org]
**Subject**:    Confidential: Connect re: REI
**Attachments**: MBP Packet.pdf

Hi Leslie,
I would like to connect re: REI transition.
Do you have some time to talk via phone … alternatively, I can connect in person at 11a tomorrow.

Confidentially, in the meantime, here is the letter correspondence to Misty – cc'd to you.
Thank you,
Aimee


**Aimee M. Giglio, DA**
Chief Human Resources Officer (Interim)
Vice President, Total Rewards
aimee.m.giglio@hitchcock.org
dartmouth-hitchcock.org

phone: 603.653.1417  |  fax: 603.727.7912





June 5, 2017

Misty Blanchette-Porter, M.D.

Dear Dr. Blanchette-Porter,

This letter serves as a response to your letter dated May 25, 2017 and to questions posed during our meeting together with your husband on Friday, May 26, 2017.

First, on behalf of Dartmouth-Hitchcock (D-H), I would like to thank you for your years of service to D-H and to our patients, and for your many accomplishments over the years, as you outline in your letter, which have supported D-H's clinical and academic mission.

In your letter you have requested reconsideration of your employment termination date, which is June 3, 2017. I reviewed your request with clinical and operational leadership. With the Reproductive Endocrinology and Infertility Program winding down as of May 31, 2017, Dartmouth-Hitchcock is not in a position to reconsider your last date of employment.

In addition, in our meeting you had requested an increase in the severance amount. After considering this request, D-H is willing to extend severance to thirty-six weeks of severance. As communicated to you in writing on May 4, 2017, enclosed please find a severance and general release agreement, which states that June 3, 2017 will be your last date of employment and increases severance payments from twenty-four weeks to thirty-six weeks, which is equivalent to nine months of pay.

As a participant in D-H's long-term disability program, The Hartford will determine ongoing medical necessity of your disability and long-term disability payments. Upon your last date of employment, your disability payments will be based on your full base rate of pay prior to your disability at a 1.0 FTE level. For as long as you remain eligible to receive long-term disability payments, as determined by The Hartford, you will be eligible to continue D-H's medical and dental insurance coverage for you and your covered dependents. Please note that you will remain responsible for the portion of the medical and dental insurance premiums that all active employees are responsible for and that all premiums for medical and dental insurance are billed directly to you for as long as you are eligible to continue long-term disability payments. In addition, The Hartford will manage your eligibility to continue life insurance coverage for yourself through the disability premium program.

Please note that eligibility for severance payments is independent of receipt of disability payments and disability determination by The Hartford. I appreciate you reaching out to me with your questions and hope this information is helpful. On behalf of the organization, I wish you well and thank you again for your contributions to D-H and our patients.

Sincerely,

*Aimee Giglio*
Aimee M. Giglio, DA
Interim Chief Human Resources Officer
Aimee.M.Giglio@Hitchcock.org

cc: Leslie DeMars, M.D

C13 (002)

CONFIDENTIAL
DH0006627

**Dartmouth-Hitchcock**

June 6, 2017

Misty M. Blanchette Porter, M.D.

RE:   Separation and General Release Agreement

Dear Misty:

Consistent with the notification that you received on May 4, 2017, your active employment with Dartmouth-Hitchcock ("D-H"), to include your membership on the D-H Professional Staff, terminates effective June 3, 2017, as a result of the closure of our Reproductive Endocrinology and Infertility program. In connection with the termination of your employment from D-H, you are eligible to receive severance benefits to assist in your transition.

If you agree with and sign the enclosed Separation Agreement and General Release (the "Agreement"), it will become a binding and legally enforceable agreement under which you will receive the described pay in return for making certain promises and releasing claims arising from your active employment at D-H. Because this is an important and legally binding document, you are encouraged to carefully consider and seek the advice of an attorney concerning the terms and conditions prior to signing it.

