IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| MISTY BLANCHETTE PORTER, M.D.,<br><br>Plaintiff,<br><br>vs.<br><br>DARTMOUTH-HITCHCOCK MEDICAL CENTER, DARTMOUTH-HITCHCOCK CLINIC, MARY HITCHCOCK MEMORIAL HOSPITAL, and DARTMOUTH-HITCHCOCK HEALTH,<br><br>Defendants. | Case No. 2:17-cv-194 |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR ATTORNEYS' FEES**

Defendants Dartmouth-Hitchcock Medical Center, Dartmouth-Hitchcock Clinic, Mary Hitchcock Memorial Hospital, and Dartmouth-Hitchcock Health (collectively, "Defendants" or "Dartmouth Health") hereby submit this Opposition to Plaintiff's Motion for Attorneys' Fees (the "Motion"). (ECF No. 300). In the Motion, Plaintiff Misty Blanchette Porter, M.D. ("Plaintiff" or "Dr. Porter") requests an astounding total amount of $1,742,649.70 in "attorney's fees" she purportedly incurred prosecuting claims that were, in the end, overwhelmingly unsuccessful.[1] While Plaintiff is the prevailing party on a single claim – one out of three theories – brought under

---

[1] To the extent the Court's analysis would be aided by highlighted excerpts of Plaintiff's invoices reflecting the specific entries objected to herein, Defendants would be happy to prepare and forward them under separate cover.

1

the Vermont Fair Employment Practices Act ("VFEPA"), she ultimately lost on each of her five other claims and received only a limited damages award.[2] Despite her numerous failed claims, and notwithstanding the fact that she was awarded only $1.125 million in damages, Plaintiff now seeks over $1.7 million in attorneys' fees and costs. Her request is excessive, unreasonable, and contrary to controlling authority. The Court should substantially reduce the requested amount for the following independent bases: (1) excessive and redundant billing; (2) work unrelated to the successful claim; (3) limited success at trial; and (4) improper demands for prejudgment interest. Courts do not reward inefficiency or inflate limited verdicts into windfalls, and the Court must reject Plaintiff's attempt to do so here.

## BACKGROUND

Plaintiff filed suit in October 2017. (ECF No. 1). Her initial complaint set forth four separate claims for whistleblower and disability discrimination in violation of federal and New Hampshire law. *Id.* In August 2018, Plaintiff amended her complaint to include two additional disability discrimination causes of action, including a claim for violation of the VFEPA. (ECF No. 50). Dartmouth Health filed a motion for summary judgment in January 2020, which the Court granted in full in November 2020. (ECF Nos. 139, 152). Plaintiff appealed the decision, and briefing took place until June 2021. *See Blanchette Porter vs. Dartmouth Hitchcock Medical Center*, 2d Circuit Court of Appeals Docket # 20-3894. Oral argument occurred before the Second Circuit in February 2022. *Id.* The matter remained under consideration for nearly two years until the Second Circuit issued a decision on February 6, 2024, partially reversing the district court's judgment and remanding the case for further proceedings. *Porter v. Dartmouth-Hitchcock Med.*

---

[2] Defendants respectfully request that the Court defer any ruling on the Motion until after it has ruled on Defendants' motions for post-trial relief to accommodate the possibility that those rulings might reverse judgment in Plaintiff's favor.

*Ctr.*, 92 F.4th 129 (2d Cir. 2024). On June 17, 2024, this Court set trial to begin on March 24, 2025. (ECF No. 179). The trial, including jury deliberations, occurred from March 25 to April 10, 2025. (ECF Nos. 244–81). The jury rendered a verdict in Plaintiff's favor on only one of the fourteen (14) questions presented on the Verdict Form. (ECF No. 281). Judgment was subsequently entered on April 24, 2025, holding Defendants liable on only one of Plaintiff's six claims and awarding $1,000,000 for economic damages and $125,000 for non-economic damages. (ECF No. 297).

## ARGUMENT

1. **Availability of Attorneys' Fees and Costs**

"Vermont follows the [] 'American Rule' of attorney's fees, under which parties to litigation are generally responsible for their own fees in the absence of a statute or agreement to the contrary." *Perez v. Travelers Ins. ex rel. Ames Dep't Stores, Inc.*, 2006 VT 123, ¶ 8, 181 Vt. 45, 49–50, 915 A.2d 750, 754 (2006). Under VFEPA, a prevailing party may only recover "reasonable attorney's fees." *See* 21 V.S.A. § 495b(b); *Spooner v. Town of Topsham*, 2010 VT 71, ¶ 8, 188 Vt. 293, 9 A.3d 672. The Court must exclude from any award "excessive, redundant, or otherwise [] unnecessary" hours. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). In applying the lodestar method, the Court may adjust the amount based on the degree of success and other relevant considerations. *Spooner*, 2010 VT 71, ¶¶ 11–12.

