IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| MISTY BLANCHETTE PORTER, M.D.,<br><br>Plaintiff,<br><br>vs.<br><br>DARTMOUTH-HITCHCOCK MEDICAL CENTER, DARTMOUTH-HITCHCOCK CLINIC, MARY HITCHCOCK MEMORIAL HOSPITAL, and DARTMOUTH-HITCHCOCK HEALTH,<br><br>Defendants. | Case No. 2:17-cv-194 |

**DEFENDANTS' OPPOSITION TO NON-PARTY SUSAN BURTON'S MOTION FOR ACCESS TO AUDIO RECORDING OF TRIAL PROCEEDINGS**

Citing a litany of impertinent cases in her motion, commercial podcaster Susan Burton ("Ms. Burton")—who sat in an open courtroom throughout this matter—asserts a legal entitlement by every member of the public to raw backup audio of lengthy trial proceedings where full, official transcripts are available to all. *See* ECF No. 303 (hereinafter "Motion"). Because no such legal right exists, and Ms. Burton points to no authority even approaching support for her request, the Court should deny the Motion.

Raw backup audio of court proceedings is not a "judicial document," which carries a common law presumption of public access. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (explaining presumption). Indeed, even "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right

1

of public access." *Id.* (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)) (district court erred in sealing documents connected to summary judgment proceedings, which are "judicial documents").

To be a judicial document, "the item **filed** must be relevant to the performance of the judicial function and useful in the judicial process.'" *Id.* (emphasis added). Put another way, judicial documents are "those documents [that] play[] [a role] in determining litigants' substantive rights[.]" *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995); *see also Cable News Network, Inc. v. FBI*, 984 F.3d 114, 118 (D.C. Cir. 2021) ("[W]hether something is a judicial record depends on the role it plays in the adjudicatory process. If the goal in filing the document is to influence a judge's decisionmaking, the document is a judicial record.") (citation omitted)). Even where a record is deemed to be judicial, a court must then assess how weighty the presumption of public access is. *See Lugosch*, 435 F.3d at 119. The weight accorded is based on "the role of the material at issue in the exercise of [] judicial power" for, "[w]ithout monitoring, the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings." *Id.* (quoting *Amodeo*, 71 F.3d at 1048).

Beyond a common law right of access, a First Amendment right of access applies where the judicial document at issue has "historically been open to the press and general public" and whether "public access plays a significant positive role in the functioning of the particular process in question." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 92 (2d Cir. 2004) (public has qualified First Amendment right to inspect docket sheets) (quoting *Press-Enterprise Co. v. Superior Ct.*, 478 U.S. 1, 8 (1986)) (trial judge erred in closing criminal preliminary hearing and barring access to transcript).

Raw backup audio of trial proceedings is not a judicial document ripe for public access. Not only has there been no filing or sealing of any such audio in this case, but the audio itself plays no role in the performance of the judicial function in adjudicating the parties' rights. *See Amodeo*, 71 F.3d at 1049; *see also Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020) ("[A] judicial document is one that has been **placed before the court by the parties**[.]") (emphasis added). Ms. Burton cites no authority to the contrary, none for the proposition that raw backup audio has been historically accessible to the public, and none that raw backup audio carries any oversight function as to the "conscientiousness, reasonableness, or honesty of judicial proceedings." *See Hartford Courant*, 380 F.3d at 93; *Lugosch*, 435 F.3d at 119 (quoting *Amodeo*, 71 F.3d at 1048).

Indeed, in *Commonwealth v. Winfield*, 985 N.E.2d 86, 88 (Mass. 2013), the Massachusetts Supreme Judicial Court held that the public has no presumptive right to the raw backup audio of a trial—a "room recording"—where it was sought by a documentary film maker. In so doing, the Supreme Judicial Court wrote:

> We know of no case where the First Amendment right of access has been extended to include a right to an electronic recording of the trial where . . . that recording is made by a court reporter but is not the official record of the trial and is not referenced or contained in the court file. Nor do we see the wisdom of extending the First Amendment right of access to include unofficial electronic recordings where an official transcribed record of the trial is available that accurately reflects what happened during the public trial.

