UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| MISTY BLANCHETTE PORTER, M.D., <br>     Plaintiff, <br><br> v. <br><br> DARTMOUTH-HITCHCOCK MEDICAL CENTER, DARTMOUTH-HITCHCOCK CLINIC, MARY HITCHCOCK MEMORIAL HOSPITAL, and DARTMOUTH-HITCHCOCK HEALTH, <br>     Defendants. | Docket No. 2:17-CV-194 |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL RELATED TO DAMAGES ISSUES

Plaintiff Misty Blanchette Porter, M.D. ("Dr. Porter" or "Plaintiff") submits this memorandum to oppose Defendants' Motion For a New Trial Related to Damages Issues (Doc. 308). Defendants have failed to identify any trial error regarding damages, and they have failed to offer a valid basis for a new trial. Instead, Defendants' motion is simply a rehash of old, unsuccessful arguments made earlier in these proceedings. Accordingly, the Court should deny Defendants' motion.

Defendants rely on four positions. First, they claim – yet again – that Dr. Bancroft's expert testimony should have been excluded or limited. Defendants again rely upon a misleading and inaccurate series of assertions regarding the bases for Dr. Bancroft's opinion, and then they renew their tired argument that the Court should have excluded the testimony. Second, Defendants repeat an unfounded argument made at the Charge conference concerning the jury instruction on the duty to mitigate damages. The Court's instruction reflects an accurate and

proper statement of the law, however, and Defendants offer no valid claim of error. Third, Defendants assert that they were prejudiced by the Court's decision to exclude from closing argument a so-called "chart" of calculations that Defense counsel directed Dr. Bancroft to create on the stand. Because this chart had absolutely no evidentiary value and was produced under protest by Dr. Bancroft because the calculations Defense counsel wanted were simply incorrect and inaccurate, Defendants' argument lacks merit. Finally, Defendants repeat an absurd argument that they should have been permitted to argue to the jury that Dr. Porter's failure to accept a severance package – which contained a release of claims – somehow shows a failure to mitigate damages. This Court has already properly rejected this argument, in part for the obvious reason that Dr. Porter would have had no lawsuit at all (and could not have claimed any damages) if she had accepted the severance agreement.

All of Defendants' arguments are completely unfounded.

<u>The Court Properly Permitted Dr. Bancroft to Testify as An Expert Economist</u>

As the Hall of Fame Baseball Catcher Yogi Berra is reported to have said, "it's like déjà vu all over again." Incredibly, this is Defendants' fifth formal motion (on top of countless objections, side bars, and oral arguments) asserting their position that Dr. Bancroft's testimony should have been excluded or limited. *See, e.g.,* Defendants' Motion In Limine to Preclude the Testimony of Robert Bancroft (Doc. 198); Defendants' Renewed Motion to Preclude the Testimony of Robert Bancroft Based on New March 19, 2025 Report (Doc. 235); Defendants' Motion In Limine to Preclude the Expert Report (Doc. 248); Defendants' Motion In Limine Regarding Undisclosed Expert Opinions of Dr. Bancroft (Doc. 257). All of Defendants' prior arguments on this issue were rejected because they were unfounded. *See, e.g.,* Orders on Motions

(Docs. 238 and 258). Nothing has changed, and Defendants' latest motion on the same issue should again be denied.

Notably, Defendants make no new arguments to supplement their four previous, failed attempts to limit or exclude Dr. Bancroft's testimony. Rather, Defendants rely on the same positions they have previously advanced. For example, Defendants continue with their misleading argument that Dr. Bancroft's updated reports (he issued three updates over 8 years) somehow contain substantial changes in methodology based on supposedly undisclosed information from Dr. Porter. Defendants thus raise the specter of an "undisclosed expert opinion." But Dr. Porter has already repeatedly debunked this claim, and she incorporates her prior memoranda on the issue. *See,* Plaintiff's Opposition to Defendants' Motion In Limine to Preclude the Testimony of Robert Bancroft (Doc. 208); Plaintiff's Opposition to Defendants' Renewed Motion to Preclude the Testimony of Robert Bancroft Based on New March 19, 2025 Report (Doc. 236); Plaintiff's Opposition to Defendants' Motion In Limine Regarding Undisclosed Expert Opinions of Dr. Bancroft (Doc. 257). Dr. Bancroft never changed his methodology. He merely updated his report to ensure that his testimony was based on the most current information available. The reality that circumstances changed over the 8 years that this case was pending should be no surprise. Experts routinely update their reports before trial, and the federal courts have recognized the propriety of this practice. *See, e.g., Kahle v. Leonard*, 563 F.3d 736, 741 (8th Cir. 2009) (finding district court within its discretion in admitting psychologist expert report updated shortly before trial where the report "updated a previously-disclosed assessment of Kahle's treatment needs based on additional information—her expected release date"); *Miller v. Pfizer, Inc.*, 356 F.3d 1326, 1332 (10th Cir.2004) (noting that "an expert's initial Rule 26 report cannot always anticipate every possible challenge to the report" and that refusing

