1

IN THE UNITED STATES DISTRICT
FOR THE DISTRICT OF VERMONT


MISTY BLANCHETTE PORTER, M.D., )
                               )
                   Plaintiff, )
                               )
        vs.                    )
                               ) CASE NO. 2:17-cv-194
DARTMOUTH-HITCHCOCK MEDICAL     )
CENTER, DARTMOUTH-HITCHCOCK     )
CLINIC, MARY HITCHCOCK          )
MEMORIAL HOSPITAL, and          )
DARTMOUTH-HITCHCOCK HEALTH,     )
                               )
                   Defendants. ) Deliberations/Verdict
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _)



        Continuation of trial held on Thursday,

April 10, 2025, at 8:30 a.m., Burlington, Vermont,

before Honorable Kevin J. Doyle, Magistrate Judge.






Clerk of Court:  Emerson F. Howe


Sarah M. Bentley, CCR-B-1745
 Registered Professional Reporter and Notary Public




                BENTLEY COURT REPORTING
                 sbireland7@gmail.com

2

```
1                     A P P E A R A N C E S

2      For the Plaintiff:

3              GEOFFREY J. VITT, ESQ.
               SARAH N. NUNAN, ESQ.
4              Vitt & Nunan, PLC
               8 Beaver Meadow Road
5              Norwich, Vermont  05055-1229
                 (802) 649-5700
6                gvitt@vittnunanlaw.com
                 snunan@vittnunanlaw.com

7

8              ERIC D. JONES, ESQ.
               Langrock, Sperry & Wool, LLP
9              210 College Street
               Burlington, Vermont  05402-0721
10               (802) 864-0217
                 ejones@langrock.com

11

12     For the Defendants:

13             DONALD W. SCHROEDER, ESQ.
14             MORGAN MCDONALD-RAMOS, ESQ.
               Foley & Lardner, LLP
15             Suite 2500
               111 Huntington Avenue
16             Boston, Massachusetts  02199
                 (617) 342-4041
17               dschroeder@foley.com
                 mmcdonald@foley.com

18

19             TRISTRAM J. COFFIN, ESQ.
               Downs, Rachlin, Martin, PLLC
20             199 Main Street
               Burlington, Vermont  05402-0190
21               (802) 863-2376
                 tcoffin@drm.com

22

23     Also Present:

24             Edward Merrens, Chief Medical Officer
25               (Dartmouth-Hitchcock Medical Center)
```

3

1                          I N D E X

2

3                                                    PAGE

4
Conference with counsel regarding jury                4
5
     Note/request
6

7

8  Verdict                                            26

9

10

11

12

13

14

15

16                        *      *      *

17

18

19

20

21

22

23

24

25

4

1                       P R O C E E D I N G S

2

3           (The following is held in open court on

4       April 10, 2025, at 8:25 a.m.)

5           THE CLERK:  Your Honor, the matter before

6       the court is Case No. 2:17-cv-194, <u>Misty</u>

7       <u>Blanchette Porter vs. Dartmouth-Hitchcock.</u>

8           Present on behalf of the plaintiff are

9       Attorneys Jeffrey Vitt, Eric Jones, and Sarah

10      Nunan.

11          Present on behalf of defendants are

12      Attorneys Tristram Coffin, Morgan McDonald, and

13      Donald Schroeder.

14          We're here for a jury trial.

15          THE COURT:  Okay.  Good morning.

16          Okay, so we are here to address the note

17      received towards the very end of the day

18      yesterday.  This has since been marked as Court

19      Exhibit E-4, Jury Note 3.

20          I'll just read into the record what the

21      note itself says again.

22          It says:  We would like to request the

23      testimony/transcript of the following:  One,

24      Dr. Herrick; two, Dr. Merrens; three,

25      Dr. Porter; four, Dr. DeMars.

1          So before kind of beginning a discussion

2     on this I just want to note the 2nd Circuit's

3     law on this particular question.  I am going to

4     cite to the parties United States vs. Escotto,

5     E-S-C-O-T-T-O.  That citation is 121 at 3rd 81.

6          And in relevant part, the 2nd Circuit

7     says, Although we recognize that the decision to

8     permit or deny testimony requested by a jury

9     during deliberations is within the broad

10    discretion of the trial court, we have also

11    instructed that a trial court's response to any

12    particular request should be guided by

13    consideration of the juror's need to review the

14    evidence before reaching a verdict assessed

15    against the difficulty in locating the specific

16    testimony requested, the possibility of undue

17    emphasis on any portion of the testimony, and

18    the possibility of undue delay in the trial.  We

19    have also stated a clear preference for

20    read-backs whenever they are requested by a

21    deliberating jury.

