IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| MISTY BLANCHETTE PORTER, M.D.,<br><br>Plaintiff,<br><br>vs.<br><br>DARTMOUTH-HITCHCOCK MEDICAL CENTER, DARTMOUTH-HITCHCOCK CLINIC, MARY HITCHCOCK MEMORIAL HOSPITAL, and DARTMOUTH-HITCHCOCK HEALTH,<br><br>Defendants. | Case No. 2:17-cv-194 |

### DEFENDANTS' REPLY IN SUPPORT OF MOTION TO ALTER OR AMEND THE JUDGMENT AND, IN THE ALTERNATIVE, FOR A NEW TRIAL ON PLAINTIFF'S VFEPA CLAIM

Defendants Dartmouth-Hitchcock Medical Center, Dartmouth-Hitchcock Clinic, Mary Hitchcock Memorial Hospital, and Dartmouth-Hitchcock Health (collectively, "Defendants" or "Dartmouth Health") respectfully submit this Reply Memorandum in support of Defendants' Motion to Alter or Amend the Judgment and, In the Alternative, for a New Trial on Plaintiff's VFEPA Claim (the "Motion" or "Mot.") (ECF No. 305).

1

I. **Plaintiff's Argument in Support of Motivating Factor Causation Misses the Mark Entirely.**

In Plaintiff Misty Blanchette Porter's ("Plaintiff" or "Dr. Porter") Opposition to the Motion (ECF No. 314) (the "Opposition" or "Opp."), Dr. Porter repeatedly asserts that a 1994 decision, issued twenty-five years before the precedent upon which the Motion is based, makes "clear" that VFEPA disability discrimination claims are decided under the motivating factor standard. Opp. at 1, 4 (citing *Gallipo v. City of Rutland*, 163 Vt. 83 (1994)). This position is disingenuous because that it is both non-responsive to Defendants' argument and plainly at odds with Dr. Porter's previous representations to the Second Circuit.

As an initial matter, Dartmouth Health does not contest that, prior to 2019, Vermont courts assessed certain VFEPA claims using the "motivating factor" standard. But Defendants' argument, set forth in clear terms over multiple pages of the Motion, is that the standard was altered by the Second Circuit's decision in *Natofsky v. City of New York*, 921 F.3d 337 (2d Cir. 2019). Therefore, case law predating *Natofsky* is irrelevant to the Court's analysis. *Cf.* Opp. at 1-2 (citing case law from 1994, 2001, 2014, and 1992).

Plaintiff's willful blindness to the legal framework surrounding this issue continues throughout her Opposition. To be sure, Dr. Porter goes on to claim that the parties are "not aware of any post-*Natofsky* disability discrimination cases to suggest that the Vermont courts intend or are likely to discontinue use of the motivating factor test[.]" Opp. at 2. On the very same page, however, she acknowledges a 2024 decision from the District of Vermont in which the Court identified "but for" causation as the appropriate standard. *Id*. at 2 (citing *Newton v. Kohl's, Inc.*, No. 5:21-CV-268, 2024 WL 4986303, at *4 (D. Vt. Nov. 12, 2024)).

But, Dr. Porter goes one step further, misstating the law when she asserts that Vermont courts are not bound to follow federal anti-discrimination laws. In *Payne v. U.S. Airways, Inc.*,

2

2009 VT 90, 186 Vt. 458, 987 A.2d 944 (2009), which Plaintiff cites for the proposition that Vermont courts "depart from federal interpretations of Title VII when [construing Vermont] fair employment practices law", the Court was clear that its decision to go against federal precedent was because the issue before it was <u>not</u> a question of the applicable "standard or burden of proof[.]" *Payne*, 2009 VT 90, ¶ 10 (citing *Hodgdon v. Mt. Mansfield Co.,* 160 Vt. at 161, 624 A.2d at 1128 for the proposition that VFEPA's "standards and burdens of proof ... <u>are identical</u> to those under Title VII[.]") (emphasis added). Here, the issue before the Court is indeed a question of the appropriate legal standard and requisite burden of proof. Thus, the Court should follow federal precedent.

