UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| Misty Blanchette Porter, M.D.,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>Dartmouth-Hitchcock Medical Center et al.,<br><br>　　　Defendants. | Civil Action No. 2:17–cv–194–kjd |

### ORDER
(Doc. 296)

After trial in this case arising from the end of an employment relationship, the jury found Defendants (Dartmouth Health) liable for disability discrimination under the Vermont Fair Employment Practices Act and awarded Dr. Porter $1,000,000 in economic damages and $125,000 in non-economic damages. (Doc. 281.) Dr. Porter requests prejudgment interest on the $1,000,000 economic damages award. (Doc. 296 at 3.) Dartmouth Health opposes Dr. Porter's motion for prejudgment interest, requesting that the Court deny prejudgment interest in the first instance or, if prejudgment interest is imposed, apply a reduced interest rate. (Docs. 299, 299-6, 299-7.)

### Standard

A plaintiff's postjudgment motion for prejudgment interest "constitutes a motion to alter or amend the judgment under Rule 59(e)." *See Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989) (holding same with respect to discretionary prejudgment interest); *id.* at 176 n.3 (explaining that Rule 59(e) also controls when "prejudgment interest is available as a matter of right"). A district court has broad discretion to determine whether to grant a motion to alter or amend the judgment. *Baker v. Dorfman*, 239 F.3d 415, 427 (2d Cir. 2000).

"[F]ederal law does not apply to the calculation of prejudgment interest on supplemental state law claims." *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998) *Schipani v. McLeod*, 541 F.3d 158, 164 (2d Cir. 2008). Under Vermont law, "[i]n an action where monetary relief is awarded, the amount of the judgment shall include the principal amount found to be due, all interest accrued on that amount up to and including the date of entry of judgment, and all costs allowed to the prevailing party." Vt. R. Civ. P. 54(a).

## Analysis

**I.      Plaintiff's Non-Compliance with Local Rule 7(a)(7)**

Dartmouth Health asks the Court to deny Dr. Porter's Motion due to noncompliance with Local Rule 7(a)(7), which requires a party filing a non-dispositive motion to "certify that the party has made a good faith attempt to obtain the opposing party's agreement to the requested relief." (Doc. 299 at 2–3.) However, Dartmouth Health has previously taken the position that prejudgment interest is inappropriate in this case, and in the event that prejudgment interest is imposed, it should be calculated at a reduced rate. (Doc. 266 at 3.) It has maintained this position in its post-trial filing on this issue, strongly suggesting that it would "have been unlikely to have agreed to the relief" requested. *See Kew v. Town of Northfield, Vt.*, Case No. 5:19-CV-78, 2021 WL 11719002, at *2 (D. Vt. Mar. 9, 2021); (Doc. 266 at 3.)

In these circumstances, the Court will not deny Plaintiff's Motion for Prejudgment Interest based on non-compliance with Local Rule 7(a)(7).

**II.     Dr. Porter is entitled to prejudgment interest as of right because her damages are readily ascertainable.**

"Prejudgment interest is awarded as of right when the principal sum recovered is liquidated or capable of ready ascertainment. . . ." *Hirchak v. Hirchak*, 2024 VT 81, ¶ 37, ___ Vt. ___, 331 A.3d 1051 (citation modified). Courts reason that when "damages are liquidated or

determinable by a reasonably certain standard of measurement, the defendant can avoid the accrual of interest by simply tendering to the plaintiff a sum equal to the amount of damages." *Windsor Sch. Dist. v. State*, 2008 VT 27, ¶ 30, 183 Vt. 452, 956 A.2d 528. Damages are not reasonably ascertainable when "the parties dispute how the jury could arrive at the damages it awarded." *Winey v. William E. Dailey, Inc.*, 636 A.2d 744, 752 (Vt. 1993). For example, unjust-enrichment claims do not result in mandatory prejudgment interest because "the measure of damages does not just require calculation of the amount of benefit conferred, but also an assessment of how much of that benefit would be inequitable for the defendant to retain." *Hirchak*, 2024 VT at ¶ 38. "The uncertainty in this calculation means that the parties will invariably dispute how the jury could arrive at the damages." *Id.* By contrast, damages are typically "reasonably certain" in lost-wage and medical-expense claims because, although these damages "are 'unliquidated' in the sense that a precise amount may not be known to either party, they are 'liquidated' in that they can be measured against a reasonably certain standard." *Smedberg v. Detlef's Custodial Serv., Inc.*, 2007 VT 99, ¶ 37, 182 Vt. 349, 940 A.2d 674 (citation modified).