The box below contains important information about your separation from active employment and severance package. Your receipt of your severance package is conditioned on you signing, not revoking, and complying with the Agreement. If there is any inconsistency or conflict between the terms of this letter and the terms of the enclosed Agreement, the terms in the enclosed Agreement will govern.

| **Separation Date:** | June 3, 2017 |
|---|---|
| **Separation Pay:** | Thirty-six (36) weeks of pay continuation at your base pay rate. Separation pay is subject to applicable taxes and withholdings. |

As described more fully in the Agreement, you have a period of forty-five (45) calendar days from the date you received the Agreement to decide whether to sign the Agreement. You may sign before the end of the forty-five (45) day period (though you are under no obligation to do so) so long as the date you sign is not earlier than your Separation Date. You will have a period of seven (7) calendar days after the date you sign this Agreement to revoke your acceptance. Provided you have not revoked your acceptance, on the eighth (8th) day following your execution of the Agreement, the Agreement will become a binding Separation Agreement and General Release between you and D-H, and D-H will provide you with the severance package described above and discussed further in the Agreement.

If you wish to receive the severance benefits and you agree to the terms and conditions in the Agreement, please initial each page of the Agreement (including both pages of this letter), sign and date the last page and place it in the enclosed postage paid envelope returned to Dartmouth-Hitchcock, Attn: Karen Aframe, Director of Employee Relations, One Medical Center Drive, Lebanon, NH 03756. Please return one (1) signed Agreement in the envelope provided, keeping the other for your records (2 copies enclosed). You must ensure that your signed Agreement is postmarked **no later than forty-five (45) days** from the date you received these documents. Once received, D-H will return a copy of the fully executed Agreement to you via your home mailing address.

CONFIDENTIAL                                                                                                                     INITIALS_____
Page | 1

**C13 (003)**

CONFIDENTIAL                                                                                                                     DH0006628

Regardless of whether you sign the Agreement, you will receive a final paycheck that shall include payment for all wages due through the Separation Date. Your final paycheck will be mailed within seventy-two (72) hours of the Separation Date.

Please understand that if you timely execute and do not revoke the Severance Agreement, the payment of severance will not affect your ability to remain on any approved leave for disability. To the extent you remain approved for disability by The Hartford, you will retain the status of an on-leave employee of Dartmouth-Hitchcock during the term of that coverage. You are enrolled in medical, dental, vision and identity theft coverage, and will remain eligible for those benefits at active employee rates for the period of your approved disability coverage through The Hartford, subject to all plan terms and conditions. All other benefits will cease as of your Separation Date, except as required by applicable law.

Please consult the enclosed documents and contact Karen Aframe, Director of Employee Relations at 603.653.1570 if you have any questions about this letter or the Agreement.

Sincerely,

*[signature]*

Leslie R. DeMars, MD
Vice President, Women's Health Service Line
Chair, Department of Obstetrics and Gynecology

**Dartmouth-Hitchcock**

## CONFIDENTIAL SEPARATION AGREEMENT AND GENERAL RELEASE

This Confidential Separation Agreement and General Release (the "Agreement") by and between **Mary Hitchcock Memorial Hospital** and **Dartmouth-Hitchcock Clinic** (collectively, "D-H" or the "Employer") and **Misty M. Blanchette Porter, M.D.** ("Physician"), is effective as of the date of execution by D-H as set forth on the signature page. Physician and D-H shall together be referred to herein as the "Parties" and each shall be referred to as a "Party."

WHEREAS, Physician has been employed by Employer as a physician practicing within the D-H Department of Obstetrics and Gynecology/Reproductive Endocrinology and Infertility program; and

WHEREAS, Physician's active employment with Employer will terminate on June 3, 2017, which shall also result in the termination of Physician's appointment to the Dartmouth-Hitchcock Professional Staff and all clinical privileges associated with her appointment.

NOW THEREFORE, in consideration of the foregoing premises and other good and valuable consideration as provided under this Agreement, the receipt of which is hereby acknowledged, the Parties agree as follows:

1. <u>Separation</u>. Employer has terminated Physician's active employment resulting in the termination of Physician's appointment to the Professional Staff of Mary Hitchcock Memorial Hospital (including the relinquishment of her clinical privileges in connection with her appointment to the Professional Staff), effective June 3, 2017 (the "Separation Date"). Physician acknowledges and confirms that, effective as of the Separation Date, her separation from active employment with D-H is effective, and Physician will not, and shall not, have the authority to represent or hold himself out as an active employee of D-H.