2. **The Number of Hours Spent on the Case Was Highly Unreasonable.**

It is well-settled that a fee award must be "reasonable as to the number of hours spent in advancing the successful claims." *Human Rights Comm'n v. LaBrie, Inc.*, 164 Vt. 237, 250 (1995) (internal quotations and citation omitted). While Plaintiff cites fee rates in other cases as comparable, *see* ECF No. 300 at 5–6, she fails to identify any cases supporting the reasonableness

3

of the total hours or fees she now requests. That is because they are unjustifiable. Plaintiff's staffing decisions reflect duplication and inefficiency, and courts routinely reduce fee awards where, as here, "plaintiffs overstaffed the case, resulting in the needless duplication of work and retention of unnecessary personnel." *Lochren v. Cnty. of Suffolk*, 344 F. App'x 706, 709 (2d Cir. 2009).

Plaintiff's counsel's billing records are replete with vague and incomplete narrative entries, making it impossible to determine (1) whether the time billed relates to this litigation—particularly the sole claim on which Plaintiff prevailed—and (2) whether the time expended is reasonable. The lack of specificity in the billing entries substantially impairs Defendants' ability to conduct a meaningful review of the invoices. Compounding this issue, many entries utilize block billing, grouping multiple tasks into a single entry without itemization. Like vague descriptions, block billing obscures the nature of the work performed and precludes proper scrutiny of the reasonableness of the claimed fees. These deficiencies in Plaintiff's counsel's billing records should weigh against a full fee award and support a reduction in any fees awarded as part of the Court's reasonableness determination.[3]

**Fees Incurred Prior to the Addition of the Successful Claim Are Not Recoverable**. Plaintiff is not entitled to recover fees for time spent before the VFEPA claim was added to the Amended Complaint on August 1, 2018. "Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Anderson v. Sebelius*, No. 5:09-CV-16, 2011 WL 1832771, at *4 (D. Vt. May 12, 2011) (citation omitted). Plaintiff's

---

[3] As a result of Plaintiff's block billing, Defendants were sometimes forced to include entries in their below calculations that include more than the relevant task identified.

VFEPA claim – the sole claim upon which the jury found in her favor – did not exist in this case until nearly a year into the litigation. Fees predating its inclusion necessarily relate to unsuccessful claims and must be excluded. While it may be difficult to parse through every invoice entry to determine which entries relate to which claims, here the Court must, at the very least, deduct any fees and costs incurred prior to August 1, 2018, which total 833.45 hours, $146,338.50 in fees, and in $894.39 in costs.

**Excessive Depositions.** Plaintiff deposed eleven (11) witnesses, one over two separate days, in a single-plaintiff employment case—far outpacing Defendants, who deposed only two witnesses. Of Plaintiff's eleven witnesses, she called only <u>four</u> as part of her case in chief at trial. Though she did not ultimately call the remaining seven witnesses, Plaintiff's counsel spent 124.1 hours and incurred $26,933.00 solely on their depositions. Defendants should not be penalized for Plaintiff's needlessly overbroad discovery tactics. This disparity necessitates a significant downward adjustment.

**Overstaffing Depositions and Trial**. Plaintiff's counsel also unnecessarily overstaffed the depositions, attending every single one with at least two partners present. The below chart provides a summary of the depositions taken in this matter with a comparison of the attending attorneys.

| Witness | Date | Taken By | Plaintiff Attorneys Attending | Defendant Attorneys Attending |
|---|---|---|---|---|
| Porter | 06/11/19 | Defendants | Vitt; Kramer | Schroeder; Joseph |
| Todd | 07/17/19 | Plaintiff | Vitt; Kramer | Joseph |
| Porter | 07/18/19 | Defendants | Vitt; Kramer | Schroeder |
| Boedtker | 07/24/19 | Plaintiff | Vitt; Nunan; Kramer | Schroeder |
| Herrick | 07/25/19 | Plaintiff | Vitt; Nunan; Kramer | Schroeder |
| Merrens | 07/30/19 | Plaintiff | Vitt; Nunan; Kramer | Schroeder |
| Gunnell | 08/02/19 | Plaintiff | Vitt; Nunan; Kramer | Joseph |
| Fleury | 08/08/19 | Plaintiff | Vitt; Kramer | Joseph |