*Id.* at 91.[1]

There is simply no obligation of a court to expend its limited resources and produce raw backup audio of lengthy trials to anyone—let alone Ms. Burton—where full, official transcripts

---

[1] The *Winfield* Court acknowledged the reality that had the filmmaker who sought raw backup audio "attended the trial, he would have had no constitutional right to make an audio recording of the trial [as] '[t]here is no constitutional right to bring cameras into or to make audio or video recordings of court room proceedings.'" 985 N.E.2d at 91 (citation omitted) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 610 (1978)).

3

are already public.  Notably, Ms. Burton attended trial proceedings in this matter unencumbered by any restriction.  That Ms. Burton is a commercial podcaster who desires audio for greater production value should be of no concern to the Court.  And as trial transcripts are already fully accessible, Ms. Burton's request is evidently one in pursuit of profit rather than in pursuit of any compelling public interest.[2]  Moreover, this matter is still in active litigation with post-trial motions currently being filed in earnest.  Thus, the quest for audio should be viewed for what it is—an inappropriate attempt to litigate this case in the media rather than in the courtroom.

      Ms. Burton quotes pithy, but irrelevant, lines from Second and Third Circuit cases about what transcripts might and might not convey to a reader about live testimony.  The inapplicable cases Ms. Burton cites featured profoundly improper courtroom closures, unjustified sealing, as well as the mistaken belief that the later production of a transcript is a proper remedy for an unlawful closure of proceedings.  *See ABC, Inc. v. Stewart*, 360 F.3d 90 (2d Cir. 2004) (district court erred in barring media from attending voir dire of prospective jurors while providing transcript of proceedings); *United States v. Antar*, 38 F.3d 1348 (3d Cir. 1994) (district court erred in sealing transcript of jury voir dire and placing improper use restrictions on later unsealed transcript); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059 (3d Cir. 1984) (district court erred in

---

[2] Ms. Burton writes: "I hope to utilize audio from the trial to provide the public with a clear explanation of what Defendant Dartmouth Hitchcock Medical Center knew [pertaining to matters of patient care], what they did and did not do with this knowledge, and why they made the choices they did." Mot. at 2.  It is confusing what Ms. Burton means by "provide the public with a clear explanation," as all trial content is already available to her en masse in volumes of official transcripts.  Her assertion does not pass the smell test.  There is also cause for concern that any "room recording" has picked up privileged communications at counsel table, something the Court must be sensitive to.  Finally, though her request is without legal support, it remains unclear why Ms. Burton did not bring her eleventh-hour desire to the Court at the outset of these proceedings so as to put the Court and all parties on notice of her intent as a matter of logistics and fairness.

barring media from preliminary injunction hearing and sealing transcript); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) (district court erred in closing murder trial to public).  But this Court has not closed or sealed anything.  The Court simply does not make available to the public raw backup audio of lengthy trials as a matter of course, a reality Ms. Burton dislikes.

      For the aforementioned reasons, the Court should deny Ms. Burton's Motion (ECF No. 303).

Date: May 27, 2025                                      Respectfully submitted,

*/s/ Tristram J. Coffin*

**DOWNS RACHLIN MARTIN PLLC**

Tristram J. Coffin
199 Main Street
Burlington, VT 05402
Telephone: 802-863-2375
tcoffin@drm.com

**FOLEY & LARDNER LLP**

Donald W. Schroeder (admitted *pro hac vice*)
Morgan McDonald (admitted *pro hac vice*)
Megan E. Martinez (admitted *pro hac vice*)
111 Huntington Avenue
Boston, MA 02199
Tel: (617) 342-4000
dschroeder@foley.com
mmcdonald@foley.com
memartinez@foley.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

  I hereby certify that, on May 27, 2025, a copy of the foregoing document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

                       */s/ Morgan McDonald*
                         Morgan McDonald