to allow the expert "to submit supplements to the report in response to assertions by opposing experts that there are gaps in the expert's chain of reasoning" may, in some instances, "even constitute an abuse of discretion"); *Minebea Co. v. Papst*, 231 F.R.D. 3, 6–8 (D.D.C. 2005) (noting the exception permitting a supplemental expert report "for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report"); *see* FRCP 26(e) (permitting supplements or corrections in response to new information).

Defendants' continued argument that Dr. Bancroft's testimony somehow contains undisclosed facts or opinions is similarly unsound. As Dr. Porter has previously demonstrated, Defendants' attorneys – including Vermont trial counsel – in fact already questioned Dr. Bancroft repeatedly during pre-trial proceedings to explore the very issues they now claim were not disclosed. It is simply untrue to suggest that Defendants were somehow surprised or prejudiced by any new information. *See, e.g., Gay v. Stonebridge Life Ins. Co.*, 660 F.3d 58, 63-64 (1st Cir. 2011) (finding that although expert's testimony used different language than the report, "it was a reasonable elaboration of the opinion disclosed in the report," and that plaintiff could reasonably have anticipated the testimony based on the report "and, therefore, could not have been unfairly surprised to warrant striking the challenged testimony"); *Walsh v. Chez*, 583 F.3d 990, 992-95 (7th Cir. 2009) (noting that the purpose of an expert report "is not to replicate every word that the expert might say on the stand" but rather to "convey the substance of the expert's opinion … so that the opponent will be ready to rebut, to cross-examine, and to offer a competing expert if necessary").

Defendants have raised no new arguments. These arguments have been rejected four times before and they should be rejected again.

<u>The Court's Jury Instruction on The Duty To Mitigate Damages Was Accurate and Proper</u>

Defendants assert that the Court somehow erred in instructing the jury about mitigation of damages. According to Defendants, the court's instruction permitted the jury to deduct an amount from damages only after it first concluded that Dr. Porter failed to mitigate her damages. (Doc. 308 at 5). But this is the law. As the Court properly explained to the jury, "[a] plaintiff ordinarily has a general duty to mitigate the damages she incurs, meaning she has a duty to take steps to try to minimize the harm or prevent it from increasing further." Jury Charge at 30 (Doc. 275). This is an accurate statement of the duty to mitigate damages. *Schnabel v. Nordic Toyota, Inc.*, 168 Vt. 354, 361, 721 A.2d 114, 119-20 (1998); *Dailey v. Societe Generale*, 108 F.3d 451, 455-56 (2nd Cir. 1997); *Wills-Hingos v. The Raymond Corporation*, 104 Fed.Appx. 773,775 (2nd Cir. 2004); *In re Davidson*, 186 Vt. 45 (2009), 978 A.2d 1, 2009 VT 45. If a plaintiff fails to meet this duty, then her damages may be reduced at the jury's discretion. This is precisely what the Court instructed.