22          So those are kind of the guiding

23    principals this morning.

24          So let me just explain to you my

25    understanding of the factual landscape in terms

6

1     of where transcripts are with the court

2     reporters.

3           So, as you know, we have had three court

4     reporters over the course of the trial.  The two

5     who reported the testimony of these particular

6     witnesses were Jan Marie Glaze, that was the

7     first court reporter that we had, and Sunni

8     Donath was here for the remaining witnesses.

9           So Ms. Donath recorded the -- transcribed

10    the testimony for Dr. Merrens, Dr. Herrick, and

11    Dr. DeMars.  I am advised that Ms. Donath has

12    certified copies of the transcripts for each of

13    those witnesses now.  So certified copies.

14          Ms. Glaze transcribed the testimony for

15    Dr. Porter over March 25th, March 26th, and

16    March 27th.  I am advised that Ms. Glaze only

17    has a rough cut of the testimony of Dr. Porter

18    at this time.

19          The deputy clerk asked Ms. Glaze this

20    morning when she could have a certified copy

21    prepared for Dr. Porter, and she advised

22    best-case scenario by the end of the day today,

23    possibly in the morning.

24          In addition to certified copies of the

25    transcript, there's also a redaction issue

7

1    relevant here because those transcripts do have

2    contents of the bench conferences in the case.

3         So Mr. Howe has spoken with Ms. Donath,

4    who is in the process right now of doing the

5    redactions of her certified copies of the bench

6    conferences.  The same request would be made of

7    Ms. Glaze as she prepares a certified copy of

8    her transcripts; to redact out the same

9    information.

10        In my view it is only fair to have

11   certified copies of the testimony of each of the

12   witnesses.  And so my plan would be then to

13   generate transcripts.

14        This same case that I cited to you

15   earlier also deals with the possibility of

16   providing trial transcripts to a jury in lieu of

17   a read-back, particularly in a case where the

18   anticipated read-back is going to be fairly

19   lengthy, and that I think would be the case

20   here.

21        Given that there are four witnesses over

22   several days, it seems, considering these

23   factors, to make the most sense to generate

24   trial transcripts and allow those to be made

25   available to the jury for their review.

1          The 2nd Circuit says if you are going to

2     do that, though, the Court should issue a

3     cautionary instruction to the jury to make sure

4     that they understand that -- the notion that

5     they should be considering all the evidence in

6     the case without placing any undue emphasis on

7     any particular piece of evidence.

8          I would also propose then that copies of

9     each of those transcripts be provided to each

10    juror so that they also can see the language

11    themselves as opposed to relying potentially on

12    the reading or maybe even misreading of someone

13    in the jury room of the relevant testimony.

14         So as a practical matter, given that we

15    don't expect a certified transcript until the

16    end of the day today, that leads to the next

17    question then of what do we direct the jury; to

18    suspend its deliberations for today until we can

19    get all of the transcripts in place to be

20    provided to the jury?

21         I thought about the idea of somehow

22    attempting to ascertain whether they can

23    continue to deliberate in the absence of these

24    particular transcripts.  I'm kind of reluctant

25    to do that because this note came in yesterday

9

1    about, and I think everyone probably agrees, are

2    kind of central witnesses in the case.  So I'm

3    thinking at this time I would tell them that

4    we're going to wait until we get the

5    transcripts, and then we can resume.

6          So that's all I had to say.  I'm happy to

7    hear from counsel on that proposal.

8          Mr. Jones?

9          MR. JONES:  Thank you, your Honor.

10   Frankly, there was a time last night when I

11   think I was in line with your proposal, but on

12   further reflection I do think, I guess the -- I

13   understand that the 2nd Circuit, particularly

14   the Escotto case grants the Court wide

15   discretion of kind of the best way to proceed.