Realizing that her trial "win" – one theory within one out of six claims – is inextricably linked to the Court's causation instruction, Plaintiff also asserts that, because the Connecticut Court of Appeals found motivating factor causation applicable to its own anti-discrimination statute, the same result should apply here. Opp. at 3-4 (citing *Wallace v. Caring Sols.,* LLC, 213 Conn. App. 605, 613, 278 A.3d 586, 595 (2022)). The Opposition omits, however, that the specific question considered by the Connecticut Court is entirely distinct from the question at issue here. Indeed, in *Wallace*, the Connecticut Court considered "<u>whether the 'because of' language</u> in the [Connecticut] statute requires a plaintiff to establish but-for causation[.]" *Wallace*, 213 Conn. App. at 613. There, the relevant statute included "because of" language that was uniformly applied to all protected categories, including disability. In contrast, here, the VFEPA's "because of" language is tied *only* to the categories protected by Title VII, and not to disability discrimination. See below:

3

| Connecticut General Statutes § 46a-60 (b) (emphasis added) | "It shall be a discriminatory practice in violation of this section … [f]or an employer… to refuse to hire or employ ... any individual ... **because of the individual's race, color, religious creed, age, sex, gender identity or expression, marital status, national origin, ancestry, <u>present or past history of mental disability, intellectual disability, learning disability, physical disability</u>**..." |
|---|---|
| Vermont 21 Vt. Stat. § 495(a)(1) (emphasis added) | "It shall be unlawful employment practice… [f]or any employer … to harass or discriminate against any individual **because of race, color, religion, ancestry, national origin, sex, sexual orientation, gender identity, place of birth, crime victim status, or age *or against a* <u>qualified individual with a disability</u>**." |
| ADA 42 U.S.C. § 12112 | "No covered entity shall discriminate against a qualified individual on the basis of disability…." |

As the Connecticut Court explained: "There is no basis for us to conclude that our legislature intended one causation standard for claims based on race, color, religion, sex, or national origin and a more stringent standard for disability based claims." *Wallace,* 213 Conn. App. at 625. Here, the plain language of the VFEPA distinguishes between those categories protected by Title VII and the categories protected by the ADA. Accordingly, the result reached in *Wallace* has no impact on this Court's analysis.

II. **Plaintiff's Arguments Against Certification Defy Logic and Contradict Her Earlier Representations to the Second Circuit.**

Dr. Porter next moves on to arguing that certification to the Vermont Supreme Court is inappropriate "[b]ecause Vermont law is 'settled' on the standard to apply to VFEPA claims and because further clarification by the Vermont Supreme Court would not determine the outcome of this case[.]" Opp. at 5. This position is in direct conflict with her earlier position in this lawsuit, and she should be judicially estopped from asserting it here. *See* Porter Appeal Brief at 45, 49

4

(acknowledging the absence of "any Vermont Supreme Court, published trial court order, or published administrative agency decision construing the impact of *Natofsky* on state-law disability discrimination claims" and requesting certification to the Vermont Supreme Court).

Plaintiff attempts to distance herself from her previous position by arguing that "[c]ircumstances have changed and the impact on Dr. Porter would be significantly greater at present." Opp. at 5, n.4. She cites no authority for the proposition that, where the impact of a decision a party previously advocated for has changed from positive to negative, the party should be allowed to change their position to the other party's detriment. Nor could she, as the concept of judicial estoppel is designed to avoid <u>*exactly that scenario.*</u> *See Kennedy v. Basil,* 531 F. Supp. 3d 828, 837 (S.D.N.Y. 2021) (quoting *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010)) ("The equitable doctrine of judicial estoppel provides that '[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position[.]'"). She submits that she only "offered the idea of certification" but "that was pre-trial and more than a few years ago." Opp. at 5, n. 4.

Even if Dr. Porter is not estopped from arguing that certification is inappropriate, her argument that this is a "settled" issue is illogical. She cites no authority post-dating her appellate brief that would impact her previous acknowledgment that this is, indeed, an unsettled question. As discussed *supra*, the only court that appears to have analyzed this question post-*Natofsky* ruled in Defendants' favor. *See Newton,* 2024 WL 4986303, at *13. If Dr. Porter believes that the *Newton* decision renders this question "settled", then Defendants are happy to rely upon it and to accept an amended judgment or a new trial on that basis.