Dr. Porter's damages—lost earnings and employment-related expenses (including rent and utilities in Burlington and travel costs between her place of employment in Burlington and her home in Norwich)—are readily ascertainable.[1] Similar to the plaintiff in *Smedberg*, Dr. Porter's "salar[ies] [were] known with reasonable certainty," and "the damage measure" for her increased employment expenses "is simply the reasonable value of the services rendered." *Id* at ¶¶ 37–38 (citation modified); *see also id* at ¶ 38 (holding that "[i]t works no unfairness on

---

[1] The Vermont Supreme Court has acknowledged that the terms "readily ascertainable" and "reasonably ascertainable" are substantively similar with respect to an award for prejudgment interest. *See Est. of Fleming v. Nicholson*, 724 A.2d 1026, 1030 n.2 (Vt. 1998).

3

tortfeasors to require them to pay prejudgment interest on" expenses flowing from their wrongs when the cost and date of each expense, as it was incurred, "was known precisely.").

Dartmouth Health contends that Dr. Porter's damages are not "reasonably certain" because Dr. Bancroft, her damages expert, produced four different reports over several years, reaching different results each time. As the Court discussed in detail in its Order denying Dartmouth Health's Motion to exclude Dr. Porter's expert witness, Dr. Bancroft issued several updates to his reports because new information impacted the damages Dr. Porter sustained from losing her job. (*See* Doc. 238 at 7.) For example, while Dr. Porter first believed she would resign her full-time position (0.8 FTE) at the University of Vermont Medical Center (UVMMC) to find a part-time job closer to home, she continued working at UVMMC for several years longer than she had expected. As a result, Dr. Bancroft updated his predictions of Dr. Porter's future lost earnings and employment expenses to account for Dr. Porter's higher salary. Perhaps neither party could have predicted how Dr. Porter's damages would change over the eight years of this case, but Dr. Porter's UVMMC salary and employment expenses on any given day were reasonably certain such that Dartmouth Health could "avoid the accrual of interest by simply tendering to [Dr. Porter] a sum equal to the amount of damages." *See Windsor Sch. Dist.*, 2008 VT at ¶ 30.

Nor are Dr. Porter's damages rendered reasonably uncertain because, as Dartmouth Health argues, "[it] is not even readily ascertainable when Dr. Porter plans to retire." (Doc. 299 at 5.) As this Court has previously observed, Dr. Porter is a reliable source of information regarding whether and when she intends to decrease her working hours for the purpose of calculating damages. (*See* Doc. 238 at 7–8.) Dr. Porter has provided a reasonable explanation for why she intends to decrease her hours at UVMMC: the stresses associated with commuting from

4

her home in Norwich, Vermont to a job in Burlington instead of her former job at Dartmouth Health in New Hampshire. (Doc. 230 at 37:2–17, 38:21–39:1); (*see also* Doc. 198-4 at 11, 37:10–18 (testimony by Dr. Porter that she did not know how long she would stay at UVMMC because she enjoyed the work but "didn't like being away from her family and having to commute")); *cf. Bergerson v. N. Y. State Off. of Mental Health, Cent. N. Y. Psychiatric Ctr.*, 526 F. App'x 109, 111–12 (2d Cir. 2013) (summary order) (finding district court erred in concluding that employee failed to mitigate damages when she resigned from employment located two and a half to three hours from her home because employee "was not obligated to mitigate damages by pursuing or continuing employment located such an unreasonable distance from her home"). To avoid the accrual of interest, Dartmouth Health could have determined Dr. Porter's work status, salary, and employment expenses with certainty simply by inquiring. *See Windsor Sch. Dist.*, 2008 VT at ¶ 30.