2. <u>Separation Pay</u>. In exchange for the consideration provided under this Agreement, Employer agrees, in the event of Employee's execution and non-revocation of this Agreement, and subject to all provisions of this Agreement, as follows:

> Following the Separation Date, and following the passage or waiver of the forty-five (45) day pre-execution consideration period and the seven (7) day post-execution revocation period, Employer will provide Physician with Separation Pay, as set forth in the box on page 1 of the cover letter dated June 6, 2017, provided with this Agreement. Separation Pay will be paid in accordance with Employer's customary payroll practices. In connection with the Separation Pay, Employer shall withhold and remit to the tax authorities the amounts required under applicable law, and Physician shall be responsible for all applicable taxes with respect to such Separation Pay and benefits under applicable law. Physician acknowledges that Physician is not relying upon advice or representation by D-H with respect to the tax treatment of any of the severance benefits provided for herein.
>
> If Physician becomes employed or earns other income while receiving the Severance Pay, all wages and other income will reduce Physician's Severance Pay by that amount. In the event Physician becomes employed or earns other income while receiving the Severance Pay, Physician will notify John Kacavas, Chief Legal Officer, in a timely manner in writing at One Medical Center Drive, Lebanon, NH 03756. For purposes of this paragraph, "wages and other income" shall include

compensation earned as an employee, independent contractor, or otherwise earned in connection with any other work for hire; it shall not include any investment income.

3. Benefits. Physician's benefits shall terminate effective on the Separation Date, except that to the extent that Physician remains approved for disability by The Hartford, Physician will retain the status of an on-leave employee of Dartmouth-Hitchcock during the term of that coverage. Physician is enrolled in medical, dental, vision and identity theft coverage, and will remain eligible for those benefits at active employee rates for the period of Physician's approved disability coverage through The Hartford, subject to all plan terms and conditions. Except as specifically stated herein, Physician understands that all of her entitlement to compensation and all other Employer-provided benefits will cease no later than June 3, 2017 under this Agreement. Physician further understands and agrees that she is not entitled to any additional consideration or benefits other than as set forth herein.

4. Release by Physician. As a material inducement to Employer to enter into this Agreement, and in consideration of its obligations to Physician under this Agreement and for other good and valuable consideration, Physician hereby irrevocably, unconditionally and generally releases Employer and each of its present and former divisions, branches, subsidiaries, affiliates (including without limitation Dartmouth-Hitchcock Health and Dartmouth Hitchcock Medical Center), parents, predecessors, successors, assigns, joint venture partners, assignees, grantees, fiduciaries, officers, directors, shareholders, employees, agents, representatives and attorneys (collectively hereinafter referred to as the "Employer Releasees") from, and to the greatest extent permitted by law hereby waive and/or settle any and all claims, charges, complaints, liabilities, obligations, promises, agreements, contracts, doings, omissions, controversies, actions, rights, costs, debts, sums of money, reckonings, covenants, demands, causes of action, suits at law or equity, damages, punitive damages, verdicts, losses, executions, expenses, attorneys' fees, costs and judgments of every kind and nature whatsoever, whether known or unknown, and which Physician ever had, now have or hereafter can, shall or may have, for upon, or by reason of any matter, thing, event, act, omission or situation whatsoever, from the beginning of the world to the date of Physician's execution of this Agreement, including claims related directly or indirectly to Physician's employment with Employer or any Employer Releasee and, specifically, without limitation, any rights and/or claims (a) arising under, pursuant to, or relating to any contract, express or implied, written or oral; (b) related to Physician's employment or termination of employment; (c) arising under or relating to any federal, state, local or other statutes, orders, laws, ordinances, regulations, rules or the like that relate to the employment relationship, including, without limitation statutes, orders, laws, ordinances, regulations, and rules, and/or specifically that prohibit discrimination, harassment and/or retaliation based upon age, race, religion, sex, national origin, disability, sexual orientation, military service, or any other unlawful bases under state or federal law, including, without limitation, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq.; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.; the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq.; COBRA; the Family Medical Leave Act, 29 U.S.C. § 2601, et seq.; the New Hampshire Law Against Discrimination, N.H.R.S.A. § 354-A, et seq.; and any applicable rules and regulations promulgated pursuant to or concerning any of the foregoing statutes; for any claims alleging wrongful discharge, whistleblower, negligent or intentional infliction of emotional distress, interference with contract, fraud, libel, slander, or any other claim arising from or relating to tortious, harassing, or otherwise actionable conduct; and for damages, including, without limitation, punitive or compensatory damages or for attorneys' fees, expenses, costs, wages, injunctive or equitable relief. Excluded from the foregoing release are claims that by law cannot be released in this Agreement (such as workers compensation claims). **Physician understands and agrees that Physician is releasing all claims, whether or not they are known to Physician at the time Physician signs this Release.**