| Gunnell | 08/26/19 | Plaintiff | Vitt; Nunan; Kramer | Joseph |
| King | 08/27/19 | Plaintiff | Vitt; Nunan | Joseph |
| Conroy | 09/24/19 | Plaintiff | Vitt; Nunan; Kramer | Schroeder |
| Padin | 09/25/19 | Plaintiff | Kramer; Nunan; Vitt | Schroeder |
| DeMars | 10/23/19 | Plaintiff | Vitt; Nunan; Kramer; Korkus (paralegal) | Schroeder |
| Bancroft | 10/30/19 | Defendants | Vitt; Korkus (paralegal) | Joseph |
| Giglio | 12/10/19 | Plaintiff | Vitt; Nunan; Kramer | Schroeder |

Collectively, Plaintiff's counsel spent 253.4 hours and incurred $53,910.00 in fees on depositions alone. The award must be reduced to reflect these and other obvious examples of multiple lawyers performing overlapping work.

Plaintiff's flagrant overstaffing continued through all stages of these proceedings. For example, at trial, Plaintiff staffed her team with three partners and zero associates, a clear sign of inefficiency in a straightforward employment case. This Court has discretion to reduce hours where, as here, attorney work is duplicative or there is inefficient staffing. *Centrella v. Ritz-Craft Corp. of Pennsylvania, Inc.*, No. 2:14-CV-00111-JMC, 2018 WL 840041, at *8 (D. Vt. Feb. 12, 2018) (reducing hours where one attorney's attendance at a deposition was duplicative of the time a second attorney spent on the deposition); *see also IMS Health Inc. v. Sorrell*, No. 1:07-CV-188-JGM, 2012 WL 2915845, at *5-6 (D. Vt. July 17, 2012) (reducing hours where inordinate amount of attorneys were staffed, causing inefficiency).

**Time Spent on Opening Statement Was Duplicative and Unjustifiably High.** The time Plaintiff's counsel spent preparing Mr. Vitt's opening statement provides just one example, among a sea of others, of duplicative and excessive billing. To be sure, multiple attorneys worked on the statement over a period of multiple months. Mr. Vitt and Ms. Nunan billed 70.4 hours and $26,487.50, and Mr. Jones billed 23.6 hours and $9,302 for what amounted to a 23-minute opening

6

statement.[4]  Given counsel's experience, such a level of preparation is wholly unreasonable and warrants a reduction.

**Hours Spent on Initial Disclosures and Initial Discovery Requests Were Excessive for Experienced Counsel.**  Time spent on routine discovery was also excessive.  Plaintiff's counsel—described as experienced and well-suited to the case (ECF No. 300 at 10)—should not have required 38.6 hours to prepare initial disclosures and document requests.  Courts routinely reduce such charges.  *Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 212 (E.D.N.Y. 2006), aff'd, 531 F.3d 127 (2d Cir. 2008) (reducing the 36 hours it took experienced counsel to prepare initial disclosures and initial discovery requests by 30 percent).

**Redundancy Due to Attorney Substitution Immediately Before Trial**.  Further redundancy arose when attorney Katie Kramer ceased involvement shortly before trial and was replaced by attorney Eric Jones.  This substitution introduced inevitable inefficiencies, including duplicative preparation and "catch up" time.  Mr. Jones billed 24.3 hours and $8,936.50 for that onboarding, even though Ms. Kramer had already spent seven years on this case.  *See Huard v. Henry,* 2010 VT 43, ¶¶ 13-14, 188 Vt. 540, 544, 999 A.2d 1264, 1270 (2010) (hours reduced for a number of reasons including inefficiencies); *IMS Health Inc.,* 2012 WL 2915845 at *5 (hours reduced to account for onboarding of separate appellate counsel, which "required yet more time for new counsel to familiarize themselves with the litigation"); *Anderson,* 2011 WL 1832771 (reduced attorneys' fees where work was potentially duplicative).