Defendants argue that this formulation of the duty to mitigate is "confusing" because – according to Defendants – Dr. Porter did mitigate her damages. (Doc. 308 at 5-6). Respectfully, the only confusion here is Defendants' own conflation of a theory of damages on the one hand with the affirmative defense of a duty to mitigate on the other hand. What Defendants are really arguing is that Dr. Porter did not suffer damages in the first instance because she found another job. This is not a duty to mitigate issue. Defendants are simply confused between (1) the argument that a plaintiff did not suffer damages, and (2) the argument that a plaintiff suffered damages, but failed to take reasonable steps to minimize her losses. But the confusion is Defendants' alone. The Court's instruction was not confusing, and there is no reason to conclude

that the jury shared Defendants' confusion. Of course, Defendants' confusion is no basis to order a new trial and their argument on this issue should be dismissed.[1]

<u>The Handwritten Notes With Defense Counsel's Inaccurate Calculations Were Properly Excluded For Closing Argument Because They Were Incorrect and Misleading</u>

Defendants next claim error in the Court's decision to prevent defense counsel from using a page of handwritten notes during closing argument. The notes – which Defendants characterize as a "chart" – were notes taken by Dr. Bancroft on the stand while he was testifying under cross examination. Dr. Bancroft was not the author of the content of the notes, however. Rather, defense counsel instructed him on the contents he should write. These notes simply reflect Defense counsel's "lawyer math" using Dr. Bancroft as a medium to write them in his handwriting. But, as Dr. Bancroft clearly protested during this spectacle, the calculations were inaccurate and incorrect. Defendants now claim that this "chart" somehow contains Dr. Bancroft's calculations and should have been used as demonstrative evidence during closing argument.

The Court properly limited Defense counsel's use of this document.[2] This document was not a legitimate chart prepared by an expert. It was merely the result of a trial stunt in which Defense counsel directed the witness to write down content he had previously prepared. The document was wholly misleading (Dr. Bancroft himself immediately disclaimed it as incorrect) and the document lacks any probative value. Indeed, the document is so unreliable as evidence

---

[1] Notably, Defendants do not cite a single case authorizing a specific jury instruction with the formulation they propose.

[2] Plaintiff notes that the first time she or her lawyers even saw the document was when Defendants attached it as an exhibit to their current motion. Even though Plaintiff requested a copy during the trial, Defendants never gave her a copy. Thus, Defendants refused to produce the document but they now claim error in being unable to cite it in closing argument.

that it would have been error to permit defense counsel to use it during closing argument. The Court's decision to limit use of this document was proper, and Defendants' argument should again be rejected.

### The Court Properly Limited Defendants' Use of Evidence Regarding A Severance Agreement That Dr. Porter Did Not Accept

Finally, Defendants complain that they were not permitted to argue in closing argument that the jury could consider Dr. Porter's rejection of a severance package when considering the duty to mitigate damages. Defendants argue that Dr. Porter's duty to mitigate damages somehow required her to accept a severance package, and that her decision to reject the package should have been considered by the jury to reduce her damages. This argument is, frankly, absurd.

The severance package contained a release of claims. Had Dr. Porter accepted the package, she would have been precluded from filing this lawsuit at all. Clearly it would be improper to permit Defendants to ask the jury to penalize Dr. Porter for having decided to exercise her right to file this lawsuit instead of accepting the severance package. Defendants' argument, if accepted, would essentially compel plaintiffs to accept any severance package their employer presents (or risk having damages limited or precluded under the duty to mitigate). Defendants' argument is simply unfounded and should be rejected.

### CONCLUSION

For the foregoing reasons, Dr. Porter requests that the Court DENY Defendants' motion.

Dated: June 5, 2025                         /s/ Geoffrey J. Vitt
                                                                     Geoffrey J. Vitt, Esq.
                                                                     Vitt & Nunan, PLC
                                                                     8 Beaver Meadow Road
                                                                     P.O. Box 1229
                                                                     Norwich, VT 05055-1229
                                                                     (802) 649-5700
                                                                     gvitt@vittnunanlaw.com

/s/ Eric D. Jones
Eric D. Jones, Esq.
Langrock Sperry & Wool, LLP
210 College Street
P.O. Box 721
Burlington, VT 05402
(802) 864-0217
ejones@langrock.com

/s/ Sarah H. Nunan
Sarah H. Nunan, Esq.
Vitt & Nunan PLC
8 Beaver Meadow Road
P.O. Box 1229
Norwich, VT 05055
(802) 649-5700
snunan@vittnunanlaw.com

***Attorneys for Plaintiff,***
***Misty Blanchette Porter, M.D.***