16          I do think, particularly here, the volume

17   that we're talking about; we're talking about

18   there's hundreds of pages and the jury kind of

19   having unsupervised access to pour over it, I

20   think that does create a risk of undue attention

21   being applied to certain pieces of evidence as

22   opposed to the evidence at a whole.

23          And, also, I am concerned about the undue

24   delay factor here.  We are now talking about --

25   we're looking at a whole day being taken off so

1    we can get these transcripts together.  I think

2    that creates a concern.

3         I would propose that the Court consider

4    something closer to the preferred practice of

5    reading, where we let the jury know that they

6    can be provided testimony but if they can

7    identify a statement, an issue, a subject

8    matter, then they can come back in in open court

9    and have that particular piece read back to

10   them.

11        What we don't know right now is what's

12   driving their request.  Maybe we don't need to

13   know, but it may be that there's a much more

14   tailored, much more surgical, timesaving

15   solution here that may be -- if the jury was

16   presented with that option, might end up in a

17   more efficient process.

18        We would propose telling the jury at this

19   time we're not inclined to give you the full

20   transcripts, but we can read back specific

21   testimony that they need.

22        THE COURT:  Okay.

23        Defendants' position?

24        MR. SCHROEDER:  Thank you, your Honor.  I

25   think, you know, obviously we have concerns

1   about slowing down the deliberation.  I think it

2   seems as though the Court has taken steps to

3   perhaps expedite getting the transcripts.

4   There's 765 pages, as we understand it, of

5   transcript that they've currently asked for, and

6   our concern is the delay associated with that up

7   against various vacation schedules of some of

8   the jurors.  Because we are aware of that.

9       And so a couple things.  I think we've

10   got, obviously, the issue of undue delay, and we

11   believe that the jury should continue

12   deliberations; that we shouldn't suspend

13   deliberations at this point, and they should

14   continue to work through the issues.

15       I guess one of the major concerns I have,

16   your Honor, is this is not a bench trial, right?

17   We've been here for two weeks of jury trial

18   testimony, and they've all taken copious notes

19   throughout that testimony.  And to do -- have

20   the transcripts, all of them printed and then

21   given to the jury, I would suggest that if the

22   Court is inclined to go that way, that I think

23   it's an all-or-nothing proposition.

24       Reading bits and pieces of it I don't

25   think is going to be appropriate, and I think if

1    the Court is going to the way of having

2    transcripts done, the concern is I wouldn't even

3    do that.  I would have them continue their

4    deliberations to see if they can get through

5    this issue because the request is so broad at

6    this point.  It's four different people.  You're

7    dealing with Misty Porter over three days,

8    Merrens is over two, Leslie DeMars is over two,

9    and Daniel Herrick one.

10         I will let Mr. Herrick know that he's

11   been promoted to doctor since I don't believe he

12   has an M.D., but -- so that aside, my concern is

13   this is going to -- we shouldn't bog down the

14   deliberations regardless of where the Court goes

15   with this.  I have concerns about printing

16   765 pages of transcript for each juror to mull

17   through.

18         We're inclined to allow them to continue.

19   We think they should continue.  If they've got

20   specific requests that they want the Court to

21   consider, that may be another avenue, but right

22   now it seems extremely difficult and even in the

23   best-case scenario we would not be able to give

24   the transcripts to them until tomorrow.

25         But I don't think we should waste a day

1    of jury deliberations by suspending

2    deliberations right now.  I think they should

3    continue to do the hard work they've been doing.

4         THE COURT:  Yeah, I think the difficulty

5    is knowing whether this particular request has

6    come up because this is where they are, and my

7    attempting to tell them to continue to

8    deliberate -- just so I'm clear, so your

9    proposal is keep deliberating, you can get the

10   transcripts when they're available?

11        Or keep deliberating and maybe you'll

12   determine that you don't need them in the end?

13        I don't know what --

14        MR. SCHROEDER:  Well, I think given the

15   state of where we are right now and what the

16   request is, I think at a minimum they should

17   continue to deliberate.  I don't think there's

18   any basis to suspend.  Because that goes against

19   Escotto and the act of undue delay and concern

20   about how long -- well, it's just the

21   machinations.  We're already in our third day,

22   right?  It's not even the start, and they're

23   asking for four different people.