Dr. Porter's argument that the Vermont Supreme Court's answer to this question does not control the outcome of the entire case is also a red herring. A question need not be dispositive of the *entirety* of a case to be suitable for certification. *See Brennan-Centrella v. Ritz-Craft Corp. of Pennsylvania*, 942 F.3d 106, 110-13 (2d Cir. 2019) (certifying question related to the availability of pre-judgment interest). In *Brennan-Centrella*, for example, the Second Circuit certified a question on the grounds that it was "[d]eterminative of the *[i]ssue*" before the Court. *Id.* at 113.

Finally, contrary to the Opposition's suggestion, both the United States Second Circuit Court of Appeals and the District of Vermont have an extensive history of certifying questions to the Vermont Supreme Court. *See, e.g., RSD Leasing, Inc. v. Navistar Int'l Corp.,* 81 F.4th 153, 168-70 (2d Cir. 2023) (certifying question related to statutory interpretation of the Vermont Consumer Protection Act ("VCPA"), after the District Court declined to do so, where there was "no clear basis to confidently predict" how the Vermont Supreme Court would rule); *Brennan-Centrella,* 942 F.3d at 113 (certifying question of statutory interpretation under the VCPA); *Hunt Const. Grp., Inc. v. Brennan Beer Gorman/Architects, P.C.,* 607 F.3d 10, 18 (2d Cir. 2010) (certifying open questions of Vermont law pertaining to the economic loss doctrine); *Doe v. Newbury Bible Church,* 445 F.3d 594, 596–97 (2d Cir. 2006) (certifying question related to interpretation of the Restatement of Agency); *Preseault v. City of Burlington, VT*, 412 F.3d 96, 102-03 (2d Cir. 2005) (certifying question of statutory interpretation). The Court should follow that precedent and certify this question such that Vermont's highest court can answer for itself this significant and unsettled question of state law.

III. **Defendants' Related Objection to the Court's Instruction is Not Waived.**

Dr. Porter's contention that Defendants waived their right to dispute the Court's jury instruction regarding the appropriate standard for "motivating factor" causation is likewise

6

incorrect. "[N]o particular formality is required of [an] objection so long as it is clear that the trial judge was informed of possible errors in the charge and was given an opportunity to correct them." *Ashley v. City of New York*, 992 F.3d 128, 142 (2d Cir. 2021) (citation omitted). At the charge conference, Defendants made a broad objection to the causation standard articulated by the Court in connection with Dr. Porter's VFEPA claim. (ECF No. 295 at 51). As such, their objection is preserved in full.

But even if Defendants were required to, and did not, object to a specific subset of the overall causation standard, an appellate court would simply review this question for plain error as opposed to *de novo*. *See Ashley*, 992 F.3d at 142 ("Where the challenging party failed to object to the charge at trial, we review the jury instructions for plain error[.]"); *Rasanen v. Doe,* 723 F.3d 325, 331–32 (2d Cir. 2013) ("In general, we review challenges to jury instructions in civil cases *de novo*… If, however, the challenging party failed to object to the charge at trial, we review for plain error, that is if the error affects substantial rights.") (internal marks omitted).

Here, the instruction given to the jury stated exactly the opposite of an established rule of law. It is hard to imagine a stronger example of "plain error."[1] This error went to the very essence of the case for all the reasons set forth in the Motion. Mot. at 10-11. Defendants are entitled to a new trial or an amended judgment.

## IV.   A Partial Retrial is Appropriate.

Dr. Porter spends several pages of her Opposition arguing that a partial retrial is improper, citing exclusively to case law pre-dating 1932 by way of support. Opp. at 8-10. The outdated precedent offered by Plaintiff is unsurprising given that the Federal Rules of Civil Procedure were adopted in 1937. The Federal Rules state, unambiguously, that the Court may

---

[1] Tellingly, Dr. Porter's sole argument against this assignment of error is that it was waived. Opp. at 7-8.

"grant a new trial on all <u>or some</u> of the issues." Fed. R. Civ. P. 59(a)(1) (emphasis added). That each and every case cited by Dr. Porter predates adoption of the Federal Rules should tell the Court all it needs to know about the veracity (or lack thereof) of her position.