   Dartmouth Health's cited authorities are distinguishable. In *Windsor School District*, the damages could not be measured against a reasonably certain standard because they depended on undocumented or unreliable evidence of expenses and thus required inherently subjective determinations. 2008 VT at ¶¶ 14–15, 21 (upholding trial court's denial of prejudgment interest on award of attorney's fees and environmental consultant costs when attorney's filings did not distinguish between compensable and non-compensable activity under relevant statute, attorney's time records were "somewhat inflated" or did not bill for all work performed, and certain consultant costs were duplicative of work performed by the State or otherwise unreasonable). *Winey* similarly required subjective interpretation—whether a contractor's choices made in the course of constructing a house could be characterized as deviations from the plans and specifications—and, unlike this case, involved conflicting expert testimony regarding

5

damages. *See* 636 A.2d at 754. In *Brody v. Simpson Dev. Corp.*, a defective construction case, the parties disputed which repairs were actually necessary and how much they would cost. File No. 2:05-CV-293, 2007 WL 9710665, at *1 (D. Vt. Dec. 19, 2007). Unlike *Brody*, there is no genuine factual dispute that Dr. Porter earned less money at UVMMC and incurred expenses associated with working farther from home.[2]

The Court concludes that Dr. Porter's damages can be measured against reasonably certain standards—her salaries and the reasonable amount of her expenses. *See Smedberg*, 2007 VT at ¶ 37. Therefore, she is entitled to an award of prejudgment interest as of right.

### III. The Court would exercise its discretion to award prejudgment interest even if Dr. Porter's damages were not reasonably ascertainable.

Even assuming such an award of prejudgment interest were not mandatory, the Court would exercise its discretion to award prejudgment interest to make Dr. Porter whole. *See, e.g.*, *id.* at ¶ 36 (citation modified) (holding that Vermont "allow[s] prejudgment interest in the trial court's discretion where such an award is required to make the plaintiff whole"); *Merritt v. United States*, Case No. 5:18-CV-200, 2022 WL 17573683, at *1 (D. Vt. Nov. 15, 2022) (Crawford, J.) (holding courts may consider request for discretionary interest on award for pain and suffering that was not reasonably certain to avoid injustice).

---

[2] At trial, Dartmouth Health contended that Dr. Porter suffered no compensatory damages from losing her job. (Doc. 295 at 57–59, 1026:18–1028:2.) Dartmouth Health argued that if Dr. Porter had hypothetically worked full-time—that is, 1.0 FTE at UVMMC rather than 0.8 FTE—she would have earned more money than she earned working 1.0 FTE at Dartmouth Health and therefore would not have suffered any losses. (Doc. 290 at 129:1–130:1.) But the record does not support Dartmouth Health's argument. First, Dartmouth Health's calculation of what Dr. Porter would have earned from a 1.0 FTE position at UVMMC relies only on Dr. Bancroft's testimony on cross-examination, and Dr. Bancroft testified that Dartmouth Health's 1.0 FTE calculation was not correct. *Id.* at 127:19–25. Second, the parties do not dispute that Dr. Porter actually worked 0.8 FTE at UVMMC and therefore actually earned less money than she would have earned had she remained 1.0 FTE at Dartmouth Health. Dartmouth Health appears to argue both that Dr. Porter did not suffer any compensatory damages at all and that she failed to take reasonable steps—such as working 1.0 FTE at UVMMC—to mitigate her losses. The record does not contain evidence that Dr. Porter actually earned more money at UVMMC than she would have earned at Dartmouth Health.