By signing this Agreement, Physician voluntarily waives any and all procedural rights and/or substantive rights arising out of Physician's D-H medical staff appointment and privileges/scope of practice and employment by D-H.

Physician acknowledges that Physician has had the opportunity to consult with an attorney of her choice with respect to all terms and conditions set forth in the Agreement and has had the opportunity to obtain advice of counsel with respect to her decision to sign and enter into this Agreement.

5. Confidentiality. Physician agrees to keep the terms and conditions relating to this Agreement confidential. Physician agrees that she will not disclose the terms and conditions of this Agreement to any person except her spouse and accountant or lawyer as necessary in connection with the services either may provide, unless she shall first obtain the express written consent of the other Party. Physician further agrees that, in the event she discloses the terms and conditions of this Agreement to her spouse, accountant or lawyer, she shall advise them in advance of her obligation to preserve and maintain the confidentiality of the separation terms and conditions as expressed herein.

In addition, Physician acknowledges that, during her employment with D-H, Physician has acquired knowledge of confidential and sensitive information pertaining to D-H operations and D-H's patients, and that this information was only disclosed to Physician in furtherance of Physician's role. Accordingly, Physician acknowledges and agrees that this information is the property of D-H, and agrees that Physician may not disclose such confidential and sensitive information to any person or entity, either directly or indirectly, without the express written permission of D-H. For purposes of this Agreement, the term "confidential and sensitive information" means information that is not generally known to the public and that is used, developed, or obtained by D-H in connection with its operations, including but not limited to: (a) patient lists; (b) medical or clinical records or information; (c) business plans; (d) operating plans; (e) risk management data and investigation materials; (f) Joint Commission (formerly, JCAHO) survey materials or data; (g) incident reports; (h) internal review materials; (i) fees, costs, and pricing structures; (j) marketing plans; (k) bid strategies and proposals; (l) computer software, including operating systems, applications and program listings; (m) financial models and reports; (n) operating data and budgets; (o) wage and salary rates; (p) pricing strategies and information; (q) terms of agreements with suppliers, with sources of financial support or reimbursement, with clients, and with others; (r) flow charts, manuals and documentation; (s) data bases; (t) accounting and business methods; (u) inventions, devices, new developments, methods, and processes, whether patentable or un-patentable and whether or not reduced to practice; (v) copyrightable works; (w) all technology and trade secrets; (x) information pertaining to future developments, such as, but not limited to, research and development and strategic plans; and (y) all similar and related information in whatever form ("Confidential Information"). Physician also acknowledges and understands that her obligation to maintain patient confidentiality survives her employment relationship with D-H.

Physician hereby represents and agrees that (a) Physician has returned to D-H, and has not retained any copies of all documents, records or materials of any kind, whether written or electronically created or stored, which contain, relate to or refer to any Confidential Information; and (b) in consideration of D-H entering into this Agreement, Physician shall not disclose any Confidential Information in any manner whatsoever, except as shall be required by law, provided that Physician notify D-H in a timely manner so that it may take measures to prevent or limit such required disclosure.

The term "Confidential Information" shall not include any information: (1) known to Physician before her affiliation with D-H; (2) of which Physician learned from sources other than D-H, not involving the breach of any confidentiality obligation; or (3) which is published in a form generally available to the public prior to the date Physician discloses such information, and the information is not available to the public due to any act or omission

on Physician's part. Information shall not be deemed to have been published merely because individual portions of the information have been separately published, but only if all material portions thereof have been published.