**Time Spent on Plaintiff's Motion for Attorneys' Fees Was Highly Unreasonable.**  The time spent preparing the Motion for Attorneys' Fees itself is similarly excessive.  The Motion is

---

[4] Collectively, Plaintiff's counsel billed 94 hours and $35,789.50 just for preparation of the opening statement.

only 12 pages long. Most exhibits are contemporaneous invoices, requiring little preparation. Yet just the law office of Vitt & Nunan billed 77.2 hours or $23,222.50 to prepare the Motion. Mr. Jones added another 14.5 hours or $5,727.50. The total time and cost for the fee motion is 91.7 hours or $28,950.00, and the lodestar should be reduced accordingly. *See Brady,* 455 F. Supp. 2d at 212 (reducing the lodestar hours by half for excessive billing related to a fee application); *Murray ex rel. Murray v. Mills*, 354 F. Supp. 2d 231, 241 (E.D.N.Y. 2005) (suggesting that even in a complex case a fee application should not take more than 30 hours); *Levy v. Powell*, 2005 WL 1719972, at *8 (E.D.N.Y. July 22, 2005) (justifying an across-the-board 35 percent reduction based in part on the hours billed for the fee application).

3. **Plaintiff's Limited Success and Limited Jury Award Warrant a Substantial Downward Adjustment.**

Beyond excessive hours, Plaintiff's limited success and comparatively small damages award warrant a substantial downward adjustment. "Once the court arrives at a lodestar amount, the court can then adjust the number upward or downward based on a number of factors, including . . . the results obtained in the litigation." *Huard*, 2010 VT 43, ¶ 11 (internal quotations removed).

In passing and without much explanation, Plaintiff requests an upward adjustment of the lodestar amount. (ECF No. 300 at 8, 10). She reasons that she is entitled to such an adjustment based on "[t]he excellent result achieved here." *Id.* at 10. However, Plaintiff prevailed on only one of six claims[5] and secured a fraction—less than 25%—of the damages she originally sought. Moreover, the jury answered only one of 14 questions in her favor—just 7.14%. This is far from

---

[5] Plaintiff brought claims for (1) violation of the New Hampshire Whistleblowers' Protection Act, (2) violation of the American with Disabilities Act, (3) violation of the Rehabilitation Act, (4) Disability Discrimination under New Hampshire law, (5) Disability Discrimination under Vermont law, and (6) Wrongful Discharge under New Hampshire law. Plaintiff was only successful on her fifth claim, Disability Discrimination under Vermont law.

an "excellent result." Indeed, Plaintiff's limited success actually warrants a substantial *downward* adjustment. *See Hensley*, 461 U.S. at 436 ("[H]ad respondents prevailed on only one of their six general claims . . . a fee award based on the claimed hours clearly would have been excessive"). Given that the jury only found in Plaintiff's favor on 7.14% of the questions on the Verdict Form, and recognizing that Plaintiff only prevailed on one out of six claims (the exact situation the Supreme Court referred to in *Hensley*), the Court should apply a substantial downward reduction of no less than 83.3% (5/6) and as much as 92.86% (13/14).

The most critical factor in any fee and costs award is the degree of success. *Id.* at 436. The Supreme Court distinguishes between cases with "distinctly different claims" and cases with "a common core of facts." *Id.* at 434–35. Here, Plaintiff's whistleblower and wrongful discharge claims were entirely distinct from her successful VFEPA claim and must be excluded entirely. *Id.* Even claims arising from the same or similar set of facts—such as disability discrimination under the ADA, Rehabilitation Act, and applicable New Hampshire and Vermont state laws—warrant a reduction based on Plaintiff's minimal overall success. *Id.* at 436 (finding that hours spent on unsuccessful claims, interrelated or not, may be excluded in calculating a reasonable fee).

Here, the jury rejected the bulk of Plaintiff's case, including her request for punitive damages and multiple other theories that were vigorously pursued through discovery, motion practice, and trial. Courts routinely reduce fee awards in such circumstances. Where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount . . . even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Hensley*, 461 U.S. at 436; *see also Huard*, 2010 VT 43, ¶ 16 (recognizing that fee awards may be adjusted to reflect the degree of success); *Centrella,* 2018 WL 840041, at *11 (lodestar reduced because of only

9

partial success); *Diamond v. O'Connor*, 2010 WL 9459022, at *2 (D. Vt. June 10, 2010) (reducing lodestar by fifty percent because plaintiff prevailed on only one of two counts).

The Court may identify hours for exclusion or apply a percentage reduction at its discretion. *Hensley*, 461 U.S. at 436–37. Based on Plaintiff's one successful claim out of the six causes of action she pursued (16.7%), and one favorable answer out of 14 questions submitted to the jury (7.14%), the Court should reduce the lodestar by at least 83.3% and as much as 92.86%.