24        And I think the concern we have is that

25   when you look at what the standard is, the

14

1    possibility of undue emphasis on any portion of

2    the record, the possibility of any undue delay,

3    those are all the factors that the Court

4    considers.

5         At a minimum we should do this on two

6    parallel tracts, at a minimum.  So I would not

7    suspend.  We are not in favor of suspending

8    deliberations today.  I don't think that would

9    be -- in light of the fact that a number of

10   jurors -- because we're butting up against, as

11   my wife reminded me, Easter next week and the

12   fact that that lines up with school vacations.

13        Now, I don't have any kids in school

14   anymore, but I do know that a number of the

15   jurors have vacation scheduled next week.  So to

16   the extent that the Court was considering

17   suspending and/or delaying their consideration

18   of the evidence, I just think we're going to be

19   in a very difficult position next week if

20   that -- if we delay things.

21        I think they should continue

22   deliberations at a minimum, and then if the

23   Court -- I don't know what the timing is on the

24   certified records.  It sounds like either late

25   today or --

1          THE COURT:  For one of them -- all of

2     them is Donath's transcripts, which is for

3     Dr. Merrens, Mr. Herrick, and Dr. DeMars, those

4     are certified now and ready, and the redactions

5     are in the process, which I'm hearing could be

6     done this morning.

7          With respect to Dr. Porter's testimony,

8     that is in rough form now.  So that would be by

9     the end of the day.

10          MR. SCHROEDER:  Right.  And Mr. Herrick I

11     don't think anybody had until 10:54 p.m. last

12     night, so just so everybody understands where we

13     were yesterday.  We wouldn't have been in a

14     position to be there.

15          But set aside all that, I think the jury

16     should continue to deliberate.  I think if

17     there's a narrow request that comes out perhaps

18     that's helpful, but I think to the extent that

19     the transcripts are going to go back to the

20     Court, we would certainly want a strong limiting

21     instruction -- and we can certainly draft one in

22     the interim -- regarding not taking things out

23     of context, assessing the character and

24     credibility of the witnesses.

25          Obviously the judge -- if this was a

1    bench trial, you would certainly have the

2    transcripts and then you would deliberate, but

3    this is not a bench trial.  This is a jury

4    trial.  We've been here two weeks.  It's not two

5    months, and I can certainly --

6          THE COURT:  What does that go to?  You're

7    saying --

8          MR. SCHROEDER:  I don't want to delay

9    things.

10         THE COURT:  Okay.  That they should get

11   what they're asking for anyway?

12         I know it hasn't been a two-month trial,

13   it's not a bench trial, but they're asking for

14   it, right?

15         So I wonder if we might be able to do

16   here, potentially, there might be some agreement

17   about seeing if we can determine whether the

18   jury has a more narrow focus as to what they're

19   looking for.  That might obviate all of the

20   inefficiencies that would come about by

21   generating transcripts for everyone.

22         Mr. Jones?

23         MR. JONES:  That was my proposal.  One

24   thing I just wanted to add, I think it would be

25   highly prejudicial if the jury got the defense

17

1   witness transcripts without Ms. Porter's so we

2   have to wait until tomorrow.  I don't think we

3   can give them piecemeal.

4           And I am very concerned about the undue

5   delay.  I think the parties are in agreement on

6   that concern.

7           So I think it may be best to see if we

8   can have the jury give us a more tailored --

9   ask, and it may be that reading more surgical,

10  surgically defined portions would satisfy their

11  concern.

12          THE COURT:  Okay.  Now, if they narrow

13  their request as to Dr. Porter's testimony, that

14  would still be working from a rough cut as

15  compared to a certified copy as to the other

16  witnesses.  So that's an issue.

17          MR. SCHROEDER:  I think your Honor, two

18  things.  One, they should continue

19  deliberations; and, two, if during those

20  deliberations they can determine whether there's

21  a narrower request, then they should do so and

22  present it to the Court.

23          In terms of giving the transcripts all at

24  once, then we would do that all at once, I guess

25  tomorrow, but I do not believe we should slow

18

1    down negotiations at this point.