For nearly the last century, federal courts have exercised their authority to grant partial retrials in accordance with the procedure set forth in Rule 59. *See, e.g., Cammeby's Mgmt. Co., LLC v. Alliant Ins. Servs., Inc.,* 720 F. App'x 18, 23 (2d Cir. 2017) (summary order) (holding that lower court did not abuse its discretion in granting a partial retrial rather than a complete retrial); *Crane v. Consolidated Rail Corp.,* 731 F.2d 1042, 1050-52 (2d Cir. 1984) (finding error in district court's award of a new trial on both liability and damages, where there was no finding of error with respect to the jury's damages award); *Fibermark, Inc. v. Brownville Specialty Paper Products, Inc.,* 419 F.Supp.2d 225, 234-35 (N.D. N.Y. 2005) (ordering a retrial on anti-dilution claim but not on trademark infringement claim because "[a]lthough the evidence in support of each of these issues may be similar, they remain distinct legal issues"). In granting such motions, courts have recognized the impropriety of disregarding any material jury finding where, as here, the jury made specific findings with respect to each individual claim. *"*Where a jury has reached a verdict on one issue of fact, the Seventh Amendment does not compel a new trial of that issue even though another and separable issue must be tried again." *Cammeby's,* 720 F. App'x at 23 (quoting *Gasoline Prod. Co. v. Champlin Ref. Co*., 283 U.S. 494, 499, 51 S.Ct. 513, 75 L.Ed. 1188 (1931)); *see also Crane,* 731 F.2d at 1050 ("[E]rror with respect to one issue will ordinarily not constitute reason to retry an issue that was separately determined"); *Fibermark*, 419 F. Supp. 2d. at 235 ("A new trial on the trademark infringement claim is unwarranted because it would result in disregarding a material jury finding").

In further support of her abrogated argument, Plaintiff makes the speculative assertion that "it cannot be said with confidence that the jury did not 'compromise' when it decided in favor of Dr. Porter on FEPA and in favor of Defendants on other counts." Opp. at 10. There is absolutely nothing in the record to suggest that was the case. To be sure, it also "cannot be said with confidence" that the jury didn't, say, flip a coin to decide Plaintiff's VFEPA claim. To that end, the Court cannot engage in rank speculation about what happened in the jury room. *See Akermanis v. Sea-Land Service, Inc.,* 688 F.2d 898, 906 (2d Cir. 1982) ("Although it is possible that the jury's special verdicts encompassed some undisclosed compromise, absent obvious inconsistencies we will not presume that the jury's findings represent anything other than good faith responses to the questions presented[.]"). It must limit its analysis to the facts actually before it; namely, that the jury was expressly instructed that the only difference between Plaintiff's VFEPA claim and her other disability claims was the applicable causation standard, and that the jury found in Dr. Porter's favor on her VFEPA claim and in Dartmouth Health's favor on all other claims. Because the causation standard instruction was incorrect, Dartmouth Health is entitled to an amended judgment as a matter of law or, in the alternative, a new trial on this sole claim.

Date: June 20, 2025                                  Respectfully submitted,

                                                     */s/ Tristram J. Coffin*

                                                     **DOWNS RACHLIN MARTIN PLLC**

                                                     Tristram J. Coffin
                                                     199 Main Street
                                                     Burlington, VT 05402
                                                     Telephone: 802-863-2375
                                                     tcoffin@drm.com


                                                     **FOLEY & LARDNER LLP**

                                                     Donald W. Schroeder (admitted *pro hac vice*)
                                                     Morgan McDonald (admitted *pro hac vice*)
                                                     Megan E. Martinez (admitted *pro hac vice*)
                                                     111 Huntington Avenue
                                                     Boston, MA 02199
                                                     Tel: (617) 342-4000
                                                     dschroeder@foley.com
                                                     mmcdonald@foley.com
                                                     memartinez@foley.com

                                                     *Attorneys for Defendants*


## CERTIFICATE OF SERVICE

I hereby certify that, on June 20, 2025, a copy of the foregoing document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.


                                                     */s/ Morgan McDonald*
                                                            Morgan McDonald