Prejudgment interest "should generally be made available to plaintiffs when there has been a delay in judgment." *Fleming*, 724 A.2d at 1031. "As the Second Circuit has explained, a dollar in hand today is worth more than a dollar to be paid a year from today, and a dollar a year from today is worth more than a dollar to be received in two years." *Epstein v. Kalvin-Miller Int'l, Inc.*, 139 F. Supp. 2d 469, 485 (S.D.N.Y. 2001) (citation modified) (quoting *McCrann v. U.S. Lines, Inc.*, 803 F.2d 771, 722 (2d Cir. 1986)). "Prejudgment interest on compensatory damage awards is meant to restore—to the extent possible—harmed plaintiffs to the financial position they would have enjoyed but for the tort, and should not be limited to such a tiny fraction of tort cases." *Smedberg*, 2007 VT at ¶ 39.

The record demonstrates that Dr. Porter experienced economic damages due to the delay in reimbursement of her associated monetary losses. *See Fleming*, 724 A.2d at 1031. When Dr. Porter first began working per diem at UVMMC, she paid for hotels several nights per week. (Doc. 287 at 102:10–17.) Dr. Porter eventually purchased a condominium in Burlington, requiring remortgaging of the family home to afford the new down payment. (*Id.* at 102:18–104:7.) She also paid utility bills for the Burlington condominium and bills for the family home in Norwich. (Doc. 290 at 58:13–20.) The date of Dr. Porter's termination also affected when she could withdraw money from her pension and how much money she will receive. (Doc. 287 at 107:1–8.) Dr. Porter experienced these financial burdens and lost investment opportunities over the eight years of this case. She also earned less at UVMMC than she would have earned at Dartmouth Health. (Doc. 290 at 60:11–17.) An award of prejudgment interest in these circumstances is required to make her whole.

Dartmouth Health contends that prejudgment interest does not serve the interests of justice because the majority of the damages results from future earnings. (Doc. 299 at 9.) But the

7

record equally supports the conclusion that the $1 million award was comprised entirely of back pay and employment expenses. (*See* Doc. 235-2 at 3; *id.* at 6.) The possibility that Dr. Porter may only be entitled to prejudgment interest on *some* of her damages award does not mean that she cannot receive interest on *any* of her award.

For these reasons, the Court would exercise its discretion to award pre-judgment interest even if Dr. Porter's damages were found not to be "reasonably certain."

**IV.   Vermont law mandates an annual interest rate of 12% for prejudgment interest.**

After judgment, if the parties have not stipulated a rate of interest by contract, "the statutory or legal rate applies." *Greenmoss Builders, Inc. v. King*, 580 A.2d 971, 975 (Vt. 1990). Vermont law establishes the legal rate of 12% per annum. 9 V.S.A. § 41a(a).

Dartmouth Health contends that awarding 12% interest for a period of time when market interest rates were significantly lower would constitute a "windfall." The Vermont Supreme Court, however, has considered and rejected similar logic. *See Concord Gen. Mut. Ins. Co. v. Gritman*, 2016 VT 45, ¶¶ 34–35, 202 Vt. 155, 146 A.3d 882 (citation modified) ("The Legislature could reasonably conclude that a fixed rate of simple interest is a more efficient and predictable way to calculate prejudgment and postjudgment interest than a floating rate pegged to the national prime rate. . . . The argument that a fixed 12% rate creates a windfall to plaintiffs and is punitive to defendants in periods like the present when market interest rates are low is more appropriately presented to the Legislature.").

Contrary to Dartmouth Health's position, the Court may not exercise its discretion to apply a lower interest rate. (Doc. 299 at 10.) In the absence of a stipulated interest rate, the application of a prejudgment interest rate "contrary to the clearly-enumerated statutory rate of 12%[] constitutes an abuse of discretion warranting reversal." *New England P'ship, Inc. v. Rutland City Sch. Dist.*, 786 A.2d 408, 416 (Vt. 2001).