6. <u>Non-Disparagement</u>. Neither Physician, nor anyone acting on Physician's behalf, will make derogatory, disparaging or critical statements about Employer or any Employer Releasee. Nothing in this Agreement shall prevent Employer from providing certain employment information relating to Physician's employment at D-H as required by N.H. Rev. Stat. Ann. § 151:16-c.

7. <u>Challenge to Validity, Truthful Testimony Under Oath and Cooperation with Government Agency.</u> Nothing in this Agreement, including but not limited to the provisions in the Release, Confidential Information and Non-Disparagement sections herein, shall: limit or affect Physician's right to challenge the validity of this Agreement, including a challenge under the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended; interfere with Physician's right and responsibility to give truthful testimony under oath; or, preclude Physician from participating in an investigation, filing a charge, or otherwise communicating with the Equal Employment Opportunity Commission ("EEOC"), New Hampshire Commission for Human Rights ("NHCHR"), or any other government investigatory body. Physician agrees, however, that should Physician participate in any EEOC or NHCHR charge, investigation or proceeding, Physician will not seek or accept any monetary relief or other relief personally related to any claims released in this Agreement. In addition, to the extent allowed by law, Physician will notify D-H's Office of General Counsel if she is contacted by any government investigators regarding her work at D-H.

8. <u>No Pending Claims.</u> Physician hereby acknowledges and agrees that Physician has not filed any complaints, claims, or actions against D-H or any of the Releasees with any state, federal, or local agency or court as of the date Physician signed this Agreement, agrees that Physician has been properly paid for all hours worked up to and including Physician's Separation Date, and agrees that she has not suffered any on the job injury for which she has not already filed a claim.

9. <u>Return of D-H Property.</u> On or before the Separation Date, Physician shall return to D-H all keys, files, records, emails (and copies thereof), computers and related equipment, mobile devices, equipment, D-H identification, and all other D-H-owned property in Physician's possession or control and Physician agrees to have left intact all electronic D-H documents, including but not limited to, those which Physician developed or helped develop during the period of employment. This obligation specifically includes, but is not limited to, any of the aforementioned property issued to Physician to perform duties at D-H. To the extent that they exist, Physician will confirm that she has cancelled all accounts for her benefit, if any, in D-H's name, including but not limited to, credit cards, telephone charge cards, cellular phone and/or pager accounts and computer accounts.

10. <u>Medical Malpractice Insurance-Tail Coverage.</u> During the period of her employment, Physician was covered under the D-H medical malpractice insurance policy so long as she was employed and acting within the scope of her duties. Coverage under this policy ends upon termination of employment. D-H agrees that tail coverage will exist so long as the current D-H program is in existence.

11. <u>No Admission.</u>    Physician understands that this Agreement does not constitute an admission by D-H of any violation of any law, ordinance or statute, claim for relief or cause of action of any nature. Physician agrees and acknowledges that Physician has not relied upon any representations of D-H except as set forth in this Agreement.

12. <u>Cooperation.</u> Physician agrees that, after the Separation Date, to reasonably cooperate with D-H in providing and discussing facts pertaining to matters which occurred during Physician's employment (for example,

in connection with lawsuits or governmental investigations) and Physician agrees to make himself reasonably available for interviews by D-H without the necessity of a subpoena.

      13. <u>Severability</u>. If any term or provision of this Separation Agreement and General Release shall be held invalid or unenforceable, the Parties may enforce the remainder of this Agreement or the application of such term or provisions to persons or circumstances other than those as to which it is held invalid or unenforceable, and each such term and provision of this Agreement shall be valid and shall be enforced to the fullest extent permitted by law.

      14. <u>Governing Law</u>. This Separation Agreement and General Release shall be construed under the laws of the State of New Hampshire and shall be binding and ensure to the benefit of the parties, their heirs, legal representatives, successors and assigns.