**4. Plaintiff Seeks Costs to Which She is Not Entitled.**

Plaintiff argues that expenses not considered "taxable costs" are nevertheless recoverable as attorneys' fees. (ECF No. 300 at 11). Accordingly, she seeks $29,959.20 for deposition costs, mediation costs, and travel expenses. As an initial matter, Dr. Porter appears to request deposition costs in both her Motion for Attorneys' Fees and in her Bill of Costs. (ECF No. 300 at 11–12; ECF No. 301-1). To the extent those expenses are double counted, they should be excluded from the Court's calculations.

Second, Dr. Porter's argument suggests that the Vermont Rules of Civil Procedure, rather than the Federal Rules of Civil Procedure, govern her request for costs such that they may properly be considered within the realm of "attorney's fees." But V.R.C.P. 54(d) is clear that it does not control where "the court otherwise specifically directs." Here, the Local Rules of the District of Vermont specifically direct that "[t]axable costs are limited to those specified by 28 U.S.C. § 1920[.]" L.R. 54(a). The applicable federal statute, 28 U.S.C. § 1920, does not provide for an award of costs related to depositions, mediations, attorney travel, parking, or attorney meals. Moreover, as set forth in Defendants' Opposition to Plaintiff's Motion to Amend Judgment, Dr. Porter also failed to comply with multiple procedural prerequisites for an award of costs.

Those costs are inappropriately included in the Motion and must be excluded from any relief awarded thereon.

**5. Plaintiff Seeks Prejudgment Interest to Which She is Not Entitled As a Matter of Law.**

Plaintiff asks the Court—without citing to any authority—to award prejudgment interest on all of her fees. (ECF No. 300 at 3–4). Plaintiff is not entitled to the prejudgment interest she seeks here. As discussed in Defendants' Response in Opposition to Plaintiff's Motion for Prejudgment Interest,[6] Dr. Porter's costs and fees are not liquidated or readily ascertainable until determined by this Court. *Ring v. Carriage House Condo. Owners' Ass'n*, 2014 VT 127, ¶¶ 35-36, 198 Vt. 109, 125–26, 112 A.3d 754, 766 (2014) (finding that lower court acted within its discretion in denying prejudgment interest on attorneys' fees award because those fees are not liquidated until fixed by the trial court); *Salatino v. Chase*, 2007 VT 81, ¶ 15, 182 Vt. 267, 275, 939 A.2d 482, 488 (2007) ("[W]e note that other courts have concluded, for purposes of prejudgment-interest awards, that attorney's fees are not liquidated until fixed by the trial court[.]") .

For the reasons cited both herein and in Defendants' Response in Opposition to Motion for Prejudgment Interest, Plaintiff's request for prejudgment interest on her attorneys' fees and costs should be rejected by the Court in its entirety.

**CONCLUSION**

For the foregoing reasons, Dartmouth Health opposes Plaintiff's Motion for Attorneys' Fees and Costs because Plaintiff's fee request is unreasonably high and unsupported by her limited success. She prevailed on one of six claims and obtained a fraction of the relief sought. Her counsel overbilled, duplicated work, and now seeks interest to which they are not entitled.

---

[6] Defendants refer the Court to its reasoning in its Response in Opposition to Plaintiff's Motion for Prejudgment Interest. (ECF No. 296).

11

Accordingly, the Court should exercise its discretion to reduce Plaintiff's fee and cost request by no less than 83% and as much as 92.86%, consistent with her limited success.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7(a)(6), Dartmouth Health respectfully requests to be heard at oral argument.

Date: May 22, 2025

Respectfully submitted,

*/s/ Tristram J. Coffin*

**DOWNS RACHLIN MARTIN PLLC**

Tristram J. Coffin
199 Main Street
Burlington, VT 05402
Telephone: 802-863-2375
tcoffin@drm.com

**FOLEY & LARDNER LLP**

Donald W. Schroeder (admitted *pro hac vice*)
Morgan McDonald (admitted *pro hac vice*)
Megan E. Martinez (admitted *pro hac vice*)
111 Huntington Avenue
Boston, MA 02199
Tel: (617) 342-4000
dschroeder@foley.com
mmcdonald@foley.com
memartinez@foley.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on May 22, 2025, a copy of the foregoing document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

*/s/ Morgan McDonald*
Morgan McDonald