2         I don't think we should slow down

3    negotiations in the interim while the court

4    reporters are doing their work to get those

5    transcripts in a form that's acceptable for

6    distribution to the jurors.

7         I want to be clear.  I don't think it's

8    necessary for them to have the entire

9    transcripts.  I think I would want them to

10   continue to deliberate, but I understand the

11   Court's obviously broad discretion in this

12   regard.

13        My fall-back position, if the Court is

14   going that way in terms of having the full

15   transcripts, I still don't want to delay their

16   deliberations in the interim.

17        THE COURT:  Mr. Jones, you are in

18   agreement with that; that deliberations should

19   continue?

20        MR. JONES:  Generally, yes.

21        I'm going to propose, maybe you can

22   simply inform the jury that part of the

23   difficulty in complying with their request today

24   is that it's going to take time to get certified

25   copies.  If they knew that this would result in

19

1      a day's delay, that might be information useful

2      to them, particularly in light of

3      Mr. Schroeder's observation that some of these

4      people have plans next week.

5           It might help them assess their need for

6      hearing testimony, if they knew that it would

7      cause a delay in the deliberations.

8           THE COURT:  Just so I'm clear, so is the

9      proposal then that I bring the jury back in,

10     obviously acknowledge that we received their

11     request, tell them that as written the request

12     is fairly broad; that it will take time to

13     generate those transcripts, direct them to

14     continue with their deliberations, and then

15     somehow get from them a view as to whether what

16     they need can be narrowed?

17          I wonder if I do that through just kind

18     of a note to them, or I can tell them and then

19     they can communicate with us through a note.

20          I don't know that the foreperson is going

21     to be prepared, if I say that today, this

22     morning, to tell me exactly what they need.  So

23     perhaps I raise that issue with the jury and

24     then ask them to communicate with the Court.

25          MR. COFFIN:  I think some dialogue with

1   the jury, if agreeable to the other side, is a

2   good way to kind of get a sense.  I would

3   suggest non-leading, open-ended questions, but

4   letting them know the practical situation that

5   it would take some time to get this and ask, you

6   know, what, if anything, could be done to narrow

7   their request.

8          And just a little bit of a discussion

9   with the jury may give us some ideas of where

10  they are and may help guide kind of how the

11  Court does with this.

12          THE COURT:  I would be very reluctant to

13  engage in that colloquy with the jury.  It gets

14  too involved.  That's fraught.

15          I can explain to them, as I said, the

16  situation, and then I think they should

17  communicate with us, again by note, with respect

18  to whether they think it can be narrowed.

19          But again, for the record, so both sides

20  are in agreement that deliberations should

21  continue at this point?

22          Mr. Jones?

23          MR. JONES:  Yes.

24          THE COURT:  Mr. Schroeder?

25          MR. SCHROEDER:  Absolutely.

21

1          THE COURT:  All right, so then that's

2     what I'll do.  I'll bring them in, tell them

3     that they can continue deliberating, and see if

4     they can communicate with us the possibility of

5     narrowing the request of their testimony.

6          If they can't and the note comes back

7     basically the same as what it is; that they're

8     asking broadly for all of the testimony --

9          MR. SCHROEDER:  I think it's appropriate,

10    Judge, for you to say that it could take until

11    late today or tomorrow to comply with the

12    request as it is.  That's a fact.  I don't have

13    a problem with communicating that fact to them

14    because it's true.

15         And because otherwise we're going to be

16    in this back-and-forth, and they need to

17    understand the logistical difficulties of what

18    they're asking, I think.

19         MR. JONES:  We agree with that.  They

20    should know that what they're asking is going to

21    take until tomorrow morning.

22         THE COURT:  Right.  I should probably say

23    to them continue deliberations if you feel you

24    can, right?

25         I mean, at this point.

1          MR. SCHROEDER:  Well, there's certainly

2     case law, Judge, where the parties can be

3     directed to continue deliberations.  We've got

4     that case law.

5          THE COURT:  When there's been a request

6     for a read-back of testimony and say continue

7     with your deliberations awaiting information

8     you've requested --

9          MR. SCHROEDER:  Yes.

10         THE COURT:  -- as opposed to we're at an

11    impasse-type cases?