Finally, Dartmouth Health asks the Court to reduce any prejudgment interest amount as an equitable matter because the judgment was delayed by "extraordinary circumstances," including time spent on appeal and "pandemic-related disruption—akin to a force majeure." (Doc. 299 at 12–13.) Although prejudgment interest should not be punitive, it is well established that "[t]he purpose of a prejudgment interest award in a wrongful termination case is to compensate a plaintiff for the loss of use of money that the plaintiff otherwise would have earned had he not been unjustly discharged." *Chandler v. Bombardier Cap., Inc.*, 44 F.3d 80, 83 (2d Cir. 1994). Prejudgment interest also "discourages an employer from attempting to enjoy an interest-free loan for as long as it can delay paying out back wages." *Id.* (citation modified). No party could have predicted that any award of damages in this case would occur eight years after the case began. But given the dual purposes of prejudgment interest—compensation for plaintiff's loss of the use of money had the wrongful discharge not occurred and disincentivizing delay in payment of back wages—it is appropriate that Dartmouth Health, rather than Dr. Porter, shoulder the financial burden of the delay in judgment. "It works no unfairness on tortfeasors to require them to pay prejudgment interest" on expenses "flowing from their wrongs." *Smedberg*, 2007 VT at ¶ 38.

Dr. Porter is entitled to prejudgment interest at an annual rate of 12% calculated according to the actuarial method. 9 V.S.A. § 41a(a). The Vermont Supreme Court has interpreted the phrase "actuarial method" to allow "simple interest and not compound interest to be accorded to judgment awards." *Greenmoss Builders*, 543 A.2d at 1324.

Courts retain discretion to vary the method of calculating prejudgment interest. *Remes v. Nordic Grp., Inc.*, 726 A.2d 77, 81 (Vt. 1999). The trial court should use a "reasonable and established method to calculate prejudgment interest." *Id.* "Further, there may be several equally

9

valid methods of computation, each yielding a somewhat different result." *Id.* (citation modified).

The Second Circuit has held that prejudgment interest should be calculated separately for each lost payment. *See Chandler*, 44 F.3d at 84. However, "where an undifferentiated verdict makes it 'impossible to discern which of the costs formed the basis of the award,' prejudgment interest may be calculated within the range of the court's discretion to 'roughly and fairly' compensate the plaintiff." *Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 67 F.3d 435, 445 (2d Cir. 1995); *see also Rao v. New York City Health & Hosps. Corp.*, 882 F. Supp. 321, 326–27 (S.D.N.Y. 1995) (awarding plaintiff prejudgment interest on entire damages award because all or virtually all of the award was compensation for lost wages and it would have been inequitable to withhold prejudgment interest on the ground that some portion of the award may have been intended to compensate the plaintiff for damages other than wages, when the parties agreed that the issue of prejudgment interest would be left to the court and defendants did not request that the jury specifically allocate the amount of lost wages).

The Court elects to allocate the $1 million award evenly between June 3, 2017 (the effective date of Dr. Porter's termination) and December 31, 2033 (the year Dr. Porter testified she intended to stop working). *See, e.g.*, *Marfia*, 147 F.3d at 91 (noting the equal payment method); *Cheney v. New England Publishers Inc.*, No. 5091012, 2014 WL 8515132, at *3 (Vt. Super. July 8, 2014) (allocating jury award evenly over 39 months from end of employment through date of verdict).

Dr. Porter is entitled to prejudgment interest in the amount of **$225,340.62** calculated as follows:

| | |
|---|---|
| **Prejudgment interest through April 11, 2025** | **$225,335.58** (205 full pay periods between June 3, 2017, and April 11, 2025, at $2320.19 per pay period) |
| **Prejudgment interest from April 12, 2025, through April 24, 2025** | **$5.04** |
| **TOTAL** | **$225,340.62** |

## Conclusion

For the reasons explained above, Dr. Porter's Motion for Prejudgment Interest (Doc. 296) is GRANTED IN PART AND DENIED IN PART. The Court imposes prejudgment interest in the amount of $225,340.62.

Dated at Burlington, in the District of Vermont, this 26th day of November 2025.

*/s/ Kevin J. Doyle*
United States Magistrate Judge

11