      15. <u>Breach</u>. Without limiting the rights of D-H under this Agreement or otherwise, Physician agrees that any breach of this Agreement by Physician will entitle D-H to recover the payments specified herein, as well as any attorneys' fees and costs associated with recovering that payment.

      16. <u>Entire Agreement; Amendment.</u> This Agreement: (a) constitutes the sole and entire understanding and agreement between the Parties hereto with respect to the matters set forth herein and there are no other agreements or understandings, whether written or oral and whether made contemporaneously or otherwise, that are binding upon the Parties hereto; (b) may not be amended unless in writing signed by the Parties hereto; and (c) shall inure to the benefit of and be binding upon the heirs, devisees, legatees, executors, administrators, successors, assigns, officers, directors and affiliates of each of the Parties hereto.

      17. <u>OWBPA Acknowledgement.</u> The release and waiver in this Agreement, includes any claims Physician may have arising under the ADEA as amended by the Older Workers' Benefit Protection Act Of 1990 ("OWBPA"), relating to any claims of age discrimination. To comply with the OWBPA, this Agreement hereby advises Physician of the legal requirements of the OWBPA and fully incorporates its legal requirements by reference into this Agreement. Physician acknowledges that Physician is knowingly and voluntarily waiving and releasing any rights Physician may now have under the ADEA. Physician also acknowledges that the valuable consideration given for the release as described above is in addition to anything of value to which Physician was already entitled. Physician further acknowledges the following:

      <u>Time to Consider This Agreement</u>. Physician acknowledges that Physician has been provided with a copy of this Agreement and has been given forty-five (45) consecutive calendar days in which to review and consider the Agreement. Physician agrees that any revisions to this Agreement, whether material or immaterial, during that forty-five (45) day period shall not be deemed to restart the consideration period. Physician acknowledges that while Physician has forty-five (45) consecutive calendar days to review and consider this Agreement, Physician has the right to sign this Agreement at any time within the forty-five (45) consecutive calendar days from Physician's receipt of this document.

      <u>Legal Counsel.</u> Physician is advised to consult with legal counsel and seek clarification of any of the terms of the Agreement prior to signing this Agreement.

      <u>Revocation</u>. Physician acknowledges that Physician has a period of seven (7) calendar days following Physician's signing of this Agreement to revoke the Agreement. Any such revocation of the Agreement must be in writing, signed by Physician and delivered to Deputy General Counsel, One Medical Center Drive, Lebanon, NH 03756, not later than 5:00 p.m. on the end of the seventh day period. Any revocation hereunder shall not affect the termination of Physician's employment.

CONFIDENTIAL  
Page | 7

INITIALS_____

**C13 (009)**

CONFIDENTIAL

DH0006634

When the Terms Become Effective. The terms of the Agreement shall become final and binding only upon expiration of the revocation period provided in subsection 17(c) above. No payments shall be made under Section 2 until the Agreement becomes final and binding upon the parties.

18. Return of Agreement. You have received up to forty-five (45) consecutive calendar days to consider this Agreement. If you wish to receive the severance benefits and you agree to the terms and conditions in the Agreement, please initial each page of the Agreement (including both pages of the cover letter), sign and date the last page and place it in the enclosed postage paid envelope returned to Dartmouth-Hitchcock, Attn: Karen Aframe, Director of Employee Relations, One Medical Center Drive, Lebanon, NH 03756. Please return one (1) signed Agreement in the envelope provided, keeping the other for your records (2 copies enclosed). You must ensure that your signed Agreement is postmarked no later than forty-five (45) days from the date you received these documents. Once received, D-H will return a copy of the fully executed Agreement to you via your home mailing address.