12         MR. SCHROEDER:  Correct.  Correct.

13         THE COURT:  Okay.  Anything else then at

14    this time?

15         MR. JONES:  Nothing further.

16         THE COURT:  All right.  Be back shortly.

17         (The judge left the courtroom at

18    8:57 a.m., and a brief recess was taken.)

19         THE CLERK:  All rise for the jury.

20         (The jury entered the courtroom at

21    9:13 a.m.)

22         THE CLERK:  Please be seated.

23         THE COURT:  Okay.  Good morning.  I just

24    wanted to let you know, as I think I commented

25    on yesterday, I received your note from the end

1      of the day in which you requested the

2      testimony/transcript of the following witnesses'

3      testimony:  Dr. Herrick, Dr. Merrens,

4      Dr. Porter, and Dr. DeMars.

5           So I certainly want to provide you the

6      information that you feel you need as you

7      continue to do your job.  I just wanted to let

8      you know, as a practical consequence if I were

9      to get for you the full transcripts of every one

10     of those witnesses, it will take probably until

11     the end of the day today, possibly tomorrow

12     morning to generate that.

13          So that said, we are prepared to provide

14     you the information that you need, but if you

15     can, if you are able to narrow your request as

16     to what precisely, you know, within reason, you

17     are interested in receiving from that, that

18     would make it a little more manageable to

19     generate that for you.  Again, if you can.

20          I would ask that you please do that in

21     writing, as you have been doing up until now.

22          And in the meantime I'll direct you to

23     continue your deliberations, if you can, without

24     this information, and I'll wait to hear from you

25     as to the potential narrowing of the request.

24

1          Okay?

2          All right.  Thank you.

3          THE CLERK:  All rise for the jury.

4          (The jury left the courtroom at

5    9:15 a.m.)

6          THE CLERK:  Please be seated.

7          THE COURT:  I'll just make a quick

8    correction.

9          Earlier I referred to Jury Note 3 by

10   exhibit number.  I said it was E-4.  I'm advised

11   that was "EH" for Emerson Howe.  So he left off

12   the left stick on the "H" so it looks like a

13   four to me.  So it's not marked as EH.  It is

14   just Jury Note 3.

15         Okay.  Anything else that we should take

16   up at this time?

17         MR. SCHROEDER:  None for the defense,

18   your Honor.

19         THE COURT:  Plaintiff?

20         MR. JONES:  Nothing, your Honor.

21         (The judge left the courtroom, and the

22   jury continued their deliberations at 9:16 a.m.)

23         (The following was held at 10:42 a.m. in

24   open court without the jury present.)

25         THE CLERK:  Please be seated.

25

1        THE COURT:  Okay, so we have received
2    another note.  I'll read that to you now.
3        It reads:  We would like to hold off on
4    any requests for transcripts.  We will reach out
5    if we need a specific portion of transcript.
6    Thank you.  Signed the foreperson.
7        Okay, so I interpret this as a withdrawal
8    of their request for any testimony or
9    transcripts at this time.  I won't bring the
10   jury in.  I think this is their communication as
11   to where they're at, so we'll leave it at that.
12       Okay?
13       MR. SCHROEDER:  Thank you, your Honor.
14       MR. JONES:  Thank you, your Honor.
15       THE CLERK:  All rise.
16       (The judge left the bench at 10:43 a.m.)
17       (The following was held in open court on
18   April 10, 2025, at 4:05 p.m. without the jury
19   present.)
20       THE COURT:  Okay, as I think you know, we
21   have received a note from the jury.  That note
22   reads:  We have reached a verdict.
23       So I'll ask for the jury to be brought in
24   at this time.
25       THE CLERK:  All rise for the jury.

1    Verdict:

2              (The jury entered the courtroom at

3    4:06 p.m.)

4              THE CLERK:  Please be seated.

5              THE COURT:  Okay, at this time I'll ask

6    the foreperson, has the jury reached a verdict?

7              FOREPERSON LAFONTAINE:  We have.

8              THE COURT:  Okay.  Then I'll ask the

9    deputy clerk to receive the verdict form.

10             (The verdict form was handed to the

11   deputy clerk by the foreperson and then handed

12   to the Court.)