**THIS AGREEMENT IS A LEGAL DOCUMENT AND CONTAINS A WAIVER OF ALL KNOWN OR UNKNOWN CLAIMS. READ THIS ENTIRE DOCUMENT CAREFULLY BEFORE SIGNING. YOU ARE ADVISED TO CONSULT WITH A LAWYER OR ANY OTHER ADVISOR OF YOUR CHOOSING. BY SIGNING THIS AGREEMENT, YOU ARE AGREEING THAT YOU UNDERSTAND THIS AGREEMENT, THAT YOU ARE VOLUNTARILY SIGNING IT, AND THAT YOU HAVE NOT BEEN COERCED IN ANY WAY INTO SIGNING THE AGREEMENT.**

**IN WITNESS WHEREOF,** the Employer and Physician have executed this Agreement on the date set forth below.

**Misty M. Blanchette Porter, M.D.**

Date: _____, 2017

**Mary Hitchcock Memorial Hospital** and
**Dartmouth-Hitchcock Clinic**

By:_____
Aimee M. Giglio, DA
Chief Human Resources Officer (Interim)
Vice President of Total Rewards

Date: _____, 2017

# Dartmouth-Hitchcock

## NOTICE TO TERMINATED EMPLOYEES

### June 5, 2017

---

The following informational disclosures are provided pursuant to the Older Workers Benefit Protection Act of 1990, which is an amendment to the Age Discrimination in Employment Act of 1967 (the "ADEA"). This statute requires Dartmouth-Hitchcock ("D-H") to disclose information about D-H employees who were selected or not selected for inclusion in the involuntary separation program that D-H has implemented in connection with its decision to close the D-H Reproductive Endocrinology and Infertility ("REI") program (the "Program"). All of the D-H employees who worked within the D-H REI program were initially selected for layoff.

The enclosed chart contains information regarding the employees who were eligible to be selected for layoff in connection with the Program and offered severance if they were selected and their employment was involuntarily terminated. The data provided includes department title/department code, job title/job code, employee ages, and anticipated layoff dates. We recognize that the data contains personal information related to age about D-H employees. We are providing it in compliance with federal law.

All of the D-H employees who worked within the D-H REI program were eligible to be laid off. If there is an asterisk (*) for an employee designated as "Not Selected for Layoff," this indicates that the employee worked primarily outside of the REI program and the employee's duties were reassigned such that the employee was not ultimately selected for layoff.

Employees whose employment will terminate pursuant to the Program will cease employment with D-H effective June 3, 2017. The enclosed chart also identifies which employees that were selected for layoff may be eligible for severance benefits. If there is a double asterisk (**) for an employee designated as "Selected for Layoff," this indicates that the employee held a per diem position within the D-H REI program and is therefore not eligible to receive severance benefits in connection with the Program. All other employees selected for layoff and whose employment terminates pursuant to the Program are eligible to receive severance benefits, as described in the Severance and General Release Agreement, provided that (1) they sign the Severance and General Release Agreement and return it within the permitted time period, and (2) if applicable, do not revoke it within seven (7) days after signing it.

All ages listed in the charts reflect the individual's age as of June 2, 2017.

The following chart provides a list of the job titles for those positions considered for elimination and, if eligible, an offer of severance in connection with the decision to close the D-H Reproductive Endocrinology and Infertility ("REI") program, the ages of those who were selected for layoff, and the ages of those not selected for layoff. All ages are accurate as of June 2, 2017.

| Department Title/ Department Code | Job Title/Job Code | Age | Selected for Layoff | Not Selected for Layoff | Eligible for and Offered Severance | Anticipated Layoff Date |
|---|---|---|---|---|---|---|
| OB-GYN - B00116100 | Adv Prac Nrs-400135 | 57 | | X* | N | 6/3/2017 |
| OB-GYN - B00116101 | Clinical Nurse-400948 | 37 | X | | Y | 6/3/2017 |
| OB-GYN - B00116102 | Staff Physician-002721 | 42 | X | | Y | 6/3/2017 |
| OB-GYN - B00116102 | Staff Physician-002721 | 54 | X | | Y | 6/3/2017 |
| OB-GYN - B00116102 | Staff Physician-002721 | 57 | X | | N** | 6/3/2017 |
| OB-GYN - B00116102 | Staff Physician-002721 | 62 | X | | Y | 6/3/2017 |

* Indicates that employee primarily worked outside of the REI program and the employee's duties were reassigned such that the employee was not ultimately selected for layoff.

** Indicates that employee held a per diem position within the D-H REI program and is therefore not eligible for severance benefits.

CONFIDENTIAL                                                                                      DH0006637