13             THE COURT:  Okay, the verdict form

14   appears to be in order.  I will now ask the

15   deputy clerk to read the verdict.

16             THE CLERK:  The matter of Civil Action

17   No. 17-cv-194, Misty Blanchette Porter vs.

18   Dartmouth-Hitchcock Medical Center, et al.

19             The jury finds as follows:

20             One.  Violation of New Hampshire

21   Whistleblowers' Protection Act.

22             Do you find by a preponderance of the

23   evidence that Dartmouth Health terminated

24   Dr. Porter's employment and failed to reassign

25   her to another position at Dartmouth Health in

1   violation of New Hampshire Whistleblowers'

2   Protection Act?  No.

3          Violation of Americans With Disabilities

4   Act.

5          Do you find by a preponderance of the

6   evidence that Dartmouth Health terminated

7   Dr. Porter's employment because of her

8   disability in violation of the Americans With

9   Disabilities Act?  No.

10          B.  Do you find by a preponderance of the

11   evidence that Dartmouth Health failed to make a

12   reasonable accommodation for Dr. Porter by

13   reassigning her to another department instead of

14   terminating her employment in violation of the

15   Americans With Disabilities Act?  No.

16          C.  Do you find by a preponderance of the

17   evidence that Dartmouth Health retaliated

18   against Dr. Porter by terminating her employment

19   in violation of the Americans With Disability

20   Act?  No.

21          Three.  Rehabilitation Act Claim.

22          A.  Do you find by a preponderance of the

23   evidence that Dartmouth Health terminated

24   Dr. Porter's employment because of her

25   disability, in violation of the Rehabilitation

28

1    Act?  No.

2           B.  Do you find by a preponderance of the

3    evidence that Dartmouth Health failed to make a

4    reasonable accommodation for Dr. Porter by

5    reassigning her to another department instead of

6    terminating her employment, in violation of the

7    Rehabilitation Act?  No.

8           C.  Do you find by a preponderance of the

9    evidence that Dartmouth Health retaliated

10   against Dr. Porter by terminating her

11   employment, in violation of the Rehabilitation

12   Act?  No.

13          Four.  Disability discrimination claims

14   under New Hampshire state law.

15          A.  Do you find by a preponderance of the

16   evidence that Dartmouth Health terminated

17   Dr. Porter's employment because of her

18   disability, in violation of the New Hampshire

19   law against discrimination?  No.

20          E.  Do you find by a preponderance of the

21   evidence that Dartmouth Health failed to make a

22   reasonable accommodation for Dr. Porter by

23   terminating her employment instead of

24   reassigning her, in violation of the New

25   Hampshire law against discrimination?  No.

1          C.  Do you find by a preponderance of the

2     evidence that Dartmouth Health retaliated

3     against Dr. Porter by terminating her

4     employment, in violation of the New Hampshire

5     law against discrimination?  No.

6          Five.  Disability discrimination claims

7     under Vermont state law.

8          A.  Do you find by a preponderance of the

9     evidence that Dr. Porter's disability was a

10     motivating factor in Dartmouth Health's decision

11     to terminate Dr. Porter's employment in

12     violation of the Vermont Fair Employment

13     Practices Act?  Yes.

14          Do you find by a preponderance of the

15     evidence that Dartmouth Health failed to make a

16     reasonable accommodation for Dr. Porter by

17     terminating her employment instead of

18     reassigning her to another department, in

19     violation of the Vermont Fair Employment

20     Practices Act?  No.

21          C.  Do you find by a preponderance of the

22     evidence that Dartmouth Health retaliated

23     against Dr. Porter by terminating her

24     employment, in violation of Vermont Fair

25     Employment Practices Act?  No.

1        Six.  Wrongful discharge claim under New

2   Hampshire state law.

3        Do you find by a preponderance of the

4   evidence that Dartmouth Health's decision to

5   terminate Dr. Porter's employment constituted

6   wrongful discharge in violation of New Hampshire

7   state law?  No.

8        Damages.

9        One.  Economic damages.  If you checked

10  yes to any of the questions in Parts 1 through 6

11  above, do you find that Dr. Porter has proven by

12  a preponderance of the evidence that she is

13  entitled to economic damages, such as lost

14  income and expenses?  Yes.

15       If you checked yes, state below the

16  amount that is awarded in economic damages.

17  $1,000,000.

18       Two.  Noneconomic damages.

19       If you checked yes to any of the

20  questions in Parts 1, 2, 4, 5, or 6 above, do

21  you find that Dr. Porter has proven by a

22  preponderance of the evidence that she is

23  entitled to noneconomic damages, such as lost

24  enjoyment of life, mental anguish, or pain and

25  suffering?  Yes.

1        If you answered yes to the question

2   above, state below the amount that is to be

3   awarded noneconomic damages.  $125,000.

4        Punitive damages.

5        If you checked yes to any of the

6   questions in Parts 2, violation of the ADA, or

7   5, disability and discrimination claims under

8   Vermont state law, do you find that Dr. Porter

9   has proven by a preponderance of the evidence

10  that she is entitled to punitive damages because

11  of Dartmouth Health's wrongful conduct,

12  outrageously reprehensible, and Dartmouth Health

13  acted with malice?  No.

14        Dated in Burlington, the District of

15  Vermont, this 10th day of April, 2025.  Signed

16  by the jury foreperson.

17        THE COURT:  Okay.  At this time would

18  either party like the jury to be polled?

19        MR. JONES:  Not the plaintiff.

20        THE COURT:  Defendants?

21        MR. SCHROEDER:  No, your Honor.

22        THE COURT:  Okay.  All right, so then

23  judgment will be entered in accordance with this

24  verdict.

25        Members of the jury, this concludes your

32

1    jury service.  I want to thank you for your

2    attention and your diligence in this case.  So

3    you are free to leave at this time.

4         If you wish, you can discuss the case and

5    your jury verdict with anyone you'd like, but

6    you are under no obligation to speak to anyone

7    if that is your preference.

8         I am going to be coming back to the jury

9    room in just a moment to personally thank you

10   so, if you would, just wait for a moment in the

11   jury room.  I'm going to be speaking to the

12   lawyers, and I'll be with you.

13        Okay.

14        THE CLERK:  All rise for the jury.

15        (The jury left the courtroom at

16   4:15 p.m.)

17        THE CLERK:  Please be seated.

18        THE COURT:  Okay.  Is there anything that

19   we should take up at this time?

20        Plaintiff?

21        MR. JONES:  Nothing for us.

22        THE COURT:  Okay.  Defendants?

23        MR. SCHROEDER:  Just in terms of

24   post-trial motions, your Honor, if they happen,

25   what is your pleasure in terms of that?

33

1          THE COURT:  Well, how much time would you
2    like?
3          I think there is a rule, it's about
4    30 days.  I think 28 days is what the rule
5    provides.
6          MR. SCHROEDER:  That's appropriate.
7          THE COURT:  So the 28 days for the filing
8    of the post-trial motions?
9          MR. SCHROEDER:  Thank you.
10          THE COURT:  Anything else?
11          All right.  Well, it really was an
12    excellently tried case, I will say to both
13    sides.  And it was a pleasure to be here with
14    you doing this case.
15          I wish you-all a good evening.  For those
16    of you who are leaving here to go home, safe
17    travels.
18          MR. SCHROEDER:  Thank you, your Honor.
19          (Proceedings concluded at 4:16 p.m.)
20              *      *      *
21
22
23
24
25

34

C E R T I F I C A T E

1

2

3          I, SARAH M. BENTLEY, Certified Court

4    Reporter, Registered Professional Reporter, and Notary

5    Public, do hereby certify that the said proceedings

6    were taken in machine shorthand by me at the time and

7    place aforesaid and were thereafter reduced to

8    typewritten form under my direction, Pages 1 - 34;

9    that the foregoing is a true, complete, and correct

10   transcript of said proceedings.

11          I further certify that I am not employed

12   by, related to, nor counsel for any of the parties

13   herein, nor otherwise interested in the outcome of

14   this litigation.

15          IN WITNESS WHEREOF, I have affixed my

16   signature and seal this 31st day of May, 2025.

17

18

19          /s/ Sarah M. Bentley, RPR

20          SARAH M. BENTLEY, CCR-B-1745

21

22